UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YAAKOV LICCI, a minor, by his father and natural
guardian ELIHAV LICCI and by his mother and natural
guardian YEHUDIT LICCI, et al.,

                           Plaintiffs,

        v.

AMERICAN EXPRESS BANK LTD., et al.,

                           Defendants.

Case No.:  08 Civ. 7253 (GBD)(MHD)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## AMERICAN EXPRESS BANK LTD.'S MOTION TO DISMISS

Mark P. Ladner
Mark David McPherson
Allison G. Schnieders
Michael Gerard
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104-0012
Telephone:  (212) 468-8000

*Attorneys for Defendant*
American Express Bank Ltd.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................iii

PRELIMINARY STATEMENT ............................................................................................ 1

SUMMARY OF FACTUAL ALLEGATIONS ..................................................................... 3

STANDARD FOR DISMISSAL ........................................................................................... 8

ARGUMENT ........................................................................................................................ 9

I.      PLAINTIFFS FAIL TO ADEQUATELY PLEAD AN AIDING AND ABETTING CLAIM AGAINST AMERICAN EXPRESS BANK. ............................................................... 9

      A.     Plaintiffs Fail To Adequately Allege That American Express Bank Acted With "Actual Knowledge" Of Hizbollah's Alleged Conduct. .............................................. 10

            1.     To Adequately Allege Knowledge, Plaintiffs Must Allege Specific Facts, Not Just Conclusory Assertions. ................................................................. 10

            2.     Plaintiffs Offer Only Conclusory Assertions Of Knowledge, Not Any Supporting Factual Allegations. ................................................................. 12

      B.     Plaintiffs Fail To Adequately Allege That American Express Bank Provided "Substantial Assistance" To Hizbollah. ................................................................. 16

II.     AS A MATTER OF LAW, PLAINTIFFS FAIL TO STATE A NEGLIGENCE CLAIM AGAINST AMERICAN EXPRESS BANK. ............................................................. 17

      A.     American Express Bank Owed No Duty Of Care To Non-Customer Plaintiffs To Prevent Intentional Torts Of Its Customers Or Its Customers' Customers. ................ 17

      B.     Plaintiffs Fail To Sufficiently Allege That Their Alleged Injuries Were Proximately Caused By American Express Bank's Conduct. ......................................................... 19

III.    AS A MATTER OF LAW, PLAINTIFFS FAIL TO STATE A NEGLIGENCE *PER SE* CLAIM AGAINST AMERICAN EXPRESS BANK............................................................ 20

      A.     With The Exception Of The ATA, The Statutes And Rules Plaintiffs Cite Do Not Impose A Duty Of Care Supporting A Negligence *Per Se* Claim. ............................. 20

            1.     The Bank Secrecy Act. ........................................................................... 21

            2.     New York State Banking Department Regulations......................................... 21

            3.     New York Penal Laws §§ 470.21-24.. ............................................................. 22

            4.     The ATA — As To Canadian And Israeli Plaintiffs. ...................................... 22

B.      Plaintiffs Fail To State A Claim Under The ATA:  They Do Not Adequately Allege That American Express Bank Knowingly And Intentionally Provided Material Support Or Financing To Hizbollah.................................................................................. 23

C.      Plaintiffs Fail To Establish That Plaintiffs' Injuries Were Proximately Caused By American Express Bank's Actions................................................................................. 24

CONCLUSION         ...................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aiken v. Interglobal Mergers and Acquisitions*,
   05 Civ. 5503 (LAP), 2006 U.S. Dist. LEXIS 45730 (S.D.N.Y. July 5, 2006) ................ 18, 21

*ATSI Comms., Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) ..................................................................................................... 8

*Bell Atlantic Corp. v. Twombly*,
   127 S. Ct. 1955 (2007) ................................................................................................... passim

*Burnett v. Al Baraka*,
   274 F. Supp. 2d 86 (D.D.C. 2003) ......................................................................................... 2

*Dance v. Town of Southampton*,
   467 N.Y.S.2d 203 (2d Dep't 1983) ...................................................................................... 24

*De Jesus v. Sears, Roebuck & Co.*,
   87 F.3d 65 (2d Cir. 1996) ......................................................................................... 8, 12, 14

*Dubai Islamic Bank v. Citibank, N.A.*,
   126 F. Supp. 2d 659 (S.D.N.Y. 2000) .............................................................................. 21, 22

*Fagan v. AmerisourceBergen Corp.*,
   356 F. Supp. 2d 198 (E.D.N.Y. 2004) .............................................................................. 18, 21

*First Nationwide Bank v. Gelt Funding Corp.*,
   27 F.3d 763 (2d Cir. 1994) ................................................................................................. 3, 5

*German v. Fed. Home Loan Mortg. Corp.*,
   896 F. Supp. 1385 (S.D.N.Y. 1995) .................................................................................. 20, 21

*Globalnet Financial.com, Inc. v. Frank Crystal & Co.*,
   449 F.3d 377 (2d Cir. 2006) .................................................................................................. 9

*Hamilton v. Beretta U.S.A. Corp.*,
   750 N.E.2d 1055 (N.Y. 2001) ............................................................................................ 17, 18

*In re Terrorist Attacks on September 11, 2001*,
   349 F. Supp. 2d 765 (S.D.N.Y. 2005) ............................................................................ passim

*Iqbal v. Hasty*,
   490 F.3d 143 (2d Cir. 2007) ......................................................................................... 2, 8, 12, 14

*King v. Crossland Savings Bank*,
   111 F.3d 251, 259 (2d Cir. 1997) ........................................................................................ 17

*LaSala v. Lloyds TSB Bank*,
    514 F. Supp. 2d 447 (S.D.N.Y. 2007) ................................................................................. 9

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006) ............................................................................... passim

*Linde v. Arab Bank, PLC*,
    384 F. Supp. 2d 571 (E.D.N.Y. 2005) .............................................................................. 19

*Mastafa v. Australian Wheat Bd. Ltd.*,
    No. 07 Civ. 7955 (GEL), 2008 WL 4378443 (S.D.N.Y. Sept. 25, 2008) ........................ 12, 14

*Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*,
    98 Civ. 4960 (MBM), 1999 WL 558141 (S.D.N.Y. July 30, 1999) ...................................... 17

*Palsgraf v. Long Island R.R. Co.*,
    248 N.Y. 339, 162 N.E. 99 (1928) ..................................................................................... 17

*Pittman v. Grayson*,
    149 F.3d 111 (2d Cir. 1998) ................................................................................. 9, 10, 16

*Renner v. Chase Manhattan Bank*,
    No. 98 Civ. 926 (CSH), 1999 WL 47239 (S.D.N.Y. Feb. 3, 1999) ...................................... 18

*Ryan v. Hunton & Williams*,
    99-CV-5938 (JG), 2000 WL 1375265 (E.D.N.Y. Sept. 20, 2000) ........................................ 17

*Scalisi v. Fund Asset Mgmt. L.P.*,
    380 F.3d 133 (2d Cir. 2004) .......................................................................................... 8, 15

*Sheehan v. City of New York*,
    354 N.E.2d 832 (N.Y. 1976) ............................................................................................. 24

*Sigmoil Res., N.V. v. Pan Ocean Oil Corp. (Nigeria) et al.*,
    650 N.Y.S.2d 726 (1st Dep't 1996) ...................................................................................... 4

*Strauss v. Credit Lyonnais, S.A.*,
    No. 06-CV-0702 (CPS), 2006 WL 2862704 (E.D.N.Y. Oct. 5, 2006) .................................. 16

*Stutts v. De Dietrich Group*,
    No. 03-CV-4058 (ILG), 2006 U.S. Dist. LEXIS 47638 (E.D.N.Y. June 30, 2006) ........ passim

*Weiss v. Nat'l Westminster Bank PLC*,
    453 F. Supp. 2d 609 (E.D.N.Y. 2006) ............................................................................... 16

*Yung v. Lee*,
    432 F.3d 142 (2d Cir. 2005) ................................................................................................ 7

## STATUTES AND REGULATIONS

8 U.S.C. § 1101(a)(22) .......................................................................................................... 23

18 U.S.C. § 2331(2) ............................................................................................................... 23

18 U.S.C. § 2333(a) ............................................................................................................... 23

18 U.S.C. § 2339A ................................................................................................................. 23

18 U.S.C. § 2339B ................................................................................................................. 23

18 U.S.C. § 2339C ................................................................................................................. 23

2004 N.Y. Laws 1 ............................................................................................................ 22, 23

Fed. R. Civ. P. 8 ................................................................................................................ 2, 12

Fed. R. Civ. P. 12(b)(6) ....................................................................................................... 1, 8

N.Y. PENAL LAW §§ 470.21-24 (Consol. 2006) .................................................................. 22

N.Y. COMP. CODES R. & REGS. tit. 3, § 300 (2006) ...................................................... 21, 22

Office of Foreign Assets Control, ALPHABETICAL LISTING OF BLOCKED PERSONS, SPECIALLY
    DESIGNATED NATIONALS, SPECIALLY DESIGNATED TERRORISTS, SPECIALLY DESIGNATED
    GLOBAL TERRORISTS, FOREIGN TERRORIST ORGANIZATIONS, AND SPECIALLY DESIGNATED
    NARCOTICS TRAFFICKERS, 71 Fed. Reg. 39,708 (July 13, 2006) (amending 31 C.F.R. ch.
    V, App. A). ....................................................................................................................... 5

Office of Foreign Assets Control, CHANGES TO LIST OF SPECIALLY DESIGNATED NATIONALS
    AND BLOCKED PERSONS SINCE JANUARY 1, 2006, *available at*
    http://www.ustreas.gov/offices/enforcement/ofac/sdn/sdnew06.pdf. ...................................... 5

Office of Foreign Assets Control, CHANGES TO LIST OF SPECIALLY DESIGNATED NATIONALS
    AND BLOCKED PERSONS SINCE JANUARY 1, 2007, *available at*
    http://www.ustreas.gov/offices/enforcement/ofac/sdn/sdnew07.pdf ...................................... 5

## OTHER AUTHORITIES

Federal Financial Institutions Examination Council, BANK SECRECY ACT ANTI-MONEY
    LAUNDERING EXAMINATION MANUAL:  EXPANDED EXAMINATION OVERVIEW AND
    PROCEDURES (Aug. 24, 2007) .................................................................................................... 4

American Express Bank, Ltd. respectfully submits this memorandum of law in support of its motion to dismiss plaintiffs' Complaint, dated July 11, 2008, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs' Complaint seeks to hold two financial institutions, American Express Bank and Lebanese Canadian Bank, SAL, liable for terrorist attacks allegedly committed by the infamous terrorist organization Hizbollah in the summer of 2006.  Plaintiffs' theory of liability is limited to the conclusory allegation — which they repeat several times, as if repetition substitutes for support — that "[d]efendants American Express Bank Ltd. and Lebanese Bank SAL intentionally and/or negligently provided extensive banking services to Hizbollah, which caused, enabled and facilitated the terrorist rocket attacks in which the plaintiffs and their decedents were harmed and killed."  Compl., ¶ 3; *see also id.* ¶¶ 16, 49, 114.  Based on that bare allegation, plaintiffs purport to state three claims against American Express Bank, all purportedly pleaded under Israeli law: (1) negligence; (2) breach of statutory obligation (negligence *per se*); and (3) vicarious liability (aiding and abetting).

But plaintiffs' Complaint is premised entirely on guesswork, not any factual allegations. They contend that two entities allegedly affiliated with Hizbollah (Yousser Company and Shahid Foundation) maintain accounts at LCB.  Plaintiffs do not allege that Yousser or Shahid maintain accounts at American Express Bank.  Instead, they allege that LCB uses American Express Bank as its correspondent bank.  Citing an agreement between the New York State Banking Department and American Express Bank — an agreement that had nothing to do with transactions from the Middle East, or with American Express Bank's alleged relationship with LCB — plaintiffs allege that the NYSBD found that American Express Bank lacked viable "anti-money laundering" and "know-

your-customer" policies.  Plaintiffs guess, therefore, that American Express Bank provided

correspondent banking services for the Hizbollah-related accounts LCB allegedly maintains.

Guesswork is not enough to subject American Express Bank to the costs of defending a

baseless lawsuit, premised upon not a single relevant factual allegation.  It is difficult to imagine

uglier or more serious charges than those plaintiffs have leveled at American Express Bank; "the use

of the privileged medium of a lawsuit to publicly label someone an accomplice of terrorists can

cause incalculable reputational damage."  *Burnett v. Al Baraka*, 274 F. Supp. 2d 86, 103 (D.D.C.

2003).  For this reason, even before the Supreme Court's recent clarification of pleading standards in

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007), federal courts demanded that "in

light of the extreme nature of the charges of terrorism, fairness requires extra-careful scrutiny of

Plaintiffs' allegations as to any particular defendant" when applying Rule 8's notice pleading

requirement.  *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 831 (S.D.N.Y.

2005) (quoting *Burnett*, 274 F. Supp. 2d at 103-04).  Now, in light of *Twombly*'s requirement that "a

pleader . . . amplify a claim with some factual allegations in those contexts where such amplification

is needed to render the claim *plausible*," *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)

(emphasis added), it is all the more clear that this Court must reject plaintiffs' guesswork.

For the following reasons, plaintiffs' Complaint cannot survive even modest scrutiny, much

less the scrutiny demanded by their extreme charges and the Supreme Court's decision in *Twombly*.

*First*, plaintiffs do not adequately allege the elements of an aiding and abetting claim.  They

do not adequately allege that American Express Bank knew that its routine banking services to

another bank would be used to further terrorist activity, much less that American Express Bank

intended to do so.  And they do not allege that American Express Bank provided substantial

assistance to Hizbollah.

*Second*, plaintiffs' negligence claim fails as a simple matter of law.  As a bank, American Express Bank owes no duty of care to non-customers to prevent the alleged intentional torts of its customer (LCB), much less the even more removed alleged torts of its customer's alleged customers.

*Third*, plaintiffs' negligence *per se* claim also fails as a matter of law.  With one exception, none of the laws and regulations plaintiffs cite as a purported statutory duty of care cannot be used to support a negligence *per se* claim, as a matter of law, because those laws or regulations do not provide for a private right of action.  And the one statute that may offer some (but not all) plaintiffs a statutory duty of care — the Anti-Terrorism Act — does not support their negligence *per se* claim, for the same reasons plaintiffs have no aiding and abetting claim:  plaintiffs cannot establish that American Express Bank knowingly and intentionally provided substantial assistance to Hizbollah, the prerequisites for any ATA claim.

*Fourth*, plaintiffs' negligence and negligence *per se* claims share another common flaw. Plaintiffs cannot adequately allege proximate cause to support these claims.  As a matter of law, plaintiffs' attenuated theory of American Express Bank's liability is simply too remote to establish the requisite causal link between American Express Bank's routine banking activities and plaintiffs' alleged injuries.

For these reasons, all of plaintiffs' claims against American Express Bank should be dismissed.

### SUMMARY OF FACTUAL ALLEGATIONS[1]

Plaintiffs describe themselves as "American, Israeli and Canadian civilians."  Compl., ¶ 2. They allege that they were injured in "terrorist rocket attacks on civilians in Israel carried out by the

---

[1] Needless to say, American Express Bank disputes many of plaintiffs' factual allegations, but for purposes of this motion only, plaintiffs' allegations — to the extent they are well pleaded — must be accepted as true.  *See First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994).  The facts summarized here are therefore based on the allegations in plaintiffs' Complaint.

Hizbollah terrorist organization during July and August 2006," or that they are "the family members and Personal Representatives of the estates of two Israeli civilians who were killed by those attacks." Compl., ¶¶ 1-2.  The Complaint does not mention where plaintiffs are domiciliaries, but according to the Summons, they all reside in the State of Israel.  *See* Summons.

Defendant American Express Bank "is a banking corporation organized under the laws of Connecticut and headquartered in New York."  Compl., ¶ 13.  Defendant LCB "is a banking corporation organized under the laws of Lebanon and headquartered in Beirut, Lebanon."  Compl., ¶ 17.  Although the Complaint does not name it as a defendant, the party primarily responsible for plaintiffs' alleged injuries is Hizbollah, "a radical Islamic terrorist organization."  Compl., ¶ 20.

Plaintiffs do not allege that American Express Bank itself ever had any relationship or contact with Hizbollah or any entities allegedly affiliated with Hizbollah.  Instead, they make allegations concerning LCB's relationship with entities that are allegedly affiliated with Hizbollah, and then try to impute those alleged relationships to American Express Bank.  Plaintiffs' logic, such as it is, proceeds as follows.

First, plaintiffs allege that from 2004 to June 2006, American Express Bank acted as a "correspondent bank" for LCB.  Compl., ¶¶ 36-38.  "Correspondent accounts are accounts in domestic banks held in the name of the foreign financial institutions.  Typically, foreign banks are unable to maintain branch offices in the United States and therefore maintain an account at a United States bank to effect dollar transactions.  **Neither the originator who initiates payment nor the beneficiary who receives it holds title to the funds in the account at the correspondent bank**." *Sigmoil Res., N.V. v. Pan Ocean Oil Corp. (Nigeria) et al.*, 650 N.Y.S.2d 726, 727 (1st Dep't 1996) (emphasis added).  Because a correspondent bank's customer is the respondent bank (here, LCB), not the respondent bank's customers, a correspondent bank does not have the practical means, nor the legal obligation, to know all of its respondent banks' customers.  *See generally* Federal Financial

Institutions Examination Council, BANK SECRECY ACT ANTI-MONEY LAUNDERING EXAMINATION MANUAL: EXPANDED EXAMINATION OVERVIEW AND PROCEDURES, at 106-14, 170-74 (Aug. 24, 2007).

Ignoring these basic, but important facts about the relationship between correspondent and respondent banks, plaintiffs proceed to try to impute LCB's alleged customers to American Express Bank. They allege that Yousser and Shahid maintained accounts at LCB. Compl., ¶ 40. They also allege that Yousser and Shahid "are an integral part of Hizbollah and constitute part of Hizbollah's financial arm." Compl., ¶ 41. Plaintiffs allege that Yousser's and Shahid's alleged LCB bank accounts therefore "belonged to Hizbollah and were under the control of Hizbollah." Compl., ¶ 43. But, while plaintiffs allege that "Hizbollah has been designated by the United States as a Specially Designated Terrorist ('SDT') continuously since 1995, as a Foreign Terrorist Organization ('FTO') continuously since 1997, and as a Specially Designated Global Terrorist ('SDGT') continuously since 2001," Compl., ¶ 26, they do not allege that Yousser or Shahid were ever so designated. In fact, neither Yousser nor Shahid were designated on the lists plaintiffs mention during the time period of the transactions alleged in the complaint (2004 to June 12, 2006).[2] Yousser was not designated as an SDGT until September 7, 2006.[3] Shahid was not designated as an SDGT until July 24, 2007.[4]

---

[2] *See* Office of Foreign Assets Control, ALPHABETICAL LISTING OF BLOCKED PERSONS, SPECIALLY DESIGNATED NATIONALS, SPECIALLY DESIGNATED TERRORISTS, SPECIALLY DESIGNATED GLOBAL TERRORISTS, FOREIGN TERRORIST ORGANIZATIONS, AND SPECIALLY DESIGNATED NARCOTICS TRAFFICKERS, 71 Fed. Reg. 39,708 (July 13, 2006) (amending 31 C.F.R. ch. V, App. A).

[3] *See* Office of Foreign Assets Control, CHANGES TO LIST OF SPECIALLY DESIGNATED NATIONALS AND BLOCKED PERSONS SINCE JANUARY 1, 2006, at 36, *available at* http://www.ustreas.gov/offices/enforcement/ofac/sdn/sdnew06.pdf.

[4] *See* Office of Foreign Assets Control, CHANGES TO LIST OF SPECIALLY DESIGNATED NATIONALS AND BLOCKED PERSONS SINCE JANUARY 1, 2007, at 23, *available at* http://www.ustreas.gov/offices/enforcement/ofac/sdn/sdnew07.pdf.

Plaintiffs proceed in their guesswork by alleging that "between 2004 and June 12, 2006 (and subsequently), Hizbollah made and received dozens of wire transfers via defendants Amex Bank and LCB, totaling several million dollars."  Compl., ¶ 47.  They also allege that American Express Bank had "actual knowledge" that these accounts and the funds therein were "owned and controlled by Hizbollah," and that the wire transfers "were being carried out by and at the direction of Hizbollah." Compl., ¶ 114.

But plaintiffs do not allege facts to support these conclusory allegations.  Instead, they offer three alternative theories for why American Express Bank "should have known" that Yousser's and Shahid's alleged accounts at LCB were "owned and controlled by Hizbollah," and that wire transfers "were being carried out by and at the direction of Hizbollah."  Compl., ¶ 114.  First, they assert that this information was "notorious and public knowledge."  Compl., ¶ 115.  Second, they assert that American Express Bank had a duty "to know its customers and perform due diligence," and that by executing these wire transfers, American Express Bank breached this legal duty.  Compl., ¶ 116-17.  And third, plaintiffs assert that American Express Bank had a duty "to monitor, and report and refuse to execute suspicious and/or irregular banking transactions," and that the wire transfers in issue were "facially suspicious and irregular because they had no business or apparent lawful purpose, and there was no reasonable explanation for them."  Compl., ¶ 118-19.

Plaintiffs' first assertion is itself another unsupported conclusory allegation:  it is difficult to imagine how it is "notorious and public knowledge" that Yousser and Shahid allegedly had accounts at LCB and processed wire transfers through American Express Bank, or even that those entities were affiliated with Hizbollah, since those entities, unlike Hizbollah, were not alleged to have been designated on the lists of terrorists plaintiffs cite.  (If such "facts" were indeed "notorious and public knowledge," one would expect to see specific examples of them included in the Complaint.)  And the second and third assertions are simply legal conclusions couched as factual allegations.  Once

again, plaintiffs offer no facts to support their conclusory assertion that American Express Bank breached its duties to know its customers or monitor suspicious activities, or that these alleged transactions were "facially suspicious."

Unable to support their conclusory allegations with any real facts, plaintiffs rely on an August 6, 2007 Agreement between American Express Bank and the NYSBD, contending that the Agreement contained findings supporting their claims here.  After alleging that the NYSBD "conducted an examination of" American Express Bank, plaintiffs misquote the actual terms of the Agreement.  They allege that the NYSBD "found," among other things, "that during the time period in which the Hizbollah Wire Transfers took place:  (i) [American Express Bank] failed to comply with applicable federal and state laws, rules, and regulations relating to terrorism financing and anti-money laundering policies, procedures, and practices . . . ."  Compl., ¶ 121.

In fact, the NYSBD "found" no such thing.[5]  The Agreement included no findings that American Express Bank "failed to comply" with the federal and state laws plaintiffs cite with respect to any specific transactions, customers, industries, or geographic areas.  (At most, the Agreement refers to general and unspecified "deficiencies" in "compliance," "compliance policies" or "operational areas."  *See, e.g.*, Agreement at 1.)  Nor does the word "terrorism" even appear in the Agreement, as plaintiffs misleadingly suggest.  Nothing in the Agreement refers to or relates to transactions involving Yousser, Shahid, Hizbollah, LCB, Lebanon, or even the Middle East.  And nothing in the Agreement suggests that the NYSBD was focused on "the time period in which the Hizbollah Wire Transfers took place," as plaintiffs again misleadingly suggest.  Compl., ¶ 121.  To the contrary, the only time period even mentioned in the Agreement is the period for which

---

[5] The NYSBD Agreement is attached as Exhibit A to the accompanying Declaration of Mark David McPherson, dated October 23, 2008.  Because the Complaint incorporates and relies upon the alleged terms and effect of the Agreement, *see, e.g.*, Compl. ¶ 121, this Court may consider it on this motion.  *See Yung v. Lee*, 432 F.3d 142, 146 (2d Cir. 2005).

American Express Bank is required to conduct a review of past transactions:  July 1, 2006 through December 31, 2006, *see* Agreement, at ¶ 7 — after the events alleged in the Complaint, *see* Compl., ¶ 47.

## STANDARD FOR DISMISSAL

As the Supreme Court held just two terms ago, to adequately state a claim, plaintiffs must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65.  A plaintiff must "provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (internal quotations omitted).  *Twombly*'s "flexible 'plausibility standard' . . . obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal*, 490 F.3d at 157-58 (emphasis added).  In other words, a complaint must allege sufficiently "plausible" facts, not merely "conceivable" facts.  *Twombly*, 127 S. Ct. at 1974.

And even before *Twombly* annunciated this plausibility requirement for notice pleading, a court was "not required to accept as true the legal conclusions or unwarranted deductions of fact drawn by the [plaintiffs]." *Scalisi v. Fund Asset Mgmt. L.P.*, 380 F.3d 133, 137 (2d Cir. 2004).  As the Second Circuit has consistently made clear, "a complaint which consists of conclusory allegations unsupported by factual assertions fails even on the liberal standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996).  Such conclusory allegations are always insufficient to survive a motion to dismiss, even if they address all the requisite elements of a cause of action.  *See Terrorist Attacks*, 349 F. Supp.2d at 832-33 (dismissing conclusory allegations reciting elements of a claim).

## ARGUMENT

### I.  PLAINTIFFS FAIL TO ADEQUATELY PLEAD AN AIDING AND ABETTING CLAIM AGAINST AMERICAN EXPRESS BANK.

Plaintiffs' boldest, and most baseless, claim is their third cause of action, alleging that American Express Bank aided and abetted Hizbollah's rocket attacks.  To state such a claim, plaintiffs must sufficiently allege:  (1) the existence of a violation by the primary wrongdoer (here, Hizbollah); (2) that American Express Bank knew the wrongful nature of Hizbollah's conduct or intended to aid in the commission of its wrongdoing; and (3) that American Express Bank gave substantial assistance or encouragement to Hizbollah.  *See Pittman v. Grayson*, 149 F.3d 111, 123 (2d Cir. 1998).[6]  Because plaintiffs' Complaint, bare as it is, does not come close to sufficiently alleging the latter two elements, their aiding and abetting claim against American Express Bank should be dismissed.

---

[6] Plaintiffs purport to plead their three causes of action against American Express Bank "under the law of the State of Israel."  *See, e.g.*, Compl., First Cause of Action.  But plaintiffs offer nothing suggesting why Israeli law should apply to their claims.  Nor could they.  As an initial matter, there is no conflict between Israeli law and New York law — at least on the conduct-regulating issues presented by this motion to dismiss, such as whether banks owe a duty of care to non-customers, whether the federal and state laws and regulations plaintiffs cite can support a negligence *per se* claim, and the elements of a claim for aiding and abetting.  As detailed in the accompanying Declaration of Israel Leshem, dated October 23, 2008, on these conduct-regulating issues, Israeli law is not materially different than New York law.  As such, there is no need for the Court to decide whether Israeli law governs; it can simply apply New York law.  *See Globalnet Financial.com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 382 (2d Cir. 2006).

If the Court finds any conflict between New York and Israeli law, moreover, New York law should apply on this motion to dismiss.  American Express Bank's headquarters are here.  Compl., ¶ 13.  Its conduct as a financial institution is regulated by New York laws.  Compl., ¶ 121.  Further, the transactions at issue — to the extent any actually occurred — allegedly were conducted in New York.  Compl., ¶ 50.  Indeed, plaintiffs even allege that U.S. and New York statutory provisions provide the benchmark for American Express Bank's duty of care, thereby conceding that New York law — not Israeli law — applies.  Compl., ¶¶ 121, 149.  New York's paramount interest in regulating the conduct of a New York domiciliary — conduct that allegedly occurred here — and in protecting its place as the center of international finance therefore require the application of New York law.  *See LaSala v. Lloyds TSB Bank*, 514 F. Supp. 2d 447, 465 (S.D.N.Y. 2007) ("[W]here the alleged misconduct occurred in one jurisdiction but because of the international nature of a company's business dealings the harm caused by that misconduct was felt in another country, presents precisely the sort of circumstance where blind adherence to the rule that the last place determines the locus of the tort and therefore the jurisdiction with the greatest interest would result in the jurisdiction which does not possess the greatest interest being deemed so for choice of law purposes.").

A.      **Plaintiffs Fail To Adequately Allege That American Express Bank Acted With "Actual Knowledge" Of Hizbollah's Alleged Conduct.**

To hold American Express Bank liable for Hizbollah's conduct, plaintiffs must allege that American Express Bank either intended to further such conduct, or that American Express Bank acted with actual knowledge of Hizbollah's conduct. *See Pittman*, 149 F.3d at 123 (aiding-and-abetting claim requires allegation that defendant knew of or intended to aid in the commission of a tort).[7]  Plaintiffs do not allege that American Express Bank intended to further Hizbollah's conduct. They do try to allege that American Express Bank acted knowingly, but for the following reasons, their allegation is far below the threshold required to survive dismissal.

1.      **To Adequately Allege Knowledge, Plaintiffs Must Allege Specific Facts, Not Just Conclusory Assertions.**

In the context of an aiding and abetting claim, as here, allegations of knowledge face a strict test.  Constructive knowledge is insufficient; plaintiffs must allege actual knowledge.  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006).  And an allegation of actual knowledge must be adequately pleaded.  It cannot merely be a conclusory and "wide-sweeping allegation that defendants knew, or reasonably should have known that, as a result of services they provided," plaintiffs would be injured by the primary tortfeasor.  *Stutts v. De Dietrich Group*, No. 03-CV-4058 (ILG), 2006 U.S. Dist. LEXIS 47638, at *24 (E.D.N.Y. June 30, 2006) (internal quotations omitted).

Two recent cases, in the similar context of allegations that a defendant aided and abetted terrorist activity, highlight this strict pleading standard.  In *Stutts*, plaintiffs sued correspondent banks, alleging that they issued letters of credit to support the sale of supplies and services to the Government of Iraq.  *Id.* at *6-7.  Iraq, plaintiffs alleged, used those supplies and services to develop chemical weapons that allegedly injured them.  *Id.*  Plaintiffs' allegation of knowledge simply parroted the elements of an aiding and abetting claim:  they alleged that (1) the banks "were aware of

---

[7] The same is true under Israeli law.  *See* Leshem Decl. ¶ 7.

their role as part of the unlawful and/or tortious activity that gave rise to the injuries of Plaintiffs,"

(2) the correspondent banks "knowingly and substantially participated in the unlawful and/or tortious

conduct" of the suppliers of the chemical precursors "in that the Bank Defendants knew of the nature

of the goods and services sold and to whom the goods and services were being provided," and

(3) the correspondent banks "knew, or reasonably should have known that, as a result of services

they provided, Hussein's regime and its use of chemical weapons endangered all who opposed

Saddam Hussein." *Id.* at *24, 46-47 (internal quotations omitted).

Plaintiffs' rote incantation of the elements of their claim was not enough.  The *Stutts* Court

granted the correspondent banks' motion to dismiss, holding that plaintiffs' "wide-sweeping"

allegations were insufficient to state a claim.  *Id.* at *24-25, 72.

The *Terrorist Attacks* case likewise teaches that plaintiffs must do more than simply repeat

the conclusion that American Express Bank had actual knowledge.  There, survivors and

representatives of victims of the September 11, 2001 terrorist attacks brought claims under the Anti-

Terrorism Act against various defendants, including Saudi American Bank.  349 F. Supp. 2d at 831-

34.  They alleged that SAB acted as the correspondent bank for banks that allegedly helped finance

al-Qaeda.  *Id.* at 833-34.  According to plaintiffs, SAB "provid[ed] a bank account and facilities to

receive donations for a committee of charity organizations" that allegedly sponsored or supported al-

Qaeda, and that through SAB's "relationships with other banks . . . [it] provided material support to

al-Qaeda."  *Id.* at 834.  In dismissing plaintiffs' ATA claim, the court held that plaintiffs failed to

sufficiently allege that SAB knew that its banking services were being used by terrorists.  *Id.*

And these two decisions were handed down **before** the Supreme Court made clear that even

under Rule 8, a complaint must allege "enough facts to state a claim for relief that is *plausible* on its

face," not merely one that is "conceivable."  *Twombly*, 127 S. Ct. at 1974 (emphasis added); *Iqbal*,

490 F.3d at 157-58.  *Twombly* not only validates the *Stutts* and *Terrorist Attacks* decisions, but

confirms that absent supporting facts, conclusory allegations — such as that a bank knew or should have known that it or its customers were supporting terrorists — are insufficient to survive a motion to dismiss. *Id.*; *De Jesus*, 87 F.3d at 70; *Terrorist Attacks*, 349 F. Supp. 2d at 833; *see also Mastafa v. Australian Wheat Bd. Ltd.*, No. 07 Civ. 7955 (GEL), 2008 WL 4378443 at *4-5 (S.D.N.Y. Sept. 25, 2008) (dismissing claim based on allegation that a bank "knowingly provided knowing practical assistance to the Hussein regime," finding that the allegation of knowledge was "nothing more than a 'formulaic recitation' of the requirement, and is not sufficient by itself to make the claim for relief 'plausible'" (quoting *Twombly*, 127 S. Ct. at 1964-65)).

> ### 2.   Plaintiffs Offer Only Conclusory Assertions Of Knowledge, Not Any Supporting Factual Allegations.

> #### a.   Plaintiffs' Allegation of Actual Knowledge Is Insufficient.

Plaintiffs here offer the same conclusory allegations that were dismissed in *Stutts, Terrorist Attacks*, and *Mastafa*. This is plaintiffs' most "complete" allegation of actual knowledge:

> At all times, defendant Amex Bank had actual knowledge (i) that Hizbollah is a violent terrorist organization which had carried out numerous terrorist attacks against Israeli and American civilians and which planned and intended to carry out additional terrorist attacks against Israeli and American civilians, (ii) that terrorist organizations such as Hizbollah require wire transfer and other banking services in order to plan, to prepare for and to carry out terrorist attacks, (iii) that providing wire transfer and/or other banking services to Hizbollah would enable Hizbollah to plan, to prepare for and to carry out terrorist attacks and/or enhance Hizbollah's ability to plan, to prepare for and to carry out such attacks, (iv) that the Hizbollah Accounts and the funds therein were owned and controlled by Hizbollah, and (v) that the Hizbollah Wire Transfers were being carried out by and at the direction of Hizbollah.

Compl., ¶ 114. Elsewhere, plaintiffs repeat the conclusory assertion that defendants "intentionally and/or negligently provided extensive banking services to Hizbollah . . ." Compl., ¶ 3; *see also id.* ¶¶ 16, 49. But paragraph 114 is the only place in the Complaint in which plaintiffs strive to meet their obligation to plead specific facts supporting the assertion that American Express Bank acted

with actual knowledge that its banking services were somehow being used to commit terrorist attacks.

Plaintiffs' only effort to meet their pleading obligation is woefully deficient, however. Paragraph 114, like the paragraphs before it, does nothing but repeat the elements of an aiding and abetting claim, the very tactic *Stutts* and *Terrorist Attacks* rejected even before *Twombly*.  It does not specify any facts supporting plaintiffs' conclusory assertion that American Express Bank "had actual knowledge . . . that the Hizbollah Wire Transfers were being carried out by and at the direction of Hizbollah."

What is missing from the Complaint are either of these basic allegations, both of which are prerequisites to (though not sufficient for) an adequate allegation of knowledge in this case:  (1) an allegation that LCB disclosed to American Express Bank the identity of the Yousser and Shahid accounts, when American Express Bank allegedly processed wire transfers for those accounts, or an allegation that American Express Bank otherwise knew that it was processing wire transfers for the Yousser or Shahid accounts; **and** (2) an allegation that American Express Bank knew, before June 12, 2006 (when the transfers at issue allegedly occurred), that those accounts were in any way affiliated with Hizbollah.  (While plaintiffs allege that the United States had designated Hizbollah as a terrorist organization on various lists before the alleged wire transfers at issue, Compl., ¶ 26, Yousser or Shahid were not so designated at that time.  *See supra*, at 5.)  There is, of course, a reason why neither of these basic factual allegations appear in the Complaint:  presumably, plaintiffs cannot in good faith allege either of these basic facts.

Without these basic factual allegations, plaintiffs' Complaint cannot survive.  As detailed above, conclusory allegations — such as plaintiffs' incantation of some variation of the phrase, American Express Bank "had actual knowledge . . . that the Hizbollah Wire Transfers were being carried out by and at the direction of Hizbollah," *see, e.g.*, Compl., ¶ 114 — are insufficient to

survive a motion to dismiss for failure to state a claim.  *Twombly*, 127 S. Ct. at 1974; *Iqbal*, 490 F.3d at 157-58; *De Jesus*, 87 F.3d at 70.

### b. Plaintiffs' Allegations of Constructive Knowledge Are Irrelevant And Insufficient.

To distract from these pleading deficiencies, plaintiffs try to allege what American Express Bank "should have known."  Compl., ¶¶ 115-121.  What American Express Bank "should have known" is simply irrelevant to their aiding and abetting claim.  The "actual knowledge" requirement "means that allegations . . . that a bank 'should have known,' will not suffice."  *Mastafa*, 2008 WL 4378443 at *5.

In any event, plaintiffs' theories of why American Express Bank "should have known" that Hizbollah controlled the accounts and directed the wire transfers at issue are just as conclusory as their allegation of actual knowledge.

First, plaintiffs claim it was "notorious and public knowledge" that Hizbollah was carrying out wire transfers via American Express Bank.  *See* Compl., ¶ 115.  Aside from being conclusory, the assertion borders on the absurd.  If the assertion were at all plausible, some of the supposedly "notorious" and publicly available information would presumably have found its way into an otherwise bare Complaint.

Plaintiffs' second and third theories are that American Express Bank failed to follow Know Your Customer or Anti-Money Laundering policies with respect to its dealings with LCB.  Those theories, too, are nothing more than legal conclusions.  Plaintiffs do not, for example, support these conclusory allegations with any facts regarding American Express Bank's due diligence of its client LCB, or the alleged wire transfers at issue.  Nor do plaintiffs allege what actions American Express Bank failed to take that would have led to the discovery that LCB's customers were allegedly Yousser and Shahid, that these entities were allegedly "controlled by Hizbollah," which, in turn, was

allegedly directing wire transfers to American Express Bank for the purpose of carrying out terrorist attacks in Israel.

Plaintiffs' reliance on the NYSBD Agreement also fails to support their theory of constructive knowledge.  The Agreement does not cite the time period in which the alleged wire transfers occurred, as plaintiffs misleadingly allege.  Instead, the only time period even mentioned in the NYSBD Agreement is July 1, 2006 through December 31, 2006, *see* Agreement, ¶ 7 — a period **after** that alleged in the Complaint, *see* Compl., ¶ 47.  Nor does the Agreement contain, as plaintiffs contend, any "findings" that American Express Bank violated any statute or regulation with respect to any specific transactions, much less alleged transactions with LCB.  At most, the Agreement refers to general and unspecified "deficiencies" in "compliance," "policies" or "operational areas," *see, e.g.*, Agreement at 1.  The Court cannot leap from such general references to the specific conclusion that American Express Bank should have known it was providing banking services for Hizbollah.  *See Scalisi*, 380 F.3d at 137 (court not required to accept "unwarranted deductions of fact" as true).

Finally, with or without the benefit of the NYSBD Agreement, plaintiffs do not — and cannot — allege that had American Express Bank complied with some particular rule or regulation, it would have known the facts necessary to add up to constructive knowledge here:  (1) that LCB tendered transactions to American Express Bank on behalf of Yousser or Shahid, and (2) that Yousser or Shahid were front groups for Hizbollah, and (3) that Hizbollah would use these funds to commit terrorist attacks in Israel.

* * *

For these reasons, plaintiffs' Complaint includes no adequate allegation of actual knowledge, a prerequisite of any aiding and abetting claim.  Their allegation is far too conclusory.  And while an

allegation of constructive knowledge would not suffice, plaintiffs' allegation of constructive knowledge is equally conclusory.

           **B.**      **Plaintiffs Fail To Adequately Allege That American Express Bank Provided "Substantial Assistance" To Hizbollah.**

Plaintiffs' aiding and abetting claim fails for another reason:  they cannot adequately allege that American Express Bank provided "substantial assistance" to Hizbollah's alleged terrorist attacks.  "[A]iding and abetting requires that the defendant have given substantial assistance or encouragement to the primary wrongdoer."  *Pittman*, 149 F.3d at 123 (internal quotations omitted).  Based on settled law, American Express Bank's alleged banking services cannot satisfy this "substantial assistance" element.

Plaintiffs' Complaint is filled with incendiary rhetoric, but at bottom, it alleges that American Express Bank did only one thing:  executed wire transfers.  Plaintiffs detract attention from this fact by repeatedly using the defined term "Hizbollah Wire Transfers."  *See, e.g.*, Compl., ¶¶ 47-50.  Looking solely at their actual allegations, however, American Express Bank did nothing more than carry out wire transfers for its client, LCB.  Compl., ¶¶ 37-38.

Under settled law, "the mere maintenance of a bank account and the receipt or transfer of funds do not . . . constitute substantial assistance."  *Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609, 621-22 (E.D.N.Y. 2006).  In *Weiss*, for example, the Court dismissed an aiding and abetting claim against a bank, finding plaintiffs' allegations that the bank "knowingly maintained numerous accounts" through which it "ha[d] collected, received, transmitted, and provided millions of dollars . . . to agents of HAMAS" insufficient to hold the bank liable for HAMAS's use of the funds.  *Id.*  In *Strauss v. Credit Lyonnais, S.A.*, No. 06-CV-0702 (CPS), 2006 WL 2862704, at *9 (E.D.N.Y. Oct. 5, 2006), the court dismissed a similar aiding and abetting claim for the same reason:  allegations that a bank "knowingly maintained accounts" for a HAMAS front group and "knowingly

transferred money to HAMAS-controlled entities" were insufficient to render the bank liable.[8]  In each case, plaintiffs' complaint, just like the Complaint here, suffered the same deficiency:  that a bank did nothing more than perform routine banking services is, as a matter of law, insufficient to constitute "substantial assistance" to tortfeasors.

## II.   AS A MATTER OF LAW, PLAINTIFFS FAIL TO STATE A NEGLIGENCE CLAIM AGAINST AMERICAN EXPRESS BANK.

To establish a claim for negligence under New York law, "a plaintiff must show that the defendant owed the plaintiff a cognizable duty of care, that the defendant breached that duty, and that the plaintiff suffered damages as a proximate cause of that breach."  *King v. Crossland Savings Bank*, 111 F.3d 251, 259 (2d Cir. 1997).  The Court can resolve at least two of those elements at the pleading stage.  As a matter of law, American Express Bank owed plaintiffs no duty of care.  And as a matter of law, American Express Bank's alleged actions were far too attenuated to be the proximate cause of plaintiffs' injuries.

### A.   American Express Bank Owed No Duty Of Care To Non-Customer Plaintiffs To Prevent Intentional Torts Of Its Customers Or Its Customers' Customers.

"The threshold question in any negligence action is:  does defendant owe a legally recognized duty of care to plaintiff?"  *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1060 (N.Y. 2001); *see Terrorist Attacks*, 349 F. Supp. 2d at 830-31 (citing *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 342, 162 N.E. 99 (1928)).  "The injured party must show that a defendant owed not merely a general duty to society but a specific duty to him or her, for without a duty running

---

[8] *See also Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*, 98 Civ. 4960 (MBM), 1999 WL 558141, at *7-8 (S.D.N.Y. July 30, 1999) (repeated execution of wire transfers did not constitute substantial assistance); *Ryan v. Hunton & Williams*, 99-CV-5938 (JG), 2000 WL 1375265, at *9 (E.D.N.Y. Sept. 20, 2000) ("The affirmative acts of opening accounts, approving various transfers and then closing the accounts do not constitute substantial assistance," notwithstanding allegation that bank was on notice).

directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm." *Hamilton*, 750 N.E.2d at 1060 (internal quotations and citations omitted).

Whether a duty exists is a question of law, not fact, and it is appropriately decided on a motion to dismiss. *Fagan v. AmerisourceBergen Corp.*, 356 F. Supp. 2d 198, 206 (E.D.N.Y. 2004) ("In New York, the existence of a duty of care is a legal, policy-laden declaration reserved for judges.") (internal quotations omitted).

This legal question has already been decided in the context of plaintiffs' allegations here. The Second Circuit has ruled that "[b]anks do not owe non-customers a duty to protect them from the intentional torts of their customers." *Lerner*, 459 F.3d at 286 (quoting *Terrorist Attacks*, 349 F. Supp. 2d at 830-31).[9] "With billions of banking transactions occurring in New York alone, this would be the equivalent of making New York banks liable to the world's banking public." *Id.* at 286-87 (internal quotations omitted).[10]

As a matter of law, therefore, plaintiffs can have no negligence claim against American Express Bank. American Express Bank's client was not plaintiffs, but LCB. Compl., ¶ 38. Tragic as plaintiffs' alleged injuries may be, American Express Bank simply had no duty to protect them from any alleged intentional torts of its customer, LCB, much less the intentional torts of LCB's alleged customers, Yousser and Shahid. *Terrorist Attacks*, 349 F. Supp. 2d at 830-31; *Renner*, 1999 WL 47239, at *13; *Stutts*, 2006 U.S. Dist. LEXIS 47638, at *67-68.

---

[9] *See also Renner v. Chase Manhattan Bank*, No. 98 Civ. 926 (CSH), 1999 WL 47239, at *13 (S.D.N.Y. Feb. 3, 1999) (bank owes no duty of care to non-customer defrauded by bank customer); *Stutts*, 2006 U.S. Dist. LEXIS 47638, at *67-68 (granting correspondent bank's motion to dismiss negligence claim, holding that bank owes no duty to non-customer plaintiffs); *Aiken v. Interglobal Mergers and Acquisitions*, 05 Civ. 5503 (LAP), 2006 U.S. Dist. LEXIS 45730, at *4-5 (S.D.N.Y. July 5, 2006) (granting motion to dismiss negligence claim against bank, holding that bank owes no duty of care to non-customers).

[10] Likewise, there is no precedent in Israeli law suggesting that banks owe a duty of care to non-customers for intentional torts committed by customers. Leshem Decl. ¶¶ 11-20.

Because plaintiffs cannot plead any additional facts to circumvent this well-established legal rule, the Court should dismiss plaintiffs' negligence claim against American Express Bank with prejudice.

**B.      Plaintiffs Fail to Sufficiently Allege That Their Alleged Injuries Were Proximately Caused By American Express Bank's Conduct.**

Even if plaintiffs could identify a legal duty American Express Bank violated, American Express Bank's alleged conduct is too attenuated to support plaintiffs' negligence claim.  Allegations that a bank provided financial services to terrorist organizations, which in turn committed terrorist acts injuring plaintiffs, fail to adequately allege the proximate cause element of a negligence claim. *See Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 590-91 (E.D.N.Y. 2005) (dismissing claim against bank alleged to have provided financial services to terrorist organizations, holding that bank's conduct was "too removed").

The Second Circuit's decision in *Lerner* demonstrates the point.  459 F.3d at 286-87.  There, non-customer plaintiffs sued banks for negligence, alleging that they were victims of an attorney's Ponzi scheme, and that the banks failed to report the attorney's wrongdoing; plaintiffs argued that if any of the banks had reported the attorney's misappropriation of funds, the proper authorities would have prevented the attorney from defrauding his future clients.  *Id*. at 287.  The Second Circuit rejected this claim for lack of either duty or proximate cause, holding that the banks' alleged failure to report the attorney's wrongdoing was "too far removed from the damages [the attorney] subsequently caused to persons who never deposited funds with the bank and who participated in future transactions to which the bank was not a party."  *Id*.  In the Second Circuit's words, "[t]o find proximate causation in this context would, in effect, require a bank . . . to be an insurer for any damages that lawyer subsequently causes to any of his or her future clients."  *Id.*

Here, the alleged causal chain from American Express Bank is even more attenuated. American Express Bank is alleged to have provided financial services to its client, LCB — not

Yousser or Shahid.  Compl., ¶¶ 37-38.  Plaintiffs allege that LCB's clients, Yousser and Shahid then provided funds to Hizbollah, which in turn allegedly purchased rockets, allegedly launched them into Israel, and injured or killed plaintiffs in Israel.  Compl., ¶¶ 39-50, 107-13.  To find proximate causation in this context would do more than require a bank to be an insurer for any damages its client subsequently causes — it would require a bank to be an insurer for any damages its customers' customers subsequently cause others.  As the Second Circuit put it in *Lerner*, "[l]iability for negligence does not extend that far."  459 F.3d at 287.

### III.   AS A MATTER OF LAW, PLAINTIFFS FAIL TO STATE A NEGLIGENCE *PER SE* CLAIM AGAINST AMERICAN EXPRESS BANK.

Unable to identify a duty of care banks owe non-customers, plaintiffs seek to import a duty from various statutory and regulatory provisions, arguing that American Express Bank's alleged violations of the following provisions constitute negligence *per se*:  (1) the Bank Secrecy Act, and regulations promulgated thereunder; (2) New York State Banking Department's rules requiring reporting of crimes *against* (not by) banking institutions and misconduct by bank employees and officers; (3) New York Penal Laws relating to "money laundering in support of terrorism"; and (4) the Anti-Terrorism Act.  Compl., ¶ 149.

None of these provisions support plaintiffs' negligence *per se* claim.  Most of them simply cannot, as a matter of law, be used to impose a duty of care in a negligence *per se* claim.  Only one, the ATA, arguably can be used as such, but only by the American plaintiffs, not the Israeli or Canadian plaintiffs.  And more fundamentally, plaintiffs do not, and cannot, adequately allege that American Express Bank violated the ATA.

### A.   With The Exception Of The ATA, The Statutes And Rules Plaintiffs Cite Do Not Impose A Duty Of Care Supporting A Negligence *Per Se* Claim.

"Violation of a statute . . . does not automatically constitute negligence *per se*."  *German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1396 (S.D.N.Y. 1995).  "In order to warrant a

finding of negligence *per se* for a statutory violation, the statute must evidence an intention, express or implied, that from disregard of its command a liability for resultant damages shall arise which would not exist but for the statute." *Id*. at 1397. "Three factors are of central importance in this inquiry:  (1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted, (2) whether a finding of negligence *per se* for violation of the statute would promote the legislative purpose, and (3) whether creation of such liability would be consistent with the legislative scheme." *Id*.; *Fagan*, 356 F. Supp. 2d at 214.  A court may not impose a duty of care based upon a statute that does not permit a private right of action.  *Aiken*, 2006 U.S. Dist. LEXIS 45730, at*4-5; *Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 668 (S.D.N.Y. 2000).[11]

Based on these familiar principles, the Court can summarily dismiss plaintiffs' negligence *per se* claim based on the following statutory or regulatory provisions:

   **1.**     **The Bank Secrecy Act.**  Courts have already determined that the Bank Secrecy Act and regulations promulgated thereunder do not impose a duty of care to support a negligence *per se* claim.  *Aiken*, 2006 U.S. Dist. LEXIS 45730, at *4-5 (holding that "neither the Bank Secrecy Act nor the Patriot Act affords a private right of action [and t]his Court may not announce a duty of care where the New York courts have declined to do so; nor may this Court impose a duty of care based upon a statute that does not permit a private right of action").

   **2.**     **New York State Banking Department Regulations.**  The New York Banking Department Regulations plaintiffs cite, N.Y. Comp. Codes R. & Regs. tit. 3, § 300, were intended to protect banks, their customers and shareholders against certain bank losses — not to protect a bank's customers or other third parties from the intentional torts of the bank's customers.  Indeed, the

---

   [11] Under Israeli law, plaintiffs' negligence *per se* claim would fail, because no foreign statute can serve as the basis for a claim of breach of statutory duty under Israeli law, Leshem Decl. ¶ 28-29, and plaintiffs' Complaint cites no Israeli legal provisions American Express Bank allegedly violated, *see* Compl., ¶ 149.

provisions plaintiffs rely on are entitled "Reporting of Crimes *Against* Banking Institutions, Mysterious Disappearances and Misconduct."  N.Y. COMP. CODES R. & REGS. tit. 3, § 300 (2006) (emphasis added).  They require banks to report misconduct of bank employees and officers, instances of "holdups, thefts, burglaries, and check kiting schemes" as well as any loss caused by forgeries.  *Id.* § 300.1.  Plaintiffs are therefore not among the class of people for whose particular benefit these rules were promulgated.  No court has ever recognized a private cause of action under these regulations for any plaintiff.  And a private right of action for victims of terrorist attacks would in no way promote the legislative purpose behind these rules focused on reporting bank losses.

  **3.**  **New York Penal Laws §§ 470.21-24.**  The New York Penal Laws plaintiffs rely on also do not impose a duty of care on American Express Bank.  "Rarely is there a private right of action under a criminal statute."  *Dubai Islamic Bank*, 126 F. Supp. 2d at 668 (criminal money laundering statute did not support negligence *per se* claim).  Penal Law Sections 470.21-24 do not express a private right of action, *see* N.Y. PENAL LAW §§ 470.21-24 (Consol. 2006), and no court has ever held that there is an implied private right of action.  Moreover, these provisions were enacted to "enhance public safety," and there is no indication in the legislative history of this criminal statute that the New York State Legislature intended these provisions to give rise to a private civil remedy.  *See* 2004 N.Y. Laws 1.[12]

  **4.**  **The ATA — As To Canadian And Israeli Plaintiffs.**  The Canadian and Israeli plaintiffs cannot rely on the ATA to impose a duty of care in support of plaintiffs' negligence *per se* claim.  To bring an action under the ATA, a plaintiff must be a United States citizen or a person

---

[12] Even if these New York Penal Laws were to create a duty of care — which they do not — plaintiffs fail to establish that American Express Bank had the requisite knowledge or intent to state a claim under them.  *See* N.Y. PENAL LAW §§ 470.21-24 (requiring knowledge or intent); *see supra*, § I(A) (detailing inadequacy of plaintiffs' allegation of knowledge).

who, though not a citizen of the United States, owes permanent allegiance to the United States.[13]  By

their own allegations, plaintiffs listed in paragraphs 6-12 of the Complaint are Canadian or Israeli

citizens, and thus, are not among the class of people for whose benefit the ATA was enacted.  *Id.*

> **B.      Plaintiffs Fail To State A Claim Under The ATA:  They Do Not Adequately Allege That American Express Bank Knowingly And Intentionally Provided Material Support or Financing To Hizbollah.**

Assuming that the American plaintiffs may rely on the ATA to impose a duty of care,

plaintiffs fail to establish that American Express Bank violated any provision of the ATA.  Plaintiffs

do not even specify which provision they allege American Express Bank violated, simply citing "18

U.S.C. §§ 2331-2339."  Compl., ¶ 149(d).  But all of the potentially relevant ATA provisions share a

common element:  actual knowledge.  Sections 2339A and 2339B, for example, make it a crime to

provide material support to terrorists and to designated foreign terrorist organizations, while Section

2339C prohibits the financing of terrorism.  Each provision would require plaintiffs to establish,

among other things, that American Express Bank acted knowingly or intentionally.  *See* 18 U.S.C.

§§ 2339A, 2339B, and 2339C.

For the reasons detailed above, plaintiffs' Complaint includes no adequate allegation that

American Express Bank knowingly performed banking services for a terrorist organization.  *See*

*supra*, § I(A).  They cannot, therefore, adequately plead that American Express Bank violated any

provision of the ATA.  Absent knowledge that a group is a terrorist organization or engaged in

terrorist activities, there is "no basis for a bank's liability for injuries funded by money passing

through it on routine banking business."  *Terrorist Attacks*, 349 F. Supp. 2d at 833.

---

[13] 18 U.S.C. § 2333(a) ("Any national of the United States injured … or his or her estate, survivors, or heirs, may sue…"); 18 U.S.C. § 2331(2) ("'national of the United States' has the meaning given such term in section 101(a)(22) of the Immigration and Nationality Act"); 8 U.S.C. § 1101(a)(22) ("'national of the United States' means (A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States.").

      **C.**     **Plaintiffs Fail To Establish That Plaintiffs' Injuries Were Proximately Caused By American Express Bank's Actions.**

Finally, even if plaintiffs could identify a breach of a statutory duty — and they cannot, for the reasons detailed above — their negligence *per se* claim fails, because they do not sufficiently allege that their injuries were proximately caused by American Express Bank's alleged statutory violation. *Sheehan v. City of New York*, 354 N.E.2d 832, 834 (N.Y. 1976) (proximate causation is an essential element of a negligence *per se* claim); *Dance v. Town of Southampton*, 467 N.Y.S.2d 203, 206 (2d Dep't 1983) (same). As discussed above, as a matter of law, American Express Bank's alleged conduct is too removed from plaintiffs' alleged injuries to support any negligence *per se* claim. *See Lerner*, 459 F.3d at 286-87; *Sheehan*, 40 N.Y.2d at 834.

## CONCLUSION

At bottom, plaintiffs' Complaint rests on an allegation that American Express Bank was performing routine banking services. As a number of courts have recently held, banks cannot be held liable for doing so, even if, as plaintiffs allege, those banking services are later grossly abused by evildoers halfway across the globe. Because nothing in plaintiffs' Complaint overcomes the law's many bars to their effort to recover for their tragic losses against a United States banking institution, all of their claims against American Express Bank should be dismissed.

Dated:  New York, New York          MORRISON & FOERSTER LLP
       October 23, 2008


By:     s/Mark P. Ladner         

    Mark P. Ladner
    Mark David McPherson
    Allison G. Schnieders
    Michael Gerard

1290 Avenue of the Americas
New York, New York 10104-0012
Telephone:  (212) 468-8000
mladner@mofo.com
mmcpherson@mofo.com
aschnieders@mofo.com
mgerard@mofo.com

*Attorneys for Defendant*
American Express Bank Ltd.