UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YAAKOV LICCI, a minor, by his father and natural guardian ELIHAV LICCI and by his mother and natural guardian YEHUDIT LICCI, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN EXPRESS BANK LTD., et al.,<br><br>Defendants. | Case No.:  08 Civ. 7253 (GBD) (MHD) |

**DECLARATION OF DR. ISRAEL LESHEM IN SUPPORT OF DEFENDANT AMERICAN EXPRESS BANK LTD.'S MOTION TO DISMISS**

I, DR. ISRAEL LESHEM, declare:

1. I am a lawyer, qualified to practice law in both Israel and the State of New York. I was admitted to the Israeli bar in 1978, and to the New York bar in 1984. I earned an LL.B. degree, *summa cum laude*, from Tel Aviv University in 1977. I earned an S.J.D. from Harvard University in 1984.

2. I am currently a senior partner at Meitar Liquornik Geva & Leshem Brandwein, where I lead the firm's Litigation Group. Before the merger that created MLG&LB, I was a senior partner in Leshem Brandwein (1994-2003), and a senior partner in Lipa Meir, Leshem & Co. (1988-1994). From 1983 to 1985, I was an associate at Cravath, Swaine & Moore in New York. My practice focuses on the representation of local and international clients in complex civil litigation in the Israeli courts and in arbitration. I also represent clients in international arbitration and assist and coordinate their cross-border litigation in foreign courts.

3. I have taught civil procedure and arbitration law at the Tel-Aviv University Law School and the College of Management Law School. I am a member of the Advisory Committee to the Minister of Justice on Civil Procedure.

4. I make this declaration in support of American Express Bank's motion to dismiss the Complaint. In preparing this declaration, I have carefully reviewed Plaintiffs' Complaint, dated July 11, 2008, which purports to state three causes of action against American Express Bank under Israeli law: (1) Negligence, pursuant to the *Civil Wrongs Ordinance (New Version)* ("CWO") § 35;[1] (2) Breach of Statutory Obligation, pursuant to CWO § 63, and (3) liability (wrongly classified in the Complaint as "vicarious liability") pursuant to CWO § 12. I have also reviewed American Express Bank's motion to dismiss, which is being filed along with this declaration. I have researched the Israeli legal questions the Complaint raises, and have reviewed the U.S. cases cited in this declaration.

5. Based on my review of those materials, as well as my extensive knowledge of Israeli law, I have concluded that: (a) on the issues presented by American Express Bank's motion to dismiss — whether banks owe a duty of care to non-customers, whether the US laws and regulations plaintiffs cite can support a breach of statutory obligation claim under Israeli law, and the elements of an aiding and abetting claim — Israeli law is not materially different than New York law; and (b) in the few instances in which there are any differences between Israeli law and New York law on these questions, plaintiffs' Complaint would fail to state a claim under Israeli law. I detail the basis for my conclusions below.

---

[1] A copy of the CWO is attached to this declaration as Exhibit A.

2

I.  **THE ELEMENTS OF LIABILITY UNDER SECTION 12 OF ISRAEL'S CWO ARE SUBSTANTIVELY THE SAME AS THE ELEMENTS OF AIDING AND ABETTING UNDER NEW YORK LAW.**

6.  Count III of plaintiffs' Complaint purports to state a claim under Section 12 of Israel's CWO. It should be noted that the Complaint wrongly characterizes this source of liability as "vicarious liability"; in fact, Section 12 of CWO clearly deals with the concept of aiding and abetting. (Vicarious liability is governed by Section 14 of CWO, and attributes the acts of an agent to his principal.) The general elements of a claim under Section 12 are: (i) assistance in a wrongful, illegal or forbidden act; (ii) state of mind of awareness; and (iii) causation between the aider's actions and the wrongful act. *See* CA 6871/99 *Rinat v. Rom, P.D.* 56(4), 72.

7.  Israeli law's scienter requirement — *awareness* — is substantively the same as the knowledge requirement under New York law. *See, e.g., Pittman v. Grayson*, 149 F.3d 111, 123 (2d Cir. 1998) (aiding-and-abetting liability unsustainable without allegation that defendant knew of or intended to aid in the commission of a tort). Although Israeli courts sometimes deem willful blindness the equivalent of awareness for purposes of this scienter requirement, it is clear that nothing short of knowledge or its equivalent (e.g., willful blindness) suffices to establish aiding and abetting under Israeli law. *See, e.g.*, CA 6871/99 *Rinat v. Rom, P.D.* 56(4), 72 at 84 ("liability according to Section 12 [of the CWO] requires a state of mind of awareness... and according to some requires the state of mind of actual intent").

8.  American Express Bank's motion to dismiss details the Complaint's failure to adequately allege that American Express Bank knew that its routine banking services to another bank allegedly would be used to further terrorist activity. For the same reasons detailed in American Express Bank's motion, plaintiffs' Complaint fails to state an aiding

and abetting claim (which, as noted above, is sometimes wrongly characterized in the Complaint as "vicarious liability") under Israeli law, as plaintiffs have not set forth any factual allegations establishing American Express Bank's knowledge of or willful blindness to the alleged fact that it was performing banking services for a bank allegedly performing banking services for organizations allegedly connected to Hizbollah (although at the time, no connection between the organizations and Hizbollah had been established by U.S. authorities).

## II. TO THE EXTENT THERE ARE ANY DIFFERENCES BETWEEN ISRAELI LAW AND NEW YORK LAW ON PLAINTIFFS' NEGLIGENCE CLAIM, PLAINTIFFS' COMPLAINT WOULD FAIL TO STATE SUCH A CLAIM UNDER ISRAELI LAW.

9. Generally, the elements of a negligence claim under Israeli law are the same as those required under New York law: (i) a duty of care; (ii) a breach of the duty of care, *i.e.*, a negligent act; (iii) damage; and (iv) causation between the negligent act and the damage. *See* CWO § 35; *compare King v. Crossland Savings Bank*, 111 F.3d 251, 259 (2d Cir. 1997) (claim for negligence under New York law requires plaintiff to "show that the defendant owed the plaintiff a cognizable duty of care, that the defendant breached that duty, and that the plaintiff suffered damages as a proximate cause of that breach").

### A. Under Israeli Law, Just As Under New York Law, Plaintiffs Cannot Adequately Plead That American Express Bank Owed Them A Legal Duty.

10. Under New York law, plaintiffs' negligence claim is easily disposed of, because several courts have already held that banks do not owe any duty of care to non-customers to protect them against terrorist attacks allegedly committed by the banks' customers. *See* American Express Bank's Motion to Dismiss, at § II(A).

4

11.     I have not found any Israeli decision that specifically addresses that question — whether banks owe any duty of care to non-customers to protect them against the terrorist acts of the banks' customers or recipients of funds that allegedly passed through the bank. But based on the similarity in the ways in which New York courts and Israeli courts alike approach the general question of duty, I have no doubt that were an Israeli court to address that specific question, the Israeli court would agree that there is no such duty in this context.

12.     In New York, courts consider a number of factors to determine whether a legal duty exists:

> Courts traditionally 'fix the duty point by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability' (*Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579, 586; *see also, Strauss v Belle Realty Co.*, 65 NY2d 399, 402-403). Thus, in determining whether a duty exists, 'courts must be mindful of the precedential, and consequential, future effects of their rulings, and "limit the legal consequences of wrongs to a controllable degree"' (*Lauer v City of New York*, 95 NY2d 95, 100 [quoting *Tobin v Grossman*, 24 NY2d 609, 619]).
>
> Foreseeability, alone, does not define duty — it merely determines the scope of the duty once it is determined to exist (*see, Pulka v Edelman*, 40 NY2d 781, 785, *rearg denied* 41 NY2d 901; *see also, Eiseman v State of New York*, 70 NY2d 175, 187). The injured party must show that a defendant owed not merely a general duty to society but a specific duty to him or her, for '[w]ithout a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm' (*Lauer, supra*, at 100). That is required in order to avoid subjecting an actor 'to limitless liability to an indeterminate class of persons conceivably injured by any negligence in that act' (*Eiseman, supra*, at 188). Moreover, any extension of the scope of duty must be tailored to reflect accurately the extent that its social benefits outweigh its costs.

*Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232 (2001).

13.     Israeli courts consider the same factors. CWO § 36 specifies that the duty of care extends only to those a "reasonable person would have foreseen that, in the ordinary course of events, they were liable to be injured by the act or omission . . ." CWO § 36

thereby codifies a "foreseeability test" to the duty question, asking whether a *reasonable person in defendant's position should have foreseen the outcome of the negligent act.*

14.     But foreseeability does not end the duty question under Israeli law. Israeli courts have also found that policy considerations may negate recognition of a duty of care, even in circumstances in which the injury was foreseeable. *See* CA 243/83 *The City Council of Jerusalem v. Gordon*, P.D. 39(1) 113; CA 145/80 *Va'aknin v. The Municipality of Bet Shemesh*, P.D. 37(1) 113. Similarly, Israeli courts have also found that no liability should exist, even if the injury was foreseeable, where the relationship between the parties is too distant. *See* CA 190/81 *Peleg v. State of Israel,* P.D. 38(2) 57, at 63-65; CA 915/91 *State of Israel v. Levi* P.D. 48(3) 45, at 66-67; and CA 2906/01 *City of Haifa v. Menorah Insurance Company* (not yet published, 5.25.2006) at 53,55; CA 10078/03 *Shtil v. State of Israel* (not yet published, 3.19.2007), at 30-31. In deciding whether to recognize a duty, Israeli courts often consider the potential risks of expanding liability to indeterminate and unpredictable degrees, flooding the courts with litigation, expanding the scope of liability unfairly, undermining commercial certainty and similar risks. *See generally* Israel Gilead, ISRAEL, at 50 (summarizing policy considerations limiting duty of care); *see, e.g.* CFH 1740/91 *Barclays Discount Bank v. Kostman*, P.D. 47(5) 31, at 86; LCA 444/87 *Elsuha v. Dahan,* P.D. 44(3) 397, at 431-432; CA 915/91 *State of Israel v. Levi*, P.D. 48(3) 45; CA 285/73 *Lagil Trampoline v. Nachmias*, P.D 29(1) 63.

15.     The only potential difference, therefore, is the role of foreseeability in the analysis. CWO § 36 limits the duty of care largely through a foreseeability analysis, while under New York law, "[f]oreseeability, alone, does not define duty — it merely determines the scope of the duty once it is determined to exist." *Hamilton*, 96 N.Y.2d at 232.

16. This difference is insignificant to and would not affect the viability of plaintiffs' negligence claim based on the facts alleged in their Complaint, however. As explained in American Express Bank's motion to dismiss, plaintiffs do not adequately allege that American Express Bank knew that Yousser and Shahid allegedly had accounts at LCB, or that it was allegedly processing wire transfers for such accounts. Nor do plaintiffs allege that at the time of the transactions at issue (2004 through June 12, 2006), Yousser and Shahid were on the designated terrorist lists plaintiffs identify in their Complaint (indeed, they could not allege as much). Without such allegations, plaintiffs cannot allege that American Express Bank should have foreseen their injuries. Consequently, plaintiffs could not identify any duty American Express Bank owed them under Israeli law.

17. And even if plaintiffs could allege that their injuries were foreseeable to American Express Bank (and again, nothing in the Complaint supports such an allegation), Israeli courts might still refuse to recognize a duty due to the policy considerations described above. For example, part of the rationale for New York courts' refusal to recognize a duty running from banks to non-customers in a case like this one is the fear "of making New York banks liable to the world's banking public." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286-87 (2d Cir. 2006)) (quoting *Eschel v. Fleet Bank*, Index No. *287 600809/98, slip op. at 6-7 (N.Y. Sup. Ct. 2003)). As noted above, Israeli courts also consider such commercial concerns in determining whether to limit recognition of legal duties for policy reasons. For the same reason as that noted in *Lerner*, Israeli courts would likewise refuse to recognize a duty running from banks to non-customers in a case like this one. This is all the more true here, where plaintiffs seek to hold a New York bank liable to residents of Israel based on Israeli law, even though the only conduct American Express Bank is alleged to have engaged in took place in New York.

18.  Israeli decisions concerning banks' duties in other kinds of negligence cases reinforce this point. Although some Israeli decisions have found that banks may be held to a higher duty of care in certain circumstances, these decisions have arisen only in the context of monetary damage stemming from a bank's negligent act, such as the mishandling of a letter of credit, or failing to prevent a funds transfer. These decisions have emphasized, moreover, that "*in situations concerned with liability of banks toward non customers, it is advisable that this liability will be very narrow*," CA 8068/01 *Ayalon Insurance Company v. Estate Manager of Chaya Oflager*, P.D. 59(2), 349, at 372. I am not aware of any case in which an Israeli court has found a bank liable for a physical or violent act which was made possible through funds obtained from banks or as a result of their negligence.

19.  Furthermore, in the specific context of a bank's liability to *non-customers*, the *Ayalon* case clarified that a bank may be liable only if it (i) ignored highly suspicious, unusual and irregular circumstances, and (ii) had simple and readily available means to verify the legality or illegality of the transfers. In *Ayalon*, a bank was held liable for failing to prevent a trustee of an estate from transferring funds from the trust account of the estate to his own accounts in other banks. The beneficiaries of the estate, who were not customers of the bank, claimed that the bank had clear signs that the trustee was acting in violation of his fiduciary duties towards the estate and beneficiaries. The court found that the bank owed a duty of care towards the beneficiaries although they were not its customers. The court's finding of liability, however, was based on its finding that the bank had acted with a higher degree of negligence, having ignored highly suspicious circumstances. As discussed above, *see supra*, at ¶ 16, plaintiffs' allegations do not rise to the level required to state a negligence claim against a bank in this context.

20. The Israeli Supreme Court cases cited above support the notion that the liability of banks toward non-customers should be very narrow, and limited only to extreme circumstances. In light of that case law, and in the absence of any relevant case law relating to the claims raised by plaintiffs, it would be improper for a U.S. court to develop new criterions for liability of banks toward non-customers under Israeli law.

### B. Under Israeli Law, Just As Under New York Law, Plaintiffs Cannot Adequately Plead That American Express Bank Caused Their Injuries.

21. As the second element of any negligence claim, a plaintiff must show *causation* between the negligent act and the damage alleged. Israeli courts use two cumulative tests in order to establish causation: (1) *the factual causation test*; and (2) *the legal causation test*. In order to find the defendant liable for a negligent act, the court must determine the existence of both factual and legal causation. CA 145/80 *Va'aknin v. The Municipality of Bet Shemesh*, P.D. 37(1) 113, 144; CA 610/94 *Buchbinder v. The Official Receiver (acting as liquidator of Bank of North America)*, P.D. 57(4) 289. This element is, therefore, substantively the same as the factual cause and proximate cause elements under New York law. *See, e.g., Lerner v. Fleet Bank N.A.*, 459 F.3d 273, 286-87 (2d Cir. 2006).

22. The factual causation test, sometimes referred by the courts as the "but for" test, is essentially a factual test to determine whether the wrongful act is part of the chain of events that actually caused the damage to the plaintiff, and whether the damage to the plaintiff would have been avoided had the wrongful act not occurred. *See Va'aknin, supra*. In my opinion, plaintiffs will be unable to establish factual causation in this case. Their Complaint does not allege that Hizbollah could not have carried out the terrorist attacks *but for* American Express Bank's processing of wire transfers for Yousser and/or Shahid.

Plaintiffs have not made any allegation linking the specific funds allegedly transferred by American Express Bank to the commission of terrorist attacks.

23. In order to meet the factual causation test, plaintiffs must allege and prove that the probability that the specific funds allegedly transferred by AEB were used by Hezbollah to purchase the specific weapons used in causing the alleged injuries caused to plaintiffs is higher then the probability they were not used for this end, and did not cause the injuries to the plaintiffs. Plaintiffs do not even allege this fact (to say nothing of their ability to ultimately prove it), and will be therefore unable to meet this test.

24. The legal causation test is a complementary test, aimed at determining not just whether the tortfeasor's act was a factual cause to the damage, but also whether the law should recognize that such act was a cause to the damage. The primary test Israeli courts use to determine legal causation is the *foreseeability test*. That test asks whether a reasonable person should have foreseen that his act or omission would result in the damage. The alleged tortfeasor does not have to foresee the particular damage that actually occurred. It is sufficient if a reasonable person should have foreseen the type of damage that actually occurred (*e.g.*, bodily harm, physical damage to property, monetary damage). *See* CA 576/81 *Ilan Ben-Shimon v. Eli Barda*, P.D. 38(3) 1 *"Ben-Shimon"*; CA 350/77 *Kitan Ltd. V. Sara Weiss*, P.D. 33(2) 785 *"Kitan"*; CA 2061/90 *Ilana Martzeli v. The State of Israel*, P.D. 37(1) 802. The existence or lack of foreseeability is not measured by the specific defendant but rather by a "reasonable person" in his position.

25. To assess legal causation in this case, therefore, an Israeli court would examine whether a reasonable bank in American Express Bank's position, having the knowledge that a reasonable bank in such position would have, would have foreseen the type of damage that occurred as a possible outcome of the bank's act (or omission). For the same

reasons noted above, *see supra*, at ¶ 16, plaintiffs offer no factual allegations supporting the theory that American Express Bank should have foreseen their injuries. Absent such allegations, plaintiffs cannot establish causation under Israeli law.

### III. TO THE EXTENT THERE ARE ANY DIFFERENCES BETWEEN ISRAELI LAW AND NEW YORK LAW ON PLAINTIFFS' BREACH OF STATUTORY OBLIGATION CLAIM, PLAINTIFFS' COMPLAINT WOULD FAIL TO STATE SUCH A CLAIM UNDER ISRAELI LAW.

26. The general elements of breach of statutory duty under CWO § 63 are: (i) breach of a statutory duty; (ii) the statutory duty which was breached was intended to protect the victim against harm of the type he suffered; (iii) causation between the breach and the damage; and (iv) damage. *See* CA 610/02 *Mif'al Hapais v. Lotonet Moadon Haverim Ltd.*, P.D. 57(5) 97. Again, these elements are substantively the same as the elements of a negligence *per se* claim under New York law. *See, e.g., German v. Federal Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1396 (S.D.N.Y. 1995).

27. There is only one potential difference between Israel's "breach of statutory duty" claim and New York's "negligence *per se*" claim, but the difference is irrelevant here. Unlike New York law, Israeli law does not require that a statute support a separate private right of action, in order for the statute to support a breach of statutory duty claim. CA 145/80 *Va'aknin v. The Municipality of Bet Shemesh*, P.D. 37(1) 113.

28. That difference is irrelevant in this case, however. Under Israeli law, a foreign statutory provision cannot serve as the basis for a claim of breach of statutory obligation under CWO § 63. Section 63 refers to "enactments." *See* CWO § 63 ("A person commits a breach of a statutory obligation if he does not comply with an obligation imposed on him under any enactment — other than this Ordinance — if the enactment, properly interpreted, is intended for the benefit or protection of another person, and if the breach

11

caused that person damage of the kind or nature intended by the enactment . . ."). Israel's Interpretation Ordinance defines the term "enactment" as "every law and every regulation," Interpretation Ordinance, § 1,[2] but those terms are in turn defined as "an enactment *of the Knesset*," *id.* (emphasis added), and "a regulation, rule, by-law, proclamation, declaration, order, instruction, notice, advertisement or other document, given by any authority *in Eretz Israel or in Israel*," respectively, *id.* (emphasis added).

29. Thus, under the plain meaning of CWO § 63, as construed with the benefit of the Interpretation Ordinance, foreign statutory provisions cannot serve as the basis for a breach of statutory duty claim. Plaintiffs' breach of statutory duty claim identifies only U.S. and New York statutory and regulatory provisions as supplying the alleged statutory duty. *See* Compl., ¶ 149. No Israeli statutes are cited. Accordingly, plaintiffs' Complaint does not adequately plead a breach of statutory duty claim under Israeli law.

I declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed on 10/23, 2008
at Ramat-Gan, Israel

_____
Israel Leshem

---

[2] A copy of the Interpretation Ordinance is attached to this declaration as Exhibit B.