UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

YAAKOV LICCI, a minor, by his father and natural  :
guardian ELIHAV LICCI and by his mother and        :
natural guardian YEHUDIT LICCI, *et al*.,           :
                                                    :   Case No. 08 Civ. 7253 (GBD)(MHD)
                        Plaintiffs,                 :
                                                    :
            vs.                                     :
                                                    :
AMERICAN EXPRESS BANK LTD., *et al.,*               :
                                                    :
                        Defendants.
- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- -- X

# MEMORANDUM OF LAW OF LEBANESE CANADIAN BANK, S.A.L. IN SUPPORT OF ITS MOTION TO DISMISS

**DEWEY & LEBOEUF LLP**
1301 Avenue of the Americas
New York, NY  10019-6092
(212) 259-8000

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

THE COMPLAINT'S ALLEGATIONS ...................................................................... 2

ARGUMENT ............................................................................................................ 4

I.    THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL
    JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(2) ........................... 4

    A.    The Governing Standards ............................................................... 4

    B.    LCB Is Not Subject To Long-Arm Jurisdiction in New York under
        CPLR § 302................................................................................... 5

    C.    The Assertion of Jurisdiction Over LCB Would Violate Due
        Process ......................................................................................... 9

II.    COUNTS I, II AND III OF THE COMPLAINT SHOULD BE DISMISSED
    PURSUANT TO FED. R. CIV. P. 12(b)(6) .................................................. 9

    A.    The Relevant Legal Standard.......................................................... 9

    B.    Plaintiffs Fail to State a Claim In Count I Under Section 2333(a) of
        the ATA for Primary Liability ...................................................... 11

        1.    Plaintiffs Have Not Adequately Pleaded the "By Reason
            of" Element ...................................................................... 11

            a.    Plaintiffs Fail To Adequately Plead Cause-in-Fact .................... 12

            b.    Plaintiffs Fail to Adequately Plead Proximate
                Cause....................................................................... 12

        2.    Plaintiffs Fail to Adequately Plead Knowledge or Intent ........... 13

    C.    Plaintiffs Fail To State A Claim in Count II for Aiding-and-
        Abetting under the ATA ............................................................... 14

    D.    Plaintiffs' ATA Claims In Counts I and II Are Also Barred by the
        Act of War Exclusion................................................................... 16

    E.    Plaintiffs Fail To State A Claim In Count III for Aiding and
        Abetting Liability Under The ATS ............................................... 17

        1.    The Complaint Fails to Adequately Plead Substantial
            Assistance ........................................................................ 18

        2.    The Complaint Fails to Adequately Plead LCB Acted with
            the Required Purpose Of Facilitating Hezbollah's Rocket
            Attacks ............................................................................ 19

III.   PLAINTIFFS' NON-FEDERAL CLAIMS ARE DEFICIENT UNDER ISRAELI
       LAW ......................................................................................................................21

       A.     Plaintiffs' Negligence Claim Fails Under Israeli Law............................................21

       B.     Breach of Statutory Duty ......................................................................................23

CONCLUSION…………………………………………………………………………..23

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ................................... 9

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779 (2d Cir. 1999) ............. 4

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ............................................................ *passim*

*Best Van Lines v. Walker*, 490 F.3d 239 (2d Cir. 2007) ......................................................... 4, 5

*Boim v. Holy Land Found. for Relief and Dev.*, 549 F.3d 685 (7th Cir. 2008) ..................... 13, 15

*Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev.*,
    291 F.3d 1000 (7th Cir. 2002) ........................................................................................ 15

*Brown v. Avstreith*, 1997 WL 100800 (S.D.N.Y. Mar. 5, 1997) .................................................. 4

*Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86 (D.D.C. 2003) ............................... 2

*Cornell v. Assicurazioni Generali, S.p.A., Consol.*,
    2000 WL 1099844 (S.D.N.Y. Aug. 7, 2000) ..................................................................... 5

*Correspondent Services Corp. v. J.V.W. Investments Ltd.*,
    120 F. Supp. 2d 401 (S.D.N.Y.2000)................................................................................. 8

*Daventree Ltd. v. Republic of Azer.*, 349 F. Supp. 2d 736 (S.D.N.Y. 2004) ..................... 6, 7, 8, 9

*De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65 (2d Cir. 1996) ................................................... 11

*Faravelli v. Bankers Trust Co.*, 447 N.Y.S.2d 962 (1st Dep't 1982) ........................................... 6

*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992)......................................................... 20

*Humanitarian Law Project v. Gonzales*, 380 F. Supp. 2d 1134 (C.D. Cal.  2005) ..................... 13

*In re South African Apartheid Litigation*, 2009 WL 960078 (S.D.N.Y. Apr. 8, 2009) ............... 18

*In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005)................ *passim*

*In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71 (2d Cir. 2008)...................................... 4, 7

*In re Terrorist Attacks on September 11, 2001*,
    2007 WL 2907278 (S.D.N.Y. Oct. 5, 2007)..................................................................... 11

*Int'l Housing Ltd. v. Rafidain Bank Iraq*, 712 F. Supp. 1112 (S.D.N.Y. 1989) ........................... 9

*Int'l Housing Ltd. v. Rafidain Bank Iraq*, 893 F.2d 8 (2d Cir. 1989)................................................ 9

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) ........................................................ 9

*Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181 (2d Cir. 1998) ............................................ 4

*Khulumani v. Barclay Nat'l Bank Ltd.*, 504 F.3d 254 (2d Cir. 2007)......................... 17, 18, 19, 20

*Kush v. City of Buffalo*, 59 N.Y.2d 26 (N.Y. 1983)........................................................... 22

*Leema Enterprises, Inc. v. Willi*, 575 F. Supp. 1533 (S.D.N.Y. 1983)...................................... 8, 9

*Lerner, et al. v. Fleet Bank, N.A.*, 318 F.3d 113 (2d Cir. 2003) ............................................ 12, 20

*Lerner, et al. v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006) ............................................ 19, 20

*Mastafa v. Austl. Wheat Bd. Ltd.*,
    2008 WL 4378443 (S.D.N.Y. Sept. 25, 2008).................................................... 11, 18, 19

*Nat'l Sun Indus., Inc. v. Dakahlia Commercial Bank, Cairo*,
    1997 U.S. App. LEXIS 9662 (2d Cir. May 2, 1997) ........................................................ 6

*Neewra, Inc. v. Manakh Al Khaleej Gen. Trading and Contracting Co.*,
    2004 WL 1620874 (S.D.N.Y. July 20, 2004) .................................................... 6

*Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*,
    1999 WL 558141 (S.D.N.Y. July 30, 1999) .................................................... 18

*Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameris*,
    2004 WL 2199547 (S.D.N.Y. Sept. 29, 2004) .................................................... 6

*Rhodes v. Alexander Central School Dist.*, 2006 WL 232722 (W.D.N.Y. Jan. 30, 2006) ............ 4

*Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502 (2d Cir. 1994)...................................... 7

*Schenker v. Assicurazioni Generali S.p.A., Consol.*,
    2002 WL 1560788 (S.D.N.Y. July 15, 2002) .................................................... 5

*Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406 (2d Cir. 2008) .................................... 16

*Strauss v.  Crédit Lyonnais, S.A.*, 2006 WL 2862704 (E.D.N.Y. Oct. 5, 2006)......... 12, 13, 15, 18

*Stutts v. De Dietrich Group*, 2006 WL 1867060 (E.D.N.Y. June 30, 2006) ........................ *passim*

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17 (2d Cir. 2004)...................................... 6

*Taub v. Colonial Coated Textile Corp.*, 387 N.Y.S.2d 869 (1st Dep't 1976) ................................ 6

*Thomas v. Ashcroft*, 470 F.3d 491 (2d Cir. 2006) ........................................................................ 4

*United States v. Al-Arian*, 308 F. Supp. 2d 1322 (M.D. Fla. 2004) ............................................ 13

*Weiss v. Nat'l Westminster Bank PLC*,
    453 F. Supp. 2d 609 (E.D.N.Y. 2006) .......................................................... 12, 13, 15, 18

## Statutes

18 U.S.C. § 2331 *et seq.*..................................................................................................... *passim*

28 U.S.C. § 1350 ......................................................................................................................... 4, 10

50 U.S.C. Appx. § 2405(j) ............................................................................................................ 13

## Rules

CPLR § 301 ..................................................................................................................................... 5

CPLR § 302 ............................................................................................................................... 2, 5, 8

CPLR § 302(a)(1) ...................................................................................................................... 5, 6, 7, 8

CPLR § 302(a)(2) ........................................................................................................................... 5

CPLR § 302(a)(3) ........................................................................................................................... 5

Fed. R. Civ. P. 12(b)(2) ............................................................................................................ 1, 2, 4, 7

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 1, 2, 9, 11

Fed. R. Civ. P. 4(k) ......................................................................................................................... 2

Fed. R. Civ. P. 4(k)(2) .................................................................................................................... 9

Fed. R. Civ. P. 44.1 ........................................................................................................................ 21

Fed. R. Civ. P. 8 ............................................................................................................................. 4

## Israeli Law and Cases

CWO § 35 ......................................................................................................................................... 21

CWO § 36 .................................................................................................................... 21

CWO § 63 .................................................................................................................... 22

CWO § 64 .............................................................................................................. 22, 23

*Defense Regulation* § 85 .............................................................................................. 22

*Penal Law* §§ 145 and 148............................................................................................ 22

*Prevention of Terrorism Ordinance* § 4....................................................................... 22

*Va'akin v. Local Council of Bet Shemesh* (1983) 37 (i) P.D. 113 ................................ 23

## <u>Other Authorities</u>

Israel Gilead, *Israel* (Kluwer Law International 2003)
    *reprinted in* 2 International Encyclopaedia of Laws, Tort Law
    (R. Blanpain & S. Stijins eds., Kluwer Law International 2007) ........................ 21, 22, 23

Restatement (Second) of Torts § 876(b) ....................................................................... 19

Defendant Lebanese Canadian Bank, s.a.l. ("LCB"), by its attorneys, respectfully submits this memorandum of law in support of its motion to dismiss the First Amended Complaint (the "Complaint") for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

## PRELIMINARY STATEMENT

The Complaint in this action alleges that LCB, one of Lebanon's most respected financial institutions, and American Express Bank Ltd. ("Amex Bank"), a U.S. bank with which LCB maintains a correspondent banking relationship, are liable for missile attacks launched from Lebanon against Israel in the summer of 2006 as part of the conflict between Hezbollah forces in control of Lebanon and Israel.

Plaintiffs do not allege—nor could they—that LCB planned these attacks, or was aware that they were coming, or itself had any direct dealings with Hezbollah. Rather, through the use of innuendo, conclusory allegations, and guilt-by-association, Plaintiffs allege that LCB aided and abetted the attacks by performing routine commercial transactions for a customer located in Lebanon. While the Complaint alleges that this customer was a "front" for Hezbollah, the customer itself is not alleged to have been on any list of designated terrorists. Significantly, there is not a single factual allegation anywhere in the Complaint tying so much as a single transaction performed by LCB to any transfer of funds to Hezbollah, much less a transfer passing through Amex Bank in New York to Hezbollah.

Given the severe reputational damage that comes from being labeled an accomplice of terrorists, the courts have demanded, even before the Supreme Court's decision in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007), that such allegations receive heightened scrutiny. Claims consisting of nothing more than conclusory allegations, such as those alleged in

this Complaint, are to be dismissed.  *See In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 831 (S.D.N.Y. 2005) ("*In re Terrorist Attacks I*") ("in light of 'the extreme nature of the charges of terrorism, fairness requires extra-careful scrutiny of Plaintiffs' allegations'") (citation omitted); *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 103 (D.D.C. 2003) ("The use of the privileged medium of a lawsuit to publicly label someone an accomplice of terrorists can cause incalculable reputational damage.").

This Complaint fails, and should be dismissed, for at least three separate reasons.

First, it should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.  The Complaint itself fails to identify any basis for personal jurisdiction over LCB.  As set forth *infra*, there is no basis for long-arm jurisdiction under New York Civil Practice Law and Rules ("CPLR") § 302, or under Fed. R. Civ. P. 4(k).

Second, the federal claims in the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  As set forth below, the Complaint consists of nothing more than highly-charged labels, conclusions and a formulaic recitation of the elements of the causes of action asserted therein.  It is utterly lacking in facts demonstrating any wrongdoing by LCB or any purposeful intent by them to facilitate the missile attacks on Israel.

Finally, the claims asserted under Israeli law should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because they fail to state a claim under Israeli or New York law.

## THE COMPLAINT'S ALLEGATIONS

Plaintiffs are Israeli, Canadian, and American citizens who were injured, or whose relatives were killed or injured, in Israel by missiles fired from southern Lebanon into Israel between July 12, 2006 and August 14, 2006, during the conflict known as the Second Lebanon War.

2

Defendant LCB is a Lebanese bank, organized under the laws of Lebanon and headquartered in Beirut, Lebanon.  (Compl. ¶ 17.)  The Complaint also names as a defendant Amex Bank, a bank organized under the laws of Connecticut and headquartered in New York, which provided correspondent banking services to LCB.  (Compl. ¶¶ 18, 43-44.)

Plaintiffs claim that LCB aided and abetted Hezbollah in its rocket attacks on them, and that the Bank is thereby liable for committing "acts of international terrorism" because a single named customer of LCB, the Shahid (Martyrs) Foundation (hereinafter, the "Shahid Foundation"), which the Complaint alleges is a "front" for Hezbollah, maintained accounts at LCB, and because LCB executed money transfers into and out of these accounts at its customer's direction.  (*See, e.g.*, Compl. ¶¶ 45-56.)

Much of the Complaint is taken up with a description of the history, goals and nature of Hezbollah (Compl. ¶¶ 19-32), followed by allegations concerning the specific rocket attacks that injured Plaintiffs.  (Compl. ¶¶ 57-112.)  The Complaint does not allege facts actually identifying any transfers of funds effectuated by LCB at the request of Shahid Foundation to Hezbollah, or showing that any funds from a Shahid Foundation account at LCB were used to finance arms purchases, or that LCB had knowledge of such purchases.  Instead, the Complaint simply alleges, without any factual support, that there were "dozens" of wire transfers made and received via defendants Amex bank and LCB.  It then refers to these transfers throughout the pleading as the "Hezbollah Wire Transfers," as if they had already pleaded facts identifying them, which they did not.  (Compl. ¶¶ 53 *et seq.*)  Similarly, although Plaintiffs make inflammatory allegations that LCB intended "as a matter of official policy" since 2004 to support Hezbollah and its anti-Israel program, there are no facts whatsoever supporting this allegation. The statement appears to be based on nothing other than the fact that LCB is a bank in Lebanon and that Hezbollah has wide support in Lebanon.  (Compl. ¶¶ 124-29.)  In short, as set forth

3

more fully below, the Complaint substitutes conjecture for fact, and conclusory allegations for details.

## ARGUMENT
### I.

### THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(2)

#### A.   The Governing Standards

The Complaint, on its face, fails to plead facts sufficient to establish the Court's exercise of personal jurisdiction over LCB.   Indeed, the pleading does not even contain a statement of the grounds for this Court's jurisdiction as required by Fed. R. Civ. P. 8.[1]

To withstand a motion to dismiss for lack of personal jurisdiction, plaintiffs bear the burden of establishing that jurisdiction exists.  *Best Van Lines v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007); *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006).  Plaintiffs must do so for *each* defendant, even if Plaintiffs' claims are based on federal question jurisdiction under the Anti-terrorism Act, 18 U.S.C. § 2331 *et seq.*, ("ATA") and the Alien Tort Statute, 28 U.S.C. § 1350, ("ATS").   *See In re Terrorist Attacks I*, 349 F. Supp. 2d at 804 (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)).   As the Second Circuit has consistently held, in determining whether a plaintiff has met this burden, a court "will not draw 'argumentative inferences' in the plaintiff's favor," nor will it "accept as true a legal conclusion couched as a factual allegation."  *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 93 (2d Cir. 2008) ("*In re Terrorist Attacks II*") (citations omitted); *see also Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998); *Schenker v. Assicurazioni Generali S.p.A.,*

---

[1]   This failure to comply with Rule 8 in and of itself is grounds for dismissal.  *See Rhodes v. Alexander Central School Dist.*, No. 05-CV-431S, 2006 WL 232722, at *2 (W.D.N.Y. Jan. 30, 2006) (dismissing plaintiff's complaint because it did not "contain a short and plain statement of the grounds upon which the court's jurisdiction depends") (internal quotation and citation omitted); *Brown v. Avstreith*, No. 96 CIV 6299, 1997 WL 1000800, at *2-3 (S.D.N.Y. Mar. 5, 1997) (motion to dismiss pursuant to Rule 8 granted as plaintiff provided no indication as to the grounds upon which the court had federal jurisdiction over their claims).

*Consol.*, No. 98 Civ. 9186, 2002 WL 1560788, at *2 (S.D.N.Y. July 15, 2002) ("'conclusory

non-fact-specific jurisdictional allegations' . . . are insufficient to establish even a *prima facie*

showing of personal jurisdiction") (quoting *Cornell v. Assicurazioni Generali, S.p.A., Consol.*,

No. 97 Civ. 2262, 2000 WL 1099844, at *1 (S.D.N.Y. Aug. 7, 2000)).   Yet conclusory

allegations and argumentative inferences are all that Plaintiffs present here.

    **B.**    **LCB Is Not Subject To Long-Arm Jurisdiction in New York under CPLR § 302**

        As noted, the Complaint does not specify the basis upon which Plaintiffs believe

this Court may exercise personal jurisdictional over LCB.   It does not allege that LCB was

engaged in continuous and systematic business in New York, the standard under CPLR § 301.

Presumably, therefore, Plaintiffs premise personal jurisdiction on New York's long-arm statute,

CPLR § 302.   Since the Complaint does not allege a tortious act within the state by LCB (CPLR

§ 302(a)(2)) or injury to any person or property within the state (CPLR § 302(a)(3)), it is further

assumed for purposes of this motion that Plaintiffs rely upon CPLR § 302(a)(1), which provides

for jurisdiction over a non-domiciliary who "transacts any business within the state."   To

establish personal jurisdiction over a foreign defendant under CPLR § 302(a)(1), two conditions

must be satisfied:  first, the defendant must have transacted business within the state; second, the

claim against the defendant must arise out of that activity.  *Best Van Lines*, 490 F.3d at 246.

        In determining whether a defendant has "transacted business" in New York,

courts look at "the totality of the defendant's activities within the forum" to determine whether

they have engaged in business activities in New York.   *Id*.   Here, there are no allegations that

LCB is qualified or licensed to do business in New York, solicits customers here, maintains any

offices in New York, has employees here, or has a telephone number to make or receive calls in

New York.   Nor are there any allegations that LCB maintains any accounts in New York for any

customer identified in the Complaint.

Plaintiffs' argument that LCB transacts business here rests upon their allegation that LCB maintained a correspondent bank account with Amex Bank in New York to effect wire transfers.  (*See, e.g.*, Compl. ¶¶ 41-43.)  The law is clear, however, that the "mere maintenance of correspondent bank accounts to facilitate international financial transactions or money transfers" is insufficient, as a matter of law, to establish personal jurisdiction under CPLR § 302(a)(1).  *Daventree Ltd. v. Republic of Azer.*, 349 F. Supp. 2d 736, 762 (S.D.N.Y. 2004); *see also Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameris*, No. 03 Civ. 1681, 2004 WL 2199547, at *5 n.8 (S.D.N.Y. Sept. 29, 2004); *Neewra, Inc. v. Manakh Al Khaleej Gen. Trading and Contracting Co.*, No. 03 Civ. 2936, 2004 WL 1620874, at *3 (S.D.N.Y. July 20, 2004); *Nat'l Sun Indus., Inc. v. Dakahlia Commercial Bank, Cairo*, No. 95-7961, 1997 U.S. App. LEXIS 9662, at *4-5 (2d Cir. May 2, 1997); *Faravelli v. Bankers Trust Co.*, 447 N.Y.S.2d 962, 965 (1st Dep't 1982); *Taub v. Colonial Coated Textile Corp.*, 387 N.Y.S.2d 869, 870 (1st Dep't 1976).

The Complaint also does not plead facts establishing that the claims it asserts for terrorism, genocide, war crimes, crimes against humanity and violations of Israeli law "arise from" any business transaction in New York by LCB, or that the correspondent bank relationship between Amex and LCB is at the "very root of the action."  *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004); *Daventree Ltd.*, 349 F. Supp. 2d at 762.  Indeed, it asserts only two facts, neither of which establishes jurisdiction:  (1) that the Shahid Foundation maintained bank accounts at LCB in Lebanon (Compl. ¶ 45); and (2) that Amex Bank serves as a correspondent bank for LCB.  (Compl. ¶ 43.)  Plaintiffs then seek to link these two facts through a series of argumentative and speculative inferences:  that Hezbollah must have received monies from the Shahid Foundation; that the Shahid Foundation must have withdrawn such funds from LCB (as opposed to any other bank in which it had accounts); that the funds must have been

withdrawn in U.S. dollars; that the U.S. dollars must have been obtained by LCB through Amex Bank; and that those funds must have been pooled together with other dollars received by Hezbollah to finance the rocket attacks on Israel.  As noted *supra*, in determining whether Plaintiffs have met their burden of establishing jurisdiction, courts "will not draw [such] 'argumentative inferences' in the plaintiff's favor," particularly where, as here, they are stacked one on top of the other in an effort to create jurisdiction.  *In re Terrorist Attacks II*, 538 F.3d at 93 (quoting *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (citation omitted)).

Furthermore, even if LCB used its correspondent account in New York to facilitate money transfers to and from Shahid Foundation to Hezbollah, long-arm jurisdiction would still not be established under CPLR § 302(a)(1).  This was the argument expressly rejected by the Court in *Daventree*.

In *Daventree*, plaintiffs were foreign investors suing under the ATS and RICO. 349 F. Supp. 2d at 742.  Plaintiffs claimed that they had been defrauded by the Government of Azerbaijan and other foreign defendants in connection with a privatization of the government-owned oil company.  *See Id.*  Like Plaintiffs here, the *Daventree* plaintiffs alleged that a Swiss bank, acting through its correspondent bank account in New York, aided and abetted the other defendants in their wrongdoing by transferring money (allegedly stolen from plaintiffs) through its New York account to customers outside the United States.  *See id.* at 746.  In granting the bank's motion to dismiss under Fed. R. Civ. P. 12(b)(2), the court emphasized the critical difference for jurisdictional purposes between those cases where a correspondent bank is used by a defendant to transact business "on its own behalf" and is thus "at the very root of the action" against the bank, thereby giving rise to personal jurisdiction, and those cases where, as here, the

correspondent bank account is allegedly used to facilitate international money transfers for the bank's customer, in which event no personal jurisdiction exists under CPLR § 302(a)(1):

> Plaintiffs allege that defendant Privatbank maintained a correspondent bank account in New York, through which funds were transferred in connection with the alleged racketeering scheme. (Compl. at 115-118). Plaintiffs, relying on *Correspondent Services Corp. v. J.V.W. Investments Ltd.*, 120 F.Supp.2d 401 (S.D.N.Y.2000), assert that that degree of contact with New York is sufficient to subject the Hyposwiss defendants to personal jurisdiction pursuant to CPLR § 302(a)(1).
>
> Such a reading, however, saddles the holding in *Correspondent Services Corp.* with an unwarranted breadth. Contrary to plaintiffs' suggestion, the bank account in *Correspondent Services Corp.* was used by a defendant bank to transact business on its own behalf with a plaintiff in that action and was thus "at the very roots of the action in this case." *See id.*, 120 F.Supp.2d at 405. No such allegations are present here. Plaintiffs' allegations better resemble the jurisdictional facts present in *Leema Enterprises, Inc. v. Willi*, 575 F.Supp. 1533 (S.D.N.Y. 1983), where another court in this district found the "mere maintenance of correspondence bank accounts to facilitate international financial transactions or money transfers" insufficient to establish personal jurisdiction. *See id.* at 1537 . . . .

*Daventree Ltd.*, 349 F. Supp. 2d at 762.

The fundamental legal principle affirmed by the court in *Daventree*, and dispositive here, is that the maintenance of a correspondent bank account by a foreign bank, through which it facilitates money transfers on behalf of its customers, does not constitute "transacting business" for purposes of CPLR § 302(a)(1) and does not subject foreign banks, such as LCB here, to personal jurisdiction in New York.

Accordingly, since the Complaint, on its face, fails to allege facts demonstrating that LCB transacted business in New York within the meaning of New York's long-arm statute, LCB is not subject to jurisdiction in New York pursuant to CPLR § 302.

### C.     The Assertion of Jurisdiction Over LCB Would Violate Due Process

Plaintiffs have not only failed to show that LCB can be subjected to personal jurisdiction pursuant to New York's long-arm statute, they have failed to make jurisdictional allegations that would satisfy the requirements of due process under Fed. R. Civ. P. 4(k)(2). *Daventree Ltd.*, 349 F. Supp. 2d at 763-764 ("[T]he norm of 'fundamentals of substantial justice' does not accord with a finding of minimum contacts where a non-resident bank engages in wire transfers or cash withdrawals on behalf of its clients as part of the financial process.") (citation omitted); *Int'l Housing Ltd. v. Rafidain Bank Iraq*, 712 F. Supp. 1112, 1118-19 (S.D.N.Y. 1989), *rev'd in part on other grounds*, 893 F.2d 8 (2d Cir. 1989) ; *Leema*, 575 F. Supp. at 1537.

## II.

### COUNTS I, II AND III OF THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6)

### A.     The Relevant Legal Standard

Plaintiffs' general and conclusory allegations with respect to the first three counts of the complaint against LCB fall far short of the now well-established pleading standards articulated by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) and its progeny.

As the Second Circuit has held citing *Twombly,* "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1965); *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).  The facts alleged must be "plausible" not merely "conceivable" and Plaintiffs must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65, 1974.  These pleading requirements are especially true in cases alleging terrorism.  As the

Southern District held in *In re Terrorist Attacks I*,  "in light of the extreme nature of the charges of terrorism, fairness requires extra-careful scrutiny of Plaintiffs' allegations as to any particular defendant" when applying Rule 8's notice pleading requirement.  349 F. Supp. 2d at 831.

Here, Plaintiffs' allegations do not advance beyond a formulaic recitation of the elements of a cause of action for acts of international terrorism under the ATA (Count I) or aiding and abetting a violation of the ATA and the ATS (Counts II and III).  Although the Complaint is replete with conclusory accusations about LCB's supposed provision of banking services "to Hezbollah" (*See, e.g.*, Compl. ¶¶ 18, 45-49, 52, 53, 114), the only account actually identified in the Complaint is a single account titled to Shahid Foundation, which allegedly is maintained at an unidentified LCB branch.  (Compl. ¶ 48.)  And Shahid Foundation is not even alleged to have been on any list of designated terrorists during the period at issue.  Indeed, each of the Plaintiffs' allegations of the essential elements of LCB's knowledge and intent is a paradigm of unsupported conclusion.  (*e.g.*, Compl. ¶ 126 ("At all relevant times, including the period between 2004 and the present day, as a matter of official LCB policy defendant LCB continuously supports and supported Hezbollah in its anti-Israel program."); *Id.* ¶ 134 ("At all relevant times . . . defendant LCB had actual knowledge that Shahid Foundation is an integral part of Hezbollah and constitutes part of Hezbollah's financial arm, that the Hezbollah Accounts and the funds therein were owned and controlled by Hezbollah, and that the Hezbollah Wire Transfers were being carried out by and at the direction of Hezbollah.")).  There are no facts alleged to support any of these conclusory allegations.

Specifically, no facts are alleged demonstrating that (a) LCB was ever engaged in a transfer of funds from the Shahid Foundation to Hezbollah, (b) LCB had a policy to support Hezbollah, or (c) LCB had actual knowledge of or intentionally encouraged Hezbollah to launch missile attacks into Israel between July 12 and August 14, 2006.  Absent facts sufficient to

support the conclusory allegations of wrongdoing set forth in the Complaint, the lawsuit must be dismissed. *See, e.g.*, *Twombly*, 127 S. Ct. at 1964-65; *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) ("A complaint which consists of conclusory allegations unsupported by factual assertions fails even on the liberal standard of Rule 12(b)(6).") (citation omitted); *In re Terrorist Attacks I*, 349 F. Supp. 2d at 832 (allegations against Saudi American Bank were dismissed where no facts were alleged to support conclusory allegations that the bank *knew* its provision of banking services to certain customers supported terrorism); *Stutts v. De Dietrich Group*, No. 03-CV-4058, 2006 WL 1867060, at *13 (E.D.N.Y. June 30, 2006) (dismissing claims against the banks were allegations of the banks' knowing and substantial participation in the unlawful conduct were conclusory rote incantations of the elements of a claim); *Mastafa v. Austl. Wheat Bd. Ltd.*, No. 07 Civ. 7955, 2008 WL 4378443, at *4-5 (S.D.N.Y. Sept. 25, 2008).

**B.  Plaintiffs Fail to State a Claim In Count I Under Section 2333(a) of the ATA for Primary Liability**

Plaintiffs do not state a claim for primary liability under Section 2333(a) of the ATA because they have not adequately alleged that (1) Plaintiffs' injuries occurred "by reason of" LCB's conduct, or (2) that LCB acted with the requisite knowledge or intent.[2]  *See In re Terrorist Attacks on September 11, 2001*, No. 03 MDL 1570, 2007 WL 2907278, at *2-3 (S.D.N.Y. Oct. 5, 2007), approved by Order dated Dec. 23, 2008 (03 MDL 1570 (GBD)(FM)).

**1.  Plaintiffs Have Not Adequately Pleaded the "By Reason of" Element**

Section 2333(a)'s "by reason of" language requires Plaintiffs to show that LCB's actions were both the cause-in-fact and the proximate cause of Plaintiffs' injuries. *See Strauss v.*

---

[2]  In addition, Plaintiffs fail to satisfy the requirements of §§ 2339A, 2339B, or 2339C, and 2331(1)'s definition of "international terrorism."  In particular, Plaintiffs have failed to satisfy the requirements of § 2331(1)(B) because there are no facts alleged to suggest that LCB's processing of transactions appears to be intended to intimidate civilians, influence a government's policy or affect its conduct.  *See Stutts,* 2006 WL 1867060, at *2 (dismissing Section 2333(a) claim against foreign banks where no allegations "their actions [were] designed to coerce civilians or government entities as *required* under § 2331").

*Crédit Lyonnais, S.A.*, No. CV-06-0702, 2006 WL 2862704, at *17 (E.D.N.Y. Oct. 5, 2006);

*Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609, 631 (E.D.N.Y. 2006).

### a.    Plaintiffs Fail To Adequately Plead Cause-in-Fact

The Complaint is devoid of non-conclusory allegations establishing cause-in-fact.

The Complaint is based on two disconnected facts:  (i) that Shahid Foundation had a banking

account at LCB, and (ii) that Hezbollah carried out rocket attacks in northern Israel.  From these

two facts, Plaintiffs allege, without setting forth any facts to substantiate their allegations, that

the Shahid Foundation must have transferred funds from its LCB account to Hezbollah and that

those funds must, in turn, have been pooled together with other funds to purchase rockets that

were then fired by Hezbollah into Israel causing Plaintiff's damages.  From these speculative

assertions, Plaintiffs then repeatedly assert in conclusory form throughout Counts I and II that

"as a direct and proximate result of LCB's execution of the Hezbollah Wire Transfers, the

American plaintiffs suffered the harm described herein."  (Compl. ¶¶ 172, 182.)  This "formulaic

recitation" of but-for causation is insufficient to state a claim against LCB.  Plaintiffs were

required to allege actual facts evidencing, at the very least, transfers of funds from a Shahid

Foundation account at LCB to Hezbollah that were reasonably related in time to the rocket

attacks. *Twombly*, 127 S. Ct. at 1965.

### b.    Plaintiffs Fail to Adequately Plead Proximate Cause

The Complaint's allegations of proximate cause (Compl. ¶¶ 113-120) are

similarly boilerplate, totally lacking factual content.  Under the ATA, a "showing of proximate

cause requires plaintiffs to show that defendant's actions were 'a *substantial factor* in the

sequence of responsible causation,' and that the injury was 'reasonably foreseeable or anticipated

as a natural consequence.'"  *Weiss*, 453 F. Supp. 2d at 631 (citing *Lerner, et al. v. Fleet Bank,*

*N.A.*, 318 F.3d 113, 123 (2d Cir. 2003) (emphasis supplied).

As noted *supra*, the Complaint fails to allege any facts evidencing that there were any transfers of funds from the Shahid Foundation through LCB to Hezbollah, much less transfers that would be a "substantial factor" in the purchase of rockets by Hezbollah.  There are only conclusory allegations to this effect.[3]

### 2.   Plaintiffs Fail to Adequately Plead Knowledge or Intent

ATA Section 2333(a) also requires a plaintiff to adequately plead intentional conduct by the defendant.  *See Boim v. Holy Land Found. for Relief and Dev.*, 549 F.3d 685, 692 (7th Cir. 2008) (*en banc*).  Some district courts in New York and elsewhere have interpreted this to mean that specific intent must be shown, that is, the defendant must be alleged to have provided material support to a terrorist and "desired to help those activities succeed."  *In re Terrorist Attacks I*, 349 F. Supp. 2d at 828; *Stutts*, 2006 WL 1867060, at *3 (dismissing claims against foreign banks where "plaintiffs fail to sufficiently allege facts showing *the Bank Defendants' knowledge and intent*") (emphasis supplied); *Humanitarian Law Project v. Gonzales*, 380 F. Supp. 2d 1134, 1145-47 (C.D. Cal. 2005) (the ATA substantive law sections require specific intent); *United States v. Al-Arian*, 308 F. Supp. 2d 1322, 1338-39 (M.D. Fla. 2004) (requiring intent to further terrorist activities for a violation of the ATA).  Other courts have held that the defendant must have "actual knowledge" not "constructive knowledge," that the groups it allegedly supported were engaged in terrorist activities.  *See, e.g.*, *Weiss*, 453 F. Supp. 2d at 625; *Strauss*, 2006 WL 2862704, at *12.  Under either standard, the Complaint in this case fails.

---

[3]   The conclusory allegation that unidentified wire transfers for Shahid's LCB account to Hezbollah were a "substantial factor" in the rocket attacks on Israel during the Second Lebanon War is also inconsistent with and contradicted by allegations made in other lawsuits pending in this and other Districts, and by the United States government, which has identified Iran as the principal sponsor of Hezbollah.  *See* Am. Compl., *Rothstein, et al. v. UBS AG*, No. 08-CV-4414 (JSR) (the United States has designated Iran as a state sponsor of terrorism and supporter of Hezbollah in Lebanon since 1984, pursuant to 50 U.S.C. Appx. § 2405(j)).

With respect to specific intent, there are no facts alleged that LCB, in providing routine banking services to any of its customers, ever intended to aid Hezbollah in the rocket attacks on Israel.  *See* Section 2339A(a) (defendant must know or intend that its "material support" will be used to commit one of over 30 different offenses); 18 U.S.C. §§ 2339C(a)(1) (defendant must know or intend that the funds it provides or collects will be used to violate one of nine international treaties); *Humanitarian Law Project*, 380 F. Supp. 2d at 1146.  Nor is there any evidence that LCB had actual knowledge that Shahid was engaged in terrorist activities that would aid Hezbollah in its rocket attacks.  As conceded in the Complaint, at the time of the events in question, the Shahid Foundation was not a designated terrorist organization.  While the Complaint (Compl. ¶ 137) references sixteen English-language publications which it alleges demonstrate that Shahid Foundation was known at the time to be an integral part of Hezbollah, those articles (which are not attached to the pleading) prove no such thing.  In fact, not a single one of the articles identifies the Shahid Foundation as a front for Hezbollah or states that Shahid Foundation provides financial support for terrorist acts or military operations by Hezbollah.  Indeed, Plaintiffs' allegation that the Foundation was a notorious and well-known front for Hezbollah since 1981 is inconsistent with the fact that the Foundation was not designated as a terrorist organization by the United States, Israel or any other country during the time period covered by the Complaint.

C.      **Plaintiffs Fail To State A Claim in Count II for Aiding-and-Abetting under the ATA**

Plaintiffs' claim in Count II for aiding and abetting international terrorism pursuant to § 2333(a) also fails as a matter of law.  To assert a § 2333(a) aiding-and-abetting claim, Plaintiffs must allege that LCB "knew of [a terrorist's] illegal activities, that [it] desired to help those activities succeed, and [it] engaged in some act of helping the illegal activities."  *Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev.*, 291 F.3d 1000, 1023 (7th

Cir. 2002); *Weiss*, 453 F. Supp. 2d at 621-22 (plaintiffs must allege defendant provided "substantial assistance" to terrorist group "with knowledge and with the intent to have the venture go forward and succeed"); *Stutts*, 2006 WL 1867060, at *6 (plaintiffs "failed to sufficiently allege that the Bank Defendants knew about Iraq's illegal use of chemical weapons or intended to facilitate that activity.").[4]

Plaintiffs posit that LCB aided and abetted Hezbollah by carrying out wire transfers for Shahid Foundation with the "specific purpose and intention of enabling and assisting Hezbollah to carry out terrorist acts against Jewish civilians in Israel." (Compl. ¶ 180.) But, as is discussed above with respect to the primary ATA claim, the Complaint alleges no facts supporting these conclusory allegations, *i.e.*, no facts showing: (1) any wire transfers by LCB on behalf of Shahid to Hezbollah, (2) with intent by LCB to help Hezbollah in its rocket attacks on Israel or in any other terrorist activity. Thus, the aiding-and-abetting claims should be dismissed. *See Stutts*, 2006 WL 1867060, at *6 (dismissing aiding-and-abetting claim where plaintiffs "allege no facts to suggest that the Bank Defendants intended to further Saddam Hussein's activities.").

Furthermore, as is discussed in Point II E *infra,* with respect to the cause of action for aiding and abetting an ATS violation, a bank's execution of ordinary banking transactions for a customer, such as wire transfers, is insufficient to establish substantial assistance of the terrorist or other murderous acts committed by the customer's transferee. *See Weiss*, 453 F. Supp. 2d at 621-22 (bank's "mere maintenance of accounts and processing of transfers" is not substantial assistance); *Strauss*, 2006 WL 2862704, at *9 (same); *Stutts*, 2006 WL 1867060, at *6 (banks' letters of credit for Iraq not knowing and substantial assistance of chemical weapons program); *see also In re Terrorist Attacks I*, 349 F. Supp. 2d at 833 (no aiding-and-abetting liability for

---

[4]     In the *Boim en banc* decision, Judge Posner concluded that secondary liability does not exist at all under the ATA due to the absence of express language providing therefor. 549 F.3d at 693.

15

bank based on "injuries funded by money passing through it on routine banking business."). Thus, the aiding-and-abetting claim fails as a matter of law.

**D.    Plaintiffs' ATA Claims In Counts I and II Are Also Barred by the Act of War Exclusion**

The ATA provides that "[n]o action shall be maintained under § 2333 of this title for injury or loss by reason of an act of war."  18 U.S.C. § 2336(a).  The term "act of war" is separately defined, in part, as "any act occurring in the course of . . . armed conflict, whether or not war has been declared, between two or more nations[.]"  18 U.S.C. § 2331(4)(B).  Plaintiffs' claims fit squarely into this exception, and Counts I and II must be dismissed.

Plaintiffs' injuries occurred during the conflict known as the Second Lebanon War.[5]  The War involved not only Israel and Hezbollah, as Plaintiffs allege, but the Lebanese government.  As Plaintiffs themselves allege in their Amended Complaint, "Hezbollah is and has been a major and popular political organization in Lebanon . . . [and] [a]t all relevant times, Hezbollah held a large number of seats in the Lebanese parliament, was part of the Lebanese central government and held seats in numerous municipal governments throughout Lebanon." (Compl. ¶¶ 123-24.)   The Israeli government has also clearly recognized that the acts of Hezbollah and the Lebanese government cannot be separated.  On July 12, 2006, the first day of the Second Lebanon War, Prime Minister Ehud Olmert stated the following:

> I want to make it clear: This morning's events were not a terrorist attack, but the action of a sovereign state that attacked Israel for no reason and without provocation.  The Lebanese government, of which Hezbollah is a member, is trying to undermine regional

---

[5]    What the Plaintiffs describe as "a series of terrorist rocket attacks on civilians in Israel carried out by the Hizbollah terrorist organization during July and August 2006" (Compl. ¶ 1), is more commonly referred to as the Second Lebanon War.  *See* Israel Ministry of Foreign Affairs, *Second Lebanon War: Hezbollah Attacks Northern Israel and Israel's Response 12-Jul-2006*, http://www.mfa.gov.il/MFA/History/Modern+ History/Israel +wars/ Hezbollah+attack+in+northern+Israel+and+Israels+response+12-Jul-2006.htm. *Ex.* A to the Declaration of Jonathan D. Siegfried, April 17, 2009, submitted herewith (hereinafter, "Siegfried Decl.").  The Court may take judicial notice of publically available documents to establish that on motion to dismiss the matter has been publically asserted.  *See Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 424-26 (2d Cir. 2008).

> stability.   Lebanon is responsible and Lebanon will bear the
> consequences of its actions.[6]

That same day, Israeli Foreign Minister Tzipi Livni stated the following:

> Israel was attacked today from Lebanon.  Hezbollah is a terrorist
> organization, which is part of the Lebanese government. . . .  Israel
> views the government of Lebanon as responsible for today's
> unprovoked aggression.[7]

Since Plaintiffs' injuries occurred in the course of armed conflict between two or more nations, their claims are barred under 18 U.S.C. § 2331(4)(c).  *See Stutts*, 2006 WL 1867060, *4 ("Plaintiffs' allegations that the allegedly unlawful acts occurred during the '1991 Persian Gulf War' put this case squarely within the exemption under § 2336 for 'acts of war.'") (citations omitted).

### E.   Plaintiffs Fail To State A Claim In Count III for Aiding and Abetting Liability Under The ATS

Count III of the Complaint purports to state a cause of action against LCB on behalf of Israeli and Canadian plaintiffs for aiding and abetting violations of international law within the meaning of the ATS.  The cause of action should be dismissed as a matter of law for failure to plead the required elements of substantial assistance and intent.  *Khulumani v. Barclay Nat'l Bank Ltd.*, 504 F.3d 254 (2d Cir. 2007).

#### 1.   The Complaint Fails to Adequately Plead Substantial Assistance

Notwithstanding its hyperbole, all the Complaint actually alleges is that LCB maintained accounts and executed wire transfers for Shahid Foundation (but not Hezbollah). (*See, e.g.*, Compl. ¶¶ 189, 190.)  Even assuming the existence of such accounts and wire transfers

---

[6]     Israel Ministry of Foreign Affairs, *PM Olmert: Lebanon is responsible and will bear the consequences*, July 12, 2006, http://www.mfa.gov.il/MFA/Government/Communiques /2006/PM/Olmert+-+Lebanon+is+responsible+and+will+bear+the+consequences+12-Jul-2006.htm.  Annexed as Siegfried Decl. Ex. B.

[7]     See Israel Ministry of Foreign Affairs, *Statement by FM Livni on Hezbollah attack from Lebanon*, July 12, 2006, http://www.mfa.gov.il/MFA/About+the+Ministry/MFA+ Spokesman/2006/Statement+by+FM+ Livni+on+Hezbollah+attack+from+Lebanon+12-Jul-2006.htm. Annexed as Siegfried Decl. Ex. C.

17

involving them, courts in this Circuit have consistently held that "the mere maintenance of a bank account and the receipt or transfer of funds do not . . . constitute *substantial assistance*" for purposes of establishing a claim for aiding and abetting liability under the ATS. *Weiss*, 453 F. Supp. 2d at 621-22 (citation omitted) (emphasis supplied) (finding plaintiffs' allegations that the bank "knowingly maintained numerous accounts" through which it "ha[d] collected, received, transmitted, and provided millions of dollars . . . to agents of Hamas" insufficient to hold the bank liable for Hamas's use of the funds); *In re South African Apartheid Litigation*, No. Civ. 4712, 2009 WL 960078, at *12 (S.D.N.Y. Apr. 8, 2009) ("it is (or should be) undisputed that simply doing business with a state or individual who violates the law of nations is insufficient to create liability under customary international law . . . [a]iding a criminal 'is not the same thing is aiding and abetting [his or her] alleged human rights abuses'") (citing *Mastafa*, 2008 WL 4378443, at *4); *Strauss*, 2006 WL 2862704, at *9 (finding that mere allegations that a bank knowingly maintained accounts for a Hamas front group and knowingly transferred money to Hamas controlled entities were insufficient to render the bank liable); *see also Stutts*, 2006 WL 1867060, at *12-14 n.24 ("courts have declined to impose liability on defendants for participation in a commercial enterprise that allegedly assists in another's violations of international law"); *Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*, No. 98 Civ. 4960, 1999 WL 558141, at *8 (S.D.N.Y. July 30, 1999).

In sum, the provision of routine banking services, such as those performed by LCB here, does not constitute substantial assistance sufficient to state an aiding and abetting claim under the ATS.

### 2.  The Complaint Fails to Adequately Plead LCB Acted with the Required Purpose Of Facilitating Hezbollah's Rocket Attacks

The Second Circuit's recent *per curiam* decision in *Khulumani*, together with the concurring opinions of Judges Katzmann and Korman (who dissented in part), set forth a

stringent "intent" requirement for ATS aiding and abetting claims that plaintiffs fail to satisfy. *See* 504 F.3d at 289.

Judges Katzmann and Korman (in part) separately concurred in the *per curiam* opinion of the court.   In their concurring opinions, after a comprehensive analysis of international law sources, each separately concluded that aiding and abetting liability only arises under the ATS "when the defendant (1) provides practical assistance to the principal which has a substantial effect on the perpetration of the crime, and (2) does so with the *purpose* of facilitating the commission of that crime."  *Id.* at 277, 332 (emphasis supplied).[8]  In his opinion, Judge Korman specifically adopted the following argument:

> With regard to *facilitating* the commission of a crime, the aider and abettor must act with '*purpose*.' . . . This means more than the mere knowledge that the accomplice aids the commission of the offence . . . rather he must know as well as wish that his assistance shall facilitate the commission of the crime.

*Id.* at 332 (citation omitted) (emphasis in original).  *See also Lerner, et al. v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006); *Mastafa*, 2008 WL 4378443, at *6.

Notably, Judges Katzmann and Korman each cited the Nuremberg *Ministries Case*, in which a purposeful facilitation standard was applied.  *Khulumani*, 504 F.3d at 276-77, 318.  In the *Ministries Case* a bank officer was cleared of criminal wrongdoing where he "was alleged to have made a loan, knowing or having good reason to believe that the borrower would use the funds in financing enterprises conducted in violation of either national or international law, but was not proven to have made the loan with the purpose of facilitating the enterprises' illegal activities."  *See id.* at 276 (citation and internal quotations omitted).

---

[8]     The concurring opinion of Judge Hall, the *Khulumani* majority's other member, adopts the Restatement (Second) of Torts § 876(b), which provides for liability where one "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself."  *Khulumani*, 504 F.3d at 287-89.  Even if this Court were to apply this test here, it would reach the same conclusion, *i.e.*, that plaintiffs' Complaint insufficiently alleges that LCB sought to further illegal acts or an illegal enterprise through their provision of routine banking services.

Here, plaintiffs have clearly failed to allege any facts indicating that LCB acted with the *purpose* of facilitating the rocket attacks by Hezbollah, which was not ever a customer of the bank.  Instead, much like in the *Ministries Case* discussed by Judges Katzmann and Korman, Plaintiffs insufficiently allege in purely conclusory form that LCB "knowingly and intentionally" carried out wire transfers "with the specific purpose and intention of enabling and assisting Hezbollah to carry out its goal . . . of intentionally and systematically using violence against Jewish civilians in Israel."  (Compl. ¶ 190.)  This formulaic repetition of the elements of an aiding and abetting claim is no substitute for alleging facts sufficient to show purposeful facilitation, as required by the Supreme Court in *Twombly* and the Second Circuit in *Khulumani*.

Finally, and as is discussed above with respect to the ATA claims, Plaintiffs utterly fail to plead causation.  As the Second Circuit held in *Lerner*, "banks do not owe non-customers a duty to protect them from the intentional torts of their customers."  459 F.3d at 286 (citing *In re Terrorist Attacks I*, 349 F. Supp. 2d at 830).  Moreover, even if banks did owe them a duty of care, a finding of proximate cause in this context would, in effect, require a bank to be an insurer for any damages caused by its customers.  Citing Justice Scalia's concurrence in *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 287 (1992), the Court held, "[l]ife is too short to pursue every known act to its most remote consequences; 'for want of a nail, a kingdom was lost' is a commentary on fate, not the statement of a major cause of action against a blacksmith." *Lerner*, 459 F.3d at 287.

### III.

### PLAINTIFFS' NON-FEDERAL CLAIMS ARE DEFICIENT UNDER ISRAELI LAW

Counts IV and V of the Complaint purport to state non-federal claims on behalf of the American, Israeli and Canadian plaintiffs (except for four individual Canadians who are plaintiffs in a Canadian action) against LCB for negligence and breach of statutory duty under

the laws of the State of Israel.  These claims must be dismissed for failure to state a claim under Israeli law or New York law.  As a preliminary matter, for the reasons discussed in the Memorandum of Law in Support of Amex Bank's Motion to Dismiss, dismissal of the negligence claims is mandated under both New York and Israeli law as the relevant laws concerning the duty of care and causation are not materially different.  If, however, the court were to apply Israeli law to the remaining claims against LCB, dismissal is still mandated.

### A.   Plaintiffs' Negligence Claim Fails Under Israeli Law

Count IV asserts that LCB breached its duty of care to Plaintiffs under CWO § 35 when it performed wire transfers for the Shahid Foundation and allegedly failed to comply with various statutory banking regulations.  As Plaintiffs acknowledge, tort causes of action under Israeli law are codified in the *Civil Wrongs Ordinance [New Version], 1968* ("CWO").[9]  (Compl. ¶ 197.)  Under CWO § 36, LCB's duty extends only to persons who LCB reasonably should have foreseen would be injured by LCB's actions "in the ordinary course of events."  (Compl. ¶ 206); CWO § 36.  The duty concept in § 36 acts "as a control device in narrowing the scope of liability to limited circles of claimants, activities and losses."[10]  The operative issue is "proximity"—*i.e.*, whether the parties "are close to each other physically, legally, by reliance or otherwise."  *Gilead* at 51.  Here, the Complaint contains no allegations establishing a sufficiently close legal relationship between LCB and Plaintiffs.  Plaintiffs were not customers of LCB, counterparties to any transaction involving LCB, or persons whose funds passed through LCB.  Indeed, as noted by Amex Bank there appear to be no cases under Israeli law holding a bank liable under CWO § 36 for injury to a stranger to whom it otherwise owed no legal duty.  Nor are

---

[9]   A published English translation of the CWO is annexed as Siegfried Decl. Ex. D.  "In determining foreign law, the court may consider any relevant material or source, . . . whether or not submitted by a party or admissible under the Federal Rules of Evidence."  Fed. R. Civ. P. 44.1.

[10]   Israel Gilead, *Israel* at 51 (Kluwer Law International 2003) *reprinted in* 2 International Encyclopaedia of Laws, Tort Law (R. Blanpain & S. Stijins eds., Kluwer Law International 2007) ("*Gilead*").  Cited portions of *Gilead* are annexed as Siegfried Decl. Ex. E.

there any cases holding a bank liable under this statute for injury to a third party caused by a customer of the bank.[11]   And here, of course, the injury was caused not by a customer of the Bank but by Hezbollah.

Plaintiffs' negligence claim also fails because they cannot establish that LCB is "deemed to have caused damage by [its] fault."  CWO § 64.  Section 64(2) provides that LCB "shall not be so deemed" to have caused Plaintiffs' damage if "another person's fault was the *decisive cause* of the damage."  *Id.*  Section 64(2) embodies the superseding cause doctrine familiar to legal systems like those of the United States and England.  *See, e.g.*, *Kush v. City of Buffalo*, 59 N.Y.2d 26, 33 (N.Y. 1983) ("An intervening act will be deemed a superseding cause and will serve to relieve defendant of liability when the act is of such an extraordinary nature or so attenuates defendant's negligence from the ultimate injury that responsibility for the injury may not be reasonably attributed to the defendant.").  Under Israeli law, the intervening act "becomes 'decisive' when it is not reasonably foreseeable."  *Gilead* at 247 (citation omitted). Here, of course, the intervening act was the outbreak of war between Lebanon and Israel in which Hezbollah's rocket attacks were the "decisive cause" of Plaintiffs injuries.  Further, as noted *supra*, Plaintiffs fail even to allege facts demonstrating that any banking transaction at LCB resulted in a transfer of funds to Hezbollah or that the Bank intended to facilitate or foresaw Hezbollah's rocket attacks.  Therefore, Count IV fails to state a claim under Israeli law.

### B.   Breach of Statutory Duty

Count V asserts that LCB is liable for a breach of statutory duty under CWO § 63, because it allegedly violated § 4 of Israel's *Prevention of Terrorism Ordinance*, §§ 145 and 148 of Israel's *Penal Law* , and § 85 of Israel's *Defense Regulations.*  (Compl. ¶ 217.)  However, this claim fails for the same reasons the negligence claim fails—the failure of the Complaint to plead

---

[11]      *See* Amex Bank Mem. of Law, at 12-13.

causation, as required by CWO § 64,[12] and the superseding cause doctrine codified in CWO § 64(2).[13]  As discussed above, the Complaint fails to plead facts that would permit a plausible conclusion that there is a legally cognizable connection between the performance of wire transfers by LCB on behalf of its customer and the rocket attacks in Israel by Hezbollah in the summer of 2006.  The Complaint's pure speculation in this regard is not sufficient to state a claim as a matter of Israeli law.

## CONCLUSION

For all the forgoing reasons, Defendant LCB respectfully requests that the Complaint be dismissed with prejudice together with such other and further relief as the Court deems appropriate.

Dated: New York, New York
           April 17, 2009

Respectfully submitted,

By:_____/s/ Jonathan D. Siegfried_____
           Jonathan D. Siegfried
           Lawrence S. Hirsh
           DEWEY & LEBOEUF LLP
           1301 Avenue of the Americas
           New York, NY  10019
           Telephone:  (212) 259-8000
           Facsimile:  (212) 649-9348
           Attorneys for Defendant
           Lebanese Canadian Bank, s.a.l.

---

[12]     *Gilead* at 68-69 ("To meet the general requirement of causation, the claimant should establish that the defendant's breach of the enacted duty was both the cause-in-fact and the legal cause of loss suffered.") (citing *Va'akin v. Local Council of Bet Shemesh* (1983) 37 (i) P.D. 113).

[13]     *Id.* at 244, 246-47 (the superseding cause provision under  CWO § 64(2), which negates legal causation, is applicable to a breach of statutory obligation claim under § 63 because legal causation must be demonstrated for such a claim to succeed).