UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X

YAAKOV LICCI, a minor, by his father and natural
guardian ELIHAV LICCI and by his mother and natural
guardian YEHUDIT LICCI, *et al.*,

                         Plaintiffs,

      vs.

AMERICAN EXPRESS BANK LTD., *et al.*,

                        Defendants.

- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --   X

Case No. 08 Civ. 7253 (GBD)(MHD)


**REPLY MEMORANDUM OF LAW OF DEFENDANT LEBANESE CANADIAN BANK, S.A.L. IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**


**DEWEY & LEBOEUF LLP**
1301 Avenue of the Americas
New York, NY  10019-6092
(212) 259-8000

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...........................................................................................................ii

ARGUMENT .................................................................................................................................1

I.      PLAINTIFFS FAIL TO ESTABLISH PERSONAL JURISDICTION ...................................1

        A.  Plaintiffs Fail to Establish Long-Arm Jurisdiction Under CPLR § 302(a)(1) ..............1

        B.  Plaintiffs Are Not Entitle to Jurisdictional Discovery ...................................................4

II.     THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A
        CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6).........................................................5

        A.  The Governing Standard ................................................................................................5

        B.  The Claim Under § 2333 of the Antiterrorism Act Should Be Dismissed ...................6

        C.  The Claim for Aiding and Abetting a § 2333 Violation Should be Dismissed ............7

        D.  The Act of War Exclusion Applies to the § 2333 Claims.............................................9

        E.  The Aiding and Abetting a Violation of the ATCA Claim Should Be Dismissed ......10

        F.  The Claims Under Israeli Law Should Be Dismissed .................................................10

CONCLUSION .............................................................................................................................11

## **TABLE OF AUTHORITIES**

### **Cases**

*Amaker v. Weiner*, 175 F.3d 48 (2d Cir. 1999)........................................................... 6

*Anchor v. Novartis Grimsby Ltd.*, No. 07 Civ. 0030,
    2008 WL 2595022 (2d Cir. June 26, 2008)....................................................... 4, 5

*Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102 (1987)................................ 5

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ............................................................. 5, 6, 7, 8

*Beacon Enters., Inc. v. Menzies*, 715 F.2d 757 (2d Cir. 1983) ........................................ 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................... 5, 7, 8

*Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*,
    975 F. Supp. 562 (S.D.N.Y. 1997) ................................................................. 5

*Boim v. Holy Land Found. for Relief and Dev.*,
    549 F.3d 685 (7th Cir. 2008) .................................................................. 6, 7

*D.D. v. N.Y. City Bd. of Educ.*, No. 03 Civ. 2489,
    2004 WL 633222 (E.D.N.Y. Mar. 30, 2004) .................................................... 6

*Dale v. Banque SCS Alliance S.A.*, No. 02 Civ. 3592,
    2005 WL 2347853 (S.D.N.Y. Sept. 22, 2005) .................................................. 3

*Daventree Ltd. v. Republic of Azer.*, 349 F. Supp. 2d 736 (S.D.N.Y. 2004) ................... 3, 4, 9

*Estate of Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541 (S.D.N.Y 2005) ...................... 5

*Faravelli v. Bankers Trust Co.*, 447 N.Y.S.2d 962 (1st Dep't 1982)................................. 4

*Fed. Deposit Ins. Corp. v. Interbanca-Banca Per Finanziamenti A Medio Termine, S.p.A.*,
    405 F. Supp. 1118 (S.D.N.Y. 1975) .......................................................... 3, 4

*Fonte* v. *Bd. Of Managers of Cont'l Towers Condo.*, 848 F.2d 24 (2d Cir. 1988) .............. 6

*Friedl v. City of N.Y.*, 210 F.3d 79 (2d Cir. 2000) ..................................................... 6

*Hishan v. King & Spalding*, 467 U.S. 69 (1984) ........................................................ 8

*In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71 (2d Cir. 2008) ...................... 1, 3, 4

*Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181 (2d Cir. 1998) ...................................... 4

*Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006 (2d Cir. 1986)....................................... 2

*Khulumani v. Barclay Nat'l Bank Ltd.*, 504 F.3d 254 (2d Cir. 2007) ............................... 10

*Klieman v. Palestinian Auth.*, 424 F. Supp. 2d 153 (D.D.C. 2006) ................................. 9

*Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571 (E.D.N.Y. 2005) ............................... 7, 8

*Mastafa v. Austl. Wheat Bd. Ltd.*, No. 07 Civ. 7955,
    2008 WL 4378443 (S.D.N.Y. Sept. 25, 2008) ................................................. 9

*Mazzaro de Abreu v. Bank of Am. Corp.*, No. 06 Civ. 673,
    2008 WL 3171560 (S.D.N.Y. Aug. 6, 2008) ...................................................... 7

*Monroy v. Citibank, N.A.*, No. 84 Civ. 1040,
    1985 WL 1768 (S.D.N.Y. June 21, 1985) ......................................................... 3

*Nat'l Sun Indus., Inc. v. Dakahlia Commercial Bank, Cairo*, No. 95 Civ. 7961,
    1997 U.S. App. LEXIS 9662 (2d Cir. May 2, 1997) ......................................... 4

*Neewra, Inc. v. Manakh al Khaleej Gen. Trading and Contracting Co.*,
    No. 03 Civ. 2936, 2004 WL 1620874 (S.D.N.Y. July, 20, 2004) ........................ 2, 4

*Rothstein v. UBS AG*, No. 08 Civ. 4414,
    2009 WL 2581610 (S.D.N.Y. Aug. 23, 2009) ................................................. 7, 8

*Schenker v. Assicurazioni Generali S.p.A., Consol.*, No. 98 Civ. 9186,
    2002 WL 1560788 (S.D.N.Y. July 15, 2002) .................................................... 1

*Sokolow v. Palestine Liberation Org.*, 583 F. Supp. 2d 451 (S.D.N.Y. 2008) ................... 9

*Stutts v. De Dietrich Group*, No. 03 Civ. 4058,
    2006 WL 1867060 (E.D.N.Y. June 30, 2006) .................................................... 9

*Taub v. Colonial Coated Textile Corp.*, 387 N.Y.S.2d 869 (1st Dep't 1976) ...................... 4

*Zurich Am. Ins. Co. v. Dah Sing Bank, Ltd.*, No. 03 Civ. 7778,
    2004 WL 1328215 (S.D.N.Y. June 15, 2004) .................................................... 2

## Statutes

18 U.S.C. § 2331, *et seq.*................................................................................... 6, 7, 9

28 U.S.C. § 1350 ......................................................................................... 10

## Rules

Fed. R. Civ. P. 12 ................................................................................... 2, 5, 6

Fed. R. Evid. 801-02 ................................................................................. 2

N.Y. C.P.L.R. § 302(a)(1).......................................................................... 1, 3

## Other Authorities

H.R. Rep. No. 102–1040 (Oct. 6, 1992) ....................................................... 9

Restatement (Second) of Torts § 876(a) ..................................................... 8

S. Rep. No. 102-342 (Jul. 27, 1992) ........................................................... 9

Defendant Lebanese Canadian Bank, S.A.L. ("LCB") (the "Defendant Bank") respectfully submits this Reply Memorandum of law in further support of its motion to dismiss the First Amended Complaint.

## ARGUMENT

## I.

## PLAINTIFFS FAIL TO ESTABLISH PERSONAL JURISDICTION

Tellingly, Plaintiffs bury their discussion of the crucial question of this Court's power to exercise personal jurisdictional over LCB in Point IV of their Opposition Memorandum of Law ("Opp'n Mem."). The reason is clear. While Plaintiffs recognize they have the burden of establishing that this Court has jurisdiction over LCB, it is a burden they know they cannot meet. Their brief, if anything, serves only to underscore that instead of facts establishing jurisdiction, Plaintiffs can offer only "argumentative inferences" which are insufficient, as a matter of law, to establish a *prima facie* showing of personal jurisdiction. *See In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 93 (2d Cir. 2008); *Schenker v. Assicurazioni Generali S.p.A., Consol.*, No. 98 Civ. 9186, 2002 WL 1560788, at *2 (S.D.N.Y. July 15, 2002).

### A.    Plaintiffs Fail to Establish Long-Arm Jurisdiction Under CPLR § 302(a)(1)

Plaintiffs' sole argument for jurisdiction is that LCB transacted business in New York within the meaning of N.Y. C.P.L.R. § 302(a)(1). Their argument is premised entirely on their conclusory claim that LCB supposedly executed on behalf of Hezbollah "dozens of wire transfers totaling millions of dollars through New York over a period of several years, using its New York correspondent defendant Amex. FAC at ¶¶ 41-56." (Opp'n Mem. at 25.) Yet nowhere in the First Amended Complaint nor in their brief do Plaintiffs identify so much as a single wire transfer involving LCB and American Express Bank Ltd. ("Amex Bank") for the benefit of Hezbollah, much

less any transfer of funds by LCB through Amex Bank in 2006 that financed the rocket attacks causing injury to Plaintiffs. [1]

In an effort to remedy this fatal deficiency in their pleading, Plaintiffs offer the Declaration of Uzi Shaya (the "Shaya Declaration") who claims to be a former Israeli intelligence service officer.  Mr. Shaya's declaration, however, merely repeats the same conclusory allegation of the First Amended Complaint that wire transfers which "totaled several million dollars, were executed by LCB through Amex Bank in New York, which acted as LCB's correspondent bank for these dollar transfers."  (Shaya Decl. at ¶ 12.)  Beyond this generalized statement, the declaration provides no facts regarding any particular wire transfer, from any particular account, on any particular date.

Mr. Shaya's declaration, moreover, is allegedly based on his examination of unidentified documents, purportedly in the possession of the State of Israel, which are not attached to his declaration, and which he claims to have examined only *after* his retirement from active service with the Counterterrorism Staff of Israel's National Security Council.  (*Id.* at ¶ 6.)  His declaration, as such, is nothing more than impermissible double hearsay (*see* Fed. R. Evid. 801-02), which may not even be considered by the Court on this Rule 12(b)(2) motion.  *See Neewra, Inc. v. Manakh al Khaleej Gen. Trading and Contracting Co.*, No. 03 Civ. 2936, 2004 WL 1620874, at *2 (S.D.N.Y. July, 20, 2004); *Zurich Am. Ins. Co. v. Dah Sing Bank, Ltd.*, No. 03 Civ. 7778, 2004 WL 1328215, at *1 n.2 (S.D.N.Y. June 15, 2004); *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).

If Plaintiffs had any facts to support their jurisdictional allegations, it was incumbent upon them to set them forth, if not in their original complaint filed in July 2008, then in the First Amended Complaint which they filed six months later in January 2009, or certainly with their

---

[1]      Plaintiffs apparently concede that Hezbollah did not maintain bank accounts in its own name at LCB. Plaintiffs identify one account number, in the name of the Shahid (Martyrs) Foundation, which they allege is a Hezbollah front.  However, the First Amended Complaint does not identify a single wire transfer involving that account.  (*See* First Am. Compl. ¶ 45.)

opposition papers filed in July 2009.  Instead, Plaintiffs continue to offer only the kind of argumentative inference to establish jurisdiction that was rejected by the Second Circuit in *In re Terrorist Attacks*, and should be rejected by the Court here.[2]  *See* 538 F.3d at 93.

      Plaintiffs also misapprehend the law regarding when and under what circumstances a correspondent bank account will be found to be "at the very roots of the action" for purposes of establishing jurisdiction over a foreign bank under CPLR § 302(a)(1).  *Daventree Ltd. v. Republic of Azer.*, 349 F. Supp. 2d 736, 762 (S.D.N.Y. 2004).  (*See* Mem. of Law of LCB in Support of its Mot. to Dismiss ("Moving Mem.") at 7-9.)  In those few cases where a correspondent bank relationship was found to give rise to jurisdiction, plaintiff was either a customer of the defendant foreign bank, the correspondent bank was itself the counter-party plaintiff to the transaction with the defendant foreign bank, or the plaintiff was a party whose funds were transferred through the correspondent bank.  In none of the cases cited by Plaintiffs was the plaintiff a stranger to both the correspondent and defendant foreign bank, like Plaintiffs here.  *See*, *e.g.*, *Dale v. Banque SCS Alliance S.A.*, No. 02 Civ. 3592, 2005 WL 2347853 (S.D.N.Y. Sept. 22, 2005) (defendant bank, as a participant in a fraud on plaintiff, transferred funds stolen from plaintiff through its correspondent bank accounts); *Monroy v. Citibank, N.A.*, No. 84 Civ. 1040, 1985 WL 1768 (S.D.N.Y. June 21, 1985) (finding jurisdiction over a third-party claim by Citibank against a Venezuelan bank with which it maintained a direct checking account where bank failed to honor checks written on that account).

      *Fed. Deposit Ins. Corp. v. Interbanca-Banca Per Finanziamenti A Medio Termine, S.p.A.*, 405 F. Supp. 1118 (S.D.N.Y. 1975), cited by Plaintiffs, illustrates the distinction drawn by

---

[2]      As set forth in our moving brief, Plaintiffs allege only two facts, that (a) Shahid Foundation maintained a bank account at LCB, and (b) Amex Bank serves as a correspondent bank for LCB.  From these two facts, Plaintiffs speculate – and ask this Court to infer – that Shahid must have withdrawn funds from its LCB account (as opposed to any other bank with which it had accounts) to give to Hezbollah; that the funds must have been withdrawn in U.S. dollars (as opposed to any other currency); that the U.S. dollars must have been obtained by LCB through Amex Bank in New York (as opposed to any number of other international banking centers which supply U.S. dollars); and that those funds must have been used to finance the 2006 rocket attacks on Israel.

Judge Stein in *Daventree*.  *See* 349 F. Supp. 2d at 762.  In *Interbanca*, the FDIC sought to recover

funds as receiver for Franklin National Bank (FNB) from defendant Italian bank Interbanca.  FNB had

transferred the very funds FDIC sought to recover through Interbanca's New York correspondent

bank, which was used by Interbanca to transact business on its own behalf with FNB, namely

Interbana's ventures in international financing.  As Judge Stein held in *Daventree*, when a bank uses a

correspondent bank to transact business "on its own behalf" jurisdiction may be established.  *Id.*

Where, however, the correspondent bank is merely used to facilitate international financial

transactions on behalf of the foreign bank's customers—as is alleged by Plaintiffs here—personal

jurisdiction will not lie.  *See Id.*; *Neewra*, No. 03 Civ. 2936, 2004 WL 1620874, at *3; *Faravelli v.

Bankers Trust Co.*, 447 N.Y.S.2d 962, 965 (1st Dep't 1982); *Taub v. Colonial Coated Textile Corp.*,

387 N.Y.S.2d 869, 870 (1st Dep't 1976); *Nat'l Sun Indus., Inc. v. Dakahlia Commercial Bank, Cairo*,

No. 95 Civ. 7961, 1997 U.S. App. LEXIS 9662, at *3-5 (2d Cir. May 2, 1997).[3]  To hold otherwise—

as Plaintiffs request—would mean that this Court would have personal jurisdiction over virtually

every bank in the world for causes of action accruing all over the world.  That is not the law, and

Plaintiffs cite no case holding that it is.

### B.        Plaintiffs Are Not Entitled to Jurisdictional Discovery

Plaintiffs' suggestion that they should be afforded jurisdictional discovery if the Court

has any doubt about its jurisdiction over LCB because Plaintiffs "have made a sufficient start" at

demonstrating the existence of jurisdiction misstates the law.  Discovery should be denied where, as

here, Plaintiffs have failed to make a *prima facie* showing of jurisdiction.  *See*, *e.g.*, *In re Terrorist

Attacks*, 538 F.3d at 96; *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 186 (2d Cir. 1998); *Anchor v.

---

[3]        Because Plaintiffs have failed to satisfy New York's long-arm statute, the Court need not reach the question whether such jurisdiction would be consistent with the due process clause, where no other contacts with the United States are alleged.  *See Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 764 n.6 (2d Cir. 1983).  Moreover, their brief offers no answer to the consistent holdings of other courts that jurisdiction premised on the maintenance of correspondent accounts to facilitate financial transactions or money transfers does not satisfy due process. *Daventree*, 349 F. Supp. 2d at 760.

*Novartis Grimsby Ltd.*, No. 07 Civ. 0030, 2008 WL 2595022, at *2 (2d Cir. June 26, 2008); *Estate of*

*Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541, 549 (S.D.N.Y 2005) ("If [plaintiffs] cannot make out

a prima facie case for personal jurisdiction [over a foreign corporation], they cannot take any

discovery-even jurisdictional discovery-from a foreign corporation.").

As stated by the Supreme Court, "[g]reat care and reserve should be exercised when

extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus. Co.,*

*Ltd. v. Superior Court*, 480 U.S. 102, 115 (1987) (citation omitted).  Since Plaintiffs have failed to

satisfy their burden to plead facts, not speculation or theory, that "are sufficient in themselves to

establish jurisdiction," they are not entitled to discovery.  *Bellepointe, Inc. v. Kohl's Dep't Stores,*

*Inc.*, 975 F. Supp. 562, 564 (S.D.N.Y. 1997).

## II.

### THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)

#### A.    The Governing Standard

As set forth in our moving brief, post *Twombly*, Plaintiffs must plead more than labels

and conclusions.  They must allege sufficiently "plausible" facts, not merely "conceivable" facts.  *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 553-556, 570 (2007).  As the Supreme Court recently made

clear in *Ashcroft v. Iqbal*:

> [T]he tenet that a court must accept as true all of the allegations
> contained in a complaint is inapplicable to legal conclusions.
> Threadbare recitals of the elements of a cause of action, supported by
> mere conclusory statements, do not suffice.
>
> *   *   *
>
> [W]here the well-pleaded facts do not permit the court to infer more
> than the mere possibility of misconduct, the complaint has alleged –
> but it has not shown – that the pleader is entitled to relief.

129 S. Ct. 1937, 1949-50 (2009) (citations and internal quotations omitted).  That is precisely the situation here.

### B.      The Claim Under § 2333 of the Antiterrorism Act Should Be Dismissed

Recognizing that the First Amended Complaint fails to allege facts as opposed to legal conclusions to support the cause of action under 18 U.S.C. § 2333, Plaintiffs have taken the self-described "extraordinary measure (in the context of a motion to dismiss)" of submitting the Shaya Declaration. (Opp'n Mem. at 3.)  However, it is axiomatic that Plaintiffs cannot rely on allegations outside the First Amended Complaint in defending against the motion to dismiss.  *See Friedl v. City of N.Y.*, 210 F.3d 79, 83-84 (2d Cir. 2000) ("a district court errs when it considers affidavits, and exhibits . . . in ruling on a 12(b)(6) motion to dismiss" (citation and internal quotations omitted)).  Accordingly, the Court may not consider the Shaya Declaration in response to this motion.  *See Fonte* v. *Bd. Of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988).[4]

Furthermore, with or without the Shaya Declaration, Plaintiffs offer no facts to satisfy the elements of knowledge and causation.[5]  As pointed out in our moving memorandum, Plaintiffs fail to allege facts showing that LCB had *actual knowledge* that its customer, the Shahid Foundation, was itself engaged in terrorist activities or was an integral part of Hezbollah.  (Moving Mem. at 13-14.)  Significantly, the Shahid Foundation was not designated as a terrorist organization by the United States, Israel or any other country during the relevant period covered by the First Amended

---

[4]      Nor should this Court convert this case to a motion for summary judgment, which has not been requested by Plaintiffs.  The Shaya Declaration is very limited in scope and merely recites the same conclusory allegations found in the First Amended Complaint, providing no additional support for Plaintiffs' arguments.  *See Amaker v. Weiner*, 175 F.3d 48, 51 (2d Cir. 1999) (holding that conversion was unnecessary as information in an affidavit was limited in scope and had no impact on court's 12(b)(6) analysis).  Furthermore, conversion would result in prejudice to LCB, which has not submitted any materials outside the pleadings on its Rule 12(b)(6) motion.  *See D.D. v. N.Y. City Bd. of Educ.*, No. 03 Civ. 2489, 2004 WL 633222, at *16 (E.D.N.Y. Mar. 30, 2004) (refusing to convert a 12(b)(6) motion to dismiss where the other party filed no outside materials).

[5]      Even under the analysis adopted by the Seventh Circuit in *Boim v. Holy Land Found. for Relief and Dev.*, relied upon by Plaintiff but which this Circuit has never adopted, liability under § 2333 requires intentional, knowing conduct.  549 F.3d 685, 692-93 (7th Cir. 2008).  As stated by Judge Posner, for a donor to an organization to be liable the donor must "know the character of that organization." *Id.* at 695.  Plaintiffs in this case have failed to make such a showing with respect to LCB.

Complaint.  *Id.*  Nor are facts alleged showing that any banking service allegedly provided by LCB was a substantial causative factor with respect to the rocket attacks that injured Plaintiffs.  (Moving Mem. at 12.)  Plaintiffs' conclusory allegations with respect to knowledge and causation are thus nothing more than a "formulaic recitation of the elements" of a § 2333 claim, and an "extended chain of inferences," requiring dismissal of this claim.  *Iqbal*, 129 S. Ct. at 1951; *see also Rothstein v. UBS AG*, No. 08 Civ. 4414, 2009 WL 2581610, at *2-3 (S.D.N.Y. Aug. 23, 2009).

### C.  The Claim for Aiding and Abetting a § 2333 Violation Should be Dismissed

Plaintiffs' claim for aiding and abetting terrorism similarly fails because the First Amended Complaint's recitation of the elements of knowledge, intent and substantial assistance are purely conclusory and lacking any factual basis.  (Moving Mem. at 14-15.)[6]

Although Plaintiffs acknowledge the plethora of case law cited in LCB's moving memorandum holding that the provision of ordinary banking services cannot constitute substantial assistance, Plaintiffs rely on a few cases decided before the Supreme Court's decisions in *Twombly* and *Iqbal,* and one decided after *Twombly*, to support their contention that providing banking services to the Shahid Foundation may constitute substantial assistance to Hezbollah.  (Opp'n Mem. at 19.) The one post-*Twombly* case, *Mazzaro de Abreu v. Bank of Am. Corp.*, No. 06 Civ. 673, 2008 WL 3171560 (S.D.N.Y. Aug. 6, 2008), upheld a complaint for aiding and abetting fraud against a financial institution based on the pleading of particularized facts that the bank knowingly transferred funds on repeated occasions to improper transferees, which the court found could not be considered ordinary and routine banking transactions.  No such particularized facts are alleged in the First Amended Complaint here.  With respect to the pre-*Twombly* cases cited by Plaintiffs, as the Court held in *Linde v. Arab Bank, PLC*, pre-*Twombly,* a court could dismiss a complaint "only if it is clear that no relief

---

[6]      As this Court recently noted in *UBS AG*, No. 08 Civ. 4414, 2009 WL 2581610, at *3 n.2, the Seventh Circuit has held that there is no cause of action for aiding and abetting under § 2333(a).  *See Boim*, 549 F. 3d at 689.

could be granted under any set of facts that could be proved consistent with the allegations." 384 F. Supp. 2d 571, 580 (E.D.N.Y. 2005) (citing *Hishan v. King & Spalding*, 467 U.S. 69, 73 (1984)). Post-*Twombly*, Plaintiffs are required to assert "plausible facts" establishing that the Bank provided banking services to the Shahid Foundation with knowledge that its transfer of funds to that account would, in turn, result in a further transfer of those funds (in a manner not identified in the First Amended Complaint) to Hezbollah, and then, in turn, be used by Hezbollah to sponsor terrorist acts, and that the Bank intended to sponsor such terrorist acts. *See UBS AG*, No. 08 Civ. 4414, 2009 WL 2581610, at *3 (and cases cited therein). As discussed *supra*, no such facts are alleged here. As in *Twombly, Iqbal* and *UBS,* the non-conclusory, factual allegations of the pleading, that LCB provided banking services for the Shahid Foundation (which was not then on any list), is completely consistent with lawful conduct even assuming, *arguendo,* that those services included facilitating the wire transfer of dollars into the Shahid account, and does not "plausibly establish," without additional facts that are not pled, that the account or services provided by LCB were for an improper purpose. *See Iqbal*, 129 S. Ct. at 1950-51; *UBS AG*, No. 08 Civ. 4414, 2009 WL 2581610, at *2-3 ("[C]ash dollars have multiple uses besides funding terrorism").

Conceding the weakness of their pleading of substantial assistance, Plaintiffs now ask this Court to construe their aiding and abetting claim as one for "acting in concert" with Hezbollah within the purview of § 876(a) of the Restatement (Second) of Torts. Plaintiffs' belated attempt to construe their claim as a conspiracy claim does not save it, however, as the First Amended Complaint utterly fails to set forth the elements of a conspiracy. There are no facts alleged evidencing that LCB had any agreement (much less a corrupt agreement) with Hezbollah, or any agreement with its own customers other than to perform routine banking services. Providing routine banking services to a customer no more constitutes a "corrupt agreement" than it does substantial assistance. *See*

*Daventree*, 349 F. Supp. 2d at 757; *Mastafa v. Austl. Wheat Bd. Ltd.*, No. 07 Civ. 7955, 2008 WL 4378443, at \*4-5 (S.D.N.Y. Sept. 25, 2008); *Stutts v. De Dietrich Group*, No. 03 Civ. 4058, 2006 WL 1867060, at \*14 (E.D.N.Y. June 30, 2006).[7]

**D.    The Act of War Exclusion Applies to the § 2333 Claims**

As we argued in our moving brief, Plaintiffs' claims arise out of an armed conflict between two nations.  The rocket attacks described in the First Amended Complaint all took place during the Second Lebanon War between Lebanon and Israel.  Plaintiffs argue, incorrectly, that, for purposes of the act of war exception under the ATA, an armed conflict can never involve attacks on civilians.  However, the two cases relied on by Plaintiffs involved organizations not part of any recognized government, *Klieman v. Palestinian Auth.*, 424 F. Supp. 2d 153 (D.D.C. 2006) and *Sokolow v. Palestine Liberation Org.*, 583 F. Supp. 2d 451 (S.D.N.Y. 2008), as opposed to a recognized government such as Lebanon.[8]  Moreover, both of these cases addressed the ATA's act of war exception under 18 U.S.C. § 2331(4)(C) (for claims arising out of an "armed conflict between military forces of any origin"), whereas LCB relies on the act of war exception under Section 2331(4)(B), for claims arising out of an "armed conflict . . . between two or more nations."  The legislative history of Section 2331(4)(B) is clear that injuries incurred by civilian non-combatants under such circumstances are not actionable.  H.R. Rep. No. 102–1040, at \*7 (Oct. 6, 1992); S. Rep. No. 102-342 (Jul. 27, 1992); *see*, *e.g.*, *Stutts*, No. 03 Civ. 4058, 2006 WL 1867060, at \*4.

---

[7]       The Plaintiffs' argument in their brief that less "substantial" assistance needs to be shown "where the primary tortfeasor is subject to a strict regimen of sanctions which limit its ability to obtain banking services" misses the mark.  (Opp'n Mem. at 19.)  In fact, the element of substantial assistance takes on added significance where, as here, the plaintiff fails to show a causal link between the alleged unlawful act, *i.e.*, the rocket attacks, and the defendant's participation in the commission of that act.  As the court held in *Stutts*, where the "plaintiff fails to show a causal link . . . "it is more difficult to demonstrate that defendants knowingly and substantially assisted in the unlawful activity."  No. 03 Civ. 4058, 2006 WL 1867060, at \*6 (citation omitted).

[8]       As described in Defendant's moving brief, statements by members of the Israeli Government show that Plaintiffs' claims here involve military action by a recognized government in Lebanon, and that acts of Hezbollah and the Lebanese government cannot be separated.  (Moving Mem. at 16-17.)

**E.      The Aiding and Abetting a Violation of the ATCA Claim Should Be Dismissed**

For the same reasons discussed in Part C above, Plaintiffs' claim for aiding and abetting a violation of the Alien Tort Claims Act (28 U.S.C. § 1350) fails.  As noted, other than alleging the existence of certain customer accounts, there are no factual allegations demonstrating that any funds from these accounts ever went to Hezbollah, that monies from these accounts were ever used to commit an illegal act, or that funds were ever transferred from these accounts around the period of the rocket attacks in order to substantially assist Hezbollah.  In short, the pleading is devoid of any factual showing that the maintenance of these accounts, or any transfers involving them, "ha[d] a substantial effect on the perpetration of the crime."  *Khulumani v. Barclay Nat'l Bank Ltd.*, 504 F.3d 254, 277 (2d Cir. 2007).[9]

The pleading is equally deficient in alleging any facts demonstrating that the LCB or any of its officers acted "with the purpose of facilitating the commission of that crime."  *Id.*  Plaintiffs simply ignore Judge Katzmann's discussion of the Nuremberg *Ministries Case*.  As Judge Katzmann found, the Nuremberg tribunal declined to impose aiding and abetting liability on a bank officer who was alleged to have "made a loan, knowing or having good reason to believe that the borrower w[ould] use the funds in financing enterprises [conducted] in violation of either national or international law," but who "was not proven to have made the loan with the purpose of facilitating the enterprises' illegal activities."  *Id.* at 276.  There are no such allegations in the pleading here.

**F.      The Claims Under Israeli Law Should Be Dismissed**

With respect to the Plaintiffs' argument that the First Amended Complaint states a cause of action under Israeli tort law, LCB adopts the arguments of Amex Bank in their moving and reply affidavits.

---

[9]      Plaintiffs correctly note that the Second Circuit held in *Khulumani* that a plaintiff may plead a theory of aiding and abetting liability under the ATCA, but Plaintiffs simply ignore the teachings of Khulumani as discussed in our Moving Memorandum, at 17-20.

## CONCLUSION

For all of the foregoing reasons, and for the reasons in our moving brief, the Amended Complaint should be dismissed with prejudice.


Dated:  New York, New York
        September 3, 2009

                                        Respectfully submitted,


                                        ____/s/ Jonathan D. Siegfried_____
                                        Jonathan D. Siegfried
                                        Lawrence S. Hirsh

                                        DEWEY & LEBOEUF LLP
                                        1301 Avenue of the Americas
                                        New York, NY  10019
                                        Telephone:  (212) 259-8000
                                        Facsimile:   (212) 649-9348

                                        Attorneys for Defendant Lebanese Canadian Bank,
                                        S.A.L.