UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LICCI, et al., | |
| Plaintiffs, | |
| v. | Case No.: 08 Civ. 7253 (GBD)(MHD) |
| AMERICAN EXPRESS BANK LTD., et al., | |
| Defendants. | |

## SUPPLEMENTAL DECLARATION OF DR. ISRAEL LESHEM

I, DR. ISRAEL LESHEM, declare:

1.  I make this supplemental declaration in support of American Express Bank Ltd.'s ("American Express Bank") motion to dismiss the complaint. In preparing this declaration, I have reviewed plaintiffs' memorandum of law and the accompanying declaration of Prof. Ariel Porat ("Porat Declaration"), filed on July 6, 2009, in opposition to American Express Bank's motion.

2.  After reviewing the Porat Declaration and the relevant Israeli statutory provisions and case-law referred to in the Porat Declaration, my professional opinion remains that the Amended Complaint would fail to state a claim of negligence against American Express Bank under Israeli law.[1]

---

[1] In note 5 of the Porat Declaration, Prof. Porat argues that an Israeli court would apply Israeli law in this case, citing C.A. 11019/08 *Palestinian Authority et al. v. Azuz* (April 14, 2009), and to Civ. Action 5984-08-07 (Central District) *Azuz v. Palestinian Authority et al.* (November 23, 2008). Neither decision supports plaintiffs' position. In *Azuz*, the court applied Israeli law where the plaintiff argued that the defendants were *vicariously liable* for a terrorist act which occurred in Israel (a suicide booming in Tel-Aviv); the relevant conduct was that of the defendant's agent *in Israel*. Unlike in *Azuz*, plaintiffs in this case allege that American Express Bank's

3. As detailed in my first declaration (Leshem ¶8), and as conceded in the Porat Declaration (Porat, ¶22) there is no Israeli court decision which directly addresses the circumstances described in the Amended Complaint. As detailed below, in my opinion the Porat Declaration is asking this Court to expand upon Israeli negligence law—not apply the law as it exists. The Porat Declaration wrongly interprets Israeli case law and suggests far-reaching conclusions that are not supported by the authorities it cites.

   A.  *Duty of Care*: **For Policy Reasons, Israeli Courts Would Not Impose Upon Banks a Duty of Care to Non-Customers In a Case Such as This One**

4. In discussing a bank's duty of care, the Porat Declaration (at ¶43) relies primarily on Cr. A. 3827/06 *Doe v. The State of Israel* (March 27, 2007), a criminal case in which the Israeli Supreme Court discussed the passage of an Israeli criminal statute targeting the intentional funding of terrorism. In *Doe* a professional money changer in the Gaza Strip was convicted for providing service to an unlawful organization. However, and contrary to the impression the Porat Declaration conveys, in the specific circumstances of *Doe*, the defendant transferred money from Dubai (with the assistance of his brother-in-law) to the Hamas organization by orders of the head of the military branch of the Hamas organization in the Khan Yunis refugee camp in the Gaza Strip, and after his brother-in-law's activity in Dubai was exposed, the defendant in *Doe* traveled there himself to continue the money transfers to the Gaza Strip. Thus, the circumstances of the *Doe* decision reflect a set of very aggravating facts, quite different from the allegations of the Amended Complaint.

5. *Doe* therefore has nothing to do with duties of care, negligence, or any policies relating to either. Indeed, the citation from *Doe* in the Porat Declaration was the court's

---

challenged conduct occurred in New York, and does not argue that Hizbollah was an agent of American Express Bank (which would be an absurd and frivolous allegation).

response to the defendant's claim that his acts should be regarded as minor and the explanation given by the court for the relatively long prison sentence given in that case. Nonetheless, Prof. Porat relies on *Doe* to argue that because preventing the funding of terrorism is important to Israel, the Israeli courts would expand a bank's duty of care to include preventing terrorist acts against non-customers half a world away from the banks operations. This is a far-reaching argument, and Prof. Porat's attempt to stretch this criminal case to such an extent simply highlights the absence of <u>any</u> favorable civil decision by an Israeli court that would support plaintiffs' position.

6.   Furthermore, the Porat Declaration fails to address the relevant Israeli legislation and its effect on the policy concerns referred to by the Supreme Court in *Doe*. Israeli criminal law requires, with respect to the criminal offences relating to money laundering and terror financing, that the defendant have **actual knowledge**. This distinction is further highlighted by a recent decision of the Israeli Supreme Court in HCJ 1169/09 *The Legal Forum for Eretz Israel v. The Prime Minister and Others* (June 15, 2009), in which the petitioner asked the Supreme Court to annul a decision of the government of Israel to permit the transfer of 175,000,000 NIS from a Palestinian bank in Judea and Samaria to the Gaza Strip for payments of salaries to employees of the Palestinian Authority. In the petition itself the petitioner claimed, among other claims, that the decision to transfer the money to the Gaza Strip is unreasonable since the transfer of large amounts of money to the Gaza Strip, governed by Hamas, raises a high probability that the money will end up in the hands of Hamas, the terror organization controlling the Gaza Strip. In its decision rejecting the petition, the Supreme Court cited a relevant provision from the *Doe* decision, but then went on to say that: "The prohibitions on activities in property for the purpose of terror and on activities in 'terror property' require a mental element of awareness to the fact that the prohibited activities are aimed at facilitating

terrorist acts or financing the activity of a terror organization. The Prohibition on Terror Financing Act was not intended to apply to government activities when duly authorized to perform these activities in the interest of the State of Israel and in order to carry out Israel's humanitarian obligations towards the Palestinian population." (at ¶16). The Supreme Court also added that "A mere suspicion that the money that was designated for a legitimate purpose will be used indirectly for purposes the Prohibition on Terror Financing Act was aimed to prevent is not enough to include these transfer within the prohibitions of the Act." (id, at ¶18).

7. Even if the policy consideration discussed in *Doe* were to be given any weight by an Israeli court in this case, it would be only one policy consideration among many others, as the Porat Declaration concedes: "The policy consideration weighed by the Israeli courts in deciding whether a duty of care exists are inter alia: the freedom of activity of potential defendants; the protection of both the person and the property of potential plaintiffs; the financial burden that would be placed upon potential defendants if a duty of care were to be imposed..." (Porat, ¶31 and see also Leshem, ¶11)).

8. The Porat Declaration discusses the issue of the scope of banks' liability in detail, and refers to seven different decisions of the Supreme Court in support of the proposition that since the 1990's the Supreme Court broadened the scope of negligence liability imposed on banks, suggesting that this Court should further expand its scope. To the contrary, an analysis of these decisions leads to a conclusion that the Israeli Supreme Court has set clear limits to the liability of banks for failing to prevent criminal activities directed at their clients and at third parties. The Israeli Supreme Court was willing to recognize such broadened liability only in special and unique circumstances, or in cases involving special public functions and particular legislation.

9.    For example, both C.A. 5379/95 *Sahar Insurance Co. Ltd. v. Israel Discount Bank*, P.D.

      51(4), 464 and C.A. 168/86 *Bank Igud Israel Ltd. v. Le Coudier Ltd.*, P.D. 42(3) 77

      involved acts or omissions of banks while performing public functions. In the *Sahar*

      decision the bank was responsible for registration of motor vehicles and failed to

      identify the person that appeared before the bank teller, and in the *Bank Igud* decision,

      the bank fulfilled a special function for trade in diamonds on behalf of the Central Bank

      of Israel. Thus, it is clear that no conclusion regarding banks' duty of care generally can

      be drawn from them.    Indeed, Prof. Porat himself wrote regarding the *Bank Igud*

      decision that:

> "[T]he circumstances in Le Coudier [the *Bank Igud* decision] were
> unique, and of course we should not conclude from the decision
> that any time a bank is involved in a transaction between one of its
> customers and a third party, the bank would owe a duty of care to
> that third party. It is important to stress, as the Supreme Court did,
> that the bank played a special role in diamond trade and served as
> the Central Bank of Israel's proxy in this matter."

      *See* A. Porat, LIABILITY OF BANKS FOR NEGLIGENCE -- RECENT DEVELOPMENTS, IN

      YEARBOOK OF ISRAELI LAW, 5752-5753 (Israeli Bar -- Tel Aviv District), A. Rosen-Zvi

      ed. (5754) at 342) (emphasis added).

10.   The Porat Declaration also relies on C.A. 5893/91 *Tfachot Mortgage Bank Ltd. v.*

      *Tsabach*, P.D. 48(2) 573 (involving a claim by creditors of a bankrupt construction

      company against a bank for negligence in not disclosing to the plaintiffs that the

      construction company was in financial difficulties prior to signing their mortgage

      agreements with the bank), and to C.A. 748/88 *Bank North America v. Rechtshefer*,

      P.D. 45(4) 696, (in which a branch manager of the bank embezzled monies from

      plaintiff's account).    Neither decision discusses a bank's duty of care towards non-

      customers, but rather dealt with the banks' duties towards its customers in special

circumstances, and discussed in length the fiduciary duties of the bank towards its customer. Thus, the decisions in the *Tfachot* and in *Bank North America* also cannot serve as a relevant case law in discussing the bank's duty of care to non-customers.

11.  In C.A. 542/87 *Credit and Savings Fund v. Awad*, P.D. 44(1) 422, the Supreme Court ruled that a bank owed a duty of care to non-customers who received and attempted to cash certified checks (bank checks) which were issued by the bank and stolen from it. The court found that the bank in that case was negligent in not reporting the theft to the police (although eventually holding that plaintiffs had contributory fault for the damage and ordering the bank to pay only 50% of one plaintiff's damages and no damages to the other plaintiff). The *Credit and Savings Fund* decision focused on the special characteristics of commercial papers, on the nature and the special attributes of certified checks (referring to Section 3-406 of the United States' Uniform Commercial Code), and how unlike regular checks, bank checks are considered as cash equivalent. For those reasons, the court held that banks should take additional precautions and be held to a higher standard of care in the cases involving bank checks. No such special circumstances exist in our case, and therefore, no higher standard of care should be concluded to exist.

12.  Prof. Porat also attempts to distinguish two decisions relied on in my first Declaration: C.A. 636/89 *Kecholi v. Barclays Discount Bank*, P.D. 45(3) 265 (and its subsequent C.F.H. 1740/91 *Barclays Discount Bank v. Kostman*, P.D. 47(5) 31), and C.A. 8068/01 *Ayalon Insurance Co. Ltd. v. The Executor of the Estate of Haya Ofelger*, P.D. 59(2), 349. Porat Declaration at ¶¶ 64-68. In the First Leshem Declaration, I explained that "in light of the holdings in *Ayalon* and *Barclays*, an Israeli Court would reject plaintiffs' negligence claim against American Express Bank." First Leshem Decl. at ¶17. Nothing in the Porat Declaration changes this analysis.

13. First, the Porat Declaration argues that the *Ayalon* and *Barclays Bank* decisions are irrelevant because they involve economic rather than physical harm, and "the Israeli Supreme Court has consistently imposed a higher duty of care in cases involving personal injuries than in cases involving financial harm." (Porat Decl. at ¶ 63). However, all three decisions Prof. Porat cites in support of this argument are irrelevant to the question at hand. C.A. 8199/01 *Estate of Miro v. Miro*, P.D. 57(2) 785 discusses the duty of care of a policeman to attend to his personal weapon, C.A. 8526/96 *State of Israel v. Doe* (June 23, 2005), involves medical treatment malpractice, while C.A. 1639/01 *Kibbutz Maayan Tsvi v. Krishov*, P.D. 58(5) 215 discusses the duty of care of an employer to protect its employees against the possible harms of asbestos. Thus, these decisions suggest that a court would impose a higher duty of care when personal injuries are expected as the natural outcome of the negligence (e.g. the gun going off, the medical treatment going wrong without proper supervision, and the asbestos eventually causing cancer). However, nothing in these decisions suggests that this argument would apply in all cases where personal injuries can be expected, even as a remote possibility.

14. Second, the Porat Declaration argues that "*Ayalon* and *Barclays* dealt with the question of when a bank's duty of care... requires it to take steps to investigate... This question is totally irrelevant to a case where the bank already had actual knowledge that the transaction is unlawful." (see ¶ 60). The Porat Declaration relies heavily on the conclusory allegations made by the plaintiffs in the Amended Complaint: (1) that American Express Bank had actual knowledge that it was processing wire transfers for the benefit of Shahid; (2) that American Express Bank had actual knowledge of Shahid's alleged affiliation to Hizbollah; and (3) that American Express Bank's conduct breached certain statutory and regulatory provisions. Of course, this argument fails

because Prof. Porat simply accepts plaintiffs' conclusory allegations of knowledge, and assumes (incorrectly) that these allegations would also be accepted as true by this Court. As discussed in the Memorandum of Law and Reply Memorandum of Law in Support of American Express Bank's Motion to Dismiss, even if Israeli law were to apply, plaintiffs would need to satisfy the pleading standards recently clarified in the U.S. Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009). Neither I, nor Prof. Porat can opine on the adequacy of plaintiffs allegations regarding American Express Bank's knowledge in light of *U.S.* pleading standards.[2]

15. Finally, the Porat Declaration argues that the First Leshem Declaration mischaracterizes the decisions in *Ayalon* and *Barclays* since "what *Ayalon* actually held was that a bank will be liable for the beneficiary of a trust or fiduciary account, if it ignored suspicious or irregular circumstances." (see ¶68). In fact, the Israeli Supreme Court clearly stated in the *Ayalon* decision that as a general matter, a bank's duty of care towards non-customers should be very narrow. Furthermore, in both the *Ayalon* and the *Barclays* decisions the Supreme Court specifically addressed fiduciary accounts, which are created in favor of the beneficiary of a trust. Although the trustee is the formal customer of the bank, the beneficiaries of the account should be considered as equitable customers or quasi-customers and not as regular unrelated third parties, since they have a direct legal interest in the fiduciary account. No such circumstances are alleged to exist in this case. Plaintiffs do not allege a connection to or interest in the alleged account, and thus the scope of American Express Bank's duty of care towards plaintiffs

---

[2] The Memorandum of Law and Reply Memorandum of Law in Support of American Express Bank's Motion to Dismiss explain why plaintiffs' allegations do not satisfy applicable U.S. pleading standards. For that reason, this declaration does not address all of the arguments made in the Porat Declaration, which relies on the assumption that plaintiffs' allegations are adequately pleaded.

should be even narrower than the scope established according to the precedents of *Ayalon* and *Barclays*.

16. Thus, it is clear from reading the relevant case law that most of the decisions referred to in the Porat Declaration cannot serve as relevant precedents for the facts alleged in the Amended Complaint. I therefore remain of the opinion that the *Ayalon* and *Barclays* decisions can and should serve as guiding precedents in our case.

    **B.**    *Causation*

17. Plaintiffs also fail to properly allege causation, which is a required element of a negligence claim under Israeli law. The Porat Declaration is inaccurate on the issue of causation for several reasons. First, the Porat Declaration refers to irrelevant precedents that have no bearing to the facts alleged in the Amended Complaint. Second, the Porat Declaration assumes, without any basis, that the general "but for" causation test should not be applied to the facts alleged in the Amended Complaint. Third, the Porat Declaration asserts, without any basis, that the facts alleged in the Amended Complaint serve as a sufficient cause for the damage caused to plaintiffs.

18. The Porat Declaration asserts that "under Israeli law when the harm could have been caused by one of several sufficient causes, a defendant who is responsible for creating one of the possible causes of harm will be held liable for the entire harm unless he proves that the harm resulted in whole or in part from one of the other possible causes." (at §86). To support this conclusion the Porat Declaration refers to two Supreme Court decisions: C.A. F.H. 15/88 *Melech v. Kornhauser*, P.D. 44(2) 89, and C.A. 285/86 *Nagar v. Vilensky*, P.D. 43(3) 284. However, both the *Melech* decision and the *Nagar* decision dealt with a situation where it was already established that the actions of the defendants caused the plaintiff harm, and it was unclear what part of the harm was

exactly caused by the defendant. In our case, it is not even clear that American Express Bank's alleged behavior caused any part of the damage, and thus, it becomes clear that the *Melech* and *Nagar* decisions should not and cannot serve as guiding precedents in our case.

19.    In his discussion of the *Melech* and *Nagar* decisions in A. Porat, Collective Liability in Tort Law (1994) 23 Mishpatim 311, 318 (Hebrew), Prof. Porat notes that "despite the [Israeli] Supreme Court's described tendency for some flexibility in regards to factual causation, it is important to stress that: the Court's willingness to alleviate the task faced by the plaintiff in this matter, **is limited to those cases where it has been proven that the defendant (or defendants) was at fault and caused at least part of the damage.** Under such circumstances the Court was willing to 'risk' holding a tortfeasor liable for damage that they might not have caused. On the other hand, if it was not proven by the preponderance of evidence that the defendant was at fault, the claim was dismissed." (emphasis added).[3]

20.    In addition, in both the *Melech* and the *Nagar* decisions a handful of tortfeasors caused the damage (3 dogs in Melech, 2 medical procedures in *Nagar*). Thus, the circumstances of those cases were very different than those alleged in the Amended Complaint. According to the Amended Complaint, American Express Bank was not one of an identified handful of tortfeasors that allegedly caused plaintiffs' damage, but rather one of numerous unidentified causes (all causes which "enabled" Hezbollah's attacks on Israel). There is nothing in the *Melech* or *Nagar* decisions to suggest that the

---

[3] It should be mentioned that unlike American Law, Israeli Law has not yet recognized the concept of collective liability (see A. Porat, Collective Liability in Tort Law (1994) 23 Mishpatim 311, 314 (Hebrew), and Ariel Porat & Alex Stein, TORT LIABILITY UNDER UNCERTAINTY (Oxford University Press, 2001), p. 131). In the absence of collective liability theories, the plaintiff is required to show that each defendant has in fact caused harm.

court will apply them in circumstances where numerous possible tortfeasors are involved.

21. Furthermore, and even if a court would come to the conclusion that the *Melech* and *Nagar* decisions can support the notion of applying a different causation test in cases of multiple unidentified causes (unlike several identified causes), the Porat Declaration assumes that the "sufficient cause" test should be applied to the circumstances alleged in the Amended Complaint without providing an explanation to this assumption. However, the circumstances alleged in the Amended Complaint are insufficient for this alternative test to apply.

22. The "sufficient cause" test is an exception to the standard factual causation test (the "but for" test). It is applied in cases where the damage is indivisible (i.e., there is no way to determine which part of the damage was caused by each of the possible causes of the damage), and it is up to the plaintiffs to argue and show that the damage is in fact indivisible. It should be noted that in *Nagar* the Israel Supreme Court held that the "sufficient cause" test should only be applied in cases where the damage is indivisible **and** the defendant's negligence is one of the causes for plaintiff's inability to prove causation under the standard "but for" test.

23. Plaintiffs do not allege in the Amended Complaint that these special circumstances exist in our case, and therefore, Porat's assumption that this test would be applied should be rejected.

24. The main reason for rejecting this assumption is that plaintiffs did not allege in the Amended Complaint that there were several possible causes, apart from American Express Bank's alleged acts, to the damage and what are those possible causes; they did not allege that the damage they suffered is indivisible; they did not allege that it is

impossible to prove which part of the alleged damage was caused by the alleged acts of American Express Bank; and plaintiffs certainly did not allege that their inability to prove causation under the standard "but for" test was caused by American Express Bank's negligence.

25. Furthermore, this assertion is inaccurate in our case since it already assumes that the provision of wire transfers to Shahid were in and by themselves a sufficient cause for the damage to plaintiffs. The Amended Complaint alleges only that the provision of wire transfers **enabled** Hizbollah to carry out its rocket attacks, but does not state the facts that can substantiate that the provisions of wire transfers caused or were a sufficient cause for the damage eventually caused to plaintiffs. As detailed in American Express Bank's motion to dismiss, the Amended Complaint does not say anything about the amount, timing or pattern of the alleged transfers that would make them "sufficient cause" for the plaintiff's alleged damages.

26. Absent these allegations, it is impossible to determine that the "sufficient cause" test should apply instead of the standard "but for" test, and therefore, absent any alleged facts to substantiate the standard "but for" test, it is impossible to establish causation between the alleged acts and the damage.

27. Furthermore, in explaining the "sufficient cause" test, Israeli legal scholars state that "a person's negligent act will be considered the factual cause of an event if it [the act] was necessary, or would have been necessary [to cause the event], absent a separate set of other factors which could, by itself, cause the same result. In other words: the "but for" test is not the only test [for factual causation]. Instead, the sufficiency of the negligent act to cause the harm as a necessary factor amongst a set of factual factors may be used [as an alternative factual causation test]." (Y. Engelrad, A. Barak, M. Heshin, Tort Law:

THE GENERAL THEORY OF TORTS, ed. G. Tadesky, 2nd Edition, Jerusalem, Magnes Press (1977), P. 194).

28.  The above suggests that in order to meet the sufficient cause test, plaintiffs must establish that American Express Bank's alleged acts could have, in and by themselves, caused the damage to plaintiffs. Without establishing this, Porat's assumption that American Express Bank's alleged acts are a sufficient cause for plaintiff's damage would fail.

29.  Even using the alternative "necessary factor amongst a set of factual factors" definition suggested by Engelrad above, the Israeli Court is likely to turn to other Supreme Court rulings for an answer. In cases involving issues of causation where the negligent behavior merely enhanced the risk for damage (C.A. 6643/95 *Jonathan Cohen v. The General Sick's Fund of the Federation of Workers in Israel*, P.D. 53(2) 680; see also C.A. 7375/02 *Carmel Hospital, Haifa v. Eden Malul*, P.D. 60(1) 11 currently in Further Hearing by the Supreme Court) the Supreme Court stated: "It appears that the approach that supports establishing an independent cause of action when it is impossible to prove that the entire damage was caused by the tortious act according to the regular balance of probabilities, although just in certain circumstances, demands establishing limitations on the liability of the tortfeasor. Without any limitations regarding the measure of the risk enhanced that should be acknowledged in relation to the overall damages, an overly broad gap may be opened in recognizing liability that may cripple the current system based on proving causation between the negligence of the tortfeasor and the damage. Therefore, even if we accept the approach that as a general rule the cause of action of enhancing the risk of an illness should be acknowledged as an independent cause of action, **there is still a need for evidence that the enhancement of the risk that was**

**caused by a tortious act, had an effect in a measure that justifies imposing liability on the tortfeasor**." (emphasize added).

30. Thus, even if the definition suggested by Engelrad that the tortious act could have, in and by itself, caused the damage to plaintiffs will be rejected, the necessary cause definition and the Supreme Court's ruling in the *Jonathan Cohen* decision suggest that plaintiffs must establish that the tortious act had an effect in a measure that justifies deviation from the regular standard of proof.

31. Since the Amended Complaint is completely silent on this issue - it does not allege that American Express Bank's alleged acts could have, in and by themselves, caused the damage to plaintiffs, it does not allege that American Express Bank's alleged acts had an effect in a measure that justifies deviation from the standard causation test, or even that the funds allegedly transferred by American Express Bank comprise a substantial part of the Hizbollah funds - Porat's assumption that the sufficient cause test is met is baseless and should be rejected.

32. Furthermore, even according to Prof. Porat himself (see: A. Porat, TORTS, IN YEARBOOK OF ISRAELI LAW, 5751 (Israeli Bar – Tel Aviv District), A. Rosen-Zvi ed. (5752) at 250), one of the underlying reasons for applying the alternative "sufficient cause" test is that in cases where the question of causation is ambiguous courts should prefer the interest of the plaintiff to receive full compensation for his damage over the interest of the defendant not to pay more than the damage it hypothetically caused.

33. However, applying this reason to the facts alleged in the Amended Complaint is problematic, since the Hizbollah probably received its financing from hundreds or even thousands of different sources, from which the money allegedly transferred by American Express Bank serve only a minor insignificant portion. If this is indeed the

case, it would become more difficult to apply the "sufficient cause" test, since it is questionable if in such circumstances the court would still find that plaintiffs' interests should be preferred over those of defendant American Express Bank.

34. A second reason for choosing the alternative causation tests referred to by Prof. Porat in A. Porat, TORTS, IN YEARBOOK OF ISRAELI LAW, 5751 (Israeli Bar – Tel Aviv District), A. Rosen-Zvi ed. (5752) at 249-250 (although Prof. Porat himself states that this reason was not explicitly referred to by the Israeli courts) is the distribution of damage reason. According to Prof. Porat, the issue of distribution of damage played a key role in the process that eventually led to the *Nagar* decision.

35. In the circumstances alleged in the Amended Complaint, this rationale should compel the opposite result here (i.e. towards using the standard "but for" test over the "sufficient cause" test). Most, if not all, of the plaintiffs received, or are eligible to receive, compensation from the State of Israel for their damages under the Compensation for the Casualties of Hostilities Law, 5730-1970. In these circumstances, it is clear that the State of Israel is a better distributor of damage than American Express Bank or than plaintiffs for that matter. Therefore, this reasoning suggests that an Israeli court would apply the standard causation test rather than the special "sufficient cause" test.

36. Therefore, plaintiffs in our case still cannot, even according to the tests presented in the Porat Declaration, establish factual causation between American Express Bank's alleged actions and the damage caused to plaintiffs.

\* \* \*

37. For these reasons, I continue to stand by the opinions expressed in my earlier Declaration. An examination of the facts alleged in the Amended Complaint, and of the

legal analysis introduced in the Porat Declaration, lead to the conclusion that the Amended Complaint cannot state a claim under Israeli law, and should be therefore rejected.

I declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed on September 2, 2009
at Ramat-Gan, Israel

_____
Israel Leshem