USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 31 MAR 2010

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
YAAKOV LICCI, a minor, by his father and natural
guardian ELIHAV LICCI and by, his mother and natural
guardian YEHUDIT LICCI, *et al.*,

                         Plaintiffs,

         -against-

AMERICAN EXPRESS BANK LTD., and
LEBANESE CANADIAN BANK, SAL,

                         Defendants.
------------------------------------------------------------x

                    MEMORANDUM DECISION
                       AND ORDER
                       08 CV 7253 (GBD)

GEORGE B. DANIELS, District Judge:

       Defendants, American Express Bank Ltd. ("Amex Bank") and the Lebanese Canadian

Bank, S.A.L. ("LCB"), have each moved to dismiss the amended complaint, pursuant to

Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted.  Defendant

LCB also seeks dismissal, pursuant to Fed.R.Civ.P. 12(b)(2), for lack of personal jurisdiction.

The defendants' respective motions are both granted.

       Plaintiffs commenced this action "under the Antiterrorism Act, 18 U.S.C. § 2331 *et seq.*,

the Alien Tort Claims Act, 28 U.S.C. § 1350 and causes of action in tort under Israeli law,

arising from a series of terrorist rocket attacks on civilians in Israel carried out by the Hizbollah

terrorist organization during July and August 2006."  (Am. Compl. ¶ 1).  Plaintiffs are American,

Israeli and Canadian civilians who were themselves injured and whose family members were

killed in those attacks.  The gravamen of the amended complaint is the allegation that the

defendant-banking institutions intentionally and/or negligently provided Hizbollah with wire

transfer services involving millions of dollars, and such transferred funds enabled and assisted

Hizbollah to carry out terrorist attacks, including the rocket attacks that harmed plaintiffs.

Plaintiffs allege that, because defendant LCB is a Lebanese bank, it must utilize the services of a correspondent bank in the United States to carry out United States dollar transactions.[1] Defendant Amex Bank, a Connecticut banking corporation with New York headquarters, allegedly acts as LCB's correspondent bank. Plaintiffs allege that several bank accounts in the name of the Shahid (Martyrs) Foundation (hereinafter "Shahid") were maintained at LCB branches in Lebanon. Plaintiffs further allege that, between 2004 and July 12, 2006, defendants effectuated dozens of dollar wire transfers to, from and/or between those accounts, totaling several million dollars. Plaintiffs claim that the wire transfer banking services provided by defendants were carried out in and through New York via Amex Bank, acting as LCB's correspondent bank.

The amended complaint alleges that, for several years prior to July 12, 2006, defendants had actual knowledge that (1) "Shahid is an integral part of Hizbollah and constitutes part of Hizbollah's financial arm"; (2) the bank accounts in Shahid's name "and the funds therein were owned and controlled by Hizbollah"; and (3) the wire transfers to and from the Shahid-entitled accounts "were being carried out by and at the direction of Hizbollah". (Id. ¶¶ 135, 149). Plaintiffs impute such knowledge to defendants based on the allegation that "the fact that Shahid is part of Hizbollah's financial arm was notorious public knowledge during the period between

---

[1] " 'Correspondent banking relationships are used to facilitate international financial transactions and money transfers.' " Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameris, 2004 WL 2199547, at *8 (S.D.N.Y. Sept. 29, 2004) (quoting Int'l Housing, Ltd. v. Rafidain Bank Iraq, 712 F.Supp. 1112, 1118 (S.D.N.Y. 1989), rev'd on other grounds 893 F.2d 8 (2d Cir. 1989)). Because foreign banks are typically unable to maintain branch offices in the United States, they maintain accounts, in their own name, at banks that are doing business in the United States to effect dollar transactions. See, Sigmoil Res., N.V. v. Pan Oil Corp. (Nigeria), 650 N.Y.S.2d 726, 727 (N.Y. App.Div. 1996).

2004 and July 12, 2006." (Id.).  Although Shahid's relationship to Hizbollah was allegedly

notorious public knowledge since 2004, plaintiffs do not claim that, at the time of the 2006

missile attacks or any time prior thereto, Shahid had been designated as a terrorist organization

by the United States Government.  Plaintiffs emphasize, however, that years prior to the attacks,

defendants had actual knowledge of Hizbollah's terrorist agenda "because Hizbollah had been

designated by the United States Government as a Specially Designated Terrorist [ ] continuously

since 1995, as a Foreign Terrorist Organization [ ] continuously since 1997, and as Specially

Designated Global Terrorist continuously since 2001." (Id. ¶ 32).  Plaintiffs do not claim that

Shahid was referenced, or otherwise included, in the United States Government's terrorist

designations of Hizbollah.  Plaintiffs allege that the wire transfers, purportedly carried out by

defendants on Hizbollah's behalf, "substantially increased and facilitated Hizbollah's ability to

plan, to prepare for and to carry out rocket attacks on civilians, including the" rocket attacks

causing the physical injuries and death for which plaintiffs seek compensation.  (Id. ¶ 116).

   The amended complaint pleads a single cause of action against Amex Bank for

negligence under Israeli law.  Plaintiffs allege that, in purportedly executing the wire transfers,

Amex Bank failed to comply with applicable banking laws and regulations to know its

customers, and to monitor, report and refuse to execute suspicious and/or irregular banking

transactions.  The remaining causes of action are asserted against defendant LCB, for: (1)

international terrorism pursuant to 18 U.S.C. § 2333; (2) aiding and abetting international

terrorism pursuant to 18 U.S.C. § 2333; (3) aiding and abetting violations of international law;

(4) negligence under Israeli law; and (5) breach of statutory duty under Israeli Law.

3

## LACK OF PERSONAL JURISDICTION

Defendant LCB seeks dismissal of the amended complaint for lack of personal

jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2).  To withstand a 12(b)(2) motion, plaintiffs bear

the burden of showing that the Court has jurisdiction over the defendant.  In re Magnetic

Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003); Metro. Life Ins. Co. v. Robertson-

Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996).  Where, as here, no evidentiary hearing has been

held, nor have the parties engaged in jurisdictional discovery, plaintiffs need only make a *prima*

*facie* showing that jurisdiction exists.  Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d

194, 197 (2d Cir. 1990); Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir.

1985).  Such a showing may be demonstrated on the basis of legally sufficient allegations of

jurisdiction alone.  In re Magnetic Audiotape, 334 F.3d at 206. The Court is to accept all

averments of jurisdictional facts as true, and construe the pleadings and affidavits in plaintiffs'

favor.  See, Id; PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997).

Service of process, or the waiver thereof, establishes personal jurisdiction over a non-

domiciliary who is subject to jurisdiction under the laws of the state in which the district court is

located.  Fed.R.Civ.P. 4(k)(1)(A).  Thus, this Court must initially determine whether New York

state law provides a basis to assert personal jurisdiction over LCB, and if so, must then

determine whether the exercise of jurisdiction would comport with constitutional principles of

due process.  See, Saudi v. Marine Atlantic, Ltd., 306 Fed.Appx. 653, 654 (2d Cir. 2009) (*citing*

Best Van Lines, Inc. v. Walker, 490 F.3d 239, 243-44 (2d Cir. 2007)).

Plaintiffs argue that LCB is subject to long arm jurisdiction, under New York Civil

Procedure Law § 302(a)(1), as a result of its alleged use of defendant Amex Bank as its

4

correspondent bank to carry out wire transfers of funds to and from the Shahid-entitled bank accounts. "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006). A cause of action is deemed to have "arisen from" defendant's business transaction in New York, when "there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." Best Vans, 490 F.3d at 246 (internal quotation marks omitted) (quoting Henderson v. INS, 157 F.3d 106, 123 (2d Cir. 1998)). Where the relationship between the claim and the transaction is too attenuated or their connection is merely coincidental, jurisdiction will be lacking. See, Sole Resort, 450 F.3d at 103; Johnson v. Ward, 829 N.E.2d 1201, 1203 (N.Y. 2005).

The mere maintenance of correspondent bank account with a financial institution in New York is not, standing alone, a sufficient basis to subject a foreign defendant to personal jurisdiction under § 302(a)(1). See, Tamam v. Fransabank SAL, - - F.Supp.2d - -, 2010 WL 21088, at *5 (S.D.N.Y. Jan. 5, 2010) ("courts in this district have routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction"); Daventree Ltd. v. Republic of Azerbaijan, 349 F.Supp.2d 736, 762 (S.D.N.Y. 2004) (maintenance of correspondent account through which racketeering monies were transferred held insufficient for jurisdiction under CPLR 302(a)(1)); Leema Enters., Inc. v. Willi, 575 F.Supp. 1533, 1537 (S.D.N.Y. 1983) ("mere maintenance of correspondent bank accounts to facilitate international financial transactions or money transfers . . . is not enough to confer this court with personal jurisdiction over the defendant, especially [since] . . . the accounts

5

are unrelated to the fraud alleged.").

However, where the culpable conduct, at the heart of plaintiff's lawsuit, is the foreign

bank's improper use of a New York correspondent account, jurisdiction may be exercised under

§ 302(a)(1). See e.g., Dale v. Banque SCS Alliance S.A., 2005 WL 2347853, at *3 (S.D.N.Y.

Sept. 22, 2005) (allegations that foreign bank used its correspondent accounts to effect the

fraudulent wire transfers that were themselves the subject of the lawsuit held sufficient to

establish § 302(a)(1) jurisdiction); Correspondent Servs. Corp. v. J.V.W. Invs., Ltd., 2000 WL

1718785, at *3 (S.D.N.Y. Nov. 14, 2000) (bank's alleged use of its correspondent account at

New York brokerage firm to facilitate unauthorized purchase of securities, on plaintiff's behalf,

found sufficient to support § 302(a)(1) jurisdiction); see also, Chase Manhattan Bank v. Banque

Generale du Commerce, 1997 WL 266968, at *2 (S.D.N.Y. May 20, 1997) ("[A] cause of action

arising out of a transaction involving the use of a correspondent account may confer jurisdiction

over defendant in New York."). To be sufficient to confer jurisdiction, the use of the

correspondent banking relationship may not simply be tangentially related to the wrongdoing

which caused plaintiffs' injuries. Rather, the use must constitute the "very root" of the claims

against the foreign bank. Correspondent Servs., 2000 WL 1718785, at *3.

Plaintiffs argue that the "issue here is not the 'mere maintenance of correspondent bank

accounts' but the **active execution** through New York of dozens of wire transfers totaling

millions of dollars over a multi-year period - which wire transfers resulted in plaintiffs' injuries."

(Pls.' Opp'n Mem. at 26) (emphasis in original). The execution of wire transfers is not a "use"

of a correspondent account which alone is sufficient to confer jurisdiction over a foreign bank.

One of the paramount purposes served, by maintaining a correspondent account, is to enable a

6

foreign bank to carry out wire transfers. As it has been recognized, "[w]ithout correspondent banking, . . . it would often be impossible for banks to provide comprehensive nationwide and international banking services-among them, the vital capability to transfer money by wire with amazing speed and accuracy across international boundaries." <u>United States v. Davidson</u>, 175 Fed.Appx. 399, 401 n.2 (2d Cir. 2006) (*quoting Hearings on the Role of U.S. Correspondent Banking in International Money Laundering*, Subcommittee on Investigations of Senate Committee on Government Affairs (opening statements of Senator Susan M. Collins, Subcommittee Chairman)). For purposes of § 302(a)(1), no meaningful distinction may be drawn between a foreign bank's maintenance of a correspondent account to effect international wire transfers and its indiscriminate use of that account for that exact purpose.

No articulable nexus or substantial relationship exists between LCB's general use of its correspondent account for wire transfers through New York and the specific terrorist activities by Hizbollah underlying plaintiffs' claims. <u>See, Tamam</u>, 2010 WL 21088, at *6-7 (finding no substantial relationship exists between Hizbollah's 2006 missile attacks and Lebanese banks' use of correspondent account for U.S. dollar transactions of customers that allegedly were fronts for Hizbollah.). The injuries and death suffered by plaintiffs and their family members were caused by the rockets launched by Hizbollah, not by the banking services provided by LCB through its correspondent account or wire transfers with Amex Bank via New York. Plaintiffs do not allege that the rocket attacks were directly financed with the subject wire transferred funds. Rather, plaintiffs allege that transferred funds at issue "substantially increased" Hizbollah's ability to commit rocket attacks, including the ones in which plaintiffs were harmed. Plaintiffs themselves are not customers of either of the defendant-banks, nor did they have any financial interest in the

7

wired funds.  LCB's maintenance or use of its correspondent bank account is too attenuated from Hizbollah's attacks in Israel to assert personal jurisdiction based solely on wire transfers through New York.

Even construing all of plaintiffs' allegations in plaintiffs' favor, plaintiffs failed to make the requisite *prima facie* showing that personal jurisdiction over LCB exists in New York.  The exercise of personal jurisdiction over LCB on the basis alleged by plaintiffs would not comport with constitutional principles of due process.

Plaintiffs' alternative request for an opportunity to conduct limited jurisdictional discovery relating to LCB's correspondent banking relationship with Amex Bank, is denied. The failure to make out a *prima facie* showing of jurisdiction is not a bar to jurisdictional discovery.  Ehrenfeld v. Mahfouz, 489 F.3d 542, 550 n.6 (2d Cir. 2007).  Nevertheless, "[a] district court has wide latitude to determine the scope of discovery, and is typically within its discretion to deny jurisdictional discovery when the plaintiff has not made out a *prima facie* case for jurisdiction." Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic, 582 F.3d 393, 401 (2d Cir. 2009) (internal citations, quotation marks, and brackets omitted).  The Court's finding, that LCB's correspondent banking activities is insufficient to subject it to jurisdiction, renders the proposed discovery sought by plaintiffs futile.  Since plaintiffs have not even made an arguable showing of jurisdiction or identified a genuine issue of jurisdictional fact, jurisdictional discovery is unwarranted.

Accordingly, LCB's motion to dismiss the amended complaint for lack of personal jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2),  is granted.

## FAILURE TO STATE A CLAIM

Amex Bank moves, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the amended complaint for failure to state a claim upon which relief can be granted.  The amended complaint pleads a single cause of action against Amex Bank for negligence under Israeli law.

To withstand a Rule 12(b)(6) motion to dismiss, a complaint must allege a plausible set of facts that, when accepted as true, is sufficient to state a claim for relief above the speculative level.  Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt., 595 F.3d 86, 91 (2d Cir. 2010) (*quoting* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, - - U.S. - - , 129 S.Ct. 1937, 1949 (2009).  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, [ ] dismissal is appropriate."  Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (internal quotation marks, brackets and citation omitted).

In applying New York choice of law rules, plaintiffs contend that Israeli law governs, whereas Amex Bank argues that New York law is applicable.  This Court need not, however, engage in a choice of law analysis because no actual conflict exists between the applicable substantive law of negligence in New York and Israel.  See, Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc., 414 F.3d 325, 331 (2d Cir. 2005) (No choice-of-law analysis need occur in the absence of an 'actual conflict' between the applicable rules of two relevant jurisdictions."); Int'l Bus. Machs., Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004) ("Choice of law does not matter, however, unless the laws of the competing jurisdictions

9

are actually in conflict."). To constitute an actual conflict, the differences in substantive law need not be "outcome determinative;" they simply "must be relevant to the issue at hand and must have a significant *possible* effect on the outcome of the trial". <u>Fin. One</u>, 414 F.3d at 331 (internal quotation marks and citations omitted) (emphasis in original). "In the absence of substantive difference, [ ] a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it." <u>Int'l Bus. Machs.</u>, 363 F.3d at 143.

Plaintiffs' Israeli law expert advises that the tort of negligence, under Israeli law, has the following three elements: (1) defendant owed a duty of care to plaintiff; (2) defendant breached this duty; and (3) the breached caused injury to plaintiff. (Porat Decl. ¶ 23). Those same elements must be established to state a cause of action for negligence under New York law. <u>See, Lerner v. Fleet Bank, N.A.</u>, 459 F.3d 273, 286 (2d Cir. 2006) (*quoting* <u>Solomon ex rel. Solomon v. City of New York</u>, 489 N.E.2d 1294, 1294 (N.Y. 1985)); <u>see also</u>, <u>King v. Crossland Sav. Bank</u>, 111 F.3d 251, 259 (2d Cir. 1997).

Even though the elements are the same under the laws of both jurisdiction, plaintiffs' expert asserts that Israeli law imposes a greater duty of care upon banks, and provides for broader negligence liability than New York state law. (Porat Decl. at 3 n.1, ¶ 40(b)). Yet, as acknowledged by plaintiffs' counsel at oral argument, the experts in this case have been hampered by the fact that there is no Israeli case law on point. In this regard, plaintiffs' expert simply observes that, "while it is likely true that no Israeli court has found a bank liable for a physical or violent act which was made possible through funds obtained from banks or as a result of their negligence, it is also true that no Israeli court has found a bank **not liable** in such

10

circumstances - such a case has simply not been considered to date by the Israeli courts." (Id. ¶ 62) (emphasis in original) (internal quotation marks omitted).  Despite the lack of binding precedent, plaintiffs' expert opines that "the willingness of Israeli courts to impose broad negligence liability on banks in general, and to impose such liability for the injurious effects of criminal activities in particular, is predictive of its willingness to recognize a duty of care in a case similar to ours and impose liability accordingly." (Id. ¶ 69).  An expert's *prediction* of the Israeli courts' *willingness* to more broadly interpret the law, favorable to the plaintiffs, does not demonstrate the existence of an actual conflict of law.  Since a careful and thorough review of all the parties' submissions failed to reveal any appreciable material difference in substantive negligence tort law of Israel and New York, the challenge to the legal sufficiency of plaintiffs' negligence claim will be determined under New York state law.

"The threshold question in any negligence action is: does defendant owe a legally recognized duty of care to plaintiff?"  Hamilton v. Beretta U.S.A. Corp., 750 N.E.2d 1055, 1060 (N.Y. 2001).  Banks do not owe non-customers a duty to protect them from the intentional torts committed by their customers.  Lerner, 459 F.2d at 286 (citations omitted).  As a correspondent bank, Amex Bank merely served as a passive conduit through which  LCB executed the U.S. dollar wire transactions of its customers.  Amex Bank is not alleged to have had any banking relationship with Hizbollah, Shahid or plaintiffs.  Regardless of who allegedly sent the wire transfers or was the recipient thereof, the transferred funds, while being transferred through LCB's correspondent bank in New York, were not the property of Hizbollah.  See, Sigmoil, 650 N.Y.S.2d at 727 (Under New York law, "[n]either the originator who initiates payment nor the beneficiary who receives it holds title to the funds in the account at the correspondent bank.").

11

Plaintiffs have pled no factual allegations from which it can be inferred that Amex Bank had any ties to Hizbollah, or that they knew or had reason to believe that the monies at issue would be used to carry out terrorist attacks on civilian targets. Absent such allegations, noncompliance with banking laws and industry standards alone will not render a bank negligently liable for the violent attacks committed by a terrorist organization who benefitted, in some general, nondescript manner, from monies passing through the bank during the performance of routine banking services. See, In re Terrorist Attacks on September 11, 2001, 2008 WL 7073447, at *2 (S.D.N.Y. December 23, 2008); see also, In re Agape Litig., - - F.Supp.2d - -, 2010 WL 335621, at *5 (E.D.N.Y. Jan. 19, 2010); In re Terrorist Attacks on September 11, 2001, 349 F.Supp.2d 765, 831-35 (S.D.N.Y. 2005), on reconsideration in part 392 F.Supp.2d 539 (S.D.N.Y. 2005), aff'd 538 F.3d 71 (2d Cir. 2008).

Even if such a duty did exist, the factual allegations in the amended complaint do not support a conclusion that the breach of such a duty was the proximate cause of plaintiffs' injuries. A showing of proximate cause requires plaintiffs to demonstrate that defendant's alleged negligent acts were a substantial cause of the events which produced plaintiffs' injuries. See, Derdiarian v. Felix Contracting, 414 N.E.2d 666, 670 (N.Y.1980); see also, Fonzi v. Beishline, 705 N.Y.S.2d 470, 472 (N.Y. App. Div. 2000) ("The test for proximate cause is whether under all the circumstances the chain of events that followed the negligent act or omission was a normal or foreseeable consequence of the situation created by the defendant's negligence".) (internal brackets, quotation marks and citation omitted). Even if it were alleged that Hizbollah used some funds it received to carry out the 2006 missile attacks, that factual assertion alone would not make every financial transaction traceable to a Hizbollah-controlled

12

entity, no matter how remote, the proximate cause of those attacks.  Under the circumstances

alleged, it is not reasonably foreseeable that the routine banking services performed by Amex

Bank would result in the death and bodily injuries suffered by plaintiffs in rocket attacks

launched at Israel.

Accordingly, the pleadings are insufficient to state a claim for negligence against Amex

Bank. Since those pleading deficiencies cannot be rectified by further amendment of the

complaint, dismissal without leave to amend is warranted.  Amendment would be futile.


## CONCLUSION

Defendant LCB's motion to dismiss the complaint for lack of personal jurisdiction is

granted.  Defendant Amex Bank's motion to dismiss the complaint for failure to state a claim is

granted.  The case is hereby closed.


Dated: New York, New York
       March 31, 2010

                                        SO ORDERED:

                                        _George B. Daniel_____
                                        GEORGE B. DANIELS
                                        United States District Judge


13