EB4LLICC                        Conference

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 3   YAAKOV LICCI, et al.,
 4                  Plaintiffs,
 5           v.                              08 CV 7253 (GBD)
 6   AMERICAN EXPRESS BANK LTD., et
     al.,
 7
                    Defendants.
 8
     ------------------------------x
 9                                           New York, N.Y.
                                             November 4, 2014
10                                           10:16 a.m.
11   Before:
12                    HON. GEORGE B. DANIELS,
13                                           District Judge
14                        APPEARANCES
15   THE BERKMAN LAW OFFICE, LLC
          Attorneys for Plaintiffs
16   BY:  ROBERT TOLCHIN
17   DLA PIPER LLC
          Attorneys for Defendants
18   BY:  JONATHAN D. SIEGFRIED
          JOSHUA D. ARISOHN
19
20
21
22
23
24
25
```

1            (Case called)

2            THE COURT:  Good morning.  Let me first address the

3    letter that I received, Mr. Siegfried, with regard to your

4    position as to collateral estoppel.  Give me an idea where you

5    think you want to go at this point.  I have your letter.  I

6    don't have a response from Mr. Tolchin.  And then I think you

7    also asked if you could make a motion.

8            What I would anticipate doing is giving Mr. Tolchin

9    first an opportunity to respond to your letter by letter.

10   After that response, if a motion is appropriate, then I'll let

11   you file a motion letter and respond to the motion.

12           My position would be this.  If there is no genuine

13   meritorious opposition to your claim, then I may consider

14   imposing costs if you have to do motions on Mr. Tolchin and his

15   client if it's real obvious that these issues have already been

16   addressed and this has just been dressed up and the names have

17   been changed to restate the same claim that's already been

18   adjudicated.  But if there's a legitimate response, a colorable

19   response, then we'll go to full-blown motion practice and we'll

20   address that issue and see where we go from there.

21           Is there anything else you want to add before I hear

22   from Mr. Tolchin?

23           MR. SIEGFRIED:  Well, yes, your Honor.  I think that

24   when Mr. Tolchin does respond, there is another matter that he

25   ought to address.

1              Since sending you the letter that we did, we did some

2    further research and, in fact, there is another case that he

3    filed, *Kaplan v. Al Jazeera*.  This was before Judge Wood.  It

4    is the same plaintiffs.  It is an aiding and abetting claim

5    alleging violations of the ATA and ATS.  The first amended

6    complaint that he filed was dismissed by her, although on

7    different grounds than Judge Lamberth did.

8              There was then a second amended complaint.  A motion

9    to dismiss was filed by Al Jazeera in that case.  And after the

10   Court gave him two extensions to respond to that and said if I

11   don't get a response shortly, I'm going to dismiss it,

12   apparently, Mr. Tolchin withdrew that complaint.

13             So there is at least one other action in that one, I

14   would say, particularly with respect to the ATS claim, Judge

15   Wood followed the Second Circuit *Kiobel* decision and dismissed

16   on the corporate liability grounds.

17             So there are at least two cases, although I think the

18   case in D.C., you've read our letter so you know our argument

19   there.  But there is at least a second case.  And whether there

20   are others, I don't know, but we'll continue to look.

21             THE COURT:  So, Mr. Tolchin, what's the most efficient

22   way to resolve this?

23             MR. TOLCHIN:  I'm happy you asked me that question,

24   your Honor, because I find the letter that was submitted to be

25   despicable personally, professionally offensive, and completely

1  uncalled for.  If there's a case out there that he says has an
2  implication, argue that.  He doesn't have to bring up that 20
3  years ago I was late filing a brief in 1994.  What that has to
4  do with this case I don't know.  So I'm happy that you asked
5  me, your Honor, what's the most efficient way to proceed.
6          Obviously, I think you should probably predict, I
7  disagree that the *Kaplan* case in Washington from Judge Lamberth
8  disposes of this case.  It may, but not necessarily, but it may
9  dispose of certain claims in this case.  I'm not sure that's
10 even completely correct.  But it doesn't dispose of this case
11 in toto for the main reason that this case asserts claims that
12 were not addressed by Judge Lamberth.
13         Judge Lamberth disposed of the ATA claim and the ATS
14 claim, yes.  But as to the common law, the nonfederal claims,
15 he simply said that since I have no federal causes of action, I
16 am exercising my discretion and I'm not going to exercise
17 supplemental jurisdiction over those claims.
18         THE COURT:  But my recollection is in this case you
19 had more than nonfederal claims.
20         MR. TOLCHIN:  That's correct, your Honor.
21         THE COURT:  You have similar claims, ATS and similar
22 federal claims that they said were disposed of.
23         MR. TOLCHIN:  Right.  So let me just step back just
24 for the big picture.  This case began in state court.  It was
25 removed to this court by the defendants.  After they removed

1    it, we amended the complaint to add the ATS and ATA claims.
2    Even if -- and I'm putting that in italics and underlined --
3    even if your Honor would dispose of the ATS and ATA claims
4    along the lines of Judge Lamberth's ruling -- and I'll come to
5    that ruling in a minute -- we would still have those nonfederal
6    claims in this case.
7            THE COURT:  I'm first trying to figure out whether
8    you're going to dispose of those claims.
9            MR. TOLCHIN:  Of which claims?
10           THE COURT:  The federal claims.
11           MR. TOLCHIN:  The ATS claim, the answer is probably
12   yes.  The ATA claim, I think we can still amend it.  What's
13   interesting -- I said I'd come back to Judge Lamberth's
14   decision -- Judge Lamberth's decision on the ATA claim was
15   quite interesting.  It's an outlier.  He admits it straight up.
16   He says I know that other judges have disagreed with my
17   holding, but I disagree with them.
18           So your Honor has ruled in the past, I believe, in the
19   *Sokolow* case.  Judge Hellerstein in the Lelchuk case just
20   recently on July -- it's not as recent as I thought.  On
21   July 18, 2011, Judge Hellerstein ruled that Hezbollah, a
22   nonstate actor called Hezbollah in Lebanon shooting missiles
23   into Israel at civilians was not considered an act of war.
24   Judge Hellerstein said there's no act of war here.  There never
25   was a declared war between Hezbollah and the United States.

1    It's like a fungus grown in Lebanon, but it's not a state and
2    there's no war between Hezbollah and the United States and goes
3    on from there.
4            There's four or five other cases, some of which are
5    acknowledged by Judge Lamberth.  He simply disagrees.  So what
6    we have here is Judge Lamberth made a ruling on what's a pure
7    issue of law, not a factual determination, just a pure issue of
8    law.
9            And I think if we come to briefing the law of
10   collateral estoppel, we're going to be able to persuade your
11   Honor that where there's a disagreement between two courts on a
12   pure issue of law, especially if it's two different courts,
13   this Court in the Second Circuit is not required to follow
14   Judge Lamberth's holding on a pure issue of law and this Court
15   can consider it itself.
16           THE COURT:  Well, my initial reaction would be is what
17   I'd be more interested in is not a general scenario of whether
18   or not I and other courts are in general addressing a similar
19   issue and taking different positions, but whether or not your
20   clients, who are the same parties in both litigation, having
21   their day in court and litigating that issue individually,
22   whether your clients are bound by that determination.  That's a
23   different issue.
24           MR. TOLCHIN:  For sure.
25           THE COURT:  That's a more significant issue.

1          MR. TOLCHIN:  I recognize that issue.
2          THE COURT:  You can't go around to every court and try
3   to find one you like.
4          MR. TOLCHIN:  Right.  I recognize that and I will
5   acknowledge it's a fascinating issue.
6          THE COURT:  Not so fascinating for me.  I want to
7   resolve it and move on.
8          MR. TOLCHIN:  But you asked me at the beginning what
9   do I think is the most efficient way to proceed.
10          THE COURT:  Okay.
11          MR. TOLCHIN:  Now, I have one option.  I could stand
12   here and say they're going to file a motion, it's going to come
13   down the pike.  And after they get their motion, I will try to
14   cure whatever they say in their motion.
15          THE COURT:  I don't want to make them file a motion
16   and have you say to me you know what, Judge, they're right.  I
17   wouldn't put them to that expense.  And I wouldn't.  I'd put
18   you to that expense.
19          MR. TOLCHIN:  What I would like to do, most efficient
20   way to proceed, what I would like to do is file an amended
21   complaint.  Whatever I'm going to drop, I'm going to drop.
22   Whatever I'm going to beef up, I'm going to beef up.  And,
23   frankly, there's a whole lot to beef up because, as you saw in
24   the other letter, the one with the exhibit tabs I saw your
25   Honor has, since this case was dismissed on jurisdictional

1  grounds -- and it had quite an odyssey.  I don't know if you
2  followed it.
3           This case went to the Second Circuit, the Court of
4  Appeals, and back to the Second Circuit.  And it sat in limbo
5  for like a year, which I truly don't understand what was going
6  on there.  Then it finally came back here.  But in that --
7  let's see.  It was dismissed by your Honor on March 31, 2010,
8  and the mandate was issued August 28, 2014.  So during that
9  almost four-year travel, the big things happened at Lebanese
10 Canadian Bank.
11          THE COURT:  The American Express part too was also --
12 I don't want to make it sound like the circuit was doing
13 nothing.  The American Express defendant was a separate issue
14 for the circuit.
15          MR. TOLCHIN:  One day I'll figure it out.  But we made
16 a motion in the Second Circuit to bifurcate the case.  Since
17 they made two different decisions, we said we understand you're
18 still thinking about that one, so send this one back.  They
19 denied that.  I never understand it.
20          THE COURT:  Do you want to do this.  I mean if that's
21 what you want to do, I propose that you do this.  Within the
22 next 30 days, you respond to their letter with or without a
23 proposed amended complaint.  If you're going to concede certain
24 claims, then I know that those are put aside and I don't have
25 to deal with it.  If you're going to propose an amended

complaint which has some if not all or all of the claims, then your response will be that you think these are appropriate and it's an appropriate response and why you should be allowed to amend it in that way, then I'll consider that. And then I'll let them respond to that letter and we'll address it.

MR. TOLCHIN: I'm with you most of the way on that, your Honor. You asked for the most efficient way. I think this letter that they sent the other day accusing me of misconduct and claiming that a brief I was late on in 1994 --

THE COURT: You don't have to address those unless you feel compelled to simply -- I'm concerned about the substantive issues.

MR. TOLCHIN: I'd like to be bigger than what's frankly stupidity.

THE COURT: Why don't you address the substantive issues they raise with regard to the D.C. case. And if you think an amendment is appropriate in response to that, then you can propose the amendment.

MR. TOLCHIN: Can I make an even more efficient proposal. Let me just serve my amended complaint.

THE COURT: No. I want you to respond to their letter saying that this case should be dismissed for collateral estoppel reasons. I want a letter responsive to this letter in any event.

MR. TOLCHIN: Okay. Once I've amended the complaint,

1    what they're talking about stops being the subject.
2              THE COURT:  If you say I'm amending the complaint by
3    dropping the claims they're complaining about, then you need
4    not make a further argument.  I don't need a further
5    substantive argument.
6              MR. TOLCHIN:  But if I amend the complaint in a way
7    that simply, for lack of a better word, beefs up the claims.
8              THE COURT:  You're still going to have to address
9    whether or not it's collateral estoppel because that doesn't
10   change that issue.  Whether you have a beefed up collateral
11   estoppel case or you have a watered down collateral estoppel
12   case, it doesn't matter.  You've got to tell me in any event in
13   this response as succinctly as you can why you're not precluded
14   from filing any complaint based on those claims.
15             MR. TOLCHIN:  I see your point, your Honor.  The only
16   thing is when I do that, I'll be saying here's my amended
17   complaint and I'll be arguing about why this is good without
18   the benefit of hearing why they say it's bad.
19             THE COURT:  No.  They say it's bad because they say no
20   matter what complaint you file, you can't bring these claims
21   here again because you brought those claims someplace else and
22   those claims were dismissed.  You had your day in court on
23   those claims and you lost.  You're going to have to address
24   that anyway.
25             MR. TOLCHIN:  Sure.  So I'm happy to do that.  But I'd

1  like to come back to the fact that no matter what -- ATA claim,
2  no ATA claim, ATS claim, no ATS claim -- some part of this case
3  is going forward.  The nonfederal claims are going forward.
4              THE COURT:  Then that should be your response.
5              MR. TOLCHIN:  Your Honor doesn't have the luxury that
6  Judge Lamberth had.  Judge Lamberth could say nonfederal claims
7  dismissed.  I'm not exercising my supplemental jurisdiction.
8  In the case of this Court, the nonfederal claims are not here
9  based on supplemental jurisdiction, you know, pendent from
10  federal claims.  They're here because they were asserted in
11  state court and the defendants removed it.
12              THE COURT:  I understand.
13              MR. TOLCHIN:  So your Honor could I suppose send the
14  case back to state court, but dismissal is not an option.
15              THE COURT:  It depends.  That's not necessarily so.
16  My option is the same option as Judge Lamberth.
17              MR. TOLCHIN:  No, it's not.
18              THE COURT:  It is because Judge Lamberth did not
19  dismiss the nonfederal claims.  He dismissed the federal
20  claims.  I have the same option to dismiss the federal claims
21  with prejudice and to either dismiss or remand the state claims
22  to state court without prejudice.
23              MR. TOLCHIN:  You don't have the option to say I'm
24  declining to exercise jurisdiction over the nonfederal claims.
25              THE COURT:  Why don't I have that option?

1          MR. TOLCHIN:  Because this case came from state court

2     where there was jurisdiction without any question.  And your

3     Honor has the option, I agree, to remand it to state court.

4          THE COURT:  Not necessarily.  I don't know, in looking

5     at the papers and looking at your response, I don't know if

6     this case should not have been removed at all given Judge

7     Lamberth's decision.  I don't know what the timing was with

8     Judge Lamberth's decision.  If you want to make that argument,

9     that's fine.  You may convince me that's the case.  But I need

10    to hear the argument.  If you are already precluded by

11    collateral estoppel with regard to the federal claims --

12         MR. TOLCHIN:  Lambert's decision was years later.

13    This case did not exist when Lambert made his decision.  *Kaplan*

14    wasn't even filed until 2010.

15         THE COURT:  The only issue before me right now is

16    whether or not those claims that Judge Lamberth dismissed are

17    claims that are dismissed for all purposes for all time against

18    your clients because your clients shouldn't be able to now pick

19    and choose and try to find another forum to bring the exact

20    same federal claims that Judge Lamberth dismissed on their

21    merits and with prejudice.

22         MR. TOLCHIN:  By the way, it's not the same exact

23    claim because completely different defendant.

24         THE COURT:  Right.

25         MR. TOLCHIN:  And I assume you're referring to the

1    claims he dismissed on the substance, not the ones where he
2    declined to exercise supplemental jurisdiction.
3             THE COURT:  That's true.  He made no determination
4    with regard to the ones he declined supplemental jurisdiction.
5             MR. TOLCHIN:  As to those cases, as to those claims,
6    the reason I bring up that it's either going to proceed here or
7    it's going to proceed in state court is the operative verbal
8    phrase it's going to proceed in some form.  So I'd like to
9    start discovery.
10            THE COURT:  As you say, I'm at a disadvantage.  You
11   know all of this; I don't.  You know what the basis for your
12   legal and factual argument is but I don't because I don't have
13   a response to this letter.  So why don't you give me the
14   appropriate response to this letter so I can be informed and
15   make the same judgment that you're making that the amended
16   complaint that you want to attach with it solves all your
17   problems and you should be able to proceed on the amended
18   complaint as is.  And if they say, well, yeah, he gave up this
19   claim but he should have given up this one too, then they can
20   respond to that and they can say that and I can make a
21   determination of whether or not the amended complaint as you've
22   alleged and the claims you say you want to proceed on are not
23   precluded.
24            MR. TOLCHIN:  I just want to clarify something, a
25   different point.  I brought up all this stuff about a late

1   brief from 20 years ago.
2               THE COURT:  I had forgotten until you reminded me
3   three times.
4               MR. TOLCHIN:  In this letter he also claims that
5   somehow I committed misconduct by not telling your Honor about
6   *Kaplan* even though the only communication I had with this Court
7   since the mandate was issued was a letter dated September 9
8   saying, Judge, please schedule a conference.  And the same day
9   he submitted a letter to the Court telling the Court about
10  *Kaplan*.  So I don't know what -- his September 9 letter cites
11  *Kaplan*.  So I don't know what the accusation here is.  But I
12  just want to be clear when your Honor says don't mention all
13  that stuff that you mean don't mention that too.
14              THE COURT:  It's relevant to my determination whether
15  or not your case should be dismissed.
16              MR. TOLCHIN:  Dismissed or not dismissed, I understand
17  that.  But I'm either going to respond to the allegations of
18  misconduct, or we're just going to put that behind us and say
19  we're talking about the merits.
20              THE COURT:  You know, unless I'm going to address some
21  pending motion for some additional sanction and you want to
22  respond to that, that's fine.  But right now I'm only
23  interested in moving forward on the substantive issue and
24  deciding whether or not the basis on which they say your
25  clients are precluded from re-litigating this claim against any

1   bank if you lost on the merits of liability with regard to any
2   bank.
3            MR. TOLCHIN:  I got that.  In the meanwhile while this
4   is going on, can we serve discovery demands as to the
5   nonfederal claims?
6            THE COURT:  Not before I get an amended complaint.  If
7   you're going to give me an amended complaint, I'm going to say
8   no.
9            MR. TOLCHIN:  Okay.
10           THE COURT:  Give me as quickly as you want an amended
11  complaint.  I'll resolve this as quickly as I can get a
12  response from you.  And if you tell me when you want to
13  respond, we can figure out when discovery is going to be ready
14  to go.  How quickly are you going to give me?
15           MR. TOLCHIN:  Thirty days seems to be the fashionable
16  time frame.
17           THE COURT:  So I'll expect a response and/or proposed
18  amended complaint let's say on or before Friday, December 5.
19           MR. TOLCHIN:  Can we just make it the Monday after
20  that?
21           THE COURT:  December 8.
22           MR. TOLCHIN:  Yeah.
23           THE COURT:  And why don't I give two weeks for
24  response.  So say by December 22.  And I'll review the papers
25  and why don't I put it down for January 6.  I'll see you on

1    January 6 and we can address it further if I need to hear

2    argument on it.  Either you'll resolve it or I'll resolve it

3    before that date.

4            MR. TOLCHIN:  I'm just going to check the 6th and make

5    sure I don't have a conflict.

6            THE COURT:  6th at 10:30.

7            MR. TOLCHIN:  It says that's the day I'm supposed to

8    give my associate a raise.  Other than that --

9            THE COURT:  Bring him to court.  Let's do it that way.

10   Is there any other way you want to proceed other than that?

11           MR. TOLCHIN:  What was his date for response, 12/22?

12           THE COURT:  Yes.

13           Mr. Siegfried, do you have any other suggestion at

14   this point?

15           MR. SIEGFRIED:  No.  That's fine, your Honor.

16           THE COURT:  Let's proceed that way.  I'll look at the

17   response as soon as I get it.  I'll look at the amended

18   complaint.  I'll let them respond to that, and then we can

19   discuss it on the 6th.

20           MR. TOLCHIN:  What time on the 6th?

21           THE COURT:  10:30.

22           MR. SIEGFRIED:  Your Honor, maybe we could have at

23   least Mr. Tolchin tell us whether apart from the two other

24   actions that we now know of whether there were any other

25   actions that he filed on behalf of these plaintiffs so that

1    we're not playing a cat and mouse game here.
2            MR. TOLCHIN:  Your Honor, I don't even understand that
3    question because there's a thing called the U.S. party case
4    index which is part of PACER and you can put in any plaintiff's
5    name and find any case they filed in the country.  So there's
6    no secret here.  Maybe what we have here is Mr. Siegfried
7    didn't look, but there's no secret.  PACER is completely
8    public.
9            THE COURT:  Why don't you do this.  I want you to give
10   him either separately or at the same time, and a copy to the
11   Court, a letter which outlines all of the cases that your
12   clients are plaintiffs in that raise these similar claims.
13   Just give him a list of cases.
14           MR. TOLCHIN:  That's also by the 8th?
15           THE COURT:  On or before the 8th.
16           MR. TOLCHIN:  Simultaneously with everything else.
17           THE COURT:  Either simultaneously with everything
18   else, but, you know, if it's like four cases and you just want
19   to send him a letter tomorrow, send him a letter tomorrow and
20   put that aside.  But no later than the 8th of December, okay,
21   so we can address it.  I can make an informed judgment.
22           MR. TOLCHIN:  I had one more sort of ground rule
23   question.
24           THE COURT:  Yes.
25           MR. TOLCHIN:  I was shocked, as you can tell, by this

Case 1:08-cv-07253-GBD   Document 75   Filed 11/13/14   Page 18 of 19      18
EB4LLICC                        Conference

1    letter.

2            THE COURT:  Very little shocks me.

3            MR. TOLCHIN:  You're older than me.  I was also

4    shocked that in his letter he says that he had been planning to

5    just raise this at the conference, which I apologize there was

6    a scheduling error about the October 16 conference.  But now he

7    just raised another issue he brought up out of the blue.

8            THE COURT:  Which one?

9            MR. TOLCHIN:  About he wants to know whether there's

10   other cases out there.  It's a fair question, but I'm upset

11   about the procedure.  There's supposed to be meeting and

12   conferring.  If he thought the *Kaplan* case created a collateral

13   estoppel, he knows my phone number.  He should have called me

14   up and talked it over before writing to the Court and certainly

15   before intending to come into the court just with a sandbag,

16   raise an issue at a conference.  That's not how things are

17   supposed to work here.

18           THE COURT:  I always encourage that communication

19   prior to coming to the Court.

20           MR. TOLCHIN:  Thank you.

21           THE COURT:  So you think there's any further

22   communication that you two of you have, as I always indicate,

23   I'm not a translator or interpreter for lawyers to talk to each

24   other.  And let's just get this done so I can make a judgment

25   and I can move forward efficiently.  Anything further?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   MR. SIEGFRIED:  No, your Honor.  Although, again, we
2   were here for the last conference.  Mr. Tolchin was not.
3   Apparently your clerk told us she attempted to contact him.
4   And so we came here without any excuses from Mr. Tolchin or
5   courtesy of telling us he wasn't going to show up.  So I hear
6   his outrage, but perhaps he might consider his own actions in
7   that regard.  But I thank you.
8   THE COURT:  Let's move forward, not backwards.  I want
9   to resolve the merits and substance of these issues rather than
10  going back and forth on these issues.
11  MR. SIEGFRIED:  Thank you, your Honor.
12  MR. TOLCHIN:  And I did contact your Honor's clerk,
13  your Honor, and apologized.  What had happened, it was
14  scheduled for the 16th but it was mistakenly diaried for the
15  date under that on the calendar, which I think was the 23rd.
16  And, in any event, the reason nobody could reach me was the
17  16th was a Jewish holiday.  My office was closed.  And I
18  apologize.  It was a calendar mistake.
19  THE COURT:  I accept your apology.  See you on the
20  next date.
21                              o0o
22
23
24
25