# THE BERKMAN LAW OFFICE, LLC

111 Livingston Street, Suite 1928
Brooklyn, New York 11201

Tel: (718) 855-3627     Fax: (718) 855-4696

December 9, 2014

**BY ECF**
Hon. George B. Daniels
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

    Re:   *Licci, et al. v. American Express Bank Ltd., et al.*
           Docket No. 08-cv-07253 (GBD)

Dear Judge Daniels,

    This letter is respectfully submitted on behalf of the plaintiffs pursuant to the Court's directive at the November 4, 2014 conference in the above-referenced action, in response to the October 31, 2014 letter from counsel for defendant Lebanese Canadian Bank Ltd. ("LCB").[1]

**A.**    **Missing Background Facts**

    LCB's letter omits two significant facts that undermine, if not collapse, its arguments, and which should be borne in mind upon considering those arguments.

    *First*, this action was initially filed in New York State Supreme Court and removed to this Court by defendants LCB and American Express Bank (which has since been dismissed). Following that removal plaintiffs filed a First Amended Complaint ("FAC"), which added federal causes of action to the non-federal claims asserted against the defendants in state court.

    Thus, LCB's attempts to draw false parallels between this action and the disposition of *Kaplan v. Central Bank of the Islamic Republic of Iran*, 1:10-cv-00483-RCL (D.D.C.), which was filed by

---

[1] Plaintiffs' response was due on December 8 and they were on track to finalize and file it timely when, yesterday, the associate responsible for preparing the response was called away to the emergency room after his wife was struck by a car. In light of the circumstances counsel for LCB has consented to the filing of the response today, one day late, and we respectfully request that the Court permit the late filing. Plaintiffs of course consent to a similar enlargement for LCB's reply, if one is sought.

THE BERKMAN LAW OFFICE, LLC

December 9, 2014
Page 2 of 8

plaintiffs a mere eight days before this case was dismissed[2], is specious. As discussed further below, the dismissal of the non-federal claims in *Kaplan*, which were merely pendent to the federal causes of action, is entirely inapposite here, where the non-federal claims are part of the original complaint and so independent. Even if the federal claims in this action are somehow dismissed—and there are no grounds to dismiss them—the non-federal causes of action will proceed.

Accordingly, whether or not the Court allows LCB to file a renewed motion to dismiss, it should direct that discovery in this case commence forthwith.

*Second*, LCB has failed to inform the Court that in 2011, the United States Government initiated a civil forfeiture action against LCB on the basis of its extraordinarily extensive money laundering activities on behalf of Hizbollah. As explained in the Government's amended forfeiture complaint—the accuracy of which is attested to under oath by a DEA official—much of that activity had a U.S. nexus. (Exhibit A).

The facts revealed by the Government's action against LCB are extremely relevant to the instant case for several reasons. In the first place, the provision of material support and resources by LCB to Hizbollah described by the Government is different and considerably more extensive than the facts previously known to plaintiffs and included in their complaint. The additional, broader facts revealed by the Government mean that LCB's chances of escaping liability in this case have plummeted, and its chances of dismissing the complaint for failure to state a claim on plausibility grounds are zero. Since any Rule 12(b)(6) motion would be futile the Court should not permit LCB to file a renewed motion on that ground. And if the Court allows LCB to file a renewed Rule 12(b)(6) motion, it should permit plaintiffs to amend their complaint to include the new liability facts revealed by the Government in the amended forfeiture complaint.

Moreover, as set forth more fully below, the additional details of LCB-Hizbollah relationship revealed by the Government (and the very fact of the Government's measures against LCB) strongly support plaintiffs' position that their claims under the Alien Tort Statute have the necessary U.S. nexus.

Plaintiffs now turn to LCB's specific arguments.

---

[2] Given the Court's focus during the conference plaintiffs will generally ignore LCB's personal attacks on their counsel and its demands for sanctions. We note, however, that the fact that the *Kaplan* action was filed only eight days before this case was dismissed renders risible LCB's complaint that plaintiffs failed to inform the Court of *Kaplan*. LCB's charge that *Kaplan* was captioned differently in "an effort to prevent opposing counsel and the Court from discovering the parallel pleading" (DE 72 at 3) is even more absurd. In fact, *Kaplan* was captioned differently because, unlike this case, it was filed in federal court under federal statutes available solely to U.S. citizens, and therefore the first plaintiffs listed in the *Kaplan* complaint were the American plaintiffs. Moreover, anyone looking for a parallel case would not do so manually but rather by a PACER search—and, in fact, a PACER search for "Licci" readily shows the *Kaplan* action.

THE BERKMAN LAW OFFICE, LLC

December 9, 2014
Page 3 of 8

### B.     The ATA Claims Are Not Barred by Collateral Estoppel

LCB claims that the American plaintiffs' ATA claims in this action are barred by collateral estoppel because in *Kaplan v. Central Bank of Islamic Republic of Iran*, 961 F.Supp.2d 185 (D.D.C. 2013), Judge Lamberth found that the rocket attacks which harmed the plaintiffs are "acts of war" within the meaning of 18 U.S.C. §§ 2331(4) and 2336. DE 72 at 2.

This claim is baseless, *inter alia*, for the reasons set forth below.[3]

#### 1.   The *Kaplan* Decision Is Non-Final

The *Kaplan* action remains pending until this day against other defendants for non-ATA claims. (*See Kaplan*, 1:10-cv-00483-RCL (D.D.C.)). Therefore, under Rule 54(b), the decision dismissing the ATA claims, which "adjudicate[d] fewer than all the claims or the rights and liabilities of fewer than all the parties" is not yet appealable, and "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

It is well-established that a decision—like the decision in *Kaplan* dismissing the ATA claims—which is revisable and non-appealable under Rule 54(b), cannot give rise to collateral estoppel. *See e.g. Vardon Golf Co., Inc. v. Karsten Mfg. Corp.*, 294 F.3d 1330, 1333-34 (Fed. Cir. 2002) (holding that the district court erred when it gave decision collateral estoppel effect, because the decision was subject to Rule 54(b) and therefore was open to revision and could not have been appealed); *Humphreys v. BIC Corp.*, 923 F.2d 854 at *3 (Table) (6th Cir. 1991) ("[C]ollateral estoppel principles are based on a final judgment, so that a Rule 54(b) order is viewed as final for collateral estoppel purposes. On the other hand, if no certificate is issued, the court's decision or order remains interlocutory and the partial judgment will have no preclusive effect.") (citing 10 Wright & Miller Federal Practice and Procedure: Civil 2D § 2661 at 128); *St. Paul Fire & Marine Ins. Co. v. F.H.*, 55 F.3d 1420, 1425 (9th Cir. 1995) (a decision that "could not have been appealed" because it did not dispose of all claims and that remains "subject to reconsideration" is not "sufficiently firm to be accorded conclusive effect" and so cannot give rise to collateral estoppel).

Moreover, even when "the parties [to the other action] were heard and the District Court supported its decision with a reasoned opinion," because that decision cannot yet be appealed under Rule 54, it will not give rise to collateral estoppel, since it is not "subject to appeal or was in fact reviewed on appeal." *In re Loughery*, 2010 WL 4642131 at *6-7 (Bkrtcy. N.D. Ga. Oct. 12, 2010) (quoting Restatement (Second) Judgments ¶ 13 comment (g)).[4]

---

[3] Plaintiffs reserve the right to assert further arguments if and when LCB is permitted to file a motion to dismiss on estoppel grounds (which it should not be).

[4] The fact that the parties to the other action *could have sought* leave to appeal does not change this result. *Vardon*, 294 F.3d at 1334 (existence of "speculative methods" of appeal, such as seeking

The plaintiffs respectfully but strongly disagree with, and intend to appeal, Judge Lamberth's decision dismissing their ATA claims. Not having had the opportunity to appeal yet by operation of Rule 54(b), the plaintiffs are not collaterally estopped by that decision.

**2. Questions of Law Are Not Subject to Collateral Estoppel**

Judge Lamberth's decision finding that the rocket attacks on the plaintiffs are covered by the ATA's "act of war" exception did not involve the resolution of any factual disputes. Indeed, no such factual resolutions were required, because the plaintiffs did not raise any factual challenges to the *Kaplan* defendants' "act of war" arguments.

Rather, plaintiffs' entire defense to the *Kaplan* defendants' "act of war" argument (to which plaintiffs devoted only half a page) was legal—plaintiffs cited multiple precedents holding that violations of the laws of war (such as attacks on civilians) can never be considered "acts of war" under the ATA, that attacks by terrorist groups on civilians do not constitute "armed conflict between military forces of any origin" under the ATA since civilians are not part of any military forces, and that terrorist groups cannot be considered "military forces" under the ATA. (*See* Plaintiffs' Memorandum in Opposition , *Kaplan*, 1:10-cv-00483-RCL (D.D.C.), DE 20 at 15-16; citing *Klieman v. Palestinian Auth.*, 424 F.Supp.2d 153, 162-167 (D.D.C. 2006); *Biton v. Palestinian Auth.*, 412 F.Supp.2d 1, 6-11 (D.D.C. 2005); *Sokolow v. PLO*, 583 F.Supp.2d 451, 458-459 (S.D.N.Y. 2008); *Morris v. Khadr*, 415 F.Supp.2d 1323, 1333 (D. Utah 2006)).

Judge Lamberth rejected the case law cited by plaintiffs ("[t]his Court declines to follow Judges Friedman and Collyer," *Kaplan*, 961 F.Supp.2d at 201) and then proceeded to set forth at length his own interpretation and construction of the ATA's "act of war" exception. *Id*. at 200-04.

Because Judge Lamberth's "act of war" decision will be subject to *de novo* review on appeal to the D.C. Circuit—since it is based on his statutory construction of the ATA—it cannot give rise to collateral estoppel. *See In re Laventhol & Horwath*, 139 B.R. 109, 114 (S.D.N.Y. 1992) (even a final judgment has no collateral estoppel effect where "*de novo* review is permitted on appeal.") (citation & internal quotations omitted).

Moreover (irrespective of the appellate standard of review to which it will be subject), the very fact that Judge Lamberth's decision is based on questions of law and statutory construction means that it cannot give rise to collateral estoppel. *Haitian Centers Council Inc. v. McNary*, 969 F.2d 1350, 1356 (2d Cir. 1992) *rev'd on other grounds*, 509 U.S. 155 (1993) ("Especially, where pure questions of law are presented, courts and commentators both have recognized that the interests of finality and judicial

---

leave for an interlocutory appeal, do not "render a nonfinal judgment preclusive for the purposes of collateral estoppel"); *In re Loughery* at *7 (same).

economy may be outweighed by other substantive policies, for in this circumstance the interests of courts and litigants alike can be protected adequately by the flexible principles of stare decisis.") (quotation marks and brackets omitted); *Seneca Nation of Indians v. State of N.Y.*, 26 F. Supp.2d 555, 569 (W.D.N.Y. 1998) ("collateral estoppel is less favored when the issue to be precluded is a legal one, and least favored when it is one of statutory construction.").

It would be especially inappropriate to afford Judge Lamberth's interpretation of the "act of war" decision estoppel force, given the fact that it is an outlier: it conflicts directly with the legal holdings and statutory construction in *Klieman*, 424 F. Supp. 2d at 162-67; *Biton*, 412 F. Supp. 2d at 6-11; *Sokolow*, 583 F. Supp. 2d at 458-59; and *Morris*, 415 F. Supp. 2d at 1333.

Furthermore, Judge Lamberth's holding is flatly contradicted by the ruling by Judge Hellerstein of this Court, that Hizbollah's campaign of rocket attacks on civilians in Israel in the summer of 2006—*i.e.,* the very rocket attacks at issue in this case—are not covered by the ATA's "act of war" exception:

> [DEFENSE COUNSEL] … There was an argument in the briefing concerning the act-of-war exception to this statute and –
>
> THE COURT: There is no act of war here. There never was a declared war between Hezbollah and the United States. It's like a fungus grown in Lebanon but it's not a state itself and there is no war between Hezbollah and the United States, except our war against terrorism which is not really a war, a really declared war. I don't think the act-of-war exception applies. In any event, these were not military targets. There is no military target around. These were just missiles hurled into Israel with the hope that it would land on somebody rather than just a field.

(Exhibit B, Transcript of 7/18/11 hearing in *Lelchook v. Commerzbank AG*, Civ. No. 10-5795 (S.D.N.Y.), DE 37 at 25); (Exhibit C, Summary Order in *Lelchook* denying defendant's motion to dismiss "[f]or the reasons stated on the record" at the July 18, 2011 hearing).

Clearly, estopping plaintiffs from pursuing their ATA claims arising from terrorist rocket attacks that Judge Hellerstein of this Court has expressly held are not subject to the "act of war" exception on the basis of a decision from another district court in another circuit applying a unique construction of the ATA not followed by any other court would be unjust and illogical, and would generate inconsistencies in the jurisprudence of this Court.

In sum, therefore, LCB's demand to summarily dismiss the ATA claims as barred by estoppel is meritless. Indeed, on the basis of Judge Hellerstein's ruling rejecting the "act of war" defense in respect to these very rocket attacks, as well this Court's decision in *Sokolow*, 583 F. Supp. 2d at 458-59 (civilians are not part of any "military forces"), and the holdings in *Klieman*, 424 F. Supp. 2d at 162-67 (as a matter of law, attacks on civilians are not covered by the "act of war" exception), *Biton*, 412 F. Supp. 2d at 6-11 (same) and *Morris*, 415 F. Supp. 2d at 1333 (terrorist groups cannot be "military

forces"), this Court can and should summarily reject LCB's "act of war" defense, and allow this case to proceed to discovery forthwith on the ATA claims.

Alternatively, if the Court permits LCB to renew its motion to dismiss the ATA claims, plaintiffs should be given leave to amend their complaint to include facts relevant to the "act of war" argument—particularly facts showing that Hizbollah's rocket attacks against civilians located in Israel were entirely separate and distinct, as a factual matter, from its armed clashes with the Israeli army.

C.    **The ATS Claims Remain Viable**

LCB also asserts that plaintiffs' claims under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350 must be dismissed because (1) *Kiobel v. Royal Dutch Petroleum*, 621 F.3d 111, 149 (2d Cir. 2010) held that ATS actions cannot be brought against corporations and (2) Judge Lamberth found that plaintiffs' claims against the defendants in *Kaplan* did not "touch and concern" the United States "with sufficient force to displace the presumption against extraterritorial application" and plaintiffs are collaterally estopped by that ruling. DE 72 at 2.

Both of these arguments fail. As several judges of this Court have concluded, "the issue of corporate liability under the ATS is … an open question in this Circuit." *Sikhs for Justice v. Indian National Congress Party*, 17 F. Supp. 3d 334, 341 (S.D.N.Y. 2014); *In re South African Apartheid Litigation*, 15 F. Supp. 3d 454, 461 (S.D.N.Y. 2014) ("corporate liability for claims brought under the ATS is an open question in the Second Circuit.").

Indeed, in its decision reversing the dismissal of LCB and remanding to this Court for further briefing, the Second Circuit expressly directed that "because the Supreme Court's opinion [in *Kiobel*] did not directly address the question of corporate liability under the ATS … we now think it best for the district court to address this issue in the first instance." *Licci v. LCB*, 732 F.3d 161, 174 (2d Cir. 2013).

Thus, LCB's demand that this Court summarily dismiss the ATS claims as unavailable against a corporate defendant conflicts directly with the express mandate of the Second Circuit.

On the contrary, moreover, for the reasons set forth by Judge Sweet and Judge Scheindlin in *Sikhs for Justice* and *In re South African Apartheid Litigation*, and in the extensive authorities cited by them therein (including numerous judges of the Second Circuit itself), this Court should affirmatively find that ATS actions may be brought against corporate defendants.

LCB's ATS "collateral estoppel" argument fares no better. The plaintiffs cannot be collaterally estopped from pursuing their ATS claims on the basis of *Kaplan*, for the reasons set forth above regarding the ATA "act of war" issue.

Furthermore, *Kaplan* involved a completely different fact pattern and theory of liability than this case. The ATS defendants in *Kaplan* were Iranian banks which transferred funds to Hizbollah with no U.S. nexus. Judge Lamberth therefore found that the only nations involved were Iran, Lebanon and Israel. *Kaplan*, 961 F. Supp. 2d at 205.

THE BERKMAN LAW OFFICE, LLC							December 9, 2014
											Page 7 of 8

By contrast, LCB's provision of material support and resources to Hizbollah involved extensive contacts with the United States, as the Second Circuit found in its personal jurisdiction ruling and as reflected in the verified forfeiture complaint filed by the Government. (Exhibit A). Indeed, it would be odd to conclude that LCB's provision of support to Hizbollah did not "touch and concern" the United States, when that conduct is both sufficient for the exercise of specific personal jurisdiction over LCB and led to a forfeiture action by the U.S. Government. Needless to say, LCB's Hizbollah-related conduct in the United States, which was not relevant to the *Kaplan* case, was not a part of the record in *Kaplan*, much less part of Judge Lamberth's "touch and concern" analysis.[5]

Accordingly, LCB's demand to summarily dismiss the ATS claims is meritless. On the contrary, based on the decisions in *Sikhs for Justice* and *In re South African Apartheid Litigation* and the existing record showing the broad U.S. nexus of LCB's conduct in this case—including the Second Circuit's personal jurisdiction decision and the Government's verified amended forfeiture complaint— the Court can and should rule that any renewed Rule 12(b) motion to dismiss plaintiffs' ATS claims would be futile and that the ATS claims will therefore now proceed to discovery.

Alternatively, if the Court permits LCB to renew its motion to dismiss the ATS claims, plaintiffs should be given leave to amend their complaint to include facts supporting the "touch and concern" requirement established by the Supreme Court in *Kiobel* well after plaintiffs' FAC was filed in this case.

**D.     The Non-Federal Claims Remain Viable**

LCB's demand that plaintiffs' non-federal claims be dismissed because Judge Lamberth dismissed their non-federal claims in *Kaplan* can be swiftly disposed of. Leaving aside the fact that plaintiffs consented to the dismissal of the non-federal claims in *Kaplan* (961 F. Supp. 2d at 206) which means the issue was not adjudicated, LCB's demand must be rejected because plaintiffs' non-federal claims in this case were <u>part of their original complaint filed in New York state court and removed by LCB to this Court</u>. In *Kaplan*, by contrast, the non-federal claims were merely pendant claims, supplemental to the federal causes of action, which were properly dismissed when the federal claims were dismissed. *See e.g. Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining [non-federal] claims.").

Thus, the dismissal of the non-federal claims in *Kaplan* is wholly irrelevant to this case.

---

[5] Moreover, plaintiffs' opposition to the *Kaplan* defendants' motion to dismiss was filed in November 2010, well *after* this Court granted LCB's motion to dismiss (in March 2010), and long *before* the Government filed its forfeiture complaint (in December 2011). Plaintiffs were thus in no position to invoke LCB's conduct in *Kaplan*—even if that conduct had been relevant to the *Kaplan* case, which it was not.

THE BERKMAN LAW OFFICE, LLC                    December 9, 2014
                                               Page 8 of 8

***

      In sum, LCB has no good-faith basis to file a renewed motion to dismiss. If the Court nonetheless permits LCB to do so, it should allow plaintiffs to first amend their complaint. Since in any event this case will proceed on at least some claims, discovery should now begin.

      We thank the Court for its time and attention to this matter.

                                         Respectfully,

                                         Robert J. Tolchin

Cc: All counsel of record by ECF.