

DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York  10020-1104
www.dlapiper.com

Jonathan Siegfried
jonathan.siegfried@dlapiper.com
T   212.335.4925
F   212.884.8477

December 22, 2014

**VIA ECF**

Hon. George B. Daniels
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *Licci, et al. v. American Express Bank Ltd., et al.* **(08-Civ. 7253) (GBD) (MHD)**

Dear Judge Daniels:

We represent Lebanese Canadian Bank ("LCB") in the above captioned matter and write in response to Plaintiffs' letter of December 9, 2014 (ECF No. 77) ("Tolchin Ltr.").

Plaintiffs' arguments as to why they should be allowed to re-litigate claims that they have already pursued and lost in three other lawsuits are without merit.[1]  As set forth below, Plaintiffs misstate the law of collateral estoppel in this Circuit which clearly precludes them from re-litigating the ATA claims that they have brought and lost against two other banks.  Similarly Plaintiffs' ATS claims are barred under both *Kiobel I* and *Kiobel II* analyses.  Finally, Plaintiffs' supplemental Israeli law claims should be dismissed under 28 U.S.C. §1367(c)(3) once the federal claims are dismissed.

**I.**      <u>Collateral Estoppel Requires Dismissal of the ATA Claims</u>

**A.**      **Judge Lamberth Dismissed Identical Claims By These Same Plaintiffs**

As we previously advised the Court in our letter of October 31, 2014, Judge Royce C. Lamberth dismissed identical ATA claims brought by these same Plaintiffs against two other banks in *Kaplan v. Central Bank of Islamic Republic of Iran*, 961 F. Supp. 2d 185 (D.D.C.

---

[1] When we first wrote the Court on October 31, 2014, we were aware of only one other case filed by the *Licci* Plaintiffs and their current counsel, *Kaplan v. Central Bank of Islamic Republic of Iran*, No. 1:10-cv-00483 (D.D.C.).  This is also the only case that Plaintiffs chose to address in their December 9, 2014 letter to the Court, notwithstanding that Plaintiffs, through Mr. Tolchin, filed two additional cases arising out of the same facts:  *Kaplan v. Hezbollah*, Civil No. 09-646 (RCL) (D.D.C.), which was dismissed on identical grounds, and *Kaplan v. Al Jazeera*, No. 1:10-cv-05298 (S.D.N.Y.), which was dismissed by the Honorable Kimba Wood on November 21, 2011.



Hon. George B. Daniels
December 22, 2014
Page Two

2013). In dismissing the ATA claims based upon the Act of War exemption (18 U.S.C. § 2336), Judge Lamberth found that:

> (1) the rocket attacks at issue occurred "in the course of" an "armed conflict" known as the "Israel–Lebanon War" or the "Second Lebanon War," and (2) during this war, "Hezbollah was acting as a 'military force.'" *Kaplan*, 961 F. Supp. 2d at 203-04. "In sum," the court concluded, "the rocket attacks meet the ATA's definition of an 'act of war' under § 2331(4)(C), and therefore qualify for the exemption under § 2336." *Id.* at 204.

Judge Lamberth issued the same ruling in another ATA case brought by these same Plaintiffs directly against Hezbollah. In April 2009, shortly after commencing the *Licci* action in this Court, Mr. Tolchin filed *Kaplan v. Hezbollah*, No. 1:09-CV-00646 (D.D.C.) (ECF No. 1). Although initially assigned to the Honorable Richard Roberts, it was subsequently reassigned to Judge Lamberth. Upon defendants' failure to answer the Complaint, Plaintiffs submitted proposed findings of fact and conclusions of law, along with numerous affidavits and declarations from victims, physicians and experts in support of their motion for a default judgment. (ECF No. 48). After reviewing Plaintiffs' submissions, Judge Lamberth issued the following ruling:

> In a Memorandum and Order issued this date in the related case *Kaplan v. Central Bank*, 10-CV-483, ECF Nos. 41 & 42, the Court dismissed several claims raised by all plaintiffs in this action against different defendants for the same rocket attacks under some of the same legal frameworks relied on here. Rather than repeat the reasoning of the *Kaplan v. Central Bank* opinion here in full, the Court incorporates all of the relevant reasoning of that case.

(Order at 2, *Kaplan v. Hezbollah*, No. 1:09-CV-00646 (D.D.C.) (ECF No. 50)).

The Court thereupon dismissed all of Plaintiffs' ATA claims against Hezbollah, leaving only Plaintiffs' Foreign Sovereign Immunities Act claim against the Government of North Korea.

Putting aside whether the filing of these various lawsuits before three different judges in different federal districts constitutes forum shopping, judge shopping, or a substantial waste of judicial resources, Plaintiffs are clearly prohibited, under the doctrine of collateral estoppel, from re-litigating the ATA issue yet again, this time against LCB. *Parklane Hosiery Co., Inc. v.*

DLA PIPER

*Shore*, 439 U.S. 322, 329 (1979) (collateral estoppel "precludes a plaintiff from relitigating identical issues by merely switching adversaries"); *Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir. 2012) (collateral estoppel applies where "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the part[ies] had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits").

As this Court stated to Mr. Tolchin at the November 4 conference, "You can't go around to every court and try to find one you like." (Nov. 4, 2014 Hr'g at 7:2-3). That is precisely what Plaintiffs and their counsel seek to do. It is also what collateral estoppel prevents them from doing successfully.

Confronted with the fact that they filed other lawsuits in which the courts rejected the same ATA claims made here, Plaintiffs now misstate the law of collateral estoppel. They argue that the doctrine does not apply to the orders dismissing the ATA claims in the *Kaplan* cases because those are not "final orders" and are subject to "de novo review" on appeal. Both arguments are without merit.

**B. Judge Lamberth's Two Prior Orders Dismissing Plaintiffs' Identical ATA Claims Are Final Orders for Purposes of Collateral Estoppel**

Plaintiffs begin with the argument that the *Kaplan* decision should not have preclusive effect because it is not yet a "final" judgment under Fed. R. Civ. P. 54(b). (Tolchin Ltr. at 3). They do not address the leading case in this Circuit, and thus misstate the applicable law. In *Lummus Co. v. Commonwealth Oil Ref. Co., Inc.*, 297 F.2d 80 (2d Cir. 1961) (Friendly, J.)—described by Wright & Miller as the "leading modern case," 18A Fed. Prac. & Proc. Juris. § 4434 (2d ed.)—the Second Circuit specifically held that "finality" for purposes of collateral estoppel "may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Lummus*, 297 F.2d at 89.

Whether an order is considered "final" for purposes of precluding further litigation of the same issue "turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review." *Id.*; *Yaba v. Roosevelt*, 961 F. Supp. 611, 622 n.2 (S.D.N.Y. 1997) ("Finality for the purposes of res judicata is not as strict as the requirements of finality for the purposes of bringing an appeal."); *Goldstein v. Cogswell*, No. 85 CIV. 9256 (KMW), 1991 WL 60420, at *12 (S.D.N.Y. Apr. 11, 1991) ("nonappealable decisions" that have "not yet been formalized in a judgment" are "entitled to



Hon. George B. Daniels
December 22, 2014
Page Four

preclusive effect"). As explained in 18-132 Moore's Federal Practice – Civil §132.03[5][b][i], "[i]ssue preclusion, unlike appealability under 28 U.S.C. §1291, does not require a judgment that ends the litigation and leaves nothing for the court to do but execute the judgment. . . . [E]ven if a particular decision is not appealable, it may be deemed final for purposes of issue preclusion. . . . The question of whether a judgment that is not final within the meaning of section 1291 ought nevertheless to be considered final in the sense of precluding further litigation of the same issue, turns on such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review." *See also* Restatement (Second) of Judgments § 13, comment e ("A judgment may be final in a res judicata sense as to a part of an action although the litigation continues as to the rest.").

Here, there is no question that Judge Lamberth's decisions dismissing the ATA claims under the Act of War exemption are "final" orders for purposes of issue preclusion. There is nothing tentative in either order dismissing Plaintiffs' ATA claims against the banks and Hezbollah. The hearings in Plaintiffs' motions were also clearly adequate. Plaintiffs had a full and fair opportunity to present—and did, in fact, present—whatever arguments and facts they wished in support of their ATA claims. Finally, Plaintiffs have had more than adequate opportunity to seek reconsideration or appellate review of both decisions. They had ten days to move for reconsideration and an additional 18 months to seek a final judgment under Fed. R. Civ. P. 54(b) or seek an interlocutory appeal under 28 U.S.C. § 1292(b). Despite the clear opportunity to do so, Plaintiffs took no steps to seek such relief. Instead, they have tried to press the reset button by restarting the litigation against another defendant, LCB, in another forum, the Southern District of New York. They chose not to inform LCB or the Court about the prior adverse rulings in *Kaplan* hoping they might fare better with a different judge unaware of Judge Lamberth's prior orders.

The purpose of the doctrine of collateral estoppel is to avoid just this kind of improper conduct. "Issue preclusion is based upon a policy that it is not fair to permit a party to relitigate an issue that has already been decided against it." *Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir. 1996); *Montana v. United States*, 440 U.S. 147, 153 (1979) (collateral estoppel is "central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions"); *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 546 (1990) ("the purposes served by the collateral-estoppel doctrine" include preventing "the possibility of inconsistent decisions" and "conserv[ing] judicial resources"). Here, Plaintiffs have already had their day in court on the Act of War exception—in fact, they have had it twice. They are not entitled to a third bite of the apple. As the Court stated to Mr. Tolchin at the conference, "[Y]our clients shouldn't be able to now pick and choose and try to find another forum to bring the exact



same federal claims that Judge Lamberth dismissed on their merits and with prejudice." (Nov. 4, 2014 Hr'g at 12:18-21).

Ignoring the binding precedent in this Circuit, Plaintiffs instead ask the Court to rely on cases from other circuits that are each distinguishable from the situation presented here. In *Vardon Golf Co. v. Karsten Mfg. Corp.*, 294 F.3d 1330 (Fed. Cir. 2002), the court held that a partial summary judgment did not provide preclusive effect because the patent at issue had since been surrendered, rendering the ruling moot. *Id.* at 1334. In *Humphreys v. BIC Corp.*, 923 F.2d 854 (6th Cir. 1991), the prior judgment was a general verdict which, by definition, does not resolve specific fact questions and does not specify which issue "was necessarily decided." *Id.* at *2. The decision in *St. Paul Fire & Marine Ins. Co. v. F.H.*, 55 F.3d 1420 (9th Cir. 1995) involved the finality of a partial summary judgment in Alaska state court that had been rendered moot by settlement. *Id.* at 1425. Finally, in *In re Loughery*, 2010 WL 4642131 (Bkrtcy. N.D. Ga. Oct. 12, 2010), another case involving partial summary judgment, the court acknowledged that, under *Christo v. Padgett*, 223 F.3d 1324 (11th Cir. 2000), there may be "a finding of finality" for purposes of collateral estoppel "even where an order is not 'final.'" *Id.* at *6.

Indeed, courts in other circuits, following the Second Circuit's rationale in *Lummus,* have expressly rejected the argument advanced by Plaintiffs here:

> Defendants' argument, that because that judgment is not final for purposes of Fed. R. Civ. P. 54(b) it has no collateral estoppel effect, is wholly without merit. The meaning of "finality" for purposes of collateral estoppel is not the same as "finality" for purposes of determining when an order is appealable or susceptible to reconsideration. The relevant question is whether the issue has been resolved in the prior action so that the Court has no good reason to permit it to be litigated again.

*In re Cenco Inc. Sec. Litig.*, 529 F. Supp. 411, 417 n.5 (N.D. Ill. 1982); *People, Inc. v. Medeco Sec. Locks, Inc.*, 59 F. Supp. 2d 1040, 1045 (N.D. Cal. 1999) ("reliance on Rule 54(b) is misplaced for purposes of a collateral estoppel analysis" because that rule only "defines a judgment for purposes of an appeal").

C.   **Questions of Law Are Subject to Collateral Estoppel**

Plaintiffs also argue that questions of law are not subject to collateral estoppel. This misstates the law as well as the issue before the Court. It is well established in this Circuit that collateral estoppel applies to both issues of law and fact. *See, e.g.*, *Ali v. Mukasey*, 529 F.3d 478,



Hon. George B. Daniels
December 22, 2014
Page Six

489 (2d Cir. 2008) ("The fundamental notion of the doctrine of collateral estoppel, or issue preclusion, is that *an issue of law or fact* actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties or their privies.") (emphasis added); *Wall v. Union of NA, Laborers' Int'l*, 276 F. App'x 68, 70 (2d Cir. 2008) ("[c]ollateral estoppel will bar the relitigation of *an issue of law or fact* that was raised") (emphasis added). Even one of the cases cited by Plaintiffs, *In re Laventhol & Horwath*, 139 B.R. 109, 113 (S.D.N.Y. 1992), states that collateral estoppel applies to "an issue of fact or law" and cites in support the Restatement (Second) of Judgments (1981) § 27. (*See* Tolchin Ltr. at 1).

The cases cited by Plaintiffs are inapposite. In *Haitian Centers Council Inc. v. McNary*, 969 F.2d 1350 (2d Cir. 1992), the court addressed whether collateral estoppel should apply where there are "changes in facts essential to [the prior] judgment." *Id.* at 1356. Here, there are no such factual changes: the pleadings in both *Kaplan* and *Licci* are virtually identical with respect to the essential facts relative to Plaintiffs' ATA claims. *Seneca Nation of Indians v. State of N.Y.*, 26 F. Supp. 2d 555 (W.D.N.Y. 1998), involved pure issues of law "unmixed with any particular set of facts." *Id.* at 569. By contrast, the decision in *Kaplan* was clearly based on the application of the specific facts pled to the law.[2] As such, it compels application of collateral estoppel here.[3]

---

[2] Indeed, the *Kaplan* decision was so clearly based upon the specific set of facts presented there—and now here—that Judge Lamberth distinguished that holding on the Act of War exemption from those rendered in other cases such as *Biton v. Palestinian Self-Gov't Auth.*, 412 F. Supp. 2d 1 (D.D.C. 2005), *Estate of Kleiman v. Palestinian Auth.*, 424 F. Supp. 2d 153 (D.D.C. 2006) and *Sokolow v. Palestinian Liberation Org.*, 583 F. Supp. 2d 451 (S.D.N.Y. 2008). Judge Lamberth concluded that the factors reviewed by him "comfortably distinguish the present matter from those cases, and . . . preserve the availability of the ATA for cases like *Biton*, *Kleiman* and *Gill*." *Kaplan*, 961 F. Supp. 2d at 204.

[3] Plaintiffs' reliance on *Lelchook v. Commerzbank AG*, Civ. No. 10-5795, the only other case to have addressed the ATA's Act of War exemption in the context of the Second Lebanon War, is misplaced for two reasons. First, as the Court stated to Mr. Tolchin when he referenced that case at the November 4 conference, "[W]hat I'd be more interested in is not a general scenario of whether or not I and other courts are in general addressing a similar issue and taking different positions, but whether or not your clients, who are the same parties in both litigations, having their day in court and litigating that issue individually, whether your clients are bound by that determination. That's a different issue." (Nov. 4, 2014 Hr'g at 6:17-23). Second, Judge Hellerstein's conclusion that the Act of War exemption did not apply because "[t]here never was a declared war between Hezbollah and the United States" misreads 18 U.S.C. §2331(4)(C). The statutory exemption applies to acts "occurring in the course of . . . armed conflict *between military forces of any origin*," (emphasis added), not simply to wars declared by or against the United States. Here, as Judge Lamberth found, the 34-day Second Lebanon War resulted from Israel's military invasion of Lebanon following the kidnapping of Israeli soldiers. During the course of that war, 43 Israeli civilians and over 1,000 Lebanese civilians were killed, in addition to



Hon. George B. Daniels
December 22, 2014
Page Seven

Plaintiffs' related argument, that orders subject to de novo review cannot give rise to collateral estoppel, is also without merit. The actual rule, which Plaintiffs misstate, is that "a judgment otherwise final remains so despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo." Restatement (Second) Judgments § 13 cmt. F (emphasis added). As one commentator has phrased it, "a final judgment retains all of its res judicata consequences pending decision of the appeal, apart from the virtually nonexistent situation in which the 'appeal' actually involves a full trial de novo." 18A Fed. Prac. & Proc. Juris. § 4433 (2d ed.).[4]

## II.  *Kiobel I* and *Kiobel II* Require Dismissal of Plaintiffs' ATS Claims

Plaintiffs' ATS claims have already been rejected twice—once by Judge Wood in *Kaplan v. Al Jazeera* applying *Kiobel I*, and again by Judge Lamberth applying *Kiobel II*. At the November 4 hearing, Mr. Tolchin acknowledged Judge Wood's decision and indicated that Plaintiffs would probably withdraw their ATS claim. (Nov. 4, 2014 Hr'g at 5, 7-12). While Plaintiffs' intentions may have altered, the law requiring dismissal of their ATS claims has not.

### A.  *Kiobel I* is Valid and Controlling

In dismissing Plaintiffs' ATS claims against Al Jazeera, Judge Wood held as follows:

> The Second Circuit has held that corporations cannot be held liable for violations of customary international law. Here, Plaintiffs are seeking to hold Defendant, a

---

military combatants on both sides. *Kaplan*, 961 F. Supp. 2d at 203; Mark Tran, *The second Lebanon war*, The Guardian, Jan. 30, 2008 (*available at*: http://www.theguardian.com/world/2008/jan/30/israelandthepalestinians.marktran); *PM "Says Israel pre-planned war*," BBC News, Mar. 8, 2007 (*available at*: http://news.bbc.co.uk/2/hi/6431637.stm); U.N. Human Rights Council [HRC], Report of the Comm'n of Inquiry of Lebanon Pursuant to Human Rights Council Res. S-2/1*, at 26, U.N. Doc. A/HRC/3/2 (Nov. 23, 2006), (*available at*: http://www.securitycouncilreport.org/atf/cf/%7B65BFCF9B-6D27-4E9C-8CD3-CF6E4FF96FF9%7D/Lebanon%20A%20HRC%203%202.pdf); Patrick Bishop, *Peacekeeping force won't disarm Hizbollah*, Daily Telegraph (Aug. 22, 2006) (*available at*: http://www.telegraph.co.uk/news/1526970/Peacekeeping-force-wont-disarm-Hizbollah.html).

[4] An example of an appeal which would involve a full trial de novo is described by Judge Kaplan in *In re Parmalat Sec. Litig.*, 493 F. Supp. 2d 723 (S.D.N.Y. 2007). There, an Italian bankruptcy court excluded certain claims as part of a "summary administrative proceeding that was not based on any discovery." Judge Kaplan held that despite being an otherwise final judgment, the ruling of the Italian bankruptcy court fell within the "exception for situations in which the appeal actually involves a trial de novo." *Id.* at 737. "On appeal, Hermes will be able to take discovery, put on evidence, and make legal arguments anew. Hence, it cannot be said that the Parma Court's decision to exclude Hermes' claims from the list of Old Parmalat's liabilities was a final adjudication on the merits." *Id.*



Hon. George B. Daniels
December 22, 2014
Page Eight

      corporation, liable for war crimes and violations of the law of nations under the ATS. Accordingly, this Court does not have subject matter jurisdiction over Plaintiffs' ATS claim.

      LCB is, as Plaintiffs allege, a banking corporation organized under the laws of Lebanon. (Compl. at ¶ 17). As such, dismissal of the ATS claim is mandated under *Kiobel I*.

      Although Plaintiffs contend that the Supreme Court in *Kiobel II* implicitly overruled *Kiobel I*, citing Judge Scheindlin's decision in *In re South African Apartheid Litig.*, 15 F. Supp. 3d 454 (S.D.N.Y. 2014) and Judge Sweet's decision following Judge Scheindlin in *Sikhs for Justice v. Indian National Congress Party*, 17 F. Supp. 3d 334 (S.D.N.Y. 2014), at least three other judges in the Southern and Eastern Districts have held that *Kiobel I* remains intact and binding upon the District Court. See Judge Cogan's Aug. 23, 2013 Order in *Linde v. Arab Bank PLC*, 1:04-cv-05564-BMC-VVP (E.D.N.Y.) (ECF No. 1089) (dismissing ATS claims), Judge Wood's decision in *Tymoshenko v. Furtash*, No. 11-CV-2794 KMW, 2013 WL 4564646, at *3 n.3 (S.D.N.Y. Aug. 28, 2013) (same); and Judge Furman's decision in *Ahmed v. Christian Friends of Israel Communities*, No. 13 CIV. 3376 JMF, 2014 WL 1796322, at *5 (S.D.N.Y. May 5, 2014) (same).

      As Judge Cogan held in *Arab Bank*:

> The law of this Circuit is that plaintiffs cannot bring claims against corporations under the ATS. *See Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111 (2d Cir. 2010), *aff'd Kiobel v. Royal Dutch Petroleum Co.*, 133 S.Ct. 1659 (2013). A decision by a panel of the Second Circuit "is binding unless and until it is overruled by the Court en banc or by the Supreme Court." *Baraket v. Holder*, 632 F.3d 56, 59 (2d Cir. 2011). Because the Supreme Court affirmed *Kiobel I* on other grounds, the Second Circuit's holding on corporate liability under the ATS remains intact. Nothing in the Supreme Court's affirmance undercuts the authority of the Second Circuit's decision.

      Most relevant and determinative, of course, is the view of the Second Circuit itself. In three separate decisions subsequent to *Kiobel II*, the Court has held that the Supreme Court's ruling in *Kiobel II* did not disturb, much less overrule, *Kiobel I*, and that its ruling on corporate liability under the ATS remains intact. *See Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (*Kiobel II* "did not address, much less question or modify, the holding on corporate liability under the ATS that had formed the central conclusion in the Second Circuit's *Kiobel* opinion); *Chowdhury v. Worldtel Bangladesh Holding, Ltd.*, 746 F.3d 42, 50 n. 6 (2d Cir. 2014)



Hon. George B. Daniels
December 22, 2014
Page Nine

("the Supreme Court's decision in *Kiobel* did not disturb the precedent of this Circuit"); *Balintulo v. Daimler AG*, 727 F.3d 174, 191 n.26 (2d Cir. 2013) (confirming that *Kiobel I* is "[t]he law of this Circuit").

*Mastafa* is particularly instructive since it was issued by the Court after Judge Scheindlin's opinion questioning the continuing validity of *Kiobel I*.[5]

Accordingly, Plaintiffs' ATS claims against the corporate defendant, LCB, should be dismissed under *Kiobel I*.

### B.   Plaintiffs' ATS Claims Are Also Barred By *Kiobel II*

Although not required to do so, given that Plaintiffs' ATS claims are barred under *Kiobel I*, the Court could also dismiss the ATS claims against LCB under *Kiobel II*.

In *Kiobel II*, the Supreme Court held that "the presumption against extraterritoriality applies to claims under the ATS," and "case[s] seeking relief for violations of the law of nations occurring outside the United States [are therefore] barred." 133 S.Ct. at 1669. The ATS, the Supreme Court concluded, did not provide a basis for jurisdiction over the *Kiobel* plaintiffs' claims because "all the relevant conduct" alleged "took place outside the United States." *Id.* Even where ATS claims "touch and concern the territory of the United States," however, "they must do so with sufficient force to displace the presumption against extraterritorial application." *Id.* Furthermore, the alleged domestic conduct, standing alone, must constitute a violation of the

---

[5]   The ruling of the *Licci* panel, just four months after the Supreme Court's decision in *Kiobel II*, is not to the contrary.  Judge Scheindlin read the remand by the *Licci* panel to be a disavowal of *Kiobel I* based upon the following reasoning:  "If the *Licci* panel found *Kiobel I* binding, it would have resolved the question immediately without further briefing.  The argument that the Second Circuit would remand issues governed by controlling law because other non-ATS claims remained defies logic.  The court's decision in *Licci* only makes sense if that panel no longer considered *Kiobel I* to be binding law." 15 F. Supp. 3d at 460.  In so ruling, Judge Scheindlin ignored or overlooked the fact that the panel in *Balintulo* had similarly remanded the South African Apartheid ATS claims to her following *Kiobel II* just as the *Licci* panel did later, even though it held that "The [Supreme] Court [*in Kiobel II*] . . . did not attempt to answer other questions involved in defining causes of action, including 'who may be liable.' . . .  The law of this Circuit already provides an answer to some of these questions, *including the principle that corporations are not proper defendants under the ATS in light of prevailing customary international law.*" 727 F.3d 191, n.26 (emphasis added).  Contrary to Judge Scheindlin's assumption, the *Licci* panel apparently simply chose to remand the ATS and other claims to this Court without expressing an opinion, rather than engage in piecemeal disposition of claims on appeal, and without giving the parties any opportunity to be heard on the implications of the Supreme Court's recent decision.  By contrast, the panels in *Mastafa, Chowdhury* and *Balintulo*, each chose to affirm the continued validity of *Kiobel I* after full briefing and argument by the parties.



Hon. George B. Daniels
December 22, 2014
Page Ten

law of nations. *See Mastafa*, 770 F.3d at 185 ("[I]n determining whether the ATS confers on a federal court jurisdiction over a particular case, a district court must isolate the 'relevant conduct' in a complaint. *That conduct is the conduct of the defendant which is alleged by plaintiff to be either a direct violation of the law of nations or . . . conduct that constitutes aiding and abetting the violation of the law of nations*.")  (Emphasis added).

Plaintiffs in this action have alleged *no* domestic conduct by LCB that violates the law of nations, let alone conduct that touches and concerns the United States with sufficient force to rebut the presumption against extraterritorial application of the ATS.  Plaintiffs claim only that LCB, a bank headquartered in Lebanon, conducted banking transactions from its branches in Lebanon for the Shahid Foundation, a Lebanese charity which Plaintiffs allege is controlled by Hezbollah.  (First Am. Compl. ("FAC") (ECF No. 25) at ¶¶ 17, 45-46).  LCB has no operations, branches, or employees in the United States, and there is no allegation that any of the transfers at issue either originated or terminated here.  The only alleged domestic conduct alleged in the complaint is that American Express International Bank ("Amex"), acting as a correspondent bank, performed a clearinghouse function of converting Lebanese pounds to U.S. dollars for LCB banking operations in Lebanon.  (*Id.* at ¶ 42).  This conduct by Amex, the only conduct that is alleged to have occurred here, is clearly not a violation of international law.  Indeed, it is not even a violation of New York law as both this Court and the Second Circuit have held in dismissing Plaintiffs' claims against Amex.[6]  *Licci v. Am. Exp. Bank Ltd.*, 704 F. Supp. 2d 403, 411 (S.D.N.Y. 2010); *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 51 (2d Cir. 2013).

Nor can Plaintiffs rescue their ATS claims by amending their complaint with additional facts alleged by the government in its civil forfeiture complaint filed against LCB.  Just like the First Amended Complaint, the civil forfeiture complaint does not allege any conduct by LCB in the United States that violates international law.  Moreover, the allegations in the civil forfeiture complaint address only transactions between 2007 and 2011 (Tolchin Ltr., Ex. A at ¶ 9), well after the 2006 rocket attacks that form the basis for Plaintiffs' claims here.

---

[6] The Second Circuit's decision on personal jurisdiction over LCB does not change the analysis since it involves an entirely different legal standard.  While the court held that the correspondent bank relationship between LCB and Amex established that LCB was subject to personal jurisdiction under New York's long-arm statute, as well as the minimum contacts test under the Due Process Clause, *Licci ex rel. Licci v. Lebanese Canadian Bank*, SAL, 732 F.3d 161, 167-74 (2013), *Kiobel II* requires significantly more.  *See Kiobel II*, 133 S.Ct. at 1669 ("Corporations are often present in many countries, and it would reach too far to say that mere corporate presence suffices.").  *Kiobel II* requires conduct by the defendant in the United States that violates international law.  As set forth above, there was no such conduct by LCB here.



Hon. George B. Daniels
December 22, 2014
Page Eleven

### III. Plaintiffs' Israeli Law Claims Should Also Be Dismissed

Plaintiffs allege that this Court should retain jurisdiction over their Israeli state claims even if their federal claims are dismissed. Plaintiffs provide no legal authority or compelling argument for why the Court should do so, or why it should depart from Judge Lamberth's decision in *Kaplan* to dismiss the Israeli law claims under 28 U.S.C. §1367(c)(3) following dismissal of the federal claims. Nothing in 28 U.S.C. § 1367(c)(3) suggests that there is or should be any distinction between a case that is removed to federal court and one that is originally filed there. The statute turns on whether the federal claims have been dismissed, not where they were originally filed. Furthermore, as Judge Lamberth correctly held, "Principles of comity indicate that these claims under Israeli law are best addressed by Israeli courts." *Kaplan*, 961 F. Supp. 2d at 205-06.

Accordingly, the Court should decline to exercise supplemental jurisdiction over the Israeli claims pursuant to 28 U.S.C. §1367(c)(3) upon dismissal of Plaintiffs' federal claims.

### IV. Conclusion

At the November 4, 2014 status conference, the Court stated that full motion practice on the issues addressed above would only be required if Plaintiffs are able to provide a "legitimate" or "colorable response." (Nov. 4, 2014 Hr'g at 2:18-20). They have not. Collateral estoppel precludes their ATA claims; *Kiobel I* and *Kiobel II* extinguish their ATS claims; and 28 U.S.C. §1367(c)(3) permits dismissal of their supplemental Israeli law claims. LCB therefore requests that the Court dismiss the Complaint without requiring further briefs and motion practice that will only unnecessarily burden the Court and waste judicial resources. Plaintiffs have had the opportunity on three separate occasions to present these claims to two separate courts in two different jurisdictions. In all three cases, their lawsuits have been dismissed. Plaintiffs should now be precluded, once and for all, from re-litigating their claims yet again.

                                              Respectfully submitted,

                                              **DLA Piper LLP (US)**

                                              Jonathan D. Siegfried

cc:   all counsel (via ECF)