UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: APR 14 2015

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

YAAKOV LICCI, *a minor, by his father and*    :
*natural guardian Elihav Licci and by his mother*    :
*and natural guardian Yehudit Licci,* et al.,    :

                   Plaintiffs,    :

         -against-    :

                                        :

LEBANESE CANADIAN BANK, SAL,    :

                    Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                             <u>MEMORANDUM DECISION
AND ORDER</u>

                              08 Civ. 7253 (GBD)

GEORGE B. DANIELS, United States District Judge:

       Following remand from the Second Circuit Court of Appeals, the parties[1] submitted letter briefing to this Court concerning: (1) whether collateral estoppel bars Plaintiffs from pursuing their claims under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333(a); (2) whether the Second Circuit's decision in *Kiobel v. Royal Dutch Petroleum Co.* ("*Kiobel I*"), 621 F.3d 111 (2d Cir. 2010), *reh'g en banc denied*, 642 F.3d 379 (2d Cir. 2011), which the Supreme Court affirmed on different grounds in *Kiobel v. Royal Dutch Petroleum Co.* ("*Kiobel II*"), 133 S. Ct. 1659 (2013), requires dismissal of Plaintiffs' claims under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350; and (3) in the event the federal claims are dismissed, whether Plaintiffs' Israeli law claims should be dismissed. (*See* Def.'s Oct. 31, 2014 Letter (ECF No. 72); Pl.'s Dec. 9, 2014 Letter (ECF No. 77); Def.'s Dec. 22, 2014 Letter (ECF No. 78); Def.'s Jan. 8, 2015 Letter (ECF No. 79).) At the last conference on January 6, 2015, the parties agreed that this Court could rely on the papers as

---

[1] Defendant American Express Bank Ltd. has been dismissed from this action. *See Licci v. Am. Express Bank Ltd.*, 704 F. Supp. 2d 403, 411 (S.D.N.Y. 2010), *aff'd in part sub nom. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 158 (2d Cir. 2012) (per curiam) and *vacated in part sub nom. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 174 (2d Cir. 2013).

submitted to resolve these issues.[2]  (Jan. 6, 2015 Tr. at 4:16-5:2, ECF No. 82.)  Having

considered the parties' arguments, this Court hereby DISMISSES Plaintiffs' federal claims under

the ATA and ATS with prejudice, and DISMISSES the Israeli law claims without prejudice.

## ATA CLAIMS

Defendant Lebanese Canadian Bank ("LCB") argues that Plaintiffs are precluded from

litigating their ATA claims because of a prior decision, *Kaplan v. Cent. Bank of the Islamic*

*Republic of Iran*, 961 F. Supp. 2d 185 (D.D.C. 2013), in which Judge Royce C. Lamberth

dismissed similar ATA claims filed by Plaintiffs on the grounds that the Hezbollah rocket attacks

at issue qualified for the "act of war" exception under the statute.[3]  (*See* Def.'s Oct. 31, 2014

Letter at 2; Def.'s Dec. 22, 2014 Letter at 2-3.)  In response, Plaintiffs contend that the *Kaplan*

decision does not have collateral estoppel effect because it is "non-final," and because questions

of law cannot be subject to collateral estoppel.  (*See* Pl.'s Dec. 9, 2014 Letter at 3-6.)

Collateral estoppel, or issue preclusion, "precludes a party from relitigating in a

subsequent proceeding an issue of law or fact that has already been decided in a prior

proceeding." *Boguslavsky v. Kaplan*, 159 F.3d 715, 719-20 (2d Cir. 1998).  "Defensive use of

collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue

the plaintiff has previously litigated unsuccessfully in another action against the same or a

different party." *United States v. Mendoza*, 464 U.S. 154, 159 n.4 (1984).  In the Second Circuit,

collateral estoppel applies if: "(1) the identical issue was raised in a previous proceeding; (2) the

---

[2] More than two months after this conference, Plaintiffs filed an unsolicited letter to address arguments contained in Defendant Lebanese Canadian Bank's ("LCB") January 8, 2015 letter. (*See* Pl.'s Mar. 16, 2015 Letter (ECF No. 80).)  As noted in LCB's prompt response, this letter "is, for the most part, a rehash of arguments [Plaintiffs] previously made in their earlier letters to th[is] Court." (*See* Def.'s Mar. 18, 2015 Letter at 1 (ECF No. 81).)

[3] Judge Lamberth also used his decision in *Kaplan v. Central Bank* to dismiss the Plaintiffs' ATA claims "for the same rocket attacks" in the separate case of *Kaplan v. Hezbollah*. (*See Kaplan v. Hezbollah*, No. 1:09-cv-00646-RCL, ECF No. 50 at 2, 4.)

issue was actually litigated and decided in the previous proceeding; (3) the part[ies] had a full

and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to

support a valid and final judgment on the merits." *Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir.

2012) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288-89 (2d Cir. 2002)).

Plaintiffs' first argument centers on the proposition that "a decision—like the decision in

*Kaplan* dismissing the ATA claims—which is revisable and non-appealable under [Federal Rule

of Civil Procedure] 54(b), cannot give rise to collateral estoppel." (*See* Pl.'s Dec. 9, 2014 Letter

at 3.) However, the opportunity to appeal is but one factor that a court considers in determining

whether a decision is "final" for purposes of collateral estoppel:

> Whether a judgment, not 'final' in the sense of 28 U.S.C. § 1291
> [for purposes of appeal], ought nevertheless be considered 'final'
> in the sense of precluding further litigation of the same issue, turns
> upon such factors as the nature of the decision (i.e., that it was not
> avowedly tentative), the adequacy of the hearing, and the
> opportunity for review. 'Finality' in the context here relevant may
> mean little more than that the litigation of a particular issue has
> reached such a stage that a court sees no really good reason for
> permitting it to be litigated again.

*Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir. 1961), *cert. denied sub*

*nom. Dawson v. Lummus Co.*, 368 U.S. 986 (1962).[4]  Collateral estoppel has also been extended

to "pretrial rulings that cannot yet be appealed," *see* 18A Charles Alan Wright & Arthur R.

Miller, *Federal Practice and Procedure* § 4434 & n.18 (2d ed.); in fact, "the kind of finality of

judgment necessary to create an estoppel . . . does not require a judgment which ends the

litigation and leaves nothing for the court to do but execute the judgment, but includes many

dispositions which, though not final in that sense, have nevertheless been fully litigated."

---

[4] *See also* Restatement (Second) of Judgments § 13 cmt. g (1982) ("[T]hat the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion.").

*Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 955 (2d Cir. 1964) (citation and internal quotation marks omitted), *cert. denied*, 377 U.S. 934 (1964).

Applying the *Lummus* factors to this case, the *Kaplan* decision is sufficiently "final" such that Plaintiffs' ATA claims are precluded under collateral estoppel. First, Judge Lamberth conclusively ruled that Plaintiffs' claims failed under the ATA because the rocket attacks were "properly categorized as 'act[s] of war'" and therefore granted the defendants' Rule 12(b)(6) motion to dismiss on this ground. *See Kaplan*, 961 F. Supp. 2d at 199, 203-04. Second, Plaintiffs had a full and fair opportunity in the prior litigation to brief why their ATA claims were not barred by this exception.[5] Third, notwithstanding Plaintiffs' stated intent to seek to appeal (*see* Pl.'s Dec. 9, 2014 Letter at 4), Plaintiffs have not sought reconsideration or any appellate review of Judge Lamberth's decision. There is no good reason to permit Plaintiffs to relitigate whether the Hezbelloh rocket attacks at issue here constitute an "act of war" under the ATA given the nearly identical allegations concerning these attacks in the complaints in this case and in the *Kaplan* action. (*See* Def.'s Oct. 31, 2014 Letter at 3 n.5 & Ex. A (highlighting the numerous instances of parallel allegations in the *Kaplan* complaint)); *see also Lummus*, 297 F.2d at 89.

Plaintiffs' second argument—that questions of law are not subject to collateral estoppel—is without merit. (*See* Pl.'s Dec. 9, 2014 Letter at 4-6.) Collateral estoppel bars relitigation in a subsequent suit of "an issue *of fact or law* that was fully and fairly litigated in a prior proceeding." *Marvel*, 310 F.3d at 288 (emphasis added). Further, because Judge Lamberth's dismissal of the ATA claims did not involve a purely legal question but rather the application of the "act of war" exception to rocket attacks that occurred during the Second

---

[5] Plaintiffs' opposition to the motion to dismiss in the *Kaplan* case specifically raised three reasons why the "act of war" exception did not apply. *See Kaplan v. Central Bank*, No. 1:10-cv-00483-RCL, ECF No. 20 at 15-16.

Lebanon War, *see Kaplan*, 961 F. Supp. 2d at 203-04, the preclusive effects of his decision are not limited. *See Envtl. Def. v. EPA*, 369 F.3d 193, 202-03 (2d Cir. 2004) (emphasis added) ("[W]here pure questions of law—*unmixed with any particular set of facts*—are presented to a court, the interests of finality and judicial economy may be outweighed by other substantive policies.") (quoting *United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 719 (2d Cir. 1993)).

In sum, Judge Lamberth's decision in the District of Columbia to dismiss Plaintiffs' ATA claims in *Kaplan*, which was premised on the same rocket attacks asserted in the present action, is sufficiently "final" to warrant the application of collateral estoppel here. Plaintiffs' ATA claims therefore must be dismissed.

ATS CLAIMS

The parties dispute whether this Court has subject matter jurisdiction over Plaintiffs' ATS claims following *Kiobel I* and *Kiobel II*.[6] (*See* Pl.'s Dec. 9, 2014 Letter at 6-7; Def.'s Dec. 22, 2014 Letter at 7-10.) In *Kiobel II*, the Supreme Court held that "the presumption against extraterritoriality applies to claims under the ATS" and that the claim "seeking relief for violations of the law of nations occurring outside the United States [was] barred." 133 S. Ct. at 1669. Even where the claims asserted "touch and concern the territory of the United States," the Supreme Court found that "they must do so with sufficient force to displace the presumption against extraterritorial application." *Id.*

The Second Circuit has identified four inquiries "which must be met" to establish subject matter jurisdiction over an ATS claim:

---

[6] In *Kiobel I*, the Second Circuit ruled that the ATS "does not provide subject matter jurisdiction over claims against corporations." 621 F.3d at 149. Following this decision and the Supreme Court's decision in *Kiobel II*, the Second Circuit has declined to address "whether, under current law, corporate defendants are subject to suit under the ATS." *See Sikhs for Justice, Inc. v. Nath*, No. 14-1724-cv, 2014 WL 7232492, at *3 (2d Cir. Dec. 19, 2014). Because the subject matter jurisdiction analysis in this case rests on other grounds, this Court need not address the availability of corporate liability under the ATS in this Circuit.

> (1) the complaint pleads a violation of the law of nations; (2) the
> presumption against the extraterritorial application of the ATS,
> announced by the Supreme Court in *Kiobel*, 133 S. Ct. 1659, does
> not bar the claim; (3) customary international law recognizes
> liability for the defendant; and (4) the theory of liability alleged by
> plaintiffs (*i.e.*, aiding and abetting, conspiracy) is recognized by
> customary international law.

*Mastafa v. Chevron Corp.*, 770 F.3d 170, 179 (2d Cir. 2014) (internal citations omitted).  The

Second Circuit noted that "the order and manner in which a court undertakes these inquiries is a

matter of discretion based upon the particular circumstances presented." *Id.*

Applying this standard, the ATS claims must be dismissed because Plaintiffs have not

satisfied the second jurisdictional inquiry above.  "[T]o displace the presumption against

extraterritoriality and establish federal subject matter jurisdiction over an ATS claim, the

complaint must plead: (1) conduct of the defendant that 'touch[ed] and concern[ed]' the United

States with sufficient force to displace the presumption against extraterritoriality, *and* (2) that the

*same conduct,* upon preliminary examination, states a claim for a violation of the law of nations

or aiding and abetting another's violation of the law of nations." *Id.* at 187 (emphasis original).

Plaintiffs fail to meet the second element of this inquiry.

Plaintiffs allege that the banking services through which they were harmed occurred

through LCB's use of New York-based American Express Ltd. as a correspondent bank "to

execute U.S. dollar transactions," including "extensive wire transfer services to Hizbollah." (*See*

Am. Compl. ¶¶ 13, 18, 42-44, 52-56, ECF No. 23.)  According to Plaintiffs, "[a]ll the Hizbollah

Wire Transfers were made to, from and/or between the Hizbollah Accounts, via [American

Express Ltd.] in New York." (*Id.* ¶ 54.)  Similar to the plaintiffs in *Mastafa*, the Plaintiffs in the

present matter have alleged "numerous New York-based payments and 'financing

arrangements'" which were conducted through a New York bank.  *See* 770 F.3d at 190-91; (Am.

Compl. ¶¶ 33-56).

However, Plaintiffs insufficiently allege that the wire transfers aided and abetted a

violation of the law of nations,[7] and therefore have not met the second element of this

jurisdictional inquiry.  To state a claim for aiding and abetting a violation of the law of nations

under the ATS, the "analysis necessarily focuses on allegations that [the] defendant[] *intended* to

aid and abet violations of *customary international law*."[8]  *Mastafa*, 770 F.3d at 193 (emphasis

original); *see also Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 259

(2d Cir. 2009) ("[T]he *mens rea* standard for aiding and abetting liability in ATS actions is

purpose rather than knowledge alone."), *cert. denied*, 131 S. Ct. 79 (2010).  Here, Plaintiffs

allege via conclusory statements that LCB knew[9] and intended[10] that the wire transfers would

result in harm to them.  Their Amended Complaint is devoid of any factual allegations

supporting LCB's specific intent, in executing the wire transfers, to promote or engage in

Hezbollah's coercive actions against the Israeli government and public.  "Plaintiffs never

elaborate upon [their allegations] in any way that establishes the plausibility of" LCB

---

[7] (*See* Am. Compl. ¶¶ 184-194 (containing a cause of action under the ATS against LCB for "aiding and abetting violations of international law").)

[8] Reference to the "law of nations" is used interchangeably with "customary international law."  *See Mastafa*, 770 F.3d at 176 & n.2.

[9] (*See, e.g.*, Am. Compl. ¶ 131 ("At all relevant times . . . LCB had actual knowledge that terrorist organizations such as Hizbollah require wire transfer services in order to operate and in order to plan, to prepare for and to carry out terrorist attacks, and that providing wire transfer services to Hizbollah would enable Hizbollah to plan, to prepare for and to carry out terrorist attacks and/or enhance Hizbollah's ability to plan, to prepare for and to carry out such attacks, because such knowledge is notorious and known to the public at large.").)

[10] (*See, e.g.*, Am. Compl. ¶ 129 ("LCB carried out the Hizbollah Wire Transfers as a matter of official LCB policy, in order to assist and advance Hizbollah's terrorist activities against Jews in Israel . . . ."); *id.* ¶ 190 ("LCB carried out the Hizbollah Wire Transfers with the specific purpose and intention of enabling and assisting Hizbollah to carry out its goal of physically exterminating or expelling the Jewish residents of Israel, and its goal of intentionally and systematically using violence against Jewish civilians in Israel.").)

"intending—and taking deliberate steps with the purpose of assisting"—a terrorist organization. *See Mastafa*, 770 F.3d at 194.[11]  Absent facts to plausibly connect the executed wire transfers with an express purpose of facilitating the rocket attacks, Plaintiffs have failed to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Because the Amended Complaint inadequately pleads that the wire transfers at issue were made with the intent to aid and abet the alleged terrorist activities, Plaintiffs have not established that there is subject matter jurisdiction under the ATS.  *See Mastafa*, 770 F.3d at 190 ("[O]ur jurisdictional analysis need not take into account allegations that, on their face, do not satisfy basic pleading requirements.").

Plaintiffs seek leave to amend their First Amended Complaint to include additional facts to demonstrate, in accordance with the *Kiobel II* decision, that this Court has subject matter jurisdiction over the ATS claims.  (*See* Pl.'s Dec. 9, 2014 Letter at 7.)  However, Plaintiffs were already afforded the opportunity to submit a proposed second amended complaint for this Court's review, (*see* Nov. 4, 2014 Tr. at 8:20-9:5, 15:10-22, ECF No. 75), and elected not to include this amendment in their response to LCB's October 31, 2014 letter.  Plaintiffs could have addressed this requirement more fully in their response, and the Second Circuit's October 23, 2014 *Mastafa* decision explaining the relevant jurisdictional prerequisites was readily available to them.  Failing to show that the presumption against extraterritorial application has been displaced in their case, Plaintiffs' ATS claims must be dismissed.  *See Kiobel II*, 133 S. Ct. at 1669.

---

[11] *Cf. Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1025 (9th Cir. 2014) ("The allegation of purpose is not, however, a bare and conclusory assertion that is untethered from the facts underlying the plaintiffs' [ATS] claims.  Instead, the complaint specifically ties the defendants' alleged purpose to the defendants' economic goals in the Ivory Coast, their control over the cocoa market, and their lobbying efforts.  The factual allegations concerning the defendants' goals and business operations give rise to a reasonable inference that the defendants acted with purpose, and that is enough to satisfy *Iqbal*.")

### ISRAELI LAW CLAIMS

Having dismissed the federal causes of action under the ATA and ATS, this Court declines pursuant to 28 U.S.C. § 1367(c) to exercise jurisdiction over Plaintiffs' remaining Israeli law claims, which are hereby dismissed without prejudice.  Following removal of this action from New York state court, Plaintiffs amended their complaint to include federal claims.  (*See* Jan. 6, 2014 Tr. 8:9-9:3.)  "Certainly, if the federal claims are dismissed before trial . . . the [non-federal] claims should be dismissed as well."  *See Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also Kaplan*, 961 F. Supp. 2d at 205-06 (declining to exercise supplemental jurisdiction where all federal causes of action had been dismissed, as "[p]rinciples of comity indicate that the[] claims under Israeli law are best addressed by Israeli courts").  Additionally, the potential expiration of the statute of limitations does not prejudice Plaintiffs because, under 28 U.S.C. § 1367(d), the limitations period is "tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

### CONCLUSION

Plaintiffs' claims under the Anti-Terrorism Act and the Alien Tort Statute are hereby DISMISSED with prejudice.  Plaintiffs' Israeli law claims are hereby DISMISSED without prejudice.

The Clerk of the Court is directed to close this case.


Dated: New York, New York
     April 14, 2015

                    SO ORDERED.

                    GEORGE B. DANIELS
                    United States District Judge