**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

YAAKOV LICCI, *et al.*,

                          Plaintiffs,

              -against-

LEBANESE CANADIAN BANK, SAL, *et al.*,

                    Defendants.

-------------------------------------------------------------------X

Case No.
08-cv-7253(GBD)

**MEMORANDUM IN SUPPORT OF THE AMERICAN PLAINTIFFS'**
**RULE 60(b)(5) MOTION FOR RELIEF FROM JUDGMENT**

THE BERKMAN LAW OFFICE, LLC

*Attorneys for the Plaintiffs*
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
718-855-3627

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................................1

ARGUMENT

The Movants Have Acted Equitably.................................................................................9

There Are No Real "Finality" Concerns Here, and Justice Requires Allowing the
American Plaintiffs' ATA Claims to Proceed on the Merits ...........................................9

Finality ..............................................................................................................................9

Ends of Justice ...............................................................................................................14

CONCLUSION...................................................................................................................22

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

YAAKOV LICCI, *et al.*,

                      Plaintiffs,            Case No.
                                         08-cv-7253(GBD)
              -against-

LEBANESE CANADIAN BANK, SAL, *et al.*,

                      Defendants.

-------------------------------------------------------------------X

**MEMORANDUM IN SUPPORT OF THE AMERICAN PLAINTIFFS'**
**RULE 60(b)(5) MOTION FOR RELIEF FROM JUDGMENT**

**INTRODUCTION**

On April 14, 2015, this Court dismissed claims under the Antiterrorism Act ("ATA") brought by the American citizen plaintiffs herein on grounds of collateral estoppel. The Court's estoppel ruling was based the decision in *Kaplan v. Central Bank of the Islamic Republic of Iran*, 961 F. Supp. 2d 185 (D.D.C. 2013), which had dismissed ATA claims brought by the American plaintiffs herein against a different defendant.

On July 20, 2018, the preclusive decision in *Kaplan* was vacated in its entirety by the United States Court of Appeals for the District of Columbia Circuit. *Kaplan v. Central Bank of the Islamic Republic of Iran*, ___ F.3d ___, 2018 WL 3490072 (D.C. Cir. July 20, 2018).

Accordingly, the American plaintiffs hereby respectfully move, pursuant to Rule 60(b)(5) of the Federal Rules of Civil Procedure, to set aside the dismissal of their ATA claims. For the reasons set forth below, the instant motion should be granted.

## RELEVANT BACKGROUND

This is a civil action for damages arising from terrorist rocket attacks on civilians in Israel that were carried out by the Hezbollah terrorist organization during July-August 2006. This action was brought by American, Israeli and Canadian citizens who were severely injured by the rocket attacks, and the family members and estates of four Israelis who were killed in the attacks.[1]

The defendant, Lebanese Canadian Bank, SAL ("LCB"), knowingly provided millions of dollars in financial and banking services to Hezbollah. In February 2011, the U.S. Treasury designated LCB as a "primary money laundering concern" due to its extensive involvement with and support for Hezbollah. 76 Fed. Reg. 9403, Feb. 17, 2011. In December 2011, the United States brought a forfeiture action against LCB in this Court, due to its wide-ranging Hezbollah-related activities dating back at least to 2002. *U.S. v. Lebanese Canadian Bank*, 11-cv-9186 (S.D.N.Y.).

The original complaint in this action asserted non-federal claims and was filed against LCB and its New York correspondent bank, American Express Bank ("Amex Bank"), in Supreme Court, New York County. Defendants removed the action to this Court, and after removal plaintiffs amended the complaint to add claims under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, on behalf of the American plaintiffs, as well as claims under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, on behalf of the non-American plaintiffs. This Court

---

[1] The American plaintiffs, who are the movants here, are the following individuals: Avishai Reuvane, Elisheva Aron, Chayim Kumer, Nechama Kumer, Brian Ardstein, Keren Ardstein, Ma'ayan Ardstein, Noa Ardstein, N.Y.A. (minor), A.C.A. (minor), Laurie Rappeport, Margalit Rappeport, Yair Mor, Chaim Kaplan, Rivka Kaplan, Mushka Kaplan, A.L.K. (minor), M.K. (minor), C.K. (minor), E.K. (minor), Theodore (Ted) Greenberg, Maurine Greenberg, Jacob Katzmacher, Deborah Chana Katzmacher, Chaya Katzmacher, Mikimi Steinberg, Jared Sauter, Danielle Sauter and Myra Mandel.

dismissed the action against Amex Bank for failure to state a claim and dismissed the action against LCB for lack of personal jurisdiction. *Licci v. Am. Exp. Bank Ltd.*, 704 F. Supp. 2d 403 (S.D.N.Y. 2010).

On appeal, the Second Circuit affirmed the dismissal of the claims against Amex Bank,[2] but reversed the dismissal of the action against LCB, after certifying the jurisdictional question to the New York Court of Appeals, which found that the exercise of personal jurisdiction over LCB in this action is proper. *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327 (N.Y. 2012); *Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013).

After remand LCB moved this Court to dismiss the American plaintiffs' ATA claims as barred by collateral estoppel, on the basis of the intervening decision in *Kaplan v. Central Bank of the Islamic Republic of Iran*, 961 F. Supp. 2d 185 (D.D.C. 2013). *Kaplan* is an ATA action brought by the American plaintiffs herein against an Iranian bank that funded Hezbollah. The *Kaplan* court found that the Hezbollah rocket attacks at issue constituted an "act of war" within the meaning of ATA § 2331, and that plaintiffs' ATA claims were therefore barred under ATA § 2336(a), which provides that: "No action shall be maintained under section 2333 of this title for injury or loss by reason of an act of war." *Kaplan,* 961 F. Supp. 2d at 199-204.[3]

LCB also moved to dismiss the non-American plaintiffs' ATS claims under the holdings in *Kiobel v. Royal Dutch Petroleum*, 621 F.3d 111 (2d Cir. 2010) *aff'd on other grounds*, 133 S. Ct. 1659 (2013), and asked the Court to decline jurisdiction over the plaintiffs' non-federal claims.

---

[2] Thus, Amex Bank is no longer part of this case.

[3] The American plaintiffs also brought a separate ATA action against Hezbollah, *Kaplan v. Hezbollah*, Civ. No. 09-646 (D.D.C.), which the D.C. district court dismissed on the basis of its "act of war" decision in *Kaplan*, 961 F. Supp. 2d 185. *See Kaplan*, Civ. No. 09-646, DE 50 at 2, 4.

On April 14, 2015, this Court granted LCB's motion in full. It dismissed the American plaintiffs' ATA claims as barred by collateral estoppel on the basis of *Kaplan*, dismissed the non-American plaintiffs' ATS claims under *Kiobel*, and declined to exercise supplemental jurisdiction over the non-federal claims brought by all the plaintiffs. *Licci v. Lebanese Canadian Bank*, 2015 WL 13649462, (S.D.N.Y. Apr. 14, 2015). The Second Circuit affirmed. *Licci v. Lebanese Canadian Bank*, 834 F.3d 201 (2d Cir. 2016); *Licci v. Lebanese Canadian Bank*, 659 F. App'x 13 (2d Cir. 2016), *cert. denied*, 138 S. Ct. 1691 (2018).[4]

On July 20, 2018, the U.S. Court of Appeals for the D.C. Circuit vacated the decision in *Kaplan* on the basis of which the American plaintiffs' ATA claims were dismissed by this Court as barred by collateral estoppel. *See Kaplan v. Central Bank of the Islamic Republic of Iran*, ___ F.3d at ___, 2018 WL 3490072, at *12 ("We vacate the district court's judgment dismissing the plaintiffs' ATA claims against Hezbollah and Bank Saderat PLC, and remand for the district court to determine whether it has personal jurisdiction over the defendants.").[5]

Thus, the *Kaplan* decision, which this Court found preclusive of the American plaintiffs' ATA claims in this case and was the sole basis for the dismissal of those claims, is now a nullity. "A judgment that has been vacated, reversed, or set aside on appeal is thereby deprived of all conclusive effect, both as res judicata and as collateral estoppel." *Erebia v. Chrysler Plastic Prod. Corp.*, 891 F.2d 1212, 1215 (6th Cir. 1989) (citation omitted). Therefore, and for the reasons discussed below, those claims should be reinstated.

---

[4] Following the April 14, 2015 dismissal, plaintiffs refiled their non-federal claims in state court. *Licci v. Lebanese Canadian Bank*, No. 505931/15 (Kings County). As discussed below, LCB has moved to dismiss plaintiffs' state court action.

[5] This decision of the D.C. Circuit vacated the "act of war" dismissals both in the case against the Iranian bank that was the subject of *Kaplan*, 961 F. Supp. 2d 185, and in plaintiffs' separate ATA action against Hezbollah, *Kaplan*, Civ. No. 09-646 (D.D.C.).

## ARGUMENT

It is black-letter law that a "judgment based upon the preclusive effects of a prior judgment should not stand" once the earlier judgment is vacated. *U.S. Postal Service v. Gregory*, 534 U.S. 1, 15 (2001) (Ginsburg, *J.,* concurring) (citation, quotation marks and brackets omitted). Therefore, federal courts have consistently held that in such a case the later judgment *must* be set aside. "[A]n initial reliance on preclusion must be reversed once the underlying judgment is reversed." *Levi Strauss v. Abercrombie & Fitch Trading*, 719 F.3d 1367, 1372 (Fed. Cir. 2013). *See also, e.g., In re Hedged-Investments Assocs.*, 48 F.3d 470, 473 (10th Cir. 1995) (if the district court had given preclusive effect to a decision that was subsequently reversed on appeal "we would be compelled to reverse that decision."); *S.C. Nat. Bank v. Atl. States Bankcard Ass'n, Inc.*, 896 F.2d 1421, 1430 (4th Cir. 1990) ("due to our reversal of the decision of Judge Henderson upon which CFB claims Judge Britt should have relied … we would have to reverse any issue preclusion effect Judge Britt would have originally lent Judge Henderson's decision."); *Consol. Exp., Inc. v. New York Shipping Ass'n, Inc.*, 641 F.2d 90, 93–94 (3d Cir. 1981) ("Since the judgment which was the predicate for our discussion of collateral estoppel has been vacated, so much of our prior judgment as required giving that judgment any effect in this case must be vacated."); *Ornellas v. Oakley*, 618 F.2d 1351, 1356 (9th Cir. 1980) ("Because we have reversed the district court's summary judgment … we must also reverse the dismissal on the Title VII claims. A reversed or dismissed judgment cannot serve as the basis for a disposition on the ground of res judicata or collateral estoppel.").

The proper procedural vehicle in a federal district court for setting aside a judgment based upon the prior preclusive effect of a now-vacated earlier judgment is Fed. R. Civ. P. 60(b)(5), which in relevant part empowers the district court to set aside a judgment which "is based on an earlier judgment that has been reversed or vacated." It is well established that this

provision of Rule 60(b)(5) applies "to situations where the present judgment is based on the prior judgment in the sense of res judicata or collateral estoppel." *Faberge, Inc. v. Wyman*, 1987 WL 16279, at *1 (S.D.N.Y. Feb. 25, 1987). *See also, e.g., Galin v. U.S.*, 2008 WL 5378387, at *9 (E.D.N.Y. Dec. 23, 2008) ("Plaintiff's argument that collateral estoppel does not apply because the related case is on appeal is unpersuasive given that a decision is 'final' when judgment is entered, even if an appeal is later filed…. If this [related] case is reversed on appeal, the plaintiff in this action can write to this Court informing the Court of this fact, and the Court has the ability to re-open the case pursuant to Fed. R. Civ. P. 60(b)(5)"); *Jones v. U.S.*, 2006 WL 1120604, at *1 (E.D.N.Y. Apr. 26, 2006) (Rule 60(b)(5) applies "to cases in which the present judgment is based on the prior judgment in the sense of claim or issue preclusion.") (quoting 11 Charles Alan Wright et al., Federal Practice and Procedure § 2863); *Eubanks v. U.S.*, 2005 WL 1949474, at *3 (S.D.N.Y. Aug. 11, 2005) (same); 12 Moore's Federal Practice § 60.46[1] ("[O]ne judgment is based on another" within the meaning of Rule 60(b)(5) "when the first judgment is so related to the second that the first judgment has claim or issue preclusion effects on the second.") (citations omitted).

Given the fundamental rule that a "judgment based upon the preclusive effects of a prior judgment should not stand" if the prior judgment is vacated, *U.S. Postal Service*, 534 U.S. at 15, relief under Rule 60(b)(5) is liberally granted in such circumstances. "Courts considering Rule 60(b)(5) motions are generally, and correctly, solicitous of a movant seeking relief when a prior judgment on which the challenged judgment relies has been vacated." *Thai-Lao Lignite v. Gov't of Lao People's Democratic Republic*, 864 F.3d 172, 186 (2d Cir. 2017). *See also e.g. In re McCurdy*, 230 F.3d 1367 (9th Cir. 2000) (unpublished) ("The bankruptcy court ultimately granted summary judgment … on the basis of the collateral estoppel effect of the state court

judgment … the Hawaii Supreme Court reversed … McCurdy's Rule 60(b)(5) motion should have been granted. The district court, therefore, abused its discretion in affirming the bankruptcy court's denial of the motion."); *U.S. v. Cal-Almond*, 215 F.3d 1334 (9th Cir. 2000) (unpublished) ("The district court abused its discretion in denying the government's Fed. R. Civ. P. 60(b)(5) motion …   Because the dismissal order was 'based in the sense of … collateral estoppel' on a prior judgment that was vacated.") (citation omitted); *Erie Insurance v. Walkup*, 2018 WL 850098, at *2 (S.D.W. Va. Feb. 13, 2018) ("It seems clear that Walkup is eligible for relief under Rule 60(b)(5)(ii) as the court's grant of summary judgment in 2002 was based on Walkup's conviction that has since been reversed and vacated.").

In *Thai-Lao Lignite*, the Second Circuit identified three factors that may influence the "solicitous" treatment that should otherwise be afforded to Rule 60(b)(5) motions: (1) "whether the motion was made within a reasonable time," as Rule 60(c)(1) requires; (2) "whether the movant acted equitably;" and (3) "whether vacatur would strike an appropriate balance between serving the ends of justice and preserving the finality of judgments." *Thai-Lao Lignite*, 864 F.3d at 186.[6]

---

[6] *Thai-Lao Lignite*, which arose from a foreign arbitral award, also lists "international comity" as a factor when the Rule 60(b)(5) motion is "based on [a] later-annulled arbitral award[]." *Id.* at 186. The "international comity" factor is irrelevant where, as here, the annulled ruling is that of a sister federal court. To the extent that comity between U.S. federal courts is a consideration, this Court should give full effect to the decision of the D.C. Circuit vacating the district court decision in *Kaplan*.

While some out-of-circuit cases also speak of a need to show "extraordinary circumstances" to obtain relief under Rule 60(b) *generally*, plaintiffs have been unable to locate any case denying relief under Rule 60(b)(5) due to the absence of "extraordinary circumstances," where, as here, a judgment previously held to be preclusive was later vacated. Moreover—dispositively—*Thai-Lao Lignite* did **not** list "extraordinary circumstances" as one of the Rule 60(b)(5) factors. That is the law of this Circuit.

Indeed, prior decisions from this district, and scholarly authority, hold that there is **no** requirement to show "extraordinary circumstances" under Rule 60(b)(5). *See, e.g., McDonough v. City of*

Satisfying these factors "**need not be an onerous burden** for the beneficiaries of the annulment" of the underlying decision. *Id.* at 187 (emphasis added). Here, all three of these factors overwhelmingly favor granting the instant motion:

## The Motion Is Clearly Timely

Rule 60(c)(1) requires that a motion for relief under Rule 60(b)(5) "be made within a reasonable time." The decision of the D.C. Circuit vacating *Kaplan* was issued on July 20, 2018, about three weeks before the filing of this motion. Clearly, therefore, this motion is timely, and LCB was in no way prejudiced by the passage of time between July 20, 2018 and the filing of this motion. By comparison, in *Thai-Lao Lignite*, the Rule 60(b)(5) motion was filed "one month and a half" after the underlying decision was vacated (*id.* at 180)—i.e., twice the time here—which the Second Circuit not only found "reasonable" but praised as seeking relief "promptly." *Id.* at 189.[7]

---

*New York*, 2000 WL 1804137, at *8 (S.D.N.Y. Dec. 8, 2000) ("the plaintiffs have not established the existence of 'extraordinary circumstances' that would be necessary to grant relief from a judgment under Rule 60(b)(6). This is not a case like *Agostino v. Felton,* 521 U.S. 203 (1997), on which the plaintiffs primarily rely. *Agostino* dealt with a Rule 60(b)(5) motion.") (citations omitted); *In re Petition of Bd. of Directors of Hopewell Int'l Ins.*, 281 B.R. 200, 207 (Bankr. S.D.N.Y. 2002) ("Gold Medal can base its motion on the more liberal provisions of Rule 60(b)(5), and accordingly, it is not necessary to consider whether it can show the "extraordinary circumstances" required for motions based on Rule 60(b)(6)."); 11 Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 2857 ("'[E]xtraordinary circumstances' should only be required under catchall clause (6) of the rule.")

In any event, even if plaintiffs were required to show "extraordinary circumstances" (beyond the vacatur of *Kaplan*) to obtain relief under Rule 60(b)(5) (which they are not), the sum of the circumstances detailed below in this motion is sufficiently "extraordinary" to meet any such requirement.

[7] In fact, "[t]he Second Circuit has interpreted a 'reasonable time' [under Rule 60(c)(1)] as eighteen months, unless the movant shows good cause for the delay or mitigating circumstances." *E. End Eruv Ass'n, Inc. v. The Vill. of Westhampton Beach*, 2015 WL 5774981, at *2 (E.D.N.Y. Sept. 30, 2015) (quoting *Wells v. New York City Transit Auth.*, 2013 WL 6409457, at *3 (S.D.N.Y. Dec. 9, 2013)).

## The Movants Have Acted Equitably

The movants are American citizens who are innocent victims of deadly terrorist attacks carried out with massive material support and resources knowingly provided by defendant LCB to Hezbollah, a U.S.-designated terrorist organization. The movants seek redress under a federal statute enacted by Congress specifically for the benefit of U.S. terrorism victims such as them. The movants have acted equitably at every step of the way during the lengthy and trying history of these proceedings.

## There Are No Real "Finality" Concerns Here, and Justice Requires Allowing the American Plaintiffs' ATA Claims to Proceed on the Merits

As noted, the Rule 60(b)(5) analysis requires the Court to balance the interest in "the finality of judgments" with the mandate of "serving the ends of justice." *Thai-Lao Lignite* at 186. In this case, both of these considerations—i.e., "finality" and "the ends of justice"—cut overwhelmingly in favor of granting this motion.

## Finality

The Second Circuit has identified at least three factors, all of which are present in this case, which mitigate concerns about "finality":

*First*, in *Thai-Lao Lignite* the Second Circuit held that "the timing of a motion to vacate" is highly relevant to the "finality" determination, and that finality concerns are mitigated where, as here, "the party seeking vacatur ... sought relief promptly after courts in the primary jurisdiction annulled the" underlying decision. *Id*. at 188–89. *See also id*. at 182 (goal of not disturbing "finality" is achieved by requiring that motion be made "within a reasonable time.").

This motion was filed a mere three weeks after the underlying decision in *Kaplan* was vacated—twice as fast as the motion in *Thai-Lao Lignite*, which the Second Circuit easily found

to have been filed promptly enough to override finality concerns. Thus, the movants' alacrity in filing this motion negates any finality considerations.

**Second**, *Thai-Lao Lignite* held that "finality interests [will] not stand in the way of" Rule 60(b)(5) relief, when "the party seeking to enforce the [underlying decision] knew proceedings to set aside the [underlying decision] in the primary jurisdiction were ongoing." 864 F.3d at 189. Exactly so here: the plaintiffs made clear from the moment that LCB asserted its collateral estoppel argument that they would appeal the "act of war" decision in *Kaplan*. *See* Plaintiffs' Letter Brief, DE 77, at 4 ("The plaintiffs respectfully but strongly disagree with, and intend to appeal, Judge Lamberth's decision dismissing their ATA claims."). The fact that *Kaplan* would be appealed, and the potential impact of such an appeal, was also discussed in oral argument before this Court. *See* Tr. 1/6/2015 (DE 82) at 11-14; 16-17.

Likewise, in their appeal of the Court's collateral estoppel decision, plaintiffs made clear that *Kaplan* would be appealed. *See* Brief for Plaintiffs-Appellants in No. 15-1580 *Licci v. LCB* (2d Cir.), Exhibit A, at 42-45.[*] In response, LCB devoted over four pages of its appellate brief to the spurious claim that the plaintiffs had missed the deadline to timely appeal *Kaplan*. *See* Brief for Defendant-Appellee, Exhibit B, at 24 ("Plaintiffs waived their right to appeal when they failed to file a timely notice of appeal" in *Kaplan*) and at 23-27. Plaintiffs refuted this argument at length in their reply brief, explaining that their time to appeal *Kaplan* had not yet arrived, and once again put LCB on notice that they intended to appeal *Kaplan* and to prevail on that appeal. Reply Brief for Plaintiffs-Appellants, Exhibit C, at 15-26. Moreover, plaintiffs explicitly stated

---

[*] Exhibit references herein refer to the exhibits attached to the accompanying affirmation of Robert J Tolchin, Esq.

that if *Kaplan* were vacated by the D.C. Circuit they would file a Rule 60 motion to set aside the dismissal of their ATA claims here. *Id*. at 17, n.25.

In the end, plaintiffs were proven correct: the D.C. Circuit has ruled that plaintiffs did not fail to timely appeal the *Kaplan* decision, and it has vacated that decision. Thus, now that plaintiffs' long-anticipated Rule 60 motion has been filed, LCB cannot shelter behind claims of "finality." LCB was keenly aware that plaintiffs would appeal *Kaplan* and that the D.C. Circuit's disposition of that appeal, if favorable to plaintiffs, would eliminate the basis for the dismissal of the ATA claims in this case. Since LCB "knew proceedings to set aside" the *Kaplan* decision "in the primary jurisdiction [i.e. in the District of Columbia] were ongoing," finality interests will "not stand in the way of" granting plaintiffs' Rule 60(b)(5) relief here. *Thai-Lao Lignite*, 864 F.3d at 189.

Furthermore, as plaintiffs pointed out in their briefing on LCB's motion to dismiss, the decision in *Kaplan* was a complete outlier. It conflicted both with the express holding of Judge Hellerstein of this court in *Lelchook v. Commerzbank*, Civ. No. 10-5795 (S.D.N.Y.), that the Hezbollah rocket attacks at issue did not constitute an "act of war" within the meaning of the ATA, and with the construction of the "act of war" exception adopted by numerous other courts in this circuit and other circuits, including the District of Columbia. *See* Letter Brief, DE 77, at 4-6.[8]

---

[8] Subsequent decisions bear this out. On July 27, 2018, a court in the Eastern District opined, in an ATA case against various banks arising from Hezbollah attacks against U.S. **soldiers**, that as a matter of law attacks by Hezbollah and other U.S.-designated terrorist organizations should not be deemed to constitute an "act of war" within the meaning of the ATA. *Freeman v. HSBC Holdings*, 2018 WL 3616845, at *58-60 (E.D.N.Y. July 27, 2018). All the more so where, as here, Hezbollah attacked U.S. **civilians**.

Thus, LCB gambled by resting its entire defense to the ATA claims here on a weak reed, and having lost that gamble it cannot now pretend surprise or invoke "finality." If LCB wanted finality it could and should have attempted to litigate the "act of war" defense, or any other defense it purports to have to this action, on the merits. By seeking to dodge a merits determination in this case through reliance on a technical estoppel defense based on a decision that was so obviously vulnerable, LCB accepted the risk that the ATA claims here would eventually be revived.

**Third**, continued litigation over the preclusive effect of the underlying decision will also "render[] considerations of finality less weighty." *McLearn v. Cowen & Co.*, 660 F.2d 845, 852 (2d Cir. 1981) (Lumbard, *C.J.,* concurring). In *McLearn* the parties litigated the preclusive effect of a prior federal order in New York State trial and appellate courts, which ultimately ruled against the plaintiff. But these challenges to the preclusiveness holding, though unsuccessful, were held sufficient to overcome any finality concerns, and thereby permit reopening of the federal order, notwithstanding that "over five years have passed since the order was entered." *Id.* at 852.

So too here: the American plaintiffs vigorously litigated the preclusiveness of *Kaplan* in this Court and in the Second Circuit, and their arguments were finally rejected less than two years ago. *See Licci*, 659 F. App'x 13. Moreover, the Second Circuit's mandate issued only on May 7, 2018, about 10 weeks before the decision of the D.C Circuit in *Kaplan*. *See* DE 87. If the D.C. Circuit had issued its opinion in the *Kaplan* appeal (which was filed in 2016 and argued back on September 12, 2017) just 11 weeks earlier (i.e., prior to the May 7, 2018 mandate here), the Second Circuit would unquestionably have vacated the estoppel dismissal of the ATA claims. *See Consol. Exp., Inc.*, 641 F.2d at 93–94 (3d Cir. 1981) ("Since the judgment which was the

predicate for our discussion of collateral estoppel has been vacated, so much of our prior judgment as required giving that judgment any effect in this case must be vacated."); *Ornellas*, 618 F.2d at 1356 (same);  *Levi Strauss*, 719 F.3d at 1372 (same); *In re Hedged-Investments Assocs.*, 48 F.3d at 473 (same);  *S.C. Nat. Bank*, 896 F.2d at 1430 (same). The brief gap between May 7 and July 20 was insufficient to afford any significant "finality" to the estoppel-based dismissal of the ATA claims.

Thus, as in *McLearn*, any "finality" concerns are fully mitigated by the movants' appellate challenges to the preclusiveness of *Kaplan*.

In sum: all three factors specifically identified by the Second Circuit as eliminating finality considerations are present in this case.

And there is yet another circumstance negating any "finality interest" here: the litigation between the parties continued immediately after this Court's dismissal of the ATA claims, and remains pending today. On May 13, 2015, all the plaintiffs herein filed their state court action against LCB. *Licci*, 505931/15, NYSCEF Doc. No. 1. LCB knew full well that the state court action would be brought—and, in fact, effectively invited it. In order to persuade this Court to dismiss plaintiffs' nonfederal claims, LCB argued at length in its papers that the plaintiffs would be entitled to refile their claims in state court pursuant to U.S.C. § 1367(d) and CPLR 205(a) after dismissal by this Court. *See* LCB Letter Brief (DE 79), 1-3. Thus, LCB had absolutely no expectation that the dismissal of the ATA claims (or the Second Circuit's affirmance of that dismissal) would end the litigation between the parties.

Furthermore, LCB grossly delayed the state court action by intentionally defaulting it. Default judgment was entered against LCB in plaintiffs' case on April 26, 2017, and a damages inquiry was set. *Licci*, 505931/15, NYSCEF Doc. Nos. 58-59. LCB then belatedly moved to

vacate the default judgment, and admitted in its motion that it had previously decided to ignore and intentionally default the case, because "LCB's liquidators reasonably believed that this action could not produce a judgment enforceable against LCB under Lebanese law." Memorandum of Law in Support of Defendant Lebanese Canadian Bank, SAL's Order to Show Cause to Vacate Default, Exhibit D, at 14.

In other words, LCB willfully defaulted plaintiffs' action because it believed that it could simply evade the enforcement of any judgment. Thus, for its own bad-faith, strategic reasons, LCB **intentionally prolonged** the resolution of plaintiffs' claims for a year.[9] For this reason, too, LCB should not be heard to argue that it has expectations of finality that ought not be disturbed.

### Ends of Justice

On the other end of the scale, against any "finality" concerns (here, non-existent), the Court must weigh the imperative of "serving the ends of justice." *Thai-Lao Lignite* at 186. In this case, "serving the ends of justice" simply means allowing the American plaintiffs' ATA claims to be heard on the merits. "There is much more reason for liberality in reopening a judgment when the merits of the case never have been considered than there is when the judgment comes after a full trial on the merits." *Standard Enterprises, Inc. v. Bag-It, Inc.*, 115 F.R.D. 38, 39 (S.D.N.Y. 1987) (quoting Wright & Miller, 11 Federal Practice and Procedure § 2857). *See also Glob. Gold Mining, LLC v. Ayvazian*, 983 F. Supp. 2d 378, 384 (S.D.N.Y. 2013) (same); *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986) ("Rule 60(b) relief is designed to afford parties an opportunity to resolve a dispute on its merits."); *Kurzweil v. Philip Morris Companies, Inc.*, 1997 WL 167043, at *3 (S.D.N.Y. Apr. 9, 1997) ("Although preserving the finality of

---

[9] The default judgment entered on April 26, 2017 was vacated on April 19, 2018. *Id.* at No. 107.

judgments is an important and weighty interest, another important interest is deciding cases on the merits.").

Courts perform a similar balancing analysis—i.e., weighing the importance of allowing a case to proceed on the merits against the "finality" of a judgment based on a procedural technicality (here, estoppel founded on a later-vacated decision)—whenever a defendant seeks to open a default judgment. In such cases the Rule 60(b) movant is often responsible for her predicament, since default judgments usually result from negligent or reckless conduct by a defendant. Yet, courts in this circuit frequently grant Rule 60(b) motions to vacate such final judgments, even in the face of misconduct by the Rule 60(b) movant, precisely because the importance of litigating a case on the merits outweighs the finality of a judgment which rests on a procedural technicality. *See, e.g., Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (reversing district court's denial of motion to vacate default judgment, despite defendant's "gross negligence" because "[s]trong public policy favors resolving disputes on the merits."); *New York v. Green*, 420 F.3d 99, 104 (2d Cir.2005) ("[I]n ruling on a motion to vacate a default judgment, all doubts must be resolved in favor of the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on their merits.").

This principle applies here *a fortiori*: unlike those litigants who recklessly or willfully default an action, yet are excused from their misconduct so that the case may be heard on the merits, the American plaintiffs here have been deprived of an opportunity to have their ATA claims against LCB heard on the merits through absolutely no fault of their own.[10]

---

[10] LCB should not be heard to argue that plaintiffs had an opportunity, in *Kaplan*, to litigate the validity of their ATA claims. *First*, the vacated decision in *Kaplan* (which involved a different defendant) resulted from improper assumption of hypothetical jurisdiction and is simply a nullity. *Erebia*, 891 F.2d at 1215. *Second*, the *Kaplan* district court erroneously treated the "act of war" exception as an element to

Furthermore, allowing the American plaintiffs to litigate their ATA claims on the merits is of overwhelming importance for at least two reasons specific to this case:

**First**, plaintiffs' ATA claims are clearly meritorious. The Verified Complaint filed by the United States in its forfeiture action against LCB—the facts of which are sworn to under penalty of perjury by a federal investigator—shows an extensive financial relationship between LCB and Hezbollah going back to 2002. *See* Verified Complaint in *U.S. v. LCB*, 11-cv-9186. Exhibit E.

Additionally, the declaration of former senior Israeli counterterrorism official Uzi Shaya, which was attached to plaintiffs' opposition to LCB's motion to dismiss, provides further detailed proof of the LCB-Hezbollah link. Shaya, whose testimony is based on underlying banking documents viewed by him personally, even provides specific, non-public bank account information. *See* Declaration of Uzi Shaya, (DE 43), Exhibit F, at ¶¶ 5-14.

There is thus no question that LCB is liable to the American plaintiffs under the ATA, and it would be extremely unjust to bar them from pursuing their ATA claims here on the merits.

---

be shown by the plaintiffs, when in fact it is an affirmative defense. *See Gill v. Arab Bank, PLC*, 891 F. Supp. 2d 335, 368 (E.D.N.Y. 2012) (ATA "act of war" exception "merely provides ATA defendants with an affirmative defense."); *Kaplan*, 2018 WL 3490072, at *8 (D.C. Cir. July 20, 2018) ("the exception becomes salient only if the act in question qualifies as 'an act of international terrorism' in the first place.").

Since it is an affirmative defense, and not an element of an ATA claim, it was never plaintiffs' burden to disprove the "act of war" defense, either in *Kaplan* or in this case. An affirmative defense must be pled and proven by the defendant, and is appropriate for resolution only following discovery, at summary judgment or at trial. *Gill*, 891 F. Supp. 2d at 368-370 ("An ATA defendant … has the burden of proving, by a preponderance of the evidence, that the claimed act of war was a proximate cause of the plaintiff's injuries …. The application of the act of war exception in a case like the present one raises legal and factual questions best addressed on a motion for summary judgment or at trial.")

Thus, plaintiffs' ATA claims were stymied at the threshold by an affirmative defense it was never their burden to disprove, and those claims have never been considered on the merits by any court.

*Second*, the Second Circuit has held that "the interests of the United States weigh heavily in [an ATA] case, even though it is a private lawsuit brought by individual victims of terrorism.... Like the antitrust, commodities fraud, and racketeering laws ... the ATA's legislative history reflects that Congress conceived of the ATA, at least in part, as a mechanism for protecting the public's interests through private enforcement. One of the Act's sponsors noted that the Act would ensure that 'justice [is] sought' against terrorists 'even if not by [foreign governments or] the United States.' 137 Cong. Rec. S. 1771 (daily ed. Feb. 7, 1991) (Senator Grassley commenting after enactment). Furthermore, he declared that the Act would 'empower[ ] victims with all the weapons available in civil litigation.'" *Linde v. Arab Bank, PLC*, 706 F.3d 92, 112 (2d Cir. 2013).

Accordingly, when faced with ATA actions, district courts should "appropriately recognize[] the important U.S. interests at stake in arming private litigants with the 'weapons available in civil litigation' to deter and punish the support of terrorism." *Linde, id*.

Thus, "the interests of the United States weigh heavily" in this case, and granting the instant motion will vindicate "important U.S. interests" and not merely those of the American plaintiffs.

LCB may try to argue that the importance of allowing the ATA claims to be heard on the merits is mitigated by fact that the American plaintiffs have brought non-federal claims against LCB in state court, along with the (far more numerous) non-American plaintiffs. The Court should not credit any such argument, because LCB is vigorously attempting to dismiss the state court suit. On June 18, 2018, LCB filed a motion to dismiss the state court action in its entirety,

for failure to state a claim and on limitations grounds. *See* Defendant Lebanese Canadian Bank, SAL's Memorandum of Law in Support of Motion to Dismiss, Exhibit G.[11]

Thus, if LCB has its way, the state court action will be dismissed at the threshold.[12] The Court should therefore not entertain any attempt by LCB to whipsaw the American plaintiffs by citing their state court action as grounds to deny Rule 60(b)(5) relief while simultaneously seeking dismissal of that very action. Accepting such an argument could obviously result in the American plaintiffs being left with no relief whatsoever—which would be extremely inequitable and unfair.[13]

Furthermore, critically, the *grounds* on which LCB is seeking to dismiss the state court action are wholly inapplicable to the American plaintiffs' ATA claims. In its motion to dismiss the state action, LCB argues that the nonfederal claims were untimely when originally filed back in 2008, under New York's one-year limitation period for intentional torts. *See* Exhibit G at 20-23.[14] This argument is irrelevant to the American plaintiffs' ATA claims, which were timely

---

[11] Plaintiffs subsequently amended their state court complaint, and pursuant to a scheduling stipulation LCB will file a motion to dismiss the amended complaint on October 3, 2018. *Licci*, 505931/15, NYSCEF Doc. No. 119. There is no reason whatsoever to believe that LCB will abandon the failure to state a claim and limitations arguments it made in its motion to dismiss the original complaint, in its forthcoming motion to dismiss the amended complaint.

[12] Plaintiffs disagree with LCB's arguments for dismissing the state court action; needless to say, however, the state court may nonetheless accept one or more of those arguments and dismiss the case.

[13] Nor should LCB be heard to complain that it is unduly burdensome for it to litigate both the American plaintiffs' ATA claims in this Court and their non-federal claims in state court: the large majority of the plaintiffs in the state court action are the non-Americans, and LCB would have to defend their state court action even if the American plaintiffs had not joined it.

[14] LCB does not dispute that the nonfederal claims dismissed by this Court in April 2015 were timely refiled pursuant to 28 U.S.C. § 1367, which tolls pendant claims. Rather, LCB argues that those claims were untimely under New York law when first filed in 2008. *See* Exhibit G at 21 ("Plaintiffs filed their initial Complaint on July 11, 2008, well past the applicable one-year statute of limitations.").

filed under the four year limitations period then applicable to ATA claims under 18 U.S.C. § 2335.[15]

Moreover, LCB argues that the state court action must be dismissed for failure to state a claim, because—*in contrast to the ATA*—plaintiffs' non-federal causes of action require them to trace a direct, "but-for" causal link between the specific funds transferred by LCB and the rocket attacks in which they were harmed:

> [C]ourts in the analogous Anti-terrorism Act context have uniformly observed that a plaintiff cannot possibly satisfy but-for causation with financial-services allegations that are indistinguishable from those alleged here. That is because money is fungible; terrorist groups that have multiple funding sources—as Plaintiffs expressly allege here—can replace any one source of funds with another, thus foreclosing a but-for causal link between any particular attack and any particular wire transfer of funds of the type LCB allegedly made here.

Exhibit G at 9.

In support of this argument—i.e., that while the ATA imposes liability despite the impossibility of tracing dollars to rockets, nonfederal law does not—LCB quotes the following holding from *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 474 (E.D.N.Y. 2012):

> 'But for' cause cannot be required in the [ATA] section 2333(a) context. In most instances, <u>if a particular contribution was not made, money from other sources could be redistributed to make up for the shortfall, and an attack could take place without a substantial donation</u>. ... [R]equiring an ATA plaintiff, at least in the material support context, to prove <u>but-for causation would come up against the basic problem of the fungibility of money</u>.

*Id*. at 9-10 (quoting *Gill* at 507-508) (emphasis supplied by LCB).

LCB similarly argues:

---

[15] In 2013 Congress retroactively extended the limitations period for ATA actions to ten years, and until January 2, 2019 for ATA actions arising from terrorist attacks which occurred between September 11, 2001 and January 2, 2009. *See* Pub. L. 112–239, div. A, title XII, § 1251(a) (Jan. 2, 2013).

> U.S. courts, in the analogous Anti-Terrorism Act ("ATA") context, have uniformly held that the provision of financial services to a bank customer—even one alleged to be a "front" for terrorists—cannot possibly satisfy but-for causation because money is fungible, and terrorist groups have multiple funding sources from which they can draw. *See, e.g., Linde v. Arab Bank, PLC*, 97 F. Supp. 3d 287, 324 (E.D.N.Y. 2015) ("But-for causation in [the financial services context] is not simply absent from the facts of this case, it is nearly impossible to prove, because money is fungible."), *vacated on other grounds*, 882 F.3d 314, 331-332 (2d Cir. 2018) (emphasis added).).

*Id*. at 2-3 (emphasis supplied by LCB).

LCB's own argument here highlights the critical importance of permitting the American plaintiffs' ATA claims to proceed: Congress enacted the ATA specifically in order "to impose 'liability at any point along the causal chain of terrorism.'" *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 429 (E.D.N.Y. 2009) (quoting S. Rep. No. 102–342 at 22) Therefore, "Congress did not intend to limit recovery to those plaintiffs who could show that the very *dollars* sent to a terrorist organization were used to purchase the implements of violence that caused harm to the plaintiff. Such a burden would render the statute powerless to stop the flow of money to international terrorists, and would be incompatible with the legislative history of the ATA." *Id*. Taking Congress' cue, LCB is arguing in state court that this feature of the ATA is unique to the ATA and therefore unavailable to plaintiffs who are constrained to bring civil damages actions against terror financers under nonfederal causes of action. Simply put, LCB, is arguing that plaintiffs' claims are viable *only* under the ATA.

Finally, the state court suit is a grossly inadequate substitute for the ATA claims because the American plaintiffs will be unable to obtain a similar recovery in state court even if they overcome LCB's threshold defenses and go on to prevail on the merits in that case. The ATA permits recovery of "a full range" of tangible and intangible compensatory damages for terror victims and their family members, including "loss of companionship, society, and guidance, and

mental anguish," as well as treble damages and attorney fees. *Knox v. PLO*, 442 F. Supp. 2d 62, 77 (S.D.N.Y. 2006) (collecting decisions); ATA § 2333(a). But the claims asserted by the American plaintiffs in the state court action are brought under Israeli law, and several courts have found that the scope and types of civil damages available under Israeli law in terror cases are far narrower than those available under the ATA. *See, e.g., Goldberg*, 660 F. Supp. 2d at 423 (finding that "the remedies available under Israeli law differ substantially in both type and magnitude from those available" under the ATA); *Leibovitch v. Syrian Arab Republic*, 25 F. Supp. 3d 1071, 1082-84 (N.D. Ill. 2014) (finding that Israeli tort law awards damages for intangible injuries only in certain limited circumstances).

Moreover, Congress included treble damages in the ATA, in order "to deter future acts of terrorism." *Parsons v. Palestinian Auth.*, 651 F.3d 118, 149, n.10 (D.C. Cir. 2011). But treble damages are entirely unavailable under Israeli law. *Goldberg*, 660 F. Supp. 2d at 422 ("The ATA permits a successful plaintiff to recover treble damages plus the cost of bringing suit, including attorney's fees. 18 U.S.C. § 2333. Israeli law contains no provision for treble damages.").[16]

Thus, even if the American plaintiffs ultimately obtain a verdict in their state court action, they may receive only few of the remedies which, as American citizens, they would receive under the ATA. Furthermore, the important purposes and national interest that Congress intended the ATA to serve through imposition of treble damages—deterring terrorists and their financial collaborators such as LCB—will be undermined if the American plaintiffs are not permitted to

---

[16] Plaintiffs agree that treble damages are unavailable under Israeli law. By contrast plaintiffs disagree with the descriptions of Israeli damages law contained in these cases; however, LCB will surely seek to rely on these cases in the state court action, and unfortunately a real possibility exists that the state court will adopt their holdings. Thus, the American plaintiffs face a distinct danger of receiving far less damages in the state court suit than what they would receive under the ATA. And in any event, they definitely cannot recover treble damages in the state court case.

proceed on their ATA claims. "By its provisions for compensatory damages, treble damages, and the imposition of liability along the causal chain of terrorism, [the ATA] would interrupt, or at least, imperil, the flow of money" to terrorists. *Goldberg*, 660 F. Supp. 2d at 422 (quoting S. Rep. No. 102–342, 1992 WL 187372) (brackets omitted).

## <u>CONCLUSION</u>

For the reasons stated herein, the within motion should be granted, this Court's order of April 14, 2015 dismissing plaintiffs' claims under the Anti-Terrorism Act should be vacated pursuant to Fed. R. Civ. P. 60(b)(5), this action should be restored to active status, and a status conference should be scheduled, together with such other and further relief as may be just and proper under the circumstances.

Dated:   Brooklyn, New York
        August 13, 2018

Respectfully submitted,

THE BERKMAN LAW OFFICE, LLC
*Attorneys for the Plaintiffs*

by: _____
     Robert J. Tolchin

111 Livingston Street, Suite 1928
Brooklyn, New York 11201
718-855-3627