UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------

CHAIM KAPLAN, *et al.*,

                  Plaintiff,

    - v -

LEBANESE CANADIAN BANK, SAL,

                Defendant.

-------------------------------------------------------------------

    1:08-CV-07253 (GBD)

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)

**DLA Piper LLP (US)**
1251 Avenue of the Americas
New York, NY 10020-1104
Phone: (212) 335-4500
Fax: (212) 335-4501

*Counsel for Defendant Lebanese Canadian Bank, SAL*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

PARTIES ...............................................................................................................................4

    A.    Plaintiffs ................................................................................................................4

    B.    LCB ......................................................................................................................4

SECOND LEBANON WAR .....................................................................................................5

PLAINTIFFS' OTHER ATA ACTIONS ...................................................................................5

    A.    Dismissed Actions ...............................................................................................5

    B.    Pending Actions ...................................................................................................7

THIS COURT'S PRIOR DISMISSALS .....................................................................................8

SAC ALLEGATIONS ..............................................................................................................9

STANDARD OF REVIEW ......................................................................................................10

ARGUMENT .........................................................................................................................10

I.     THE SAC FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE
      GRANTED ...................................................................................................................10

    A.    Count I Must Be Dismissed For Failure Plausibly To Plead The Elements
         Of A Primary Liability Claim Under § 2333(a).....................................................11

         1.    Plaintiffs Fail Plausibly To Allege That LCB Committed
             "International Terrorism"............................................................................11

         2.    Plaintiffs Fail Plausibly To Allege That They Were Injured "By
             Reason Of" An Act Of "International Terrorism" Committed By
             LCB ........................................................................................................14

             a)    Plaintiffs Fail Plausibly To Allege That LCB Was A "But
                 For" Cause Of Their Injuries ........................................................15

             b)    Plaintiffs Fail Plausibly To Allege That LCB Proximately
                 Caused Their Injuries....................................................................16

             c)    Plaintiffs Are Judicially Estopped From Asserting That
                 LCB—Rather Than Hezbollah, DPRK And/Or Iran—Was
                 A Factual, Proximate, Or Substantial Cause Of Their
                 Injuries ........................................................................................18

### TABLE OF CONTENTS
**(continued)**

**Page**

B.    Count II Must Be Dismissed For Failure Plausibly To Plead The Elements Of A Secondary Liability Claim Under § 2333(d)(2)............................................20

    1.    Plaintiffs Fail Plausibly To Allege That LCB Conspired With "The Person Who Committed" The Rocket Attacks At Issue ..........................21

    2.    Plaintiffs Fail Plausibly To Allege That LCB Aided And Abetted "The Person Who Committed" The Rocket Attacks At Issue ..................23

CONCLUSION..............................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adelphia Recovery Trust v. Goldman, Sachs & Co.*,
   748 F.3d 110 (2d Cir. 2014)................................................................ 18-20

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006).............................................................................16

*Arar v. Ashcroft*,
   585 F.3d 559 (2nd Cir. 2009)..............................................................22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................... *passim*

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................10, 22

*Burrage v. United States*,
   134 S. Ct. 881 (2014).....................................................................14, 15

*Clayborn v. Twitter, Inc.*,
   No. 17-CV-06896, 2018 WL 6839754 (N.D. Cal. Dec. 31, 2018).........17

*Corley v. United States*,
   556 U.S. 303 (2009)............................................................................11

*DeRosa v. Nat'l Envelope Corp.*,
   595 F.3d 99 (2d Cir. 2010)..................................................................18

*DM Research, Inc. v. College of Am. Pathologists*,
   170 F.3d 53 (1st 1999) ........................................................................22

*Fields v. Twitter, Inc.*,
   881 F.3d 739 (9th Cir. 2018) ...............................................3, 14, 16, 17

*Gill v. Arab Bank, PLC*,
   893 F. Supp. 2d 542 (E.D.N.Y. 2012) ...................................................4

*Gonzalez v. Google, Inc.*,
   335 F. Supp. 3d 1156 (N.D. Cal. 2018) ...............................................17

*Halberstam v. Welch*,
   705 F.2d 472 (D.C. Cir. 1983) ....................................................21, 23-24

*Hemi Grp., LLC v. City of New York*,
   559 U.S. 1 (2010).............................................................................3, 16

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Holmes v. Secs. Inv'r Prot. Corp.*,
    503 U.S. 258 (1992).................................................................................................3, 14

*Jesner v. Arab Bank, PLC*,
    138 S. Ct. 1386 (2018)..............................................................................................24

*Kaplan v. Al Jazeera*,
    No. 10-CV-5298, 2011 WL 2314783 (S.D.N.Y. June 7, 2011) ...................................... *passim*

*Kaplan v. Cent. Bank of the Islamic Rep. of Iran*,
    Order & J., No. 10-CV-00483 (D.D.C. Sept. 30, 2016) ...........................................2

*Kaplan v. Cent. Bank of the Islamic Rep. of Iran*,
    55 F. Supp. 3d 189 (D.D.C. 2014) ................................................................. *passim*

*Kaplan v. Cent. Bank of Islamic Rep. of Iran*,
    961 F. Supp. 2d 185 (D.D.C. 2013), *affirmed in part, and vacated on other*
    *grounds in part, by Kaplan v. Cent. Bank of the Islamic Rep. of Iran*, 896 F.3d
    501 (D.C. Cir. 2018) ..........................................................................................5

*Kemper v. Deutsche Bank AG*,
    911 F.3d 383 (7th Cir. 2018), *rehearing en banc denied Jan. 10, 2019*..................3, 11, 13, 22

*Licci v. Am. Express Bank Ltd.*,
    704 F. Supp. 2d 403 (S.D.N.Y. 2010), *vacated in part by Licci v. Lebanese*
    *Canadian Bank, SAL,* 732 F.3d 161 (2d Cir. 2013).................................... 1-2, 8, 17

*Licci v. Lebanese Canadian Bank, SAL*,
    No. 08-CV-7253, 2015 WL 13649462 (S.D.N.Y. Apr. 14, 2015), *vacated in*
    *part by Licci v. Lebanese Canadian Bank, SAL*, No. 08-CV-7253, 2018 WL
    5090972 (S.D.N.Y. Oct. 3, 2018) ..................................................................... 1-2, 8

*Linde v. Arab Bank, PLC*,
    882 F.3d 314 (2d Cir. 2018).............................................................................. *passim*

*Mastafa v. Chevron Corp.*,
    770 F.3d 170 (2d Cir. 2014).................................................................................10, 13

*Nat'l Ass'n of Mfrs. v. Dep't of Defense*,
    138 S. Ct. 617 (2018)..............................................................................................15

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)............................................................................................18, 19

*Owens v. BNP Paribas, S.A.*,
    897 F.3d 266 (D.C. Cir. 2018)............................................................................3, 15

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013).............................................................................10

*Rothstein v. UBS AG*,
708 F.3d 82 (2d Cir. 2013)............................................... 6, 7, 15, 16-17

*Siegel v. HSBC Bank USA, N.A.*,
No. 17-CV-6593, 2018 WL 3611967 (S.D.N.Y. July 27, 2018)...........................24

*Simon v. Safelite Glass Corp*,
128 F. 3d 68 (2d Cir. 1997)........................................................................18

*Stansell v. BGP, Inc.*,
09-CV-2501, 2011 WL 1296881 (M.D. Fl. Mar. 31, 2011)..................................13

*Stutts v. De Dietrich Grp.*,
No. 03-CV-4058, 2006 WL 1867060 (E.D.N.Y. June 30, 2006)..........................12

*Taamneh v. Twitter, Inc.*,
343 F. Supp. 3d 904 (N.D. Cal. 2018) ............................................................23

*In re Terrorist Attacks on Sept. 11, 2001*,
349 F. Supp. 2d 765 (S.D.N.Y. 2005)................................................................17

*In re Terrorist Attacks on Sept. 11, 2001*,
714 F.3d 118 (2d Cir. 2013)............................................................... *passim*

*U.S. v. West Prods., Ltd.*,
168 F. Supp. 2d 84 (S.D.N.Y. 2001)................................................................19

*United States v. Dauray*,
215 F.3d 257 (2d Cir. 2000)...........................................................................13

*Univ. of Tx. Sw Med. Ctr. v. Nassar.*,
133 S. Ct. 2517 (2013)..................................................................................15

*In re Venture Mortg. Fund, L.P.*,
245 B.R. 460 (S.D.N.Y. 2000).........................................................................18

**Statutes**

18 U.S.C. § 1961(1) ......................................................................................14

18 U.S.C. § 1964(c) ......................................................................................14

18 U.S.C. § 2331(1) ............................................................................... 11-13, 20

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

18 U.S.C. § 2332b(g)(5)(B) .................................................................................15

18 U.S.C. § 2333(a) ...................................................................................... *passim*

18 U.S.C. § 2333(d)(2) ................................................................................. *passim*

18 U.S.C. § 2339A ..................................................................................... 14-15

18 U.S.C. § 2339B ..................................................................................... 14-15

Justice Against Sponsors of Terrorism Act, Public Law No 114-222 (114th
    Cong.) (Sept. 28, 2016)....................................................................................11

## Other Authorities

Black's Law Dictionary (10th ed. 2014).....................................................13

Fed. R. Civ. P. 12(b)(6).......................................................................1, 10, 25

Lebanese Canadian Bank, SAL ("LCB") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiffs' Second Amended Complaint ("SAC") pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs assert claims against LCB under the Anti-Terrorism Act ("ATA"), claiming that by virtue of providing certain financial services, LCB is liable for injuries caused by Hezbollah rocket attacks against northern Israel during a 34-day conflict known as the Second Lebanon War. These claims were first asserted against LCB in 2009 and were dismissed by this Court on two prior occasions, first for lack of personal jurisdiction,[1] and then based on the collateral estoppel effect of a decision by Judge Royce C. Lamberth "dismiss[ing] similar ATA claims filed by Plaintiffs on the grounds that the Hezbollah rocket attacks at issue qualified for the 'act of war' exception under the statute."[2]

In neither of its prior decisions did this Court rule on LCB's additional grounds for seeking dismissal, namely Plaintiffs' failure plausibly to plead the substantive elements of their ATA claims. This Court should now dismiss Plaintiffs' ATA claims for a third time because, *inter alia*, the SAC fails plausibly to allege that LCB: (1) committed acts of "international terrorism"; (2) factually or proximately caused Plaintiffs' injuries; (3) knowingly assumed a role in Hezbollah's "murderous activities"; and (4) aided and abetted or conspired with "the person who committed" acts of "international terrorism" that injured Plaintiffs. *Infra* I.A-B. In fact, the SAC recycles allegations from Plaintiffs' prior pleadings that this Court observed were <u>unable</u> to support an

---

[1]     *Licci v. Am. Express Bank Ltd.*, 704 F. Supp. 2d 403 (S.D.N.Y. 2010) (hereinafter "*Licci I*"), *vacated in part by Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013) (hereinafter "*Licci II*").

[2]     *Licci v. Lebanese Canadian Bank, SAL*, No. 08-CV-7253, 2015 WL 13649462 (S.D.N.Y. Apr. 14, 2015) (hereinafter "*Licci III*"), *vacated in part by Licci v. Lebanese Canadian Bank, SAL*, No. 08-CV-7253, 2018 WL 5090972 (S.D.N.Y. Oct. 3, 2018) (hereinafter "*Licci IV*").

inference that LCB acted with an apparent terroristic objective or proximately caused Plaintiffs' injuries.  *See infra.* p. 8 (citing *Licci I*, 704 F. Supp. 2d at 410; *Licci III*, 2015 WL 13649462, at *4).  Those decisions are *a fortiori* precedent.

Separate and apart from the SAC's pleading deficiencies, Plaintiffs are judicially estopped from asserting their current claims against LCB by arguments they made and the final judgment they previously obtained against the Democratic People's Republic of Korea ("DPRK") and the Islamic Republic of Iran ("Iran").  According to the findings of fact and conclusions of law entered in connection with that judgment, and based on the "extensive evidence" presented by Plaintiffs, a court has already found that the DPRK provided the rocket and missile components, rocket launchers, military and intelligence training, and assistance in building the massive network of underground military installations, tunnels, bunkers, depots and storage facilities that were utilized by Hezbollah in committing the rocket attacks at issue; and <u>Iran financed "'[t]his whole thing[.]'"</u>[3] Plaintiffs, having prevailed in that case, are judicially estopped from taking inconsistent positions here, and that fact is fatal to their claims.  *Infra* I.A.2.c.

Furthermore, these same Plaintiffs' ATA claims against corporations engaged in the provision of generally available commercial services have been uniformly dismissed by still other courts.  For example, their ATA claims against another bank, UBS AG, were dismissed by the Second Circuit for failing plausibly to plead that defendant's provision of extensive financial services in violation of U.S. counter-terrorism sanctions against Iran were a proximate cause of the Hezbollah rocket attacks.  *See Rothstein v. UBS AG*, 708 F.3d 82, 85-87, 92-93 (2d Cir. 2013).

---

[3]        *Kaplan v. Cent. Bank of the Islamic Rep. of Iran*, 55 F. Supp. 3d 189, 193-97 (D.D.C. 2014) (hereinafter "*Kaplan I*") (finding DPRK and Iran liable for rocket attacks that caused Plaintiffs' injuries) (quoting Plaintiffs' expert witness, Professor Bruce E. Bechtol, Jr.) (emphasis supplied); *see also Kaplan v. Cent. Bank of the Islamic Rep. of Iran*, Order & J., No. 10-CV-00483 (D.D.C. Sept. 30, 2016) (ECF No. 65) (hereinafter "*Kaplan II*") (entering final judgment against DPRK and Iran and in favor of Plaintiffs for $169,439,132.01).

Likewise, their ATA claims against a Qatar-based news organization, Al Jazeera, were dismissed for failing credibly to allege that defendant's broadcasts, done in violation of Israeli military orders, were acts of "international terrorism" or a proximate cause of the Hezbollah rocket attacks. *Kaplan v. Al Jazeera*, No. 10-CV-5298, 2011 WL 2314783, at *1-2 (S.D.N.Y. June 7, 2011) (hereinafter "*Al Jazeera*").

Plaintiffs' renewed attempt to assert claims against LCB retreads old ground and continues to flout the general rule in federal tort suits:  courts should exercise great caution before moving beyond "the first step" in the causal chain when assigning liability.[4]  The Second Circuit and other courts have faithfully applied this general rule in affirming the dismissal of ATA suits, like this, against banks and other corporate defendants.[5]  The same result is warranted here, especially where Plaintiffs have already assigned liability for their injuries to the DPRK and Iran—the parties they claimed and that a court has already adjudged responsible for supplying the weapons and financing used by Hezbollah to commit the rocket attacks at issue.

---

[4]    *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10 (2010); *see also Holmes v. Secs. Inv'r Prot. Corp.*, 503 U.S. 258, 271 (1992) ("The general tendency of the law, in regard to damages at least, is not to go beyond the first step." (internal quotes and citation omitted)).

[5]    *See In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 124 (2d Cir. 2013) (hereinafter "*Al Rajhi Bank*") (affirming this Court's dismissal of ATA claims against bank defendants absent plausible allegations that their financial services proximately caused al Qaeda attacks); *see also Kemper v. Deutsche Bank AG*, 911 F.3d 383, 395-96 (7th Cir. 2018) (dismissing ATA claims, concluding that plaintiff failed plausibly to allege that bank defendant's provision of financial services in violation of U.S. counter-terrorism sanctions constituted "international terrorism," proximately caused plaintiff's harm, or supported a reasonable inference of a conspiracy to commit "international terrorism"), *rehearing en banc denied* Jan. 10, 2019; *Owens v. BNP Paribas, S.A.,* 897 F.3d 266, 276 (D.C. Cir. 2018) (affirming dismissal of ATA claims against bank defendant absent plausible allegations that its financial services proximately caused al Qaeda attacks); *Fields v. Twitter, Inc.*, 881 F.3d 739, 749-50 (9th Cir. 2018) (affirming dismissal of ATA claims against social media provider absent plausible allegations that defendant's services directly (proximately) caused ISIS attack); *see similarly infra* I.A.2 (collecting cases dismissing ATA claims against corporate defendants).

## PARTIES

### A.    Plaintiffs

Plaintiffs are 18 American nationals who resided in Israel during the Second Lebanon War. Two Plaintiffs—Chaim and Rivka Kaplan—allege that they sustained physical, psychological, and emotional injuries as a result of rocket attacks that struck their home and surroundings on July 13, 2006.  SAC ¶ 51.  Another Plaintiff—Karen Erdstein—alleges that stress associated with living in an impact zone for Hezbollah rocket attacks caused her to have a miscarriage.  *Id.* ¶ 52.  The remaining 15 Plaintiffs allege that they suffered "severe emotional distress," property damage, and/or lost income as a result of their proximity to rocket attacks.  *Id.* ¶¶ 52-61.

### B.    LCB

LCB operated from 1988 to 2011 as a financial institution with its headquarters and primary place of business in Lebanon.[6]  Following contested allegations lodged against it by the U.S. Department of the Treasury—none of which pertain to the events of the Second Lebanon War—LCB made a commercial decision to sell its assets and liquidate.[7]  LCB ultimately settled its dispute with the United States without any admission of wrongdoing and with an acknowledgement by the United States that no charge was directed against LCB's "Board Members, the Chairman General Manager, [or] the General Manager."[8]

---

[6]    *The rise of LCB*, Executive Magazine, June 1 2006, https://bit.ly/2FZKYXx (last accessed Feb. 4, 2019) (noting that as of 2006, LCB was the eighth largest bank in Lebanon in terms of total assets and deposits).

[7]    *United States of America v. Lebanese Canadian Bank SAL*, Stip. and Order of Settlement Regarding Lebanese Canadian Bank and SGBL, No. 11 Civ. 9189, at *2-3 (S.D.N.Y. June 25, 2013) (hereinafter the "US-LCB Settlement"), https://bit.ly/2S6vbg9 (last accessed Feb. 4, 2019).

[8]    *Id.,* at 2, 5-6 & 10.  *See also Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 566 (E.D.N.Y. 2012) (finding bank's settlement of charges of alleged compliance control weaknesses with U.S. Department of Treasury to be inadmissible and insufficient to support an inference of mere negligence in an ATA suit where the bank contested the charges and settled without any admission of wrongdoing).

## SECOND LEBANON WAR

The Second Lebanon War began on July 12, 2006, "when Hezbollah militants entered Israeli territory from Lebanon and kidnapped and killed several Israeli soldiers."[9]  Israeli Prime Minister Olmert declared that Hezbollah's actions "'were not a terrorist attack, but the action of a sovereign state'" and that "'[t]he Lebanese government, of which Hezbollah is a member, … and Lebanon will bear the consequences of its actions.'"[10]  Israeli military forces then "'entered Lebanese territory … and instituted a bombing campaign.'"[11]  In response, Hezbollah began "fir[ing] thousands of rockets and missiles … at civilians in northern Israel."[12]  This fighting continued until "[t]he United Nations brokered a cease fire, ending the conflict on August 14, 2006."[13]

## PLAINTIFFS' OTHER ATA ACTIONS

### A.    Dismissed Actions

In *Al Jazeera*, Plaintiffs, represented by the same counsel, sued a media company alleging that its broadcasts on impact locations of Hezbollah's rockets during the Second Lebanon War was "the only way for Hezbollah to aim its rockets accurately[.]"  2011 WL 2314783, at *1-2.  Plaintiffs alleged that these broadcasts violated orders of the Israeli military "forbidding [media] from reporting real-time information regarding the impact locations of Hezbollah's rockets."  *Id.* at *1 n.2.  In dismissing this ATA suit, the court found Plaintiffs' assertion that Al Jazeera had an "anti-American and anti-Israel organizational policy" to be conclusory.  *Id.* at *5-6 (alleged actions and

---

[9]        *Kaplan v. Cent. Bank of Islamic Rep. of Iran*, 961 F. Supp. 2d 185, 189 (D.D.C. 2013) (hereinafter "*Kaplan III*") (citation omitted), *affirmed in part, and vacated on other grounds in part, by Kaplan v. Cent. Bank of the Islamic Rep. of Iran*, 896 F.3d 501 (D.C. Cir. 2018) (hereinafter "*Kaplan IV*").

[10]      *Id.* (citation omitted).

[11]      *Id.* (citation omitted).

[12]      *Id.* at 188 (citation omitted).

[13]      *Id.* at 189 (citation omitted).

statements adverse to defendant <u>by third parties</u>, including the United States, are insufficient to support an inference about <u>defendant's subjective intent</u>).  It then concluded Plaintiffs also failed plausibly to allege proximate causation because, *inter alia*, they supplied no facts to support an inference that defendant's "broadcasts were [actually] used by Hezbollah to better target their rockets."  *Id.* at *7.  So too here.  As set forth *infra* I.A.2, the SAC consists of only conclusory allegations of proximate cause, not facts.

In *Rothstein*, several Plaintiffs, also represented by the same counsel, including lead Plaintiff Chaim Kaplan in this case, sued a financial institution based in Switzerland, alleging:

> Between July 13 and July 22, 2006 Hizbollah fired scores of rockets at Safed and its environs. … <u>All of Hizbollah's July 2006 terrorist rocket attacks on Safed were carried out by Hizbollah with the financial support of Iran</u>.  Defendant UBS' provision of cash dollars to Iran enabled Hizbollah to carry out, and caused and facilitated, those rocket attacks.[14]

Plaintiffs then alleged that "between 1996 and 2004, in violation of United States laws, UBS provided Iran with hundreds of millions of dollars in cash" and that this illegal activity enabled Iran to finance Hezbollah's rocket attacks.  *Rothstein*, 708 F.3d at 85-87, 92-93.  In affirming dismissal of this ATA suit, the Second Circuit rejected Plaintiffs' contention that "any provider of U.S. currency to a state sponsor of terrorism [is] strictly liable for injuries subsequently caused by a terrorist organization associated with that state."  *Id.* at 96.  The Second Circuit also concluded that Plaintiffs failed plausibly to allege proximate causation because, *inter alia*, they asserted no facts to support an inference "that Iran would have been unable to fund the attacks by Hizbollah" without "the cash provided by UBS."  *Id*. at 97.  In light of that holding, which involved the same rocket attacks by Hezbollah that are at issue here, and the findings of fact and conclusions of law

---

[14]   First Am. Compl. ¶¶ 112-13, *Rothstein v. UBS AG*, No. 08-CV-04414-JSR (S.D.N.Y. filed May 9, 2008) (ECF No. 16) (emphasis supplied).

in *Kaplan I*, also involving the same rocket attacks, it is little wonder that Plaintiffs have not—and cannot—allege sufficient facts to establish the element of proximate causation.

### B.     Pending Actions

With their ATA suits having been consistently dismissed in this District, including by this Court, Plaintiffs, still represented by the same counsel, recently filed three new actions in the Eastern District against <u>14 other parties</u> who they claim are also liable for their injuries as principals and secondary actors.

On December 31, 2018, Plaintiffs sued Hezbollah for committing the acts of "international terrorism" that caused their injuries.[15]  That same day, Plaintiffs separately sued Bank Saderat Iran ("BSI") and Bank Saderat, PLC ("BSIPLC") for allegedly "providing Hezbollah with over $50 million in USD financial support" via extraterritorial transfers of Iranian funds that were routed from BSI in Iran through BSIPLC in London to "accounts controlled by Hezbollah <u>in branches of defendant BSI in Beirut[.]</u>"[16]  Plaintiffs allege that Hezbollah accessed these funds to perpetrate its rocket attacks and that <u>their "injuries and harm are … the direct and proximate result" of BSI's and BSIPLC's services</u>.[17]

Two days later, on January 2, 2019, Plaintiffs filed yet another suit, this time against eleven prominent Lebanese banks, seeking to hold them liable for allegedly providing financial services to numerous "Hezbollah-controlled 'charities,'" "Hezbollah's 'social welfare' arm," and/or other "Hezbollah entities."[18]  Plaintiffs allege that financial services provided by these eleven banks—

---

[15]     *Kumer v. Hezbollah*, No. 18-CV-07449-CBA-RLM (E.D.N.Y. filed Dec. 31, 2018).

[16]     *Kumer* Compl. ¶¶ 59-61, *Kumer v. Bank Saderat Iran*, No. 18-CV-07456-NGG-RER (E.D.N.Y. filed Dec. 31, 2018) (emphasis supplied).

[17]     *Id.* ¶¶ 122-26 (emphasis supplied).

[18]     *Lelchook* Compl. ¶¶ 632-910, *Lelchook v. Societe Generale de Banque au Liban SAL*, No. 19-CV-000333-RJD-SJB (E.D.N.Y. filed Jan. 2, 2019).

including to numerous parties nowhere mentioned in the SAC—"are ... the direct, factual, legal, and proximate" causes of their injuries.[19]

These additional lawsuits make plain what should otherwise be obvious from the deficient allegations in the SAC itself:  LCB's purported financial services are not, and cannot be, a "but for" or proximate cause of Plaintiffs' injuries.  They also show that Plaintiffs are prepared to indiscriminately sue any and all financial institutions they can think of, regardless of whether they have the facts to support their claims or not.

### THIS COURT'S PRIOR DISMISSALS

While this Court's decisions in *Licci I* and *Licci III*—dismissing Plaintiffs' ATA, ATS and/or Israeli tort claims against American Express Bank Ltd. and/or LCB—have been affirmed, in part, and vacated, in part, several key findings made by this Court in those opinions remain undisturbed.  Those findings apply equally to the SAC and compel dismissal here:

- "[N]on compliance with banking laws and industry standards alone will not render a bank negligently liable for the violent attacks committed by a terrorist organization who benefitted, in some general, nondescript manner, from monies passing through the bank during the performance of routine banking services."  *Licci I*, 704 F. Supp. 2d at 410 (citations omitted).

- "Even if it were alleged that Hizbollah used some funds it received to carry out the 2006 missile attacks, that factual assertion alone would not make every financial transaction traceable to a Hizbollah-controlled entity, no matter how remote, the proximate cause of those attacks."  *Id*.

- "Plaintiffs allege via conclusory statements that LCB knew and intended that the wire transfers would result in harm to them.  Their Amended Complaint is devoid of any factual allegations supporting LCB's specific intent, in executing the wire transfers, to promote or engage in Hezbollah's coercive actions against the Israeli government and public."  *Licci III*, 2015 WL 13649462, at *4.

- "[T]he Amended Complaint inadequately pleads that the wire transfers at issue were made with the intent to aid and abet the alleged terrorist activities[.]"  *Id*.

---

[19]     *Id.* ¶ 919 (emphasis supplied); *see also id.* ¶¶ 911-18.

For the reasons set forth herein, this Court's conclusions about Plaintiffs' failure plausibly to plead the requisite elements of their previous claims are *a fortiori* precedent.

## SAC ALLEGATIONS

Plaintiffs claim that they were injured as a result of Hezbollah "fir[ing] thousands of rockets at civilians in northern Israel" during the Second Lebanon War.  SAC ¶ 49.  Hezbollah "is, and at all relevant times was, a complex, composite organization, … composed of various subordinate entities[.]"  *Id.* ¶ 20.  Plaintiffs do not name, and presumably do not know, the identity of any individual responsible for firing a rocket that caused their injuries.  Nor do Plaintiffs allege that LCB or any of its employees participated in firing such a rocket.

Plaintiffs assert that "banking services" enable Hezbollah "to plan, to prepare for and to carry out terrorist attacks … including rocket attacks on civilians generally and the [rocket attacks at issue] specifically."  *Id.* ¶¶ 63-64.  And they further allege that financial services provided by LCB "substantially increased and facilitated" Hezbollah's "ability to plan, to prepare for and to carry out attacks on civilians, including the [rocket attacks at issue]."  *Id.* ¶ 65.

Plaintiffs specifically allege that LCB provided financial services to two alleged Hezbollah "leaders" (Husayn al-Shami and Wahid Mahmoud Sbeity (*id.* ¶ 38)); a charity allegedly "controlled by" Hezbollah (Shahid Foundation (*id.* ¶¶ 21-22)); and two companies that were allegedly "controlled by," and provided financial and investment services to, Hezbollah (Bayt al Mal and Yousser Company for Finance and Investment ("Yousser Company") (*id.* ¶ 24)) (collectively, "the Five Customers").  None of the Five Customers were designated by the United States as having an affiliation with Hezbollah (or with any other Foreign Terrorist Organization ("FTO")) prior to the end of the Second Lebanon War.  *See* Appendix A (annexed hereto).  And Plaintiffs do not provide any facts to support a reasonable inference that the Five Customers used LCB's financial services to perpetrate a rocket attack that caused their injuries.

## STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). The court may consider only well-pled factual allegations, *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014), and must ignore "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by merely conclusory statements." *Iqbal*, 556 U.S. at 678 (citation omitted). A pleading that offers "labels and conclusions" of the elements of a cause of action, and "naked assertion[s] devoid of 'further factual enhancement'" will not do. *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678) (other citations omitted).

## ARGUMENT

### I.   THE SAC FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

An analysis of the sufficiency of the SAC to state an ATA claim against LCB necessarily begins with the general rule that a bank is "'[not] liable for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing services, or any other routine banking service.'" *Al Rajhi Bank*, 714 F.3d at 124 (citation omitted) (emphasis supplied). Allegations that a bank provided routine financial services "to organizations and individuals said to be affiliated with [an FTO]" are insufficient to state a claim under the ATA. *Id.* Plaintiffs fail credibly to allege anything more.

-10-

### A.      Count I Must Be Dismissed For Failure Plausibly To Plead The Elements Of A Primary Liability Claim Under § 2333(a).

The ATA's primary liability provision (18 U.S.C. § 2333(a)) "afford[s] civil relief <u>only</u> against the principals perpetrating acts of international terrorism.  It provide[s] no civil action against secondary actors who, while not committing international terrorist acts themselves, facilitated such acts by others."  *Linde v. Arab Bank, PLC*, 882 F.3d 314, 319-20 (2d Cir. 2018).  But LCB is not the "principal" who perpetrated the rocket attacks that injured Plaintiffs, Hezbollah is.  And Plaintiffs have separately sued Hezbollah for this reason. *See supra* n.15.

In this action, Plaintiffs accuse LCB of "facilitating" and "enabling" Hezbollah's rocket attacks by providing financial services to the Five Customers—a theory directly at odds with the Second Circuit's reading of § 2333(a), *Linde*, 882 F.3d at 319-20, and one that, if accepted, would render "superfluous" the ATA's secondary liability provision (18 U.S.C. § 2333(d)(2)).  *Kemper*, 911 F.3d at 396 (rejecting ATA plaintiff's argument that § 2333(a) authorizes a cause of action for primary liability with "the character of secondary liability" and concluding that prior decisions read to support such a theory have been superseded by the Justice Against Sponsors of Terrorism Act ("JASTA"), Public Law No 114-222 (114th Cong.) (Sept. 28, 2016)).[20]

### 1.      Plaintiffs Fail Plausibly To Allege That LCB Committed "International Terrorism."

In order to state their claim for primary liability, Plaintiffs plausibly must allege that LCB—as opposed to Hezbollah or the Five Customers—engaged in conduct that satisfies each element of the four-part statutory definition of "international terrorism" set forth in 18 U.S.C. § 2331(1).  *Linde*, 882 F.3d at 326, 332.  That is, the SAC must marshal facts to support a reasonable inference that LCB engaged in conduct that:  (1) violated U.S. law; (2) involved "violence or

---

[20]      *See also Corley v. United States*, 556 U.S. 303, 314 (2009) (a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous").

endanger[ed] human life;" (3) appeared to be "intend[ed] to intimidate or coerce a civilian population or to influence or affect a government;" and (4) occurred primarily outside the territorial jurisdiction of the U.S., or transcended national boundaries. *Id.* Plaintiffs, however, assert nothing more than "formulaic recitation[s]" and "threadbare recitals of the[s]e elements." *Compare, e.g., Iqbal*, 556 U.S. at 678 *with* SAC ¶ 102 ("As required by § 2331, the actions of LCB were dangerous to human life by their nature and as evidenced by their consequences.").[21] Such pleading "will not do." *Iqbal*, 556 U.S. at 678.

Nor are Plaintiffs correct that LCB's alleged provision of financial services to the Five Customers is activity that "by its nature" is dangerous to human life or exhibits an apparent terroristic objective. None of the Five Customers were designated by the United States as having a potential connection to Hezbollah prior to the conclusion of the Second Lebanon War (*see* Appendix A); even if they had been so-designated, courts have repeatedly held that allegations of the provision of commercial services, including bank accounts and wire transfers, done in violation of U.S. counter-terrorism laws, are alone insufficient to meet the ATA's definitional requirements of "international terrorism." *See Stutts v. De Dietrich Grp*., No. 03-CV-4058, 2006 WL 1867060, at *2-4 (E.D.N.Y. June 30, 2006) ("The plain language of the ATA compels the conclusion that, by engaging in commercial banking activity, [banks are] not involved in 'violent acts or acts dangerous to human life.' Nor [are] their actions designed to coerce civilians or government entities as required under § 2331."); *see also Linde*, 882 F.3d at 326-27 ("The provision of [financial services to an FTO] in violation of § 2339B can certainly satisfy [one] part of the statutory definition. But, to qualify as international terrorism, a defendant's act must also involve

---

[21]     *See also id.* ¶ 103 ("As required by § 2331(1)(B) the actions of LCB appeared to be, and were 'intended … to intimidate or coerce a civilian population [or] to influence the policy of a government by intimidation or coercion,' in that LCB provided Hizbollah with extensive banking services[.]").

violence or endanger human life … [and] appear to be intended to intimidate or coerce a civilian population or to influence or affect a government."); *Kemper*, 911 F.3d at 390 (affirming dismissal of ATA claims against a bank that violated U.S. counter-terrorism sanctions after concluding that it was more plausibly "motivated by economics, not by a desire to 'intimidate or coerce.'").[22]

These decisions adhere to basic rules of statutory interpretation, which require courts to "consider the ordinary, common-sense meaning of the words."  *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000); *see also* Black's Law Dictionary at 447, 1802 (10th ed. 2014) (defining "violent" as "of, relating to, or characterized by strong physical force; resulting from extreme or intense force; [or] vehemently or passionately threatening," and "dangerous" as "likely to cause serious bodily harm").  Thus, while ideologically motivated assassinations, kidnappings, and acts of mass destruction—activities listed in, *inter alia*, § 2331(1)(B)(iii) and routinely understood to be terrorism—are "violent acts or acts dangerous to human life," banking services, even in violation of sanctions regimes, clearly are not.  *Supra* pp. 12-13.

Plaintiffs' attempt (SAC ¶¶ 88-95) to satisfy their pleading obligations by attributing "anti-Israel sentiment" and support for "using terrorism to destroy the State of Israel and murder or expel its Jewish inhabitants" to "Lebanese society" at large, including LCB, and repeating, without factual support, their claim that LCB harbored similar intentions as a matter of its "policy," is offensive, conclusory, and entirely insufficient under *Iqbal* and its progeny.  *See supra* p. 10. Instead, these allegations are materially identical to those Plaintiffs previously asserted against Al Jazeera and were found to be insufficient to state a claim.  *Al Jazeera*, 2011 WL 2314783, at *5.

---

[22]     *See similarly Stansell v. BGP, Inc.*, 09-CV-2501, 2011 WL 1296881 (M.D. Fl. Mar. 31, 2011) (dismissing § 2333(a) claims against corporation that made payments to an FTO absent plausible allegations that its conduct met the definitional requirements of § 2331(1)(B)); *Mastafa*, 770 F.3d at 194 (rejecting, in the context of the ATS, "the plausibility of a large international corporation intending … [to assist] the Saddam Hussein regime's torture and abuse of Iraqi persons.").

Nor can Plaintiffs' satisfy their pleading burden for this element of their Count I claim by invoking the US-LCB Settlement, which, as previously noted *supra* p. 4, has no relevance to the events of the Second Lebanon War and, in any event, expressly disavows charging LCB's policy makers with intentional wrongdoing, much less promulgating a "policy" to support terrorism.

> ### 2.   Plaintiffs Fail Plausibly To Allege That They Were Injured "By Reason Of" An Act Of "International Terrorism" Committed By LCB.

Plaintiffs' primary liability claim must also be dismissed because the SAC fails plausibly to support an inference that Plaintiffs' injuries were caused "by reason of" an act of "international terrorism" committed by LCB.  18 U.S.C. § 2333(a).  The statutory phrase "by reason of," as incorporated in § 2333(a), has a well-understood meaning across multiple statutes that "'require[s] a showing that the defendant's violation [of a statute] not only was a "but for" cause of [plaintiff's] injury, but was a proximate cause as well.'"  *Al Rajhi Bank*, 714 F.3d at 123 (quoting, *inter alia*, *Rothstein*, 708 F.3d at 95 and *Holmes*, 503 U.S. at 268) (emphasis supplied); *see also Burrage v. United States*, 134 S. Ct. 881, 889 (2014) (holding that "the phrase, 'by reason of,' requires at least a showing of 'but for' causation" (citation omitted) (emphasis supplied)); *Fields*, 881 F.3d at 744-46 ("[W]e assume that because Congress has used the same words—by reason of—in the ATA as it used previously in the Sherman, Clayton, and Racketeer Influenced and Corrupt Organizations (RICO) Acts, Congress intended these words to have the same meaning that courts had already given them in those contexts" (internal quotes omitted)).  The ATA and RICO civil remedies not only contain the same "by reason of" language, violations of the ATA's material support provisions (18 U.S.C. §§ 2339A-B)—as alleged here—are predicate offenses under RICO, for which civil RICO claims may be brought and the same well-established "but for" and proximate causation requirements would doubtless apply.  *See* 18 U.S.C. §§ 1964(c), 1961(1) ("racketeering

activity" includes "any act that is indictable under any provision listed in [§] 2332b(g)(5)(B)"); 18

U.S.C. § 2332b(g)(5)(B) ("federal crime of terrorism" includes violations of ATA §§ 2339A-B).[23]

### a)   Plaintiffs Fail Plausibly To Allege That LCB Was A "But For" Cause Of Their Injuries.

In order to plead "but for" causation, Plaintiffs plausibly must allege that their injuries

"'would not have occurred' in the absence of—that is, but for—the defendant's conduct." *Univ.*

*of Tx. Sw Med. Ctr. v. Nassar.*, 133 S. Ct. 2517, 2525 (2013); *see also Burrage*, 134 S. Ct. at 888,

892 (a "nonessential contributing role" is not a "but for" cause); *see also Rothstein*, 708 F.3d at 97

(affirming dismissal of ATA claims—including claims of several current Plaintiffs—for lack of

causation because the complaint did "not allege that if UBS had not transferred U.S. currency to

Iran, Iran … would not have funded the attacks in which the plaintiffs were injured.").

Plaintiffs, however, assert only conclusory allegations in a futile attempt to satisfy the "but

for" causation element of their Count I claim. *See* SAC ¶ 70 ("The Hizbollah Rocket Attacks were

… in fact caused by the conduct of LCB[.]").  But Plaintiffs' burden is to allege sufficient factual

matter, not such "mere conclus[ions]." *Iqbal*, 556 U.S. at 678.  Their claim for primary liability

---

[23]   While some early ATA decisions relied on select provisions of ATA legislative history in eschewing the well-understood meaning of § 2333(a)'s "by reason of" language, the Circuit Courts have since expressly rejected such an approach:

- "We recognize that the ATA's legislative history references Congress's intent to authorize the 'imposition of liability at any point along the causal chain of terrorism,' including by 'interrupt[ing] or at least imperil[ing] the flow of money' to terrorist groups. … Nevertheless, legislative history cannot alter plain text that, as here, expressly defines the acts giving rise to liability." *Linde*, 882 F. 3d at 326 (emphasis supplied) (citation omitted).

- "While legislative history may help discern the meaning of an otherwise ambiguous text, it may not be used to show an intent at variance with the meaning of the text.  Nor is any reference to legislative history necessary when the meaning of a statute is clear enough on its face.  Section 2333 is not ambiguous, so no appeal to legislative history is necessary or helpful here." *Owens*, 897 F.3d at 279 (emphasis supplied) (internal quotes and citations omitted).

These decisions provide the proper interpretative guidance. *Burrage*, 134 S. Ct. at 892 (it is the role of the courts "to apply the statute as it is written—even if we think some other approach might 'accord with good policy.'" (citation omitted)); *Nat'l Ass'n of Mfrs. v. Dep't of Defense*, 138 S. Ct. 617, 631 (2018) (where a statute is "unambiguous" a court's "inquiry begins with the statutory text, and ends there as well") (internal quotes omitted).

must be dismissed for this reason.  Moreover, in light of the judgment Plaintiffs obtained against the DPRK and Iran, Plaintiffs are precluded from credibly alleging that LCB's discrete financial services to the Five Customers were a "but for" cause of their injuries.

> **b)      Plaintiffs Fail Plausibly To Allege That LCB Proximately Caused Their Injuries.**

In order to plead proximate causation, Plaintiffs plausibly must allege that LCB's conduct "led directly" to their injuries.  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (emphasis supplied); *see also Hemi Group*, 559 U.S. at 12 (holding that with regard to "by reason of" proximate causation, "the focus is on the directness of the relationship between the conduct and the harm.").  Here, Plaintiffs allege little more than that Hezbollah relies on access to fungible currency drawn from banking services to assist it in carrying out nefarious deeds:

> If all banks and financial institutions worldwide observed and enforced the U.S. Sanctions Regime, the ability of Hizbollah to conduct banking activities would be severely restricted, and Hizbollah's ability to plan, to prepare and to carry out terrorist attacks would be significantly reduced.

SAC ¶ 29.  However, "the fact of fungibility does not modify the causal requirement imposed by the ATA's 'by reason of' element.  A plaintiff must show at least some direct relationship between the injuries that he or she suffered and the defendant's acts to bring a successful ATA claim." *Fields*, 881 F.3d at 749 (affirming dismissal of ATA claims for failure to plead "some direct relation" between Twitter's alleged provision of social media account services to ISIS, and the ISIS attack that caused plaintiffs' injuries); *see also Al Rajhi Bank*, 714 F.3d at 124 (affirming dismissal of ATA claims for failure to plead "that the money allegedly donated by the … defendants to … purported [Al Qaeda front] charities actually was transferred to Al Qaeda and aided in the September 11, 2001 attacks[.]")); *Rothstein*, 708 F.3d at 97 (affirming dismissal of

claims where plaintiffs failed to credibly allege a direct connection "between the cash transferred by UBS to Iran and the terrorist attacks by Hizbollah and Hamas that injured plaintiffs[.]")).[24]

As noted *surpa* at pp. 5-9, in *Licci I*, *Rothstein*, and *Al Jazeera*, Plaintiffs—represented by the same counsel—failed to allege that commercial services, including banking services, proximately caused the Hezbollah rocket attacks of the Second Lebanon War. The SAC contains the same content rejected in those prior decisions. *Compare, e.g.,* SAC ¶¶ 76-78 (alleging that LCB provided financial services to three entities allegedly "controlled" by Hezbollah), *with Licci I*, 704 F. Supp. 2d at 410 ("[E]very financial transaction traceable to a Hizbollah-controlled entity, no matter how remote, [is not] the proximate cause of those attacks."). Nor are Plaintiffs threadbare conclusions availing. *Compare, e.g.,* SAC ¶ 63 ("As a direct and proximate result of the actions of LCB the plaintiffs suffered the injuries and harm described herein."), *with In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 831 (S.D.N.Y. 2005) ("[I]n light of the extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of Plaintiffs' allegations as to any particular [ATA] defendant[.]'" (citation omitted)); *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

The SAC simply fails plausibly to allege the requisite "direct" connection between a financial service provided by LCB and a rocket attack that gave rise to Plaintiffs' injuries. *Fields*, 881 F.3d at 749-50. Moreover, here too, Plaintiffs' judgment against the DPRK and Iran precludes

---

[24] Applying these standards, numerous ATA cases brought against social media companies, including Twitter and Google, who were accused of knowingly providing material support to FTOs, including communications services, fundraising platforms, and advertising revenue, have recently been dismissed for failure plausibly to plead a direct causal link between the defendants' services and the terrorist attacks that caused plaintiffs' injuries. *See, e.g., Clayborn v. Twitter, Inc.*, No. 17-CV-06896, 2018 WL 6839754, at *8 (N.D. Cal. Dec. 31, 2018) (collecting cases); *Gonzalez v. Google, Inc.*, 335 F. Supp. 3d 1156, 1178 (N.D. Cal. 2018).

Plaintiffs from credibly alleging that LCB's financial services to the Five Customers are what "led

directly" to the rocket attacks of the Second Lebanon War that gave rise to their claims.

> ### c) Plaintiffs Are Judicially Estopped From Asserting That LCB— Rather Than Hezbollah, DPRK And/Or Iran—Was A Factual, Proximate, Or Substantial Cause Of Their Injuries.

"Judicial estoppel prevents a party in a legal proceeding from taking a position contrary to

a position the party has taken in an earlier proceeding." *Simon v. Safelite Glass Corp*, 128 F. 3d

68, 71 (2d Cir. 1997).  Courts invoke judicial estoppel to "preserve the sanctity of the oath" and to

"protect judicial integrity by avoiding the risk of inconsistent results in two proceedings." *Id.*

(quoting *Bates v. L.I.R.R. Co.*, 997 F.2d 1028, 1038 (2d Cir. 1993)); *New Hampshire v. Maine*,

532 U.S. 742, 749 (2001) ("[W]here a party assumes a certain position in a legal proceeding, and

succeeds in maintaining that position, he may not thereafter, simply because his interests have

changed, assume a contrary position[.]").  A party may be judicially estopped where two factors

are satisfied: "1) a party's later position is 'clearly inconsistent' with its earlier position" and "2)

the party's former position has been adopted in some way by the court in the earlier proceeding."

*DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (citation omitted).[25]

Plaintiffs' claims against LCB are judicially estopped by *Kaplan I.*  There, Plaintiffs

alleged, and the court found, that <u>the DPRK and Iran provided the weapons, training, logistical</u>

<u>support, infrastructure, and financing, utilized by Hezbollah to commit the rocket attacks that</u>

<u>caused Plaintiffs' injuries.</u>  *Kaplan I,* 55 F. Supp. 3d at 192-97 (detailing the "extensive evidence"

---

[25]     While the Second Circuit once held that it "[t]ypically" required a third factor — that "the party asserting the two positions [also] derive an unfair advantage against the party seeking estoppel," *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d at 103 — the Second Circuit has clarified its position, and no longer "require[s] this [last] element in all circumstances." *Adelphia Recovery Trust v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014) ("[i]n enumerating [the above three] factors" in *DeRosa* the Second Circuit did "not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel") (citing *New Hampshire*, 532 U.S. at 750-51); *In re Venture Mortg. Fund, L.P.*, 245 B.R. 460, 472 (S.D.N.Y. 2000) ("unfair" advantage factor not required).

presented by Plaintiffs in support of their claims against the DPRK and Iran).  Plaintiffs' present allegations—that, *inter alia*, "[b]ut for [LCB's provision of financial services to the Five Customers] … Hizbollah's ability to (a) to build and maintain its operational infrastructure for the planning and execution of the Hizbollah Rocket Attacks; (b) to pay, train, transport and shelter the terrorist operatives who carried out the Hizbollah Rocket Attacks; and (c) to carry out the Hizbollah Rocket Attacks, would have been severely crippled and limited" (SAC ¶ 66 )—cannot be reconciled with *Kaplan I*, where Plaintiffs alleged that the DPKR and Iran provided the support Hezbollah required and utilized in committing the rocket attacks at issue, and prevailed.  *See Kaplan I,* 55 F. Supp. 3d at 193-97.  If Plaintiffs' former and current factual allegations "are not 'clearly contradictory statements,' it is hard to imagine what would be."  *U.S. v. West Prods., Ltd.*, 168 F. Supp. 2d 84, 88-89 (S.D.N.Y. 2001); *New Hampshire*, 532 U.S. at 750 (judicial estoppel prohibits parties from "deliberately changing positions according to the exigencies of the moment") (citation omitted).

The risk to judicial integrity is certain here.  *Adelphia Recovery Trust*, 748 F.3d at 118-19 (risk to judicial integrity sufficiently great where estopped party was previously "sile[nt]" regarding crucial facts in bankruptcy proceeding, and pled wholly inconsistent facts in subsequent litigation).  Having successfully claimed in *Kaplan I* that the DPRK and Iran provided the material support, including, but not limited to, the weapons and financing, utilized in the rocket attacks that caused their injuries, Plaintiffs cannot claim that LCB was the "but for" or proximate cause of their injuries here.

Where a plaintiff intentionally weakens a factual position formerly used to "strengthen" and succeed in a prior litigation, the instant claims based on the "new" contradictory facts must be estopped.  *See West Prods., Ltd.*, 168 F. Supp. 2d at 88-90.  To allow Plaintiffs to proceed against

LCB would "encourage sharp practices, involving strategic" allegations of fact "timed to the legal exigencies of the moment, precisely what [judicial estoppel] is intended to prevent." *Adelphia Recovery Trust*, 748 F.3d at 119.

### B.   Count II Must Be Dismissed For Failure Plausibly To Plead The Elements Of A Secondary Liability Claim Under § 2333(d)(2).

The ATA's secondary liability provision (18 U.S.C. § 2333(d)(2)) creates a limited cause of action that reads as follows:

> In an action under subsection (a) for an injury arising from an act of international terrorism committed, planned, or authorized by an organization that had been designated as a foreign terrorist organization ... as of the date on which such act of international terrorism was committed, planned, or authorized, liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism.

18 U.S.C. § 2333(d)(2) .  Therefore, at least two elements must be met:  (1) Plaintiffs' claims must arise from an act of "international terrorism" (as defined in § 2331(1)) that was "committed, planned, or authorized" by a then-designated FTO; and (2) LCB must have "knowingly provid[ed] substantial assistance" to, or "conspire[d] with," "the person who committed" the act of "international terrorism" that injured Plaintiffs.  *Id.* (emphasis supplied).

As a threshold matter, none of the Five Customers is alleged to be the "the person who committed" an act of "international terrorism" that caused Plaintiffs' injuries.[26]  Count II must be dismissed for this reason alone.  18 U.S.C. § 2333(d)(2).  However, even if this Court's analysis extended beyond this first-step—and it should not—Plaintiffs have failed plausibly to allege the elements of conspiracy or aiding and abetting liability.

---

[26]     As previously noted, none of the Five Customers was a U.S.-designated terrorist prior to the conclusion of the Second Lebanon War and none were ever designated to be an FTO or alias of Hezbollah.  *See* Appendix A; *see also* U.S. Dep't of the Treasury, *Specially Designated Nationals and Blocked Persons List* (U.S.-recognized Hezbollah aliases include: "Party of God"; "Islamic Jihad"; "Islamic Jihad Organization"; "Revolutionary Justice Organization"; "Organization of the Oppressed on Earth," etc.), https://bit.ly/2MNp9Mr (last accessed Feb. 4, 2019).

## 1.    Plaintiffs Fail Plausibly To Allege That LCB Conspired With "The Person Who Committed" The Rocket Attacks At Issue.

In assessing the sufficiency of Plaintiffs' allegations to state a claim under § 2333(d)(2), this Court has been directed to follow the "legal framework" set forth in *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983). *Linde*, 882 F.3d at 329. Under that framework, the elements of a conspiracy include:

> "(1) [A]n agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme."

*Halberstam*, 705 F.2d at 477 (citation omitted). "The prime distinction between civil conspiracies and aiding-abetting is that a conspiracy involves an agreement to participate in a wrongful activity. Aiding-abetting focuses on whether a defendant knowingly gave 'substantial assistance' to someone who performed wrongful conduct, not on whether the defendant agreed to join the wrongful conduct." *Id.*, 705 F.2d at 478.[27]

Here, the SAC makes no attempt to plead the elements of a conspiracy. <u>The SAC does not even contain the words "agreed," "agreement," or "conspired." SAC ¶¶ 1-116. Moreover, it includes only one passing mention of the word "conspiracy," and not within one of its 116 enumerated paragraphs, but rather only in the title of Count I. *See* SAC p. 29.</u> Thus, Plaintiffs' conspiracy claims fail even the most cursory review, much less the demanding scrutiny that is

---

[27]    *Halberstam* cautiously extended the reach of liability to a secondary actor on the compelling and readily distinguishable facts of that case—the defendant was a partner in a two-person team that engaged in a years-long joint criminal enterprise involving concealing and laundering the proceeds of armed robberies. Specifically, the *Halberstam* court found it compelling that the defendant (Linda Hamilton) was closely linked to the principal (Bernard Welch): (1) they were housemates and partners for the five years of their criminal enterprise; (2) substantial quantities of stolen loot and the tools used in the commission of their crimes, including a smelting furnace used to melt stolen gold and silver into bars, were kept in their shared residence; (3) they each played a separate but "indisputably important" role in ensuring the success of the overall criminal venture; and (4) <u>"the principal business in which Welch and Hamilton engaged while at home" was the disposal of stolen loot.</u> *Halberstam*, 705 F.2d at 486-88 (emphasis supplied).

required.  *Twombly*, 550 U.S. at 557 (holding that a "naked assertion of conspiracy … stops short of the line between possibility and plausibility of entitle[ment] to relief." (internal citation omitted)); *Arar v. Ashcroft*, 585 F.3d 559, 569 (2nd Cir. 2009) (stating that a plausible conspiracy claim must allege a meeting of the minds).[28]

When read most favorably to the Plaintiffs, the SAC plausibly alleges only that LCB provided financial services to the Five Customers.  SAC ¶¶ 25-48.  The SAC provides no factual matter to support a reasonable inference that LCB and the Five Customers reached a "meeting of the minds" to engage in "international terrorism," or on any subject other than what may be inferred from a typical arms-length customer relationship.  *See supra* pp. 11-14 (discussing the failure of the SAC plausibly to allege an apparent terroristic objective of LCB).  Moreover, during the relevant time period, none of the Five Customers were U.S.-designated FTOs, designated under another U.S. counter-terrorism sanctions regime, or plausibly alleged to have been involved in committing the acts of "international terrorism" that gave rise to Plaintiffs' injuries.  *See* Appendix A; *supra* I.A.2 (discussing lack of plausible allegations of causation).  In any event, allegations that a bank knowingly provided financial services in violation of U.S. laws are alone insufficient to meet the pleading requirements applicable to ATA conspiracy claims.  *Kemper*, 911 F.3d at 395 (affirming dismissal of ATA conspiracy claim against bank defendant that violated U.S. sanctions for failing plausibly to allege that the bank "'reached an agreement with the specific intent that' the conspiratorial goal be completed." (citation omitted)).

Plaintiffs' Count II claim for conspiracy liability should be dismissed accordingly.

---

[28]    *See also DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 56 (1st 1999) ("[T]erms like 'conspiracy,' or even 'agreement,' are border-line: they might well be sufficient in conjunction with a more specific allegation—for example, identifying a written agreement or even a basis for inferring a tacit agreement, … but a court is not required to accept such terms as a sufficient basis for a complaint.").

### 2.   Plaintiffs Fail Plausibly To Allege That LCB Aided And Abetted "The Person Who Committed" The Rocket Attacks At Issue.

Under the *Halberstam* legal framework that is applicable to Plaintiffs' § 2333(d)(2) claims,

*Linde*, 882 F.3d at 329, the elements of aiding and abetting liability include:

> (1) "[T]he party whom the defendant aids must perform a wrongful act that causes an injury," (2) "the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance," and (3) "the defendant must knowingly and substantially assist the principal violation."

*Id.* (quoting *Halberstam*, 705 F.2d at 487).

> *Halberstam* further identified six factors relevant to determining "how much encouragement or assistance is substantial enough" to satisfy the third element:  (1) the nature of the act encouraged, (2) the amount of assistance given by defendant, (3) defendant's presence or absence at the time of the tort, (4) defendant's relation to the principal, (5) defendant's state of mind, and (6) the period of defendant's assistance.

*Id.* (quoting *Halberstam*, 705 F.2d 483-84 (noting that in order for assistance to be considered "substantial" for the purposes of establishing aiding and abetting liability, it should have played a "major part in prompting the tort" or be "integral" to the tort (emphasis supplied)).

In the context of an ATA action against a bank defendant, "aiding and abetting an act of international terrorism requires more than the provision of material support to a designated terrorist organization.  Aiding and abetting requires the secondary actor to be 'aware' that, by assisting the principal, it is itself assuming a 'role' in terrorist activities."  *Id.* (quoting *Halberstam*, 705 F.2d at 477) (emphasis supplied).  In other words, in order to state a claim for aiding and abetting liability, the SAC plausibly must allege, at least, that in providing financial services to the Five Customers, LCB "was 'generally aware' that it was thereby playing a 'role' in [Hezbollah's] violent or life-endangering activities."  *Id.* (quoting *Halberstam*, 705 F.2d at 477) (emphasis supplied).[29]

---

[29]    *See also Taamneh v. Twitter, Inc.*, 343 F. Supp. 3d 904, 917 (N.D. Cal. 2018) (dismissing ATA aiding and abetting claim against social media companies where "Defendants' purported knowledge that ISIS previously recruited, raised funds, or spread propaganda through Defendants' platforms [was] more akin to providing material support to a foreign terrorist organization than [to] assuming a role in terrorist activities.").

Plaintiffs' Count II claims for aiding and abetting liability therefore fail for at least three reasons:  (1) the Five Customers are not plausibly alleged to be the principals who committed an act of "international terrorism" that injured Plaintiffs; (2) the SAC fails to provide factual matter to support a reasonable inference that by providing financial services to the Five Customers, LCB (a) "knowingly and substantially assisted" the person who committed an act of "international terrorism" that injured Plaintiffs, or (b) "was 'generally aware' that it was thereby playing a 'role' in [Hezbollah's] violent or life-endangering activities;" and (3) Plaintiffs are judicially estopped by the judgment they obtained against the DPRK and Iran in *Kaplan I* from claiming that LCB's financial services were "integral" to the Hezbollah attacks that caused their injuries.  *Supra* I.A.1-3 (discussing Plaintiffs' failure to plead that LCB acted with a wrongful intent or that it was a factual, proximate, or substantial cause of their injuries); *see also Siegel v. HSBC Bank USA, N.A.*, No. 17-CV-6593, 2018 WL 3611967, at *5 (S.D.N.Y. July 27, 2018) (dismissing ATA aiding and abetting claims against banks at the pleading stage absent "plausible, non-conclusory [allegations] that the defendants knowingly aided or abetted [an FTO's] violent or life-endangering activities.").

While the SAC fails to state a claim for aiding and abetting liability under even the most permissive standards, courts have recognized the need to exercise particular caution in ATA cases, like this, that seek to premise liability on routine account services and funds transfers.  *Siegel*, 2018 WL 3611967, at *5 ("Because money is fungible and because the international banking system depends on cooperation among financial institutions across borders, it is particularly important to focus with care in cases like this on each of the necessary elements to a finding that [§ 2333(d)] has been violated.).[30]  Similar caution is required here, where LCB operated as one of the largest

---

[30]     *See also Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1395 (2018) (noting that funds transfers totaling more than $1.5 trillion are processed through the New York banking system alone "in the proverbial 'blink of an eye'" every day. (citation omitted)).

financial institutions in Lebanon during the time period relevant to the SAC, and Plaintiffs'

allegations focus on just five of its thousands of customers, none of which were designated by the

United States to be terrorists or affiliated with Hezbollah prior to the conclusion of the Second

Lebanon War.  Appendix A.

      Plaintiffs' Count II claim for aiding and abetting liability should be dismissed accordingly.

**CONCLUSION**

      For the reasons set forth herein, Plaintiffs' SAC fails plausibly to allege the elements of an

ATA claim for primary liability (under § 2333(a)) or secondary liability (under § 2333(d)).

      We respectfully request that this Court dismiss Plaintiffs' ATA claims with prejudice and

order such other and further relief as it may deem just and proper.

Dated:  February 4, 2019

                                                    Respectfully submitted,

                                                    DLA PIPER LLP (US)

                                      By:    /s/Jonathan D. Siegfried
                                               Jonathan D. Siegfried
                                                jonathan.siegfried@dlapiper.com
                                             Douglas W. Mateyaschuk II
                                                douglas.mateyaschuk@dlapiper.com
                                             1251 Avenue of the Americas
                                             New York, NY 10020-1104
                                             (212) 335-4500

                                             *Counsel for Lebanese Canadian Bank, SAL*

Of Counsel:

Sara Z. Moghadam
Cary Kotcher

## APPENDIX A:
## ALLEGED FINANCIAL SERVICES

| Alleged Customer | Alleged Hezbollah Affiliation | U.S.-Designated Prior To Aug. 2006 | Alleged LCB Service | Non-Conclusory Alleged Role In Rocket Attacks |
|---|---|---|---|---|
| Shahid (Martyrs) Foundation (Compl. ¶¶ 21-22) | "Shahid's purpose is provide financial and other material support to Hizbollah terrorists wounded in action, and to the families of Hizbollah terrorists killed in action." (Compl. ¶ 22) | No<br><br>*[Designated as a Specially Designated Global Terrorist ("SDGT") on July 24, 2007]*[1] | Bank accounts, wire transfers (Compl. ¶¶ 37, 46) | N/A |
| Bayt al Mal | "'Bayt al Mal and the Yousser Company function as Hizbollah's unofficial treasury, holding and investing its assets and serving as intermediaries between the terrorist group and mainstream banks.'" (Compl. ¶ 24) | No<br><br>*[Designated as an SDGT on Sept. 7, 2006]*[2] | Bank accounts, wire transfers (Compl. ¶¶ 38, 46) | N/A |
| Yousser Company for Finance and Investment | "'Bayt al Mal and the Yousser Company function as Hizbollah's unofficial treasury, holding and investing its assets and serving as intermediaries between the terrorist group and mainstream banks.'" (Compl. ¶ 24) | No<br><br>*[Designated as an SDGT on Sept. 7, 2006]*[3] | Bank accounts, wire transfers (Compl. ¶¶ 39, 46) | N/A |
| Husayn al-Shami | "Hezbollah leader[.]" (Compl. ¶ 38) | No<br><br>*[Designated as an SDGT on Sept. 7, 2006]*[4] | Bank accounts, wire transfers (Compl. ¶¶ 38, 46) | N/A |
| Walid Mahmoud Sbeity | "Hezbollah leader[.]" (Compl. ¶ 38) | No<br><br>*[Not designated]* | Bank accounts, wire transfers (Compl. ¶¶ 38, 46) | N/A |

---

[1]     Press Release, U.S. Dep't of the Treasury, *Recent OFAC Actions* (July 24, 2007).

[2]     "Institutions considering dealing with these two entities are now on notice as to their true character."  Press Release, U.S. Dep't of the Treasury, *Treasury Designation Targets Hizballah's Bank* (Sept. 9, 2006) (emphasis supplied), https://bit.ly/2TeGhNm (accessed Jan. 24, 2019).

[3]     *Id.*

[4]     *Id.*