UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------

CHAIM KAPLAN, *et al.*,

       Plaintiff,

 - v -

LEBANESE CANADIAN BANK, SAL,

       Defendant.

---------------------------------------------------------------------

    :
    :
    :
    :
    : 1:08-CV-07253 (GBD)
    :
    :
    :
    :

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
<u>PURSUANT TO FED. R. CIV. P. 12(B)(6)</u>**

**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, NY 10020-1104
Phone: (212) 335-4500
Fax: (212) 335-4501

*Attorneys for Defendant Lebanese Canadian Bank, SAL*

## TABLE OF CONTENTS

**Page**

ARGUMENT ............................................................................................................1

I.  THE SAC FAILS TO STATE A PLAUSIBLE PRIMARY LIABILITY CLAIM. ............2

    A.  Plaintiffs' Reliance On The Doctrine Of *Res Judicata* To Bar LCB's Motion Is Without Merit. ............................................................................................2

    B.  The SAC Fails To Allege Plausibly That LCB's Financial Services Were Violent Acts Performed With An Apparent Terroristic Intent. ..........................3

    C.  The SAC Fails To Allege Plausibly That Plaintiffs' Injuries Were Proximately And Factually Caused By LCB's Financial Services. .........................4

II.  THE SAC FAILS TO STATE A PLAUSIBLE SECONDARY LIABILITY CLAIM. ..............................................................................................................7

    A.  The SAC Fails To Allege Plausibly That LCB Conspired With The Person Who Committed The Rocket Attacks To Commit Violent Or Life-Endangering Acts. ..................................................................................7

    B.  The SAC Fails To Allege Plausibly That LCB's Financial Services Aided And Abetted The Person Who Committed The Rocket Attacks. ..........................9

CONCLUSION ...................................................................................................10

<u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)..................................................................................................7

*Burrage v. United States*,
 571 U.S. 204 (2014)...............................................................................................1, 7

*Crosby v. Twitter, Inc.*,
 921 F.3d 617 (6th Cir. 2019) ....................................................................................1

*Fields v. Twitter, Inc.*,
 881 F.3d 739 (9th Cir. 2018) ..................................................................................1, 7

*Halberstam v. Welch*,
 705 F.2d 472 (D.C. Cir. 1983) .............................................................................. 1, 9-10

*Holmes v. Secs. Inv'r Prot. Corp.*,
 503 U.S. 258 (1992)...............................................................................................1, 7

*Hussein v. Dahabshiil Transfer Servs. Ltd.*,
 705 F. App'x 40 (2d Cir. 2017) ............................................................................. 8-9

*Kaplan v. Al Jazeera*,
 No. 10-cv-5298, 2011 WL 2314783, (S.D.N.Y. June 7, 2011) .................................8

*Kaplan v. Central Bank of the Islamic Rep. of Iran*,
 55 F. Supp. 3d 189 (D.D.C. 2014) ...........................................................................6

*Kemper v. Deutsche Bank AG*,
 911 F.3d 383 (7th Cir. 2018) ........................................................................1, 4, 6, 8

*Licci by Licci v. Lebanese Canadian Bank, SAL*,
 834 F.3d 201 (2d Cir. 2016)......................................................................................3

*Licci v. Am. Ex. Bank Ltd.*,
 704 F. Supp. 2d 403 (S.D.N.Y. 2010).....................................................................2, 5

*Licci v. Lebanese Canadian Bank, SAL*,
 20 N.Y.3d 327 (2012) ...............................................................................................2

*Licci v. Lebanese Canadian Bank, SAL*,
 659 Fed. App'x 13 (2d Cir.2016)..............................................................................3

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
 732 F.3d 161 (2d Cir. 2013)......................................................................................2

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Linde v. Arab Bank, PLC*,
    882 F.3d 314 (2d Cir. 2018)................................................................1, 3, 9

*Loral Fairchild Corp. v. Matsushita Elec. Indus. Co., Ltd.*,
    840 F. Supp. 211 (E.D.N.Y. 1994) .................................................................6

*Miller v. Arab Bank, PLC*,
    372 F. Supp. 3d 33 (E.D.N.Y. 2019) ...........................................................4

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)......................................................................................6

*O'Sullivan v. Deutsche Bank AG*,
    No. 17-cv-8709, 2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019).................... *passim*

*Owens v. BNP Paribas, S.A.*,
    897 F.3d 266 (D.C. Cir. 2018) ......................................................................7

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013).......................................................................... 5- 7

*Strauss v. Credit Lyonnais, S.A.*,
    No. 06-cv-702, 2019 WL 1492902 (E.D.N.Y. Mar. 31, 2019)...................1

*Taamneh v. Twitter, Inc.*,
    343 F. Supp. 3d 904 (N.D. Cal. 2018) ..............................................1, 10

*In re Terrorist Attacks on Sept. 11, 2001 (Al Rajhi Bank)*,
    714 F.3d 118 (2d Cir. 2013).......................................................... *passim*

*Weiss v. Nat'l Westminster Bank PLC*,
    No. 05-cv-4622, 2019 WL 1441118 (E.D.N.Y. Mar. 31, 2019).....................1, 4, 9

**Statutes**

18 U.S.C. § 2331 .................................................................................................4

18 U.S.C. § 2333.........................................................................................3, 5, 7, 10

18 U.S.C. § 2339B .............................................................................................4

**Other Authorities**

RESTATEMENT (SECOND) OF JUDGMENTS
    § 27, cmt. h.................................................................................................3

## ARGUMENT

Plaintiffs' opposition brief ignores or misstates the law of this Circuit regarding Anti-Terrorism Act ("ATA") liability. Rather than acknowledge the deficiencies in their pleading, Plaintiffs argue that two prior inapposite decisions of the Second Circuit in this lawsuit, one dealing with personal jurisdiction under New York's long-arm statute and the other affirming the dismissal of Alien Tort Statute ("ATS") claims, require denial of LCB's motion to dismiss. But neither of these decisions purports to address, much less adjudicate, whether, as required under the ATA following *Linde v. Arab Bank, PLC*, 882 F.3d 314 (2d Cir. 2018), Plaintiffs allege plausibly that LCB's financial services: (1) constituted "violent acts or acts dangerous to human life";[1] (2) appeared to be intended to "intimidate or coerce a civilian population;"[2] (3) proximately or factually caused Plaintiffs' injuries;[3] (4) were performed by LCB while aware that it was "assuming a role" in committing terrorism;[4] and (5) were provided to the "person who committed" the attacks that injured Plaintiffs and played "a 'major part' in prompting [those attacks]."[5]

Because the Second Amended Complaint ("SAC") fails to state a claim under clear Second Circuit authority, and their opposition brief fails to address the deficiencies of their factual allegations, Plaintiffs' ATA claims should be dismissed with prejudice.[6]

---

[1]      *Weiss v. Nat'l Westminster Bank PLC*, No. 05-cv-4622, 2019 WL 1441118, at *7 (E.D.N.Y. Mar. 31, 2019) (citing *Linde*, 882 F.3d at 327).

[2]      *Weiss*, 2019 WL 1441118, at *8 (citing *Linde*, 882 F.3d at 326-27).

[3]      *Fields v. Twitter, Inc.*, 881 F.3d 739, 748 (9th Cir. 2018) (citing *Holmes v. Secs. Inv'r Prot. Corp.*, 503 U.S. 258, 267 (1992)); *cf. Kemper v. Deutsche Bank AG*, 911 F.3d 383, 391 (7th Cir. 2018) (noting that *Burrage v. United States*, 571 U.S. 204, 213 (2014) held that "by reason of" statutory language requires at least but-for causation).

[4]      *Strauss v. Credit Lyonnais, S.A.*, No. 06-cv-702, 2019 WL 1492902, at *4 (E.D.N.Y. Mar. 31, 2019).

[5]      *Taamneh v. Twitter, Inc.,* 343 F. Supp. 3d 904, 916, 918 (N.D. Cal. 2018) (quoting *Halberstam v. Welch*, 705 F.2d 472, 484 (D.C. Cir. 1983)).

[6]      Since LCB's moving brief was filed, courts have rendered additional decisions that reject ATA claims based on factual deficiencies strikingly similar to those present here. *See supra* nn. 1-2 & 4; *Crosby v. Twitter, Inc.*, 921 F.3d 617 (6th Cir. 2019); *O'Sullivan v. Deutsche Bank AG*, No. 17-cv-8709, 2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019).

## I.     THE SAC FAILS TO STATE A PLAUSIBLE PRIMARY LIABILITY CLAIM.

### A.     Plaintiffs' Reliance On The Doctrine Of *Res Judicata* To Bar LCB's Motion Is Without Merit.

Nothing speaks more directly to the pleading deficiencies in Plaintiffs' ATA claims than their attempt (Opp'n 3-12) to sidestep the application of the law of this Circuit altogether by claiming that LCB's current motion to dismiss, based on those deficiencies, is precluded by the doctrine of *res judicata.* In neither of Plaintiffs' two prior appeals to the Circuit did that Court decide that an ATA claim was well-pled.

To the contrary, in finding that LCB was subject to long-arm jurisdiction based on its use of a New York-based correspondent account, both the New York Court of Appeals and Second Circuit expressly held that they were "not [deciding that Plaintiffs'] allegations state a claim" under the ATA. *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 340 (2012) (emphasis supplied); *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168-69 (2d Cir. 2013) (recognizing that long-arm jurisdiction "does not require a causal link between the defendant's New York business activity and a plaintiff's injury" (citation omitted) (hereinafter "*Licci II*")). Nor, in its ruling, did the Second Circuit question this Court's conclusion that LCB's banking activities on behalf of its customers were not the proximate cause of Plaintiffs' injuries—a conclusion, as discussed *infra,* that applies equally to the SAC. *Licci v. Am. Ex. Bank Ltd.*, 704 F. Supp. 2d 403, 408, 410 (S.D.N.Y. 2010) (hereinafter "*Licci I*"), *vacated in part by Licci II.*

Plaintiffs' reliance (Opp'n 6-12) on the Circuit's decision affirming this Court's dismissal of aliens' ATS claims is equally unavailing. Indeed, in a summary order entered on August 24, 2016, the Second Circuit upheld the dismissal of Plaintiffs' ATA claims on grounds of collateral

estoppel.[7] The Court's separate opinion dismissing aliens' ATS claims is simply irrelevant to LCB's current motion. The ATA and ATS are entirely different statutes with entirely different pleading requirements (this Circuit does not even recognize a cause of action for international terrorism under the ATS).[8] And Plaintiffs selectively quote nothing more than *dicta* from the Circuit's ATS opinion. As the Court made clear, it dismissed the aliens' ATS claims based on binding Circuit precedent barring such claims against corporations.[9] Its "preliminary" view (*id.*, 834 F.3d at 215) that the pleading might otherwise have stated a viable ATS claim was neither relevant nor necessary to its holding affirming the dismissal of ATS claims, and, as such, is non-binding *dicta*. RESTATEMENT (SECOND) OF JUDGMENTS § 27, cmt. h.

### B. The SAC Fails To Allege Plausibly That LCB's Financial Services Were Violent Acts Performed With An Apparent Terroristic Intent.[10]

Plaintiffs contend (Opp'n 24-25) that LCB committed "international terrorism" by providing banking services to the Five Customers. It is undisputed that the Five Customers, including business entities and a "social welfare" society, were not on any designated terror list during the relevant time period of the SAC, and the SAC does not allege otherwise. *See* Br. Appendix A. The SAC nonetheless alleges (SAC ¶¶ 81-82, 114) that LCB knew or should have known they were affiliated with or controlled by Hezbollah. Even accepting these allegations of

---

[7]     *Licci v. Lebanese Canadian Bank, SAL*, 659 Fed. App'x 13 (2d Cir.2016).

[8]     *See, e.g., In re Terrorist Attacks on Sept. 11, 2001 (Al Rajhi Bank)*, 714 F.3d 118, 125 (2d Cir. 2013) (dismissing ATS claims on grounds that "no universal norm against 'terrorism' existed under customary international law (*i.e.*, the 'law of nations')" at the time of the attacks at issue).

[9]     *Licci by Licci v. Lebanese Canadian Bank, SAL*, 834 F.3d 201, 219 (2d Cir. 2016).

[10]    Plaintiffs misstate *Linde* as holding (Opp'n 23-24) that it would be improper for this Court at the pleading stage to decide whether the SAC plausibly alleges the "international terrorism" element of a Section 2333(a) claim. But nothing in *Linde* dictates such a result. In fact, courts rely on *Linde* to dismiss such claims at the pleading stage where, like here, it is implausible to infer that a commercial defendant's services were violent acts done with an apparent terroristic purpose. *See O'Sullivan*, 2019 WL 1409446, at *7 (stating that "[e]ven if the allegations in the Complaint were sufficient to plead proximate cause, Plaintiffs' [Section 2333(a)] claims would still fail because [they do] not allege[ ] plausibly that Defendants' conduct constituted … international terrorism[]" and relying on *Linde*).

the SAC as true for purposes of this motion, at best they state a violation of Section 2339B. They are <u>insufficient</u> to meet the pleading requirements of Section 2331(1). Br. 11-13 (collecting cases); *see also Weiss,* 2019 WL 1441118, at *6-8 (finding bank's knowing provision of financial services to alleged Foreign Terrorist Organization ("FTO")-controlled "charities" did not support an inference that it committed life-endangering or violent acts with an apparent terroristic intent). Specifically, Plaintiffs do not, and cannot, point to any non-conclusory factual allegations in the SAC to support a plausible inference that: (1) LCB's provision of financial services to the Five Customers was "inherently violent or dangerous" (*O'Sullivan*, 2019 WL 1409446, at *8) (holding that banking services "are not inherently violent or dangerous"); [11] (2) the Five Customers "participated in, planned, trained the perpetrators of, requested that someone carry out, or were the cause of the attacks giving rise to Plaintiffs' claims" (*Weiss*, 2019 WL 1441118, at *7);[12] and/or (3) LCB acted with an apparent terroristic intent in providing bank account and funds transfer services to the Five Customers (*Kemper*, 911 F.3d at 394).[13] Accordingly, the SAC fails plausibly to allege that LCB's banking services constituted acts of "international terrorism."

C.   **The SAC Fails To Allege Plausibly That Plaintiffs' Injuries Were Proximately And Factually Caused By LCB's Financial Services.**

Plaintiffs argue (Opp'n 25-26) that they are not required to plead that LCB's financial services were a proximate (direct) and factual (but-for) cause of their injuries in order to state a

---

[11]     *See also Weiss*, 2019 WL 1441118, at *7 (holding that the "plain language of the statute" controls and referring to the dictionary to define the terms "violent" and "dangerous," as incorporated into Section 2331(1)).

[12]     For example, Plaintiffs allege (SAC ¶ 22) that Shahid Foundation is part of Hezbollah's "Social Service Section," which is <u>distinct</u> from its "military" unit that committed the rocket attacks at issue. *See* Br. 5.

[13]     Plaintiffs' misplaced reliance on *Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33 (E.D.N.Y. 2019)—a relative outlier that denied a bank's motion to dismiss ATA claims—ignores the readily distinguishable facts of that case. The *Miller* court was persuaded by what it viewed as plausible allegations that <u>the defendant</u> provided its own "monetary contributions" and "administered a terrorist insurance scheme" in support of "a terrorist campaign against the State of Israel" (*id.* at 39)—conduct materially different than the processing of "'deposits, withdrawals, check clearing services, [and] other routine banking'" of the sort that LCB allegedly performed for the Five Customers and that was found insufficient to state a claim in *Kemper* and *O'Sullivan*. Br. 10 (quoting *Al Rajhi Bank*, 714 F.3d at 124).

claim under Section 2333(a). They are plainly wrong. As the Second Circuit held in *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013), Section 2333(a) expressly requires that the plaintiff's injury occur "by reason of" the defendant's conduct which, the court further held, requires "a showing that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well." *Id.* at 95 (citation omitted); *accord Al Rajhi Bank*, 714 F.3d at 123. The SAC fails both parts of the test.

As set forth in LCB's moving brief (Br. 1-2, 8, 16-18), the SAC merely recycles allegations from Plaintiffs' prior pleadings and exhibits which this Court previously found fail to establish that the banking services provided by LCB were the proximate cause of Plaintiffs' injuries:

- "The injuries and death suffered by plaintiffs and their family members were caused by the rockets launched by Hizbollah, not by the banking services provided by LCB…." *Licci I*, 704 F. Supp. 2d at 408.

- "[N]oncompliance with banking laws and industry standards alone will not render a bank negligently liable for the violent attacks committed by a terrorist organization who benefitted, in some general, nondescript manner, from monies passing through the bank during the performance of routine banking services." *Id.* at 410 (citations omitted).[14]

- "Even if it were alleged that Hizbollah used some funds it received to carry out the 2006 missile attacks, that factual assertion alone would not make every financial transaction traceable to a Hizbollah-controlled entity, no matter how remote, the proximate cause of those attacks." *Id.*

Plaintiffs do not plausibly allege, or allege only in non-factual conclusory terms, that the Five Customers "exist solely to further terror[,]" *O'Sullivan*, 2019 WL 1409446, at *6,[15] were

---

[14]   Indeed, the forfeiture action for alleged money laundering brought by the U.S. which is cited in the SAC does not even reference the rocket attacks or allege that any banking services provided by LCB had any relationship to or facilitated the rocket attacks in any way. *See* Br. 4 & n. 8.

[15]   To the contrary, the SAC itself recognizes (SAC ¶¶ 22, 24, 38) that the Five Customers engaged in non-violent social welfare and investment activities. For example, Bayt al Mal and the Yousser Company allegedly "invest[ed] [Hezbollah's] assets and serv[ed] as intermediaries between [Hezbollah] and mainstream banks," while Shahid Foundation allegedly provided "social welfare" to "Hizbollah terrorists wounded in action, and to the families of Hizbollah terrorists killed in action." Br. <u>Appendix A</u> (citing SAC ¶¶ 22, 24, 38).

involved in the rocket attacks, or actually used the funds they received from banking transactions performed by LCB to carry out any of the rocket attacks of the Second Lebanon War. *Rothstein*, 708 F.3d at 97. Absent non-conclusory factual allegations, the SAC fails to allege plausibly that LCB's banking services for the Five Customers were the proximate cause of the rocket attacks or their injuries. *Al Rajhi Bank*, 714 F.3d at 124; *O'Sullivan*, 2019 WL 1409446, at *6-7; *Kemper*, 911 F. 3d at 393; *see also* Br. 20 n.26 (plaintiffs fail to allege plausibly that the Five Customers were Hezbollah alter egos during relevant time period).

Furthermore, the SAC does not—and cannot—allege facts sufficient to support plausibly the inference that Hezbollah "would have been unable to fund" the rocket attacks absent LCB's provision of financial services to the Five Customers. *Rothstein*, 708 F.3d at 97. In *Kaplan v. Central Bank of the Islamic Rep. of Iran*, 55 F. Supp. 3d 189 (D.D.C. 2014), these same Plaintiffs successfully argued, and the court there found, that the Democratic People's Republic of Korea ("DPRK") provided the rockets, launchers, training, and other material support required by Hezbollah for the rocket attacks, and Iran financed "'[t]his whole thing'" through funds funneled by the Iranian Republican Guard. *Id.* at 193-97. Given the findings and judgment that Plaintiffs themselves sought and proved in *Kaplan*, they cannot now plausibly allege that Hezbollah "would have been unable to fund the rocket attacks" absent the routine banking services LCB provided to its Five Customers or that the banking transactions it conducted for them were a "substantial factor in the sequence of responsible causation" directly resulting in Plaintiffs' injuries.[16] *Rothstein*, 708

---

[16]     Indeed, as set forth in LCB's moving brief (Br. 2, 18-20), having prevailed on their contention in *Kaplan* that the DPRK and Iran provided all of the funding, logistics, rockets, launchers, shipping, infrastructure, and other support that Hezbollah needed and, in fact, used to commit the rocket attacks that caused their injuries, Plaintiffs are estopped from inconsistently claiming here that LCB's banking transactions for the Five Customers—themselves nowhere credibly alleged to have authorized, planned or committed the rocket attacks—were a direct cause of, and substantial factor in, the rocket attacks and their injuries. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (plaintiffs are estopped from "deliberately changing positions" simply to fit "the exigencies of the moment.") (internal citations and quotation marks omitted); *Loral Fairchild Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 840 F. Supp. 211, 219 (E.D.N.Y.

F.3d at 91 (internal quotation marks and emphasis omitted). The findings and judgment in *Kaplan* are fatal to Plaintiffs' claim that LCB's conduct was a factual and proximate cause of their injuries. *See, e.g.*, *Rothstein*, 708 F.3d at 96-97; *Al Rajhi Bank*, 714 F.3d at 124; *see also O'Sullivan*, 2019 WL 1409446, at *5-7.[17]

## II.   THE SAC FAILS TO STATE A PLAUSIBLE SECONDARY LIABILITY CLAIM.

### A.   The SAC Fails To Allege Plausibly That LCB Conspired With The Person Who Committed The Rocket Attacks To Commit Violent Or Life-Endangering Acts.

Plaintiffs' argument (Opp'n 22-23) that LCB seeks dismissal of their conspiracy claim because the SAC lacks certain "magic words" is a strawman. LCB actually argues (Br. 10, 21-22) that dismissal is warranted because conspiracy claims must be pled with sufficient particularity—including the core requirement that LCB acted with the subjective state of mind to agree to support "international terrorism"—and the SAC is silent (not simply lacking "magic words") in meeting this requirement. Moreover, the SAC's few "naked assertions" of a "common scheme" are plainly deficient under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Br. 10, 21-22.

As courts within this District have held in dismissing similar ATA conspiracy claims against bank defendants: "to be subject to secondary liability under JASTA on the basis of a conspiracy, a defendant must have conspired to commit an act of international terrorism." *O'Sullivan*, 2019 WL 1409446, at *9. The factual allegations of the SAC suggest, at best, only that

---

1994) (judicial estoppel prevents a party from "*winning*, twice, on the basis of incompatible positions") (internal quotation marks omitted).

[17]      Plaintiffs' remaining arguments for a relaxed causation standard (Opp'n 25-26) are without merit for at least three reasons: (1) *Fields* and *Rothstein* both require a showing of "sufficient directness" (*see Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 273 n.8 (D.C. Cir. 2018)) and both relied on *Holmes* and its progeny in reaching that holding (*see* Br. 14-18); (2) prior ATA decisions that adopted causation standards based on select provisions of legislative history, rather than the ATA's statutory text, have been abrogated by more recent Circuit precedent (*see id.* 14-15 & n.23); and (3) the Supreme Court now insists that "by reason of" statutory text—as set forth in Section 2333(a)—requires "at least" a showing of but-for causation (*see Burrage*, 571 U.S. at 213 (emphasis supplied)).

LCB engaged in banking transactions for the Five Customers. It nowhere plausibly alleges facts that LCB ever agreed to join a conspiracy "for the purpose of committing violent or life-endangering acts." *Id*. As the Seventh Circuit held in *Kemper*:

> None of the allegations suggest that [the bank] cared how its … customers obtained or spent the funds that it processed for them. . . . This principle—that one cannot join a conspiracy through apathy—is especially important in business dealings. Because by definition market transactions—whether in legal or illegal markets—benefit both parties, we do not assume, *ab initio*, that they carry with them the excess baggage of conspiracy.

911 F.3d at 395 (internal citation and quotation marks omitted). Allegations that LCB provided commercial services to Hezbollah-linked charities and businesses that do not "exist solely to further terror" do not suffice. *O'Sullivan*, 2019 WL 1409446, at *6, 9.[18]

Moreover, Plaintiffs' threadbare assertion that LCB supported Hezbollah terrorism as a matter of its "policy" is the same type of pleading rejected as deficient in their suit against Al Jazeera. Br. 5-6, 13-14 (citing *Kaplan v. Al Jazeera*, No. 10-cv-5298, 2011 WL 2314783, at *5-6 (S.D.N.Y. June 7, 2011) (alleged actions and statements adverse to defendant by third parties, including the United States, are insufficient to support an inference about defendant's subjective intent)). Moreover, it is contradicted by the U.S. Government's own acknowledgement in settlement of the LCB forfeiture action (referred to in the SAC) that no charge of wrongdoing was directed against LCB's "Board Members, the Chairman General Manager, [or] the General Manager." Br. 4.

---

[18]    *See also Hussein v. Dahabshiil Transfer Servs. Ltd.*, 705 F. App'x 40, 41 (2d Cir. 2017) (rejecting plaintiffs' "celebrity-based theory of knowledge" concerning alleged affiliation between bank customers and FTO because, *inter alia*, "[e]ven high-level members of terrorist organizations may be unknown to the public at large, unknown to the specific [bank] employees on duty, known only by name, or appear different in person.").

**B.     The SAC Fails To Allege Plausibly That LCB's Financial Services Aided And Abetted The Person Who Committed The Rocket Attacks.**

While Plaintiffs (Opp'n 17-22) repeat the legal standards applicable to an ATA aiding and abetting claim, they have not, and cannot, point to any plausible allegations in the SAC that satisfy these requirements. Three core elements must be alleged plausibly: (1) LCB must have provided "substantial assistance" to "the person who committed" the attacks that injured Plaintiffs; (2) LCB must have provided this assistance aware that it was thereby "assuming a role" in committing "international terrorism;" and (3) LCB's assistance must have played a "major part" in prompting, or been "integral" to, the attacks that injured Plaintiffs. *Linde*, 882 F.3d at 329 (internal quotation marks omitted); *Halberstam*, 705 F.2d at 483-85. The SAC is deficient in all respects.

Here, the SAC does not allege that any of the Five Customers is the "person who committed" the rocket attacks. *See supra* I.C & nn.12, 15-16. Nor do Plaintiffs allege plausibly that LCB was aware in providing financial services to the Five Customers that it was "assuming a role" in Hezbollah's <u>violent or life-endangering activities</u>. *See Weiss*, 2019 WL 1441118, at *6-8, 11. Courts have repeatedly rejected as <u>insufficient</u> allegations, such as Plaintiffs' here, that seek to impose aiding and abetting liability on a defendant whose conduct was limited to providing commercial services to a charity or individual purportedly affiliated with an FTO, even when those services were performed in violation of U.S. counter-terrorism sanctions. *Id.*; *see also* Br. 21-25 (collecting cases). [19] And there is good reason for courts finding that such allegations are insufficient to establish aiding and abetting liability: it is more reasonable to infer that a corporation provided commercial services to make a profit, rather than to "assum[e] a role" in international terrorism. *Weiss*, 2019 WL 1441118, at *6-8. A different result is not warranted here.

---

[19]      *See also Hussein*, 705 F. App'x at 41 (rejecting as insufficient allegations that bank defendant had to know of purported affiliation between customer and FTO because of news accounts and other public information).

Plaintiffs have also failed to point to any allegations in the SAC sufficient to allege plausibly that LCB's financial services to the Five Customers "played a major part in prompting [the rocket attacks]" or was "integral" to their commission. *Halberstam*, 705 F.2d at 484. Courts have dismissed analogous claims against corporations accused of servicing FTOs for this reason. *See Taamneh,* 343 F. Supp. 3d at 918 (citing *Halberstam*, 705 F.2d at 484). As discussed *supra* I.C and in LCB's moving brief (Br. 14-18), no sufficient connection between LCB's financial services and Plaintiffs' injuries has been alleged plausibly. Nor, as discussed *supra* p. 6 & n.16, can such a connection be alleged plausibly in light of the findings of fact and judgment in *Kaplan*— that the DPRK and Iran provided the financing, rockets, training, and other support utilized by Hezbollah in committing the attacks at issue. *Kaplan*, 55 F. Supp. 3d at 197.

## CONCLUSION

For the reasons stated herein, and in LCB's moving brief, Plaintiffs fail to allege plausibly that LCB is liable as a principal or secondary actor under Section 2333. Additionally, the final judgment Plaintiffs obtained in *Kaplan* against the DPRK and Iran judicially estops, or, at the very least, prevents Plaintiffs' current and conflicting ATA claims against LCB.

Dated: June 11, 2019                                    Respectfully submitted,

                                                       **DLA Piper LLP (US)**

                                                       /s/ *Jonathan D. Siegfried*
                                                       Jonathan D. Siegfried
                                                        jonathan.siegfried@dlapiper.com
                                                       Douglas W. Mateyaschuk II
                                                        douglas.mateyaschuk@dlapiper.com
                                                       1251 Avenue of the Americas
                                                       New York, NY 10020-1104
                                                       (212) 335-4500
                                                       *Counsel for Lebanese Canadian Bank SAL*

OF COUNSEL:
Rana Bahri
Cary Kotcher

-10-