UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

CHAIM KAPLAN, *et al.*,

                Plaintiffs,                08-cv-7253 (GBD)

      -against-

LEBANESE CANADIAN BANK, SAL,

                Defendant.

---------------------------------------------------------------------X

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT LCB'S MOTION FOR A STAY OR FOR PERMISSION TO MOVE TO VACATE DEFAULT

#### Introduction

Defendant Lebanese Canadian Bank, SAL ("LCB") has been continuously represented in this action since its inception by some of the largest law firms in the United States. After the Second Circuit reversed the dismissal of plaintiffs' aiding and abetting claims and remanded those claims to this Court, LCB and its counsel ***intentionally*** defaulted the case. (DE 126).

Plaintiffs moved for final default judgment on October 6, 2021. (DE 127-129). LCB's time to oppose that motion expired on October 20, 2021, and LCB filed no opposition.

On October 27, 2021, LCB filed a motion seeking: (a) to stay this action pending the outcome of *Lelchook, et al. v. Lebanese Canadian Bank, et al.*, 18-cv-12401-GBD (S.D.N.Y.) ("*Lelchook*"); or, alternatively, if the stay is denied, (b) that the Court "permit" LCB to file a motion to vacate the default entered against it. (DE 134-135).

This is the second time LCB has tried to stall this 2008 case through a stay. As this Court noted when it denied LCB's prior motion for a stay, a party seeking a stay must "make out a clear case of hardship or inequity." *Licci v. LCB*, 2018 WL 5090972, at *2 (S.D.N.Y. Oct. 3,

2018) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). LCB's latest motion for a stay does not even come close to satisfying that requirement, or any of the other prerequisites for a stay established by *Landis* and its progeny, and is entirely meritless. Moreover, the gravamen of LCB's demand for a stay is the claim that the plaintiffs in this case are also pursuing claims against LCB in the *Lelchook* action—but as discussed below, that claim is *false*.

LCB's alternative request that the Court "permit" it, or grant it "the opportunity," to file a motion to vacate default (DE 135 at 6-7) is frivolous and dilatory. As LCB knows full well, a defendant in default does not need leave to move to vacate default. To the contrary, a defaulted defendant must move quickly to vacate default, or risk having its motion denied as untimely. *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 336 (2d Cir. 1986) (holding that "Rule 55(c) sets forth no guidelines for determining within what period the defaulting party must move to set aside a default, but we think it plain that such a motion must be made within a reasonable time" and affirming denial of motion to vacate default because defendant dawdled for months).

LCB's obviously unnecessary request for leave to move to vacate its intentional default is a pretense aimed at evading Rule 55(c)'s "reasonable time" requirement. The Court should not countenance or endorse that maneuver. If LCB wanted to move to vacate default it could, should and would have filed such a motion long ago.[1] LCB elected to default, and then elected to file a motion for a stay, rather than a motion to vacate default. The Court should not rescue LCB from its choices. Therefore, and for the reasons detailed below, LCB's motion should be denied.

---

[1] Plaintiffs will vigorously oppose any motion to vacate default on numerous grounds including, without limitation, untimeliness.

The plaintiffs were injured by Hezbollah rocket and missile strikes funded by LCB in 2006, and this case was filed in 2008. After 13 years of litigation LCB has exhausted all its defenses, intentionally defaulted, and refrained from moving to vacate default. Plaintiffs' motion for entry of judgment by default in this action should be granted forthwith.

## RELEVANT BACKGROUND

On December 5, 2018, the plaintiffs filed their Second Amended Complaint ("SAC") in this action, which asserted secondary liability claims against LCB for aiding and abetting and conspiracy, under 18 U.S.C. § 2333(d). Section 2333(d) applies in "any civil action [] pending on, or commenced on or after" September 28, 2016. P.L. 114-222 at § 7(1).

Plaintiffs had strong grounds to believe that this case was considered "pending" on September 28, 2016, and that they are therefore entitled to assert claims under § 2333(d).[2] However, at the time that the SAC was filed, plaintiffs could not be certain that LCB would not argue, or that this Court or the Second Circuit would not find, that on September 28, 2016, this case was not "pending" within the meaning of the statute.[3]

---

[2] On August 24, 2016, the Second Circuit affirmed this Court's dismissal of plaintiffs' claims on estoppel grounds. *Licci v. LCB*, 659 F. App'x 13 (2d Cir. 2016). However, this case was "pending" on September 28, 2016, both because the Second Circuit had not yet issued its mandate and, separately, because plaintiffs' time to seek certiorari review had not expired. *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1531 (9th Cir. 1989) (a case is "pending" if the mandate has not issued); *Swartz v. Mey*ers, 204 F.3d 417, 421 (3rd Cir. 2000) ("'pending' includes the time for seeking discretionary review, whether or not discretionary review is sought."); *Mendoza v. Blum*, 560 F. Supp. 284, 286 (S.D.N.Y. 1983) ("The definition of the term 'pending' includes those cases in which the appeal is still pending. By analogy, cases in which the right to appeal has not yet been exhausted or expired also should be considered pending.") (citation omitted); *Gargoyles v. U.S.*, 45 Fed. Cl. 139, 143 (1999) (same) (collecting cases).

(This Court subsequently vacated the estoppel dismissal and reinstated the case. *Licci v. LCB*, 2018 WL 5090972, (S.D.N.Y. Oct. 3, 2018)).

[3] Defendants' motion to dismiss the SAC was filed only on February 4, 2019. (DE 105-106).

Therefore, in an extreme abundance of caution, the plaintiffs ***conditionally*** reasserted their § 2333(d) claims against LCB within the context of the *Lelchook* action, which was filed on December 31, 2018. As explained in the *Lelchook* Complaint: "[O]ut of an abundance of caution, [the plaintiffs in this case] reassert their § 2333(d) claims against LCB here … **in the event** that the Court finds that *Licci* was not 'pending' on the relevant date and that the filing of the amended complaint with a § 2333(d) claim did not constitute 'commencement' of a civil action." (*Lelchook*, DE 12 at p. 35 n. 12) (emphasis added).[4]

Thus, the plaintiffs here included § 2333(d) claims against LCB in *Lelchook* on a purely conditional basis, to protect against the eventual possibility that this Court, or the Second Circuit, would find that the plaintiffs could not assert § 2333(d) claims in this action because it was not "pending on, or commenced on or after" September 28, 2016.

In the event, however, LCB's motion to dismiss the SAC did not dispute that § 2333(d) applies to this action, and both this Court and the Second Circuit correctly treated § 2333(d) as applicable. Indeed, in its decision finding that plaintiffs' SAC states viable claims for aiding and abetting under § 2333(d), the Second Circuit expressly noted that § 2333(d) claims are "retroactively available in any action that was pending on or commenced after" September 28, 2016. *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 847 (2d Cir. 2021).

Because the contingency which led the plaintiffs to conditionally include § 2333(d) claims against LCB in *Lelchook* did not occur, and the viability of plaintiffs' aiding and abetting claims has been established and now constitutes the law of the case, those placeholder claims are moot and should be dismissed without prejudice to plaintiffs' aiding and abetting claim in this

---

[4] Plaintiffs did not assert primary liability claims against LCB in *Lelchook*. (*Id*. at p. 34, n. 11).

case. *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000) (a plaintiff cannot "maintain two actions on the same subject in the same court, against the same defendant at the same time.").

## ARGUMENT

### A. There Is No Basis Whatsoever for a Stay

LCB's demand to indefinitely stay this case pending *Lelchook* should be rejected because it has not come close to meeting its burden. "The party seeking a stay bears the burden of establishing the basis for a stay." *Riverkeeper v. Pruitt*, 2018 WL 987262, at *2 (S.D.N.Y. Feb. 20, 2018). *Cf. Licci*, 2018 WL 5090972, at *2 (party seeking a stay must "make out a clear case of hardship or inequity."); *Juliao v. Charles Rutenberg Realty*, 2017 WL 4162301, at *5 (E.D.N.Y. Sept. 19, 2017) ("On a motion to stay, the moving party bears the burden to establish a clear case of hardship or inequity in being required to go forward.") (quotation marks and citation omitted).

LCB's main argument in favor of a stay is that "all of the Plaintiffs here are also plaintiffs in *Lelchook*, and assert the same claims against LCB in *Lelchook* as here." (DE 135 at 2). But this is simply not true: as discussed above, the § 2333(d) claims against LCB that the plaintiffs here conditionally included in the *Lelchook* complaint were mooted by the decision of the Second Circuit holding that plaintiffs' aiding and abetting claim under § 2333(d) in this case is viable. Plaintiffs thus have no reason to prosecute any claims against LCB in *Lelchook*, they have no intention of doing so—nor are they allowed to. *Curtis*, 226 F.3d at 139 (plaintiff cannot "maintain two actions on the same subject in the same court, against the same defendant at the same time.").

Moreover, this action was filed ***over a decade*** before *Lelchook*, and the rule is that "where there are two competing lawsuits, the first suit should have priority." *Readick v. Avis Budget Grp., Inc.*, 2014 WL 1683799, at *2 (S.D.N.Y. Apr. 28, 2014) (quoting *Ft. Howard Paper Co. v. William P. Witter, Inc.*, 787 F.2d 784, 790 (2d Cir. 1986)). That is especially so here, given the 13 years of intensive litigation that has taken place in this case, including multiple trips to the Second Circuit (which disposed of LCB's personal jurisdictional defense and its challenges to the sufficiency of the SAC), and LCB's decision to intentionally default this case. LCB cannot evade the results of its intentional default here, by demanding to litigate the mooted claims in *Lelchook*. To the contrary, plaintiffs' placeholder claims against LCB in Lelchook should be dismissed without prejudice. "It is a well-settled principle in this Circuit that where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second, and that in the absence of such showing, the case is properly dismissed without prejudice." *Byron v. Genovese Drug Stores, Inc.*, 2011 WL 4962499, at *2 (E.D.N.Y. Oct. 14, 2011) (quoting *First City Nat. Bank and Trust Co. v. Simmons*, 878 F.2d 76 (2nd Cir. 1989)) (ellipses and quotation marks omitted).

Thus, LCB's main argument in favor of a stay is a canard.

LCB also completely fails to address the very first factor weighed by courts in this Circuit in determining whether to grant a stay, which is "the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed." *Riverkeeper*, at *2. As a rule, "Courts are generally reluctant to stay proceedings out of concern for a plaintiff's right to proceed with [his] case." *Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, 2007 WL 674691, at *5 (E.D.N.Y. Feb. 28, 2007).

Clearly, after 13 years of difficult litigation, and over 15 years after the terrorist rocket attacks in which they were injured, the plaintiffs have a powerful interest in bringing this case to judgment with no further delay, and will be gravely prejudiced by the additional delay LCB now seeks.

Moreover, the Second Circuit has held that "the interests of the United States weigh heavily in [an ATA] case, even though it is a private lawsuit brought by individual victims of terrorism. ... Like the antitrust, commodities fraud, and racketeering laws ... the ATA's legislative history reflects that Congress conceived of the ATA, at least in part, as a mechanism for protecting the public's interests through private enforcement. One of the Act's sponsors noted that the Act would ensure that 'justice [is] sought' against terrorists 'even if not by [foreign governments or] the United States.' 137 Cong. Rec. S. 1771 (daily ed. Feb. 7, 1991) (Senator Grassley commenting after enactment). Furthermore, he declared that the Act would 'empower[ ] victims with all the weapons available in civil litigation.'" *Linde v. Arab Bank, PLC*, 706 F.3d 92, 112 (2d Cir. 2013).

Thus, "the interests of the United States weigh heavily" in this case, and granting the instant motion will harm "important U.S. interests" and not merely those of the plaintiffs.

LCB also argues that this action should be stayed because entry of a default judgment in this case might have preclusive effect against LCB or other defendants in *Lelchook*, which it claims would be "harsh and unfair." (DE 135 at 5). This argument is risible. LCB is facing default judgment in this case due to its decision to intentionally default. Whatever preclusive effect default judgment might have in *Lelchook* was well known to LCB and its experienced counsel when they elected to default this action. This Court should not rescue LCB from its own decisions.

At bottom, LCB is seeking to be *rewarded* for defaulting. If LCB had answered the SAC after remand from the Second Circuit, it would have had to proceed to discovery, summary judgment and trial, and the specter of a default judgment—which LCB is now seeking to twist into grounds for a stay—would not exist. The Court should not tolerate this gamesmanship.

**B.     The Motion for Leave to Move to Vacate Should Be Denied As Frivolous**

As discussed above, LCB knows full well that it does not need permission to move to vacate default. This prong of LCB's motion appears to be designed to elicit from the Court a deadline for filing a motion to vacate default, which LCB can then portray as resetting the clock on its failure to move to vacate "within a reasonable time." *Dow Chem. Pac. Ltd.*, 782 F.2d at 336. The Court should therefore deny this prong of LCB's motion as unnecessary and so frivolous.

LCB asserts in support of its request for "permission" to move to vacate that it has meritorious defenses to this action. (DE 135 at 6-7). If and when LCB actually files a motion to vacate, plaintiffs will address whatever arguments it makes. Plaintiffs nonetheless note that LCB's purported "meritorious defenses" are *facially* insufficient:

Three of LCB's "defenses" relate to primary and conspiracy liability claims. But this Court previously dismissed those claims, plaintiffs did not appeal that dismissal, and plaintiffs are not seeking default judgment thereon. These "defenses" are thus a non-sequitur.

LCB's two remaining "defenses" consist of the assertion that plaintiffs will be unable to prove their claims. But "assertions that the plaintiff will be unable to prove its" case do not satisfy Rule 55(c). *Entral Group Intern. v. Melody of Flushing Corp.*, 2007 WL 74317 at *4 (E.D.N.Y. Jan. 8, 2007). *Cf. Stephenson v. El-Batrawi*, 524 F.3d 907, 914 (8th Cir. 2008) (defendant's denials of liability coupled with his assertion that "the plaintiffs would not be able

-8-

to prove" a necessary element of their claim did not present a "meritorious defense" under Rule 55(c)).

LCB therefore has no meritorious defenses to this action.

**WHEREFORE**, LCB's motion should be denied.

Dated:   Brooklyn, New York
         November 15, 2021

                                        Respectfully submitted,

                                        THE BERKMAN LAW OFFICE, LLC
                                        *Attorneys for the Plaintiff*

                                        by: _____
                                              Robert J. Tolchin

                                        111 Livingston Street, Suite 1928
                                        Brooklyn, New York 11201
                                        718-855-3627