UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHAIM KAPLAN, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> LEBANESE CANADIAN BANK, SAL, <br><br> Defendant. | Case No. 08-cv-7253 (GBD) <br><br> <u>Oral Argument Requested</u> |

**REPLY MEMORANDUM OF DEFENDANT LEBANESE CANADIAN BANK, SAL
IN FURTHER SUPPORT OF MOTION TO VACATE ENTRY OF DEFAULT OR FOR
<u>LEAVE TO OPPOSE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT</u>**

April 4, 2022

Mitchell R. Berger (MB-4112)
mitchell.berger@squirepb.com
2550 M Street, NW
Washington, DC 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

**SQUIRE PATTON BOGGS (US) LLP**

Gassan A. Baloul (GB-4473)
gassan.baloul@squirepb.com
Joseph S. Alonzo (JA-1378)
joseph.alonzo@squirepb.com
1211 Avenue of the Americas, 26th Floor
New York, NY 10036
Telephone: (212) 872-9800
Facsimile: (212) 872-9815

*Attorneys for Defendant Lebanese Canadian Bank, SAL*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1
ARGUMENT .................................................................................................................................. 1
    I.    The Court Should Vacate the Default. ................................................................. 1
        A.    LCB Has Meritorious Defenses to Plaintiffs' Only Remaining Claim. ........................................................................................................ 1
        B.    The Default Was Not Willful. ..................................................................... 6
        C.    Vacating Default Will Not Prejudice Plaintiffs. ........................................ 7
    II.    Alternatively, the Court Should Permit LCB to Oppose Plaintiffs' Motion for Default Judgment. .............................................................................................. 8
CONCLUSION ............................................................................................................................. 10

**PRELIMINARY STATEMENT**

In an attempt to avoid having this Court adjudicate on the merits the only claim that remains in this case after 13 years of active litigation, Plaintiffs' Opposition [ECF No. 152] ignores the Second Circuit's "oft-stated preference for resolving disputes on the merits," pursuant to which: the good cause factors under Fed. R. Civ. P. 55(c) "should be construed generously"; "defaults are generally disfavored and are reserved for rare occasions"; and, any "doubt should be resolved in favor of the defaulting party." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993). Plaintiffs also ignore and fail to rebut that LCB's default resulted from its mistaken understanding of the status of the matter amidst its efforts to secure new counsel, and that good cause exists to vacate the default so that LCB can resume defending itself on the merits.

**ARGUMENT**

**I.      The Court Should Vacate the Default.**

Plaintiffs' Opposition fails to show that any of the "good cause" factors under Rule 55(c)—willfulness, prejudice, and meritorious defenses, *Enron*, 10 F.3d at 96—weigh in favor of denying LCB's request to vacate the entry of default. Because LCB more than satisfies the liberal standard for good cause, this Court should grant its Motion and vacate the entry of default.

    **A.      LCB Has Meritorious Defenses to Plaintiffs' Only Remaining Claim.**

LCB has shown that it has multiple meritorious defenses to Plaintiffs' sole remaining claim. "To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage. A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (cleaned up). Defenses are subject to a "low threshold of adequacy for Rule 55 purposes." *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981) (finding that "[t]he denials and defenses in the amended answer" satisfied "[t]he lenient standard of Rule 55(c)"). Under this standard, "a defendant's

- 1 -

allegations are meritorious if they contain even a hint of a suggestion which, if proven at trial, would constitute a complete defense." *Sea Hope Navigation Inc. v. Novel Commodities SA*, 978 F. Supp. 2d 333, 339 (S.D.N.Y. 2013) (cleaned up).

Courts in this Circuit, including the Court of Appeals itself, routinely find that a meritorious defense has been established where—as here—a defaulting party articulates specific defenses that, if proven, will constitute a complete defense. *See, e.g.*, *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 173-74 (2d Cir. 2001) (finding that because claims asserted in appellants' 12(b)(6) motion, "if proven at trial, would constitute a complete defense, appellants have demonstrated a meritorious defense for purposes of vacating the default judgment entered against them"); *Peoples v. Fisher*, 299 F.R.D. 56, 60 (W.D.N.Y. 2014) (meritorious defense established where defendants "articulated specific defenses to Plaintiffs' action by describing several theories by which Plaintiffs' action should be dismissed and identifying various factual inaccuracies contained within the complaint").[1]  Here, LCB referenced in its Motion specific defenses that, if proven, will constitute a complete defense, *see* Mot. [ECF No. 150] at 9-11, which satisfies the low threshold necessary to find a meritorious defense.

LCB went even further in the Motion, noting that its defenses are laid out in more detail in Defendants' Memorandum of Law in Support of Motion to Dismiss the substantially identical factual allegations set forth in *Lelchook v. Lebanese Canadian Bank*, SAL, No. 18-cv-12401-GBD (S.D.N.Y.) [ECF No. 41].  *See* Mot. at 6-7, 11 n.3.  Plaintiffs entirely ignore this point, even though

---

[1] *See also Springs v. Clement*, 202 F.R.D. 387, 395 (E.D.N.Y. 2001) (arguments that the plaintiff lacks standing, that the complaint must be dismissed under Fed. R. Civ. P. 8(a), and that there was no federal question presented constituted meritorious defenses); *Sardarian v. Fed. Emergency Mgmt. Agency*, 2020 WL 1542374, at *6 (D. Conn. Jan. 9, 2020) ("The Court concludes that in filing their motion to dismiss, Defendants have fulfilled the second factor for the Court to set aside the default.  Although they have not established their defenses conclusively, they have 'present[ed] evidence of facts' and legal authorities that may potentially 'constitute a complete defense.'" (alteration in original) (quoting *S.E.C. v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998))); *Coursey v. City of Camden*, 2009 WL 3756936, at *2 (D.N.J. Nov. 6, 2009) (finding a meritorious defense where defaulting party noticed its intent to file a Rule 12(b)(6) motion to dismiss).

the Second Circuit and this Court repeatedly have found that similar references to motions to dismiss establish a meritorious defense. *See, e.g.*, *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (meritorious defense factor satisfied where "the instant action seems to be nothing more than a transparent attempt to repackage the claims asserted in the first action," and "the motion papers submitted to the district judge were sufficient to raise a serious question as to whether the second complaint stated a claim upon which any relief could be granted"); *Puddu v. 6D Glob. Techs., Inc.*, 2020 WL 2833852, at *4-5 (S.D.N.Y. May 31, 2020) (finding that reference to arguments made in Rule 12(b)(6) motion to dismiss satisfied the meritorious defense factor and citing cases); *Brady v. Associated Press Telecom*, 2016 WL 6561411, at *3 (S.D.N.Y. Oct. 4, 2016) (defaulting defendant presented a meritorious defense by contending "that it will make substantially the same arguments in its anticipated motion to dismiss as the defendants who have already made motions to dismiss").

Plaintiffs ignore LCB's clearly delineated defenses, as well as these on-point cases, and instead invoke inapposite cases where—unlike here—the defaulting party entirely failed to articulate any defenses that, if proven, would constitute a complete defense. *See* Opp. at 3-4; *see, e.g.*, *Durso v. Mod. Food Ctr.*, 2019 WL 2150424, at *9-12 (S.D.N.Y. May 17, 2019) (defendants did not contest one defendant's liability and other defendant would be liable under the relevant statutory framework even if the "defenses" it raised proved to be true); *Guangxi Nanning Baiyang Food Co. v. Long River Int'l, Inc.*, 2010 WL 1257573, at *4 (S.D.N.Y. Mar. 30, 2010) (defendant in contract dispute action did not raise any defenses relevant to the shipments at issue, as "[t]here is apparently no meritorious defense to this case"); *Brown v. Gabbidon*, 2007 WL 1423788, at *4 (S.D.N.Y. May 14, 2007) (defendant "discusses only two of the three determinative factors

(willfulness and prejudice), and he *never* mentions the third factor (i.e., a 'meritorious defense'), indeed, because he has no meritorious defense to mention" (footnote omitted)).[2]

In the instant case, on the other hand, in addition to the clear defenses referenced in LCB's Motion, the record is distinctly replete with LCB's demonstrations of its meritorious defenses. This is not a case where the complaint was filed and served but the defendant never appeared in the action. Rather, the pre-default procedural posture of this case is unique, because LCB has continuously and vigorously defended the matter for nearly 14 years. Plaintiffs have twice amended their complaint [ECF Nos. 23, 99], and LCB has filed two motions to dismiss, challenging, among other grounds, the sufficiency of Plaintiffs' allegations [ECF Nos. 34, 105]. In the briefing on both motions, LCB laid out its defenses to Plaintiffs' claims and what it expects to prove against liability, including that LCB has done nothing more than provide routine banking services to two individuals and three private entities included in Plaintiffs' complaint (the "Five Alleged Customers"), none of which was designated as a terrorist or terrorist organization by the U.S. government before or during the relevant time period of this action. Specifically, LCB has asserted:

- "[T]here are no facts alleged that LCB, in providing routine banking services to any of its customers, ever intended to aid Hezbollah in the rocket attacks on Israel." [ECF No. 35] at 14.

- "Nor is there any evidence that LCB had actual knowledge that Shahid was engaged in terrorist activities that would aid Hezbollah in rocket attacks." *Id.*

- "As conceded in the Complaint, at the time of the events in question, the Shahid Foundation was not a designated terrorist organization." *Id.*

---

[2] *See also Mun. Credit Union v. Queens Auto Mall, Inc.*, 2014 WL 6870960, at *2 (E.D.N.Y. Dec. 5, 2014) (defendants challenged only damages but failed to articulate any defenses to liability in trademark infringement action); *Entral Grp. Int'l, LLC v. Melody of Flushing Corp.*, 2007 WL 74317, at *4 (E.D.N.Y. Jan. 8, 2007) (defendants in copyright infringement case submitted with their motion to vacate "a letter from their former counsel to the plaintiff's counsel essentially admitting that some infringing conduct had occurred").

- Not a single one of the articles referenced in the First Amended Complaint "identifies the Shahid Foundation as a front for Hezbollah or states that Shahid Foundation provides financial support for terrorist acts or military operations by Hezbollah." *Id.*

- The First Amended Complaint alleges "no facts showing: (1) any wire transfers by LCB on behalf of Shahid to Hezbollah, (2) with intent by LCB to help Hezbollah in its rocket attacks on Israel or any other terrorist activity." *Id.* at 15.

- "[A] bank's execution of ordinary banking transactions for a customer, such as wire transfers, is insufficient to establish substantial assistance of the terrorist or other murderous acts committed by the customer's transferee." *Id.*

- "[P]laintiffs have clearly failed to allege any facts indicating that LCB acted with the *purpose* of facilitating the rocket attacks by Hezbollah, which was not ever a customer of the bank." *Id.* at 20

- "Nor do Plaintiffs allege that LCB or any of its employees participated in firing [] a rocket" that caused their injuries. [ECF No. 106] at 9.

- None of the Five Alleged Customers is alleged to be the person who committed an act of international terrorism that caused Plaintiffs' injuries. *Id.* at 20.

- None of the Five Alleged Customers "was a U.S.-designated terrorist prior to the conclusion of the Second Lebanon War and none were ever designated to be an FTO or alias of Hezbollah." *Id.* at 20 n.26.

This Court has dismissed Plaintiffs' complaint three times [ECF Nos. 53, 84, and 113]; the Court of Appeals has considered the case four times, *see Kaplan v. Lebanese Canadian Bank, SAL,* 999 F.3d 842, 846 (2d Cir. 2021); and, the Supreme Court has denied Plaintiffs' petition for certiorari, *see Licci v. Lebanese Canadian Bank, SAL*, 138 S. Ct. 1691 (Mem.) (2018). Every level of federal court therefore is fully familiar with LCB's defenses to Plaintiffs' claims, and their decisions in this case have resulted in the dismissal of all but one remaining claim. This is not a case where LCB has not come forward with a meritorious defense. To the contrary, rarely has any litigation contained such a demonstration of meritorious defenses.[3]

---

[3] Plaintiffs' claims are all the more likely to fail given that Plaintiffs lack any first-hand knowledge or evidence to support their factual allegations and instead merely regurgitate unproven third-party allegations. As the Second Circuit found, Plaintiffs' Second Amended Complaint [ECF No. 99] ("SAC") "recount[s] factual assertions made in other documents that it incorporated by reference, including a verified amended complaint filed by the United States in a

And, while the Second Circuit permitted Plaintiffs' aiding-and-abetting claim under JASTA to proceed, it recognized LCB's arguments in defense: "The extent to which there is evidence to support the allegations as to Hizbollah's statements and as to whether LCB knew or should have known of them *is a matter more appropriate for discovery*." *Kaplan*, 999 F.3d at 865 (emphasis added). The Court of Appeals, therefore, remanded this case with the express purpose that evidence be developed in discovery, after ruling only on 12(b)(6)-sufficiency issues. *See id.*; *see also id.* at 864 ("Any further needed specificity can be sought in discovery"). Plaintiffs' arguments for default would turn the mandate upside down, and improperly invert the burden of proof on aiding-and-abetting, by forcing LCB to prove its innocence. *See generally id.* at 859 (referencing the burden Plaintiffs must prove to establish a JASTA aiding-and-abetting claim). The slight delay in these proceedings does not justify using the artifice of default to shift the burden of proof.

### B.     The Default Was Not Willful.

Plaintiffs cannot credibly dispute that there was no willfulness here. Plaintiffs offer no evidence to contest LCB's Declaration demonstrating that LCB *was* monitoring developments in the litigation, and that LCB's initial failure to respond timely was caused solely by LCB's misunderstanding about preservation of the status quo. LCB Decl. [ECF No. 151] ¶ 7; *cf.* Opp. at 5-6. LCB's Declaration speaks for itself, and Plaintiffs have offered nothing to dispute it beyond unsupported assertions about a purported lack of credibility. But, "all doubts must be resolved in

---

civil forfeiture action against LCB in 2011, *United States v. Lebanese Canadian Bank, SAL*, Civ. No. 11-9186 (PAE) (S.D.N.Y.)" ("U.S. Compl."). *Kaplan*, 999 F.3d at 848. Indeed, Plaintiffs have no evidence of their own and simply piggyback on these "other documents," including the U.S. Compl. Specifically, most of the allegations concerning the Five Alleged Customers featured in the SAC and their alleged connections to Hizbollah are parroted from the U.S. Compl. *Compare* SAC ¶¶ 23, 24, *with* U.S. Compl. ¶ 47(a); SAC ¶¶ 37-40, *with* U.S. Compl. ¶ 47(g); SAC ¶¶ 38, 81, *with* U.S. Compl. ¶ 47(g)(3); SAC ¶ 82, *with* U.S. Compl. ¶ 47(g); SAC ¶ 97(a), *with* U.S. Compl. ¶ 47(f); SAC ¶ 97(b), *with* U.S. Compl. ¶ 47(a). Significantly, LCB resolved the allegations in the U.S. Compl. with no admission of wrongdoing. *See* Stipulation and Order of Settlement at 2-3, No. 11-9186 (PAE) [ECF No. 462] (June 25, 2013).

favor of trial on the merits," *Enron*, 10 F.3d at 98, and LCB's Declaration establishes that the default here resulted from LCB's mistaken belief that the status quo could be preserved until new counsel appeared. LCB Decl. ¶ 7. It would be inconsistent with the Second Circuit's Mandate to prevent discovery and litigation of the merits of Plaintiffs' sole remaining claim based solely on LCB's misunderstanding, which Plaintiffs have offered no evidence to dispute. *See Kaplan*, 999 F.3d at 865.

In addition, Plaintiffs do not contest—and therefore concede—LCB's arguments that even if willfulness were present here (which it is not), the balance of factors still warrants vacating default under abundant case law from this District. *See* Mot. at 7-8. Given that there is no prejudice and LCB has meritorious defenses, the balance of factors decidedly warrants vacating default, even if the default were willful, which it is not.[4]

### C. Vacating Default Will Not Prejudice Plaintiffs.

Despite Plaintiffs' meager attempts to argue otherwise (Opp. at 7), they will suffer no prejudice if the entry of default is vacated. This lawsuit has been pending since 2008, and Plaintiffs have had the obligation since that time to preserve their evidence, which presumably they have done to the fullest extent possible in the declarations supporting their Motion for Default Judgment [ECF No. 128-1]. Notably, however, none of that evidence relates to liability. There is no reason either (i) to suspect that the brief delay post-remand affected in any way Plaintiffs' ability (such as it is) to meet their burden of proof on liability, or (ii) to impute to LCB any failure or inability to preserve evidence since 2008. For nearly the entire lifespan of this case, Plaintiffs would have

---

[4] In addition to serving the policy interests of having claims decided on their merits, rather than by default, vacating the entry of default would also avoid the unfairness that would result in the nascent *Lelchook* action if Plaintiffs are permitted to pursue their obvious effort to secure a preclusive effect there. Indeed, Plaintiffs do not deny that they intend to seek precisely that effect should they obtain a default judgment here. *See* Opp. to Mot. to Stay [ECF No. 141] at 7.

been required to "obtain evidence and testimony about events that occurred over 16 years ago" (Opp. at 7), regardless of LCB's default in this lawsuit's most recent chapter.

Moreover, Plaintiffs cannot dispute the clear rule that delay alone cannot establish prejudice. *See* Mot. at 8-9. This is not a circumstance where the defaulting party has delayed for so long that evidence has been lost, as was the case in the only two cases Plaintiffs cite. *See Kovalchik v. City of N.Y.*, 2017 WL 3105873, at *3 (S.D.N.Y. July 21, 2017) ("[Defendant] did not appear in this action until nearly seven years after service of the complaint and eighteen months after the Clerk entered a certificate of default."); *Concord Cap. Mgmt., LLC v. Brecka*, 2013 WL 706170, at *5, *11 (S.D.N.Y. Feb. 27, 2013) (evaluating motion to vacate default judgment under Rule 60(b) rather than the more lenient standard for vacating the entry of a default under Rule 55, where the defendant "made little effort to demonstrate that the plaintiff will not be prejudiced by vacating the default judgment nearly a year after it was entered"). Here, on the other hand, LCB has actively defended this litigation for more than 13 years, and the brief delay following the Second Circuit's Mandate until undersigned counsel appeared for LCB changes nothing and does not prejudice Plaintiffs.

## II. Alternatively, the Court Should Permit LCB to Oppose Plaintiffs' Motion for Default Judgment.

Plaintiffs do not, and cannot, dispute that it "is well established that default judgments are disfavored" in the Second Circuit, and "[a] clear preference exists for cases to be adjudicated on their merits." *Pecarsky*, 249 F.3d at 174 (citing cases). "Therefore, any doubts about the entry of a default judgment are to be resolved in favor of the defendant." *Parilis v. Ne. Grp., Inc.*, 2014 WL 4700245, at *1 (S.D.N.Y. Sept. 12, 2014) ("[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." (alteration in original)

- 8 -

(quoting *Enron*, 10 F.3d at 96)). Yet, Plaintiffs go to great effort to avoid having this Court adjudicate the sole remaining claim in this case on the merits, going so far as to argue that LCB should not even be permitted to oppose the entry of a default judgment against it.

Even if the Court does not set aside the entry of default, Plaintiffs are not entitled to a default judgment as a matter of right. *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice"). "[T]he Second Circuit has an oft-stated preference for resolving disputes on the merits, and therefore [a] plaintiff is not entitled to default judgment as a matter of right, merely because a party has failed to appear or respond." *IdeaVillage Prod. Corp. v. A1559749699-1*, 2022 WL 204214, at *2 (S.D.N.Y. Jan. 24, 2022) (cleaned up). Rather, a district court is empowered under Rule 55(b)(2) to conduct hearings and make referrals to establish the truth of a plaintiff's allegations and to determine whether the plaintiff has a right to recovery. *Id.*; *see also Erwin DeMarino Trucking*, 838 F. Supp. at 162. Thus, if the Court does not set aside the entry of default in this case (which it should do for good cause shown), then it should permit LCB to oppose Plaintiffs' Motion for Entry of Default Judgment [ECF Nos. 127-129].[5]

Finally, Plaintiffs' reliance on the "excusable neglect" standard of Rule 6(b) (Opp. at 10-11)[6] ignores that, "[n]otwithstanding the excusable neglect requirement, 'district courts regularly exercise their discretion to deny technically valid motions for default.'" *Connell v. City of New York*, 230 F. Supp. 2d 432, 437-38 (S.D.N.Y. 2002) (quoting *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 319 (2d Cir. 1986)). "The Second Circuit has stated that 'excusable neglect' is a

---

[5] In requesting leave to oppose Plaintiffs' Motion for Default Judgment, LCB did not, nor was it required to, set forth all of the grounds on which it intends to oppose the entry of a default judgment in this case. Thus, contrary to Plaintiffs' unsupported arguments (Opp. at 10 n.2), by seeking leave to file an opposition, LCB did not waive its ability to contest the damages sought by Plaintiffs' Motion, nor would res judicata apply as Plaintiffs claim (Opp. at 10).

[6] Tellingly, none of the cases Plaintiffs cite in advocating for this standard address motions to vacate the entry of a default, which are governed by the more lenient willfulness standard as set forth above.

somewhat elastic concept that may include . . . delays caused by inadvertence, mistake, or carelessness where the delay was not long, there is no prejudice to the opposing party, and the belated party's excuse has some merit." *Laina v. United Cerebral Palsy of N.Y. City, Inc.*, 2012 WL 28291, at *2 (E.D.N.Y. Jan. 5, 2012) (quoting *LoSacco v. City of Middletown*, 71 F.3d 88, 93 (2d Cir. 1995)) (cleaned up). Here, LCB's brief delay in proceeding following the Second Circuit's mandate was, at most, an inadvertent mistake that caused no prejudice. LCB respectfully requests that the Court "exercise [its] interests of justice discretion . . . by excusing the default and deciding the case on the merits." *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 174 (2d Cir. 2000).

## CONCLUSION

For the reasons set forth above, LCB respectfully requests that the Court vacate the entry of default, or in the alternative, grant LCB leave to oppose Plaintiffs' Motion for Default Judgment.

April 4, 2022

Mitchell R. Berger (MB-4112)
mitchell.berger@squirepb.com
2550 M Street, NW
Washington, DC 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

Respectfully submitted,

**SQUIRE PATTON BOGGS (US) LLP**

*/s/Gassan A. Baloul*

Gassan A. Baloul (GB-4473)
gassan.baloul@squirepb.com
Joseph S. Alonzo (JA-1378)
joseph.alonzo@squirepb.com
1211 Avenue of the Americas, 26th Floor
New York, NY 10036
Telephone: (212) 872-9800
Facsimile: (212) 872-9815

*Attorneys for Defendant Lebanese Canadian Bank, SAL*