*Revised March 2021*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------- X
CHAIM KAPLAN, et al.,                :
                                     : Civil Action No. 08-cv-7253 (GBD)(KHP)
                 Plaintiffs,         :
                                     :
        against                      :
                                     :
LEBANESE CANADIAN BANK, SAL,         :
                                     :
                 Defendant.          :
                                     :
                                     :
                                     :
----------------------------------- X
ESTER LELCHOOK, et al.,              :
                                     : Civil Action No. 18-cv-12401 (GBD)(KHP)
                 Plaintiffs,         :
                                     :
        against                      :
                                     :
LEBANESE CANADIAN BANK, SAL, et al.  :
                                     :
                 Defendants.         :
                                     :
                                     :
                                     :
----------------------------------- X
```

**PROPOSED CASE MANAGEMENT PLAN AND REPORT OF RULE 26(f) MEETING**

**Court Expectations**

**Rule 1 and Rule 26(b)(1).** Counsel are expected to have reviewed Rule 1 and Rule 26(b)(1) and considered their obligations thereunder in discussing and preparing a discovery plan.

**Additional consideration of proportionality.** Counsel shall discuss and consider whether phased or iterative discovery will increase efficiency, reduce costs and lead to a faster resolution of the case when preparing a discovery plan.

**Document Requests.** Counsel shall be fully familiar with their obligations under Rules 34 and 26(g) and consider and discuss ways to ensure compliance and minimize disputes regarding overbreadth and specificity of requests and responses.

**Competence**. Counsel shall be sufficiently knowledgeable in matters relating to their clients' technological systems to discuss competently issues relating to electronic discovery, or have involved someone competent to address these issues on their behalf.

Counsel are directed to the Model Confidentiality Stipulation and Order and Discussion Topics for Rule 26(f) Conference on Judge Parker's Individual Practices Page.

Counsel represent by their signature below that they have read and will comply with the above.

*Revised March 2021*

**Proposed Discovery Plan**

**In accordance with Federal Rule of Civil Procedure 26(f) and Judge Parker's Individual Rules, the parties met on __May 9, 2022__** (at least one week before the Initial Case Management Conference) and have communicated thereafter. At least one week before the Initial Case Management Conference scheduled for June 30, 2022, the parties hereby submit the following report for the Court's consideration:

2.      **Summary of Claims, Defenses, and Relevant Issues**

Plaintiff:

The above-captioned cases are civil actions pursuant to the Antiterrorism Act ("ATA"), 18 U.S.C. § 2331, *et seq.*, which arise from a series of rocket and missile attacks on civilian population centers in Israel carried out by the Hizbollah terrorist organization during July and August 2006.

The plaintiffs in 08-cv-7253 ("*Kaplan*") are American citizens who were injured by or as a result of the Hizbollah attacks. The defendant in *Kaplan* is the Lebanese Canadian Bank, SAL ("LCB"). The plaintiffs in 18-cv-12401 ("*Lelchook*") include the estate and family members of David Martin Lelchook, a U.S. citizen who was murdered in the Hizbollah attacks, and three additional American citizens who were injured by or as a result of the Hizbollah attacks. The defendants in *Lelchook* are LCB and Mohamed Hamdoun ("Hamdoun"), who was LCB's former senior manager, current Liquidator, and major shareholder. The *Kaplan* plaintiffs are also plaintiffs in the *Lelchook* action, where they assert claims against Hamdoun only.

In sum: all of the plaintiffs in *Kaplan* and *Lelchook* (collectively: "Plaintiffs") assert claims against both LCB and Hamdoun.

On June 9, 2021, the Second Circuit held that the Second Amended Complaint ("SAC") in *Kaplan* states a valid ATA claim against LCB for aiding and abetting. *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021). On May 6, 2022, Plaintiffs filed a First Amended Complaint ("FAC") in *Lelchook* (DE 65) bringing it into conformity with the *Kaplan* SAC. Thus, the operative complaints in both actions assert ATA claims for aiding and abetting against LCB – the sufficiency of which has already been determined by the Second Circuit – and the operative complaint in *Lelchook* asserts ATA claims for aiding and abetting against Hamdoun.

LCB filed its Answer in *Kaplan* on May 31, 2022 (DE 167), and both Defendants are scheduled to file a motion to dismiss the FAC in *Lelchook* on July 11, 2022.

Plaintiffs' position is that discovery in both actions should commence immediately, and that there is no basis or justification for a stay of discovery. The attacks at issue took place in 2006, the *Kaplan* plaintiffs (who are the majority of Plaintiffs) filed suit in 2008, and (as detailed in the Second Circuit's June 2021 opinion reinstating their action) they have diligently pursued this case

ever since, overcoming numerous setbacks. After 14 years of motion practice and appeals over LCB's failed efforts to deny Plaintiffs their day in court, the time for discovery is long overdue. *Cf. Winfield v. City of New York*, 2018 WL 1631336, at *4 (S.D.N.Y. Mar. 29, 2018) (Parker, *M.J.*) ("This Court takes Rule 1's dictate seriously. This case, filed in 2015, is not scheduled to end until 2019. While speed is relative, four years is a significant amount of time for a case to be pending.").

Defendants argue herein below that they have viable Fed. R. Civ. P. 12(b) defenses to the FAC in *Lelchook*, and that discovery in both *Kaplan* and *Lelchook* should therefore be stayed pending the resolution of their yet-to-be-filed motion to dismiss the *Lelchook* FAC. This argument should be rejected at the threshold, because discovery from both LCB and Hamdoun is *inevitable*, and will occur irrespective of the disposition of Defendants' motion to dismiss in *Lelchook*:

**\*** In respect to LCB, discovery is inevitable because the Second Circuit has directed that *Kaplan* must proceed. The allegations against LCB in the *Kaplan* SAC and the *Lelchook* FAC are the same, and the discovery in respect to LCB that Plaintiffs require is the same in both actions.

**\*** As for Hamdoun, discovery is inevitable because it is black-letter law that "[u]nder Rule 30(b)(1), a specific officer, director, or managing agent of a corporate party may be compelled to give testimony pursuant to a notice of deposition." *Doubleline Capital LP v. Odebrecht Finance, Ltd*., 2022 WL 2162992, at *2 (S.D.N.Y. May 31, 2022) (cleaned up). Hamdoun is one of LCB's two Liquidators, is thus clearly an "officer, director, [and] managing agent" of LCB, and LCB will therefore be required to produce him for deposition in these actions regardless of whether Plaintiffs' action against Hamdoun personally is ultimately dismissed.[1]

Defendants argue below that if Hamdoun is dismissed as a defendant, Plaintiffs might be unable to depose him as an officer of LCB pursuant to Rule 30(b)(1), because Hamdoun is too high-ranking – *i.e.*, he is a so-called "apex witness." This claim is frivolous. In the first place, the purpose of the "apex witness" doctrine is to prevent "business disruption." *Chevron Corp. v. Danziger*, 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013). But as Defendants admit below, as of 2011 LCB has been "in liquidation and is no longer in operation." Since LCB ceased its operations a decade ago, no "business disruption" is possible, and Hamdoun thus enjoys no status as an "apex" witness.[2]

More importantly, the apex witness doctrine is irrelevant where, as here, the executive has "personal knowledge of relevant facts or some unique knowledge that is relevant to the action." *Id*. (cleaned up). In a February 10, 2011, Finding made by the Treasury's Financial Crimes Enforcement Network ("FinCEN"), the United States Government specifically identified Hamdoun as a central figure in LCB's provision of banking and financial services to Hezbollah,

---

[1] Plaintiffs do not mean to suggest that a Rule 30(b)(1) deposition is their *sole* means of obtaining discovery from Hamdoun if he is dismissed from *Lelchook*.

[2] As part of the acquisition of its assets and liabilities, LCB received a payment in excess of $500,000,000.

and confirmed that Hamdoun (whom the Government identifies by his position that that time –
Deputy General Manger) was "in frequent – in some cases even daily – communication with the
various members of" Hizbollah's money-laundering network, and "personally process[ed]
transactions on the network's behalf." (*Lelchook*, DE 65 at ¶ 119, quoting a February 10, 2011,
Finding made by the Treasury's Financial Crimes Enforcement Network ("FinCEN")).[3]

Clearly then, Hamdoun is a key witness in these cases, who has both "personal knowledge
of relevant facts" and "unique knowledge," because he was *personally* involved in LCB's terror
financing for Hezbollah. Defendants' claim below that other former LCB personnel may have
knowledge that is redundant of Hamdoun's knowledge is meritless, both because those former
employees are located in Lebanon beyond the subpoena power of the Court, and because only
Hamdoun himself can provide *full* testimony about his *own* activities. In any event, the burden
here lies with Defendants not Plaintiffs. *Chevron Corp. id.*

In sum, LCB will be required to produce Hamdoun for deposition under Rule 30(b)(1) even
if he is dismissed as a defendant, and Defendants' claims to the contrary amount to piling
speculation upon speculation in order to further delay this 14 year-old litigation.

It is well established that a pending motion to dismiss is not grounds for a stay of discovery
where, as here, discovery of the party seeking dismissal is inevitable. *See e.g. Sanders v. Sheppard*,
2019 WL 1574952, at *2 (E.D.N.Y. Mar. 11, 2019) (lifting of the stay sought by one defendant
was warranted where discovery was proceeding against the other defendants because the moving
defendant would be required to participate in discovery as a nonparty even if the motion to dismiss
were granted); *Hollins v. U.S. Tennis Ass'n*, 469 F.Supp. 2d 67, 79 (E.D.N.Y. July 10, 2006) ("Even
assuming the moving defendants[] are dismissed, it is likely that the plaintiffs will continue to
conduct discovery regarding these defendants as non-parties. Although the moving defendants
correctly note that non-party discovery involves different mechanisms to ensure compliance, the
absence of a stay would not create an undue burden on the moving defendants. Discovery of the
moving defendants is inevitable regardless of the outcome of their motion to dismiss.").
Defendants argue below that if Hamdoun is dismissed as a defendant Plaintiffs will be unable to
serve him with requests for production or interrogatories, but they do not explain why they believe
that Hamdoun possesses any private (*i.e.*, non-LCB) documents relevant to this action, or why
answering interrogatories is more of a burden to Hamdoun than appearing at a deposition.

Because the inevitability of discovery from both Defendants is sufficient, standing alone,
to dispose of Defendants' request for a stay of discovery, the viability of Defendants' motion to

---

[3] In 2015, FinCEN withdrew this Finding, not because it absolved Hamdoun or LCB of wrongdoing – it did
not – but solely because Lebanese banking authorities had stripped LCB of its license and it had ceased to
conduct banking operations. F.R. Vol. 80, No. 194 (Oct. 7, 2015).

dismiss the *Lelchook* FAC is irrelevant.[4] Nonetheless, Plaintiffs will briefly note that Defendants have no colorable basis to dismiss *Lelchook*. Regarding LCB, Defendants assert in passing below only that the *Lelchook* FAC does not "allege a viable claim against LCB." Since the allegations against LCB in the *Lelchook* FAC are substantively identical to those in the *Kaplan* SAC, the Second Circuit's ruling that the *Kaplan* SAC states a viable claim against LCB is both the law of the Circuit and collaterally estops LCB from challenging the sufficiency of the *Lelchook* FAC.

Regarding Hamdoun, Defendants assert below that the claims against him in *Lelchook* should be dismissed for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). But Hamdoun *did not* challenge personal jurisdiction in his Rule 12(b) motion to dismiss the original *Lelchook* complaint (DE 40-41). Pursuant to Rule 12(g)-(h), Hamdoun thereby waived any personal jurisdiction defense in *Lelchook*, and submitted to the personal jurisdiction of this Court. Defendants argue below that Hamdoun did not waive a personal jurisdiction defense, because the arguments he made in support of his motion to dismiss for failure to state a claim are also relevant to the question of personal jurisdiction. This argument is risible: Hamdoun's motion to dismiss was crystal clear—it sought only "an order dismissing the Complaint against Defendants in its entirety with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6)" (*Lelchook*, DE 40). The motion makes no mention of Rule 12(b)(2) or personal jurisdiction. Likewise, Hamdoun's memorandum in support of his motion neither mentions jurisdiction nor Rule 12(b)(2). (*Id.* DE 41, *passim*). Clearly, Hamdoun waived any personal jurisdiction defense, and his current claim that the arguments made in support of his Rule 12(b)(6) motion could have also supported a Rule 12(b)(2) only serve to highlight the willfulness of his failure to make a Rule 12(b)(2) motion.

Defendants also argue that because the filing of the amended complaint in *Lelchook* supersedes the original complaint, it also revives Hamdoun's waived right to challenge personal jurisdiction. This argument was expressly rejected by the Second Circuit in *Gilmore v. Shearson/Am. Exp. Inc.*, 811 F.2d 108, 112 (2d Cir. 1987), which held that: "Although an amended complaint ordinarily supercedes the original pleading, it does not automatically revive all of the defenses and objections that a defendant has waived in response to the original complaint. For example … district courts in this circuit have determined that the Rule 12 defenses of lack of personal jurisdiction, improper venue, insufficiency of process and insufficiency of service, if waived by defendant's failure to raise those objections in response to the original complaint, may not be resurrected merely because a plaintiff has amended the complaint." (citations omitted). *Cf. Castillo v. Rodas*, 2014 WL 1257274, at *15 (S.D.N.Y. Mar. 25, 2014) ("The Second Circuit has held that defenses involving 'core issue[s] of a party's willingness to submit a dispute to judicial resolution,' are not revived by the filing of an amended complaint … that principle appears to be

---

[4] Defendants also argue below that Plaintiffs "will not be able to establish as a factual matter" in these cases certain purported elements of their claims. Defendants' arguments about what facts Plaintiffs will ultimately be able to establish at trial in these cases obviously constitute grounds *for*, not *against* discovery.

applicable only to the kinds of defenses listed in Federal Rule of Civil Procedure 12(b)(2)-(5), which are subject to stricter waiver rules.") (quoting *Gilmore*) (cleaned up); *Kontokosta v. Vill. of Greenport*, 1988 WL 132834, at *2 (S.D.N.Y. Dec. 2, 1988) (same); 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1384 ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading.").

Thus, Hamdoun has no personal jurisdiction defense.

Defendants also argue below that Hamdoun has a viable Rule 12(b)(6) defense, because Plaintiffs purportedly do not "plausibly allege that Mr. Hamdoun participated in or directly oversaw LCB's allegedly wrongful acts." It is hard to fathom how FinCEN's determination that Hamdoun was personally involved LCB's financing of Hezbollah (which is incorporated into the FAC in *Lelchook*) is not "plausible" for purposes of Rule 12(b)(6). If that formal determination is not "plausible," it is hard to know what would be. Moreover, contrary to Defendants' conclusory claim that the *Lelchook* FAC's allegations against Hamdoun are insufficient, the FAC contains numerous detailed allegations (in addition to the FinCEN determination) supporting the fact that Hamdoun directly oversaw LCB's Hezbollah activities. (*Lelchook*, DE 65 at ¶¶ 57-62; 104; 119). Thus, Hamdoun does not have a serious Rule 12(b)(6) defense. (If Defendants thought he did, they would not be frantically seeking to undo Hamdoun's waiver of any Rule 12(b)(2) defense).

In light of the above, discovery should proceed forthwith in both actions.

Defendants:

These two related actions have a long and complex procedural history, with the *Kaplan* case first filed in 2008 and involving, among other things, removal from state court, four appeals to the Second Circuit, and certification of questions of New York law to the New York Court of Appeals. *See Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 845-53 (2d Cir. 2021). In the two actions, Plaintiffs initially asserted multiple claims against Lebanese Canadian Bank ("LCB"), and, in *Lelchook*, against Mohamad Hamdoun (and another individual defendant, Ahmad Safa, who Plaintiffs did not name as a defendant in their amended complaint), arising out of rocket attacks allegedly perpetrated by Hezbollah during the Israel Lebanon War during the summer of 2006. Plaintiffs allege that LCB (and, in *Lelchook*, Mr. Hamdoun) is responsible for their injuries because LCB provided banking services to individuals and/or entities that Plaintiffs allege are affiliated with Hezbollah. LCB is in liquidation and is no longer in operation, having sold its assets and liabilities to another Lebanese bank, Société Générale de Banque au Liban ("SGBL"), pursuant to a June 22, 2011 Sale and Purchase Agreement.

In *Kaplan*, on September 20, 2019, this Court granted LCB's motion to dismiss Plaintiffs' Second Amended Complaint in its entirety. (ECF No. 113). Plaintiffs then appealed only the dismissal of their Justice Against Sponsors of Terrorism Act ("JASTA") aiding-and-abetting claim pursuant to 18 U.S.C. § 2333(d), and the Second Circuit reversed the dismissal with respect to that claim only. (ECF

No. 121).   Accordingly, Plaintiffs' one remaining claim against LCB is their JASTA aiding-and-abetting claim.

The *Lelchook* case, which was first filed in December 2018, was stayed pursuant to a Stipulation and Order entered April 16, 2019 (ECF No. 32), pending the rulings first of this Court, and then the Second Circuit, on LCB's motion to dismiss in *Kaplan*.   Following the Second Circuit's resolution of that motion (*see Kaplan*, 999 F.3d 842), that stay has been lifted.   LCB and Mr. Hamdoun filed a motion to dismiss on November 29, 2021 (ECF Nos. 40-41), and the other defendant, Ahmad Safa, moved to dismiss on February 22, 2022 (ECF Nos. 55-57).   Plaintiffs then filed a First Amended Complaint on May 6 (ECF No. 65), which now contains only one JASTA aiding-and-abetting claim against LCB, and one JASTA aiding-and-abetting claim against Mr. Hamdoun.   LCB and Mr. Hamdoun are due to respond to the First Amended Complaint in *Lelchook* on or before July 11, 2022.

Plaintiffs provide no sound reason why discovery should not be stayed in these related actions pending resolution of the forthcoming dispositive motions, the outcome of which will affect the scope of discovery.   Most notably, dismissal of Plaintiffs' sole claim against Mr. Hamdoun in *Lelchook* would significantly change the scope of discovery that can be sought from Mr. Hamdoun, including that Plaintiffs would not be allowed to propound interrogatories or document requests to Mr. Hamdoun under Rules 33 and 34.   *See* Fed. R. Civ. P. 33, 34 (allowing service of interrogatories and document requests only "on any other party" to the litigation).   Notably, Plaintiffs do not dispute this.   Further, the impact on the scope of discovery from the disposition of Mr. Hamdoun's dispositive motion is the same regardless of whether that motion is made both under Rules 12(b)(2) and 12(b)(6) or only under Rule 12(b)(6), given that both prongs of Mr. Hamdoun's motion arise from the same question, *i.e.*, whether Mr. Hamdoun participated directly in or oversaw LCB's alleged wrongful actions.

Staying discovery until the Court reaches a decision on Mr. Hamdoun's motion to dismiss will not prejudice Plaintiffs and will help the parties refine the scope of discovery, leading to a more efficient and less costly discovery process across both litigations.   Numerous courts have agreed with this reasoning and rejected the approach suggested by Plaintiffs.   *E.g. Ruilova v. 443 Lexington Ave, Inc.*, No. 19-CV-5205 (AJN), 2020 U.S. Dist. LEXIS 49248, at *2-4 (S.D.N.Y. Mar. 20, 2020) (granting partial stay of discovery as to defendants who had a pending Rule 12(b)(2) motion to dismiss, after finding that "Defendants would clearly be prejudiced" by responding to "broad" discovery if their motion to dismiss were ultimately granted, and "the outcome of the personal jurisdiction issue [was] likely to affect the nature and scope of any conditional certification"); *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, CV 05-4294, 2006 U.S. Dist. LEXIS 94944, at *4-6 (E.D.N.Y. Mar. 31, 2006) (granting motion by two defendants to stay discovery during the pendency of their motion to dismiss, where "Defendants raise[d] substantial issues with regard to the viability of plaintiffs' complaint" and "plaintiffs have failed to demonstrate that a stay of discovery would unfairly prejudice them"); *Moses-El v. City & Cty. of Denver*, Civil Action No. 17-cv-03018-MSK-MJW, 2018 U.S. Dist. LEXIS 243499, at *10-12 (D. Colo. Apr. 18, 2018) (determining that proceeding with discovery against only two of seven defendants was "the most efficient way to proceed" because of the unnecessary

burden that would result if the remaining defendants' pending motion to dismiss was ultimately granted); *Richards v. N. Shore Long Island Jewish Health Sys.*, No. CV 10-4544 (LDW) (ETB), 2011 U.S. Dist. LEXIS 106319, at *7 (E.D.N.Y. Sep. 21, 2011) ("The outcome of the pending motion [to dismiss] may substantially affect the scope of discovery and therefore it is prudent at this time to defer any further discovery pending the outcome of the pending motion to dismiss."); *Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2016 U.S. Dist. LEXIS 91570, at *21-22 (S.D.N.Y. July 14, 2016) (granting partial stay of discovery "relevant only to the plaintiffs' RICO claim until the motion to dismiss is decided").

Moreover, during the short time it will take to resolve Mr. Hamdoun's dispositive motion, there is no reason for Plaintiffs to insist on resolving the question of whether they are entitled to take Mr. Hamdoun's deposition in a corporate-officer capacity. Ultimately, that question will turn on whether information sought from Mr. Hamdoun in that capacity is available by other means and a showing that Mr. Hamdoun has "unique" knowledge of the information. *See, e.g.*, *Hallmark Licensing LLC v. Dickens Inc.*, No. 17-CV-2149 (SJF)(AYS), 2018 U.S. Dist. LEXIS 210662, at *15 (E.D.N.Y. Dec. 13, 2018) (denying motion to compel deposition of high-ranking corporate officer when plaintiff had "not provide[d] a basis for why [the officer] may have <u>unique</u> knowledge" regarding the deposition topics) (emphasis added); *Wertheim Schroder & Co. v. Avon Prods.*, 91 Civ. 2287 (PKL), 1995 U.S. Dist. LEXIS 79, at *12-13 (S.D.N.Y. Jan. 9, 1995) (quashing notices for depositions of corporate executives that would be "duplicative" of testimony offered by corporation's general counsel); *Consolidated Rail Corp. v. Primary Indus. Corp.*, No. 92 Civ. 4927, 1993 U.S. Dist. LEXIS 12600, *2-3 (S.D.N.Y. Sept. 10, 1993) ("[W]here other witnesses have the same knowledge, it may be appropriate to preclude a redundant deposition of a highly-placed executive."); *id.* at *3 (precluding depositions of three named executives "until it has been demonstrated that they have some unique knowledge pertinent to the issues in these cases.").

While the Court need not resolve that deposition issue at this time, that open question counsels in favor of staying discovery pending resolution of Mr. Hamdoun's dispositive motion in *Lelchook*, which will be ripe for decision under the Court-approved schedule in less than four months.

To the extent the Court opts at this time to consider the supposed inevitability of Mr. Hamdoun's deposition in a corporate-officer capacity for LCB, Plaintiffs are incorrect that Mr. Hamdoun's deposition is inevitable. The other former LCB officers and employees identified in Defendants' Initial Disclosures have information that renders Mr. Hamdoun's information hardly "unique". Plaintiffs refer above to their Amended Complaint, which cites a February 2011 Notice of Finding by FinCEN, but that Notice does not demonstrate that Mr. Hamdoun has unique knowledge of alleged events. First, that Notice was later <u>withdrawn</u> by FinCEN, 80 Fed. Reg. 60575-76 (Oct. 7, 2015). Second, the U.S. Government confirmed in a settlement agreement with LCB that it had not asserted any claims against Mr. Hamdoun or other LCB shareholders, board members, or executives, *see* Stipulation and Order of Settlement (ECF 462), *United States of America v. Lebanese Canadian Bank SAL, et al.*, 11 Civ. 9186 (S.D.N.Y.), ¶ 14. Third, the withdrawn FinCEN Notice refers generically, and not by name, to a number

of different individuals, including individuals identified in Defendants' Initial Disclosures.  It in no way indicates that Mr. Hamdoun has unique knowledge.  Fourth, Defendants' Initial Disclosures identify individuals who held various positions at LCB while it was operating as a bank, and these individuals are alternative sources of information.  These individuals include, among others, Gretta Hobeika, LCB's former Assistant General Manager for Treasury and Foreign Relations, and Bachir Al-Nakib, LCB's former Head of Compliance.  These two individuals—unlike Mr. Hamdoun—also served on LCB's Anti-Money Laundering Committee during the relevant period.  Plaintiffs have not proffered any reason that a deposition of Hamdoun <u>as a non-party</u> would be necessary, non-cumulative, or appropriate.

Plaintiffs suggest that there is no harm in subjecting Mr. Hamdoun to a needlessly cumulative deposition because LCB is currently in liquidation, but Plaintiffs ignore the fact that Mr. Hamdoun— unlike other former officers of LCB identified in Defendants' Initial Disclosures—in fact has many ongoing duties as liquidator of LCB, which "include disposing of LCB's assets in a manner designed to maximize the amount available for creditors and prioritizing the budgeting of LCB's expenditures to creditors in a manner that complies with the requirements of the laws of Lebanon."  Declaration of Mohamad Ibrahim Hamdoun and Georges Zard About Jaoude, ¶ 2, *Kaplan*, ECF No. 151.  Furthermore, disruption of an apex witness' business responsibilities is not the only rationale behind the apex doctrine cited by Plaintiffs; another "purpose of the policy [is] to prevent needless harassment," and the doctrine "applies to former executives, too."  *Harapeti v. CBS TV Stations Inc.*, 2021 U.S. Dist. LEXIS 167117, at *6, *9 (S.D.N.Y. Sep. 2, 2021) (finding that plaintiff "[did] not persuasively explain why the apex doctrine should not apply to former executives" and referring to "the overwhelming body of case law" that reflects otherwise before quashing subpoena) (citation omitted); *see also In re Application of Effecten-Spiegel AG*, No. 18mc93 (DLC), 2018 U.S. Dist. LEXIS 135838, at *1, *3-5 (S.D.N.Y. Aug. 10, 2018) (noting that "[c]ourts must be vigilant so that CEOs (and former CEOs) . . . are not subjected to the burdens of discovery without a showing that they are likely to have information useful to the litigation that cannot fairly and with less burden be found elsewhere" before quashing subpoena against former chairman-CEO) (citation omitted);  *Rodriguez v. SLM Corp.*, No. 3:07CV1866 (WWE), 2010 U.S. Dist. LEXIS 29344, at *2, *5-8 (D. Conn. Mar. 26, 2010) (quashing deposition subpoenas against two former executives because plaintiffs had "not sought to question lower level corporate officials with similar knowledge" and explaining that the "standards that govern depositions of corporate executives apply with equal force to former executives.") (citations and internal quotations omitted).

Finally, as his declaration demonstrates (*Kaplan*, ECF No. 151), Mr. Hamdoun as liquidator serves as one of the primary liaisons between LCB and its U.S. counsel.  Accordingly, Mr. Hamdoun engages in privileged communications with LCB's U.S. counsel such that his deposition (as with a deposition of in-house counsel) would "implicate confidential information and significantly intrude upon" the attorney-client privilege, causing the parties to "struggle to delineate between non-privileged facts and privileged communication."  *Fountain v. United States*, 2014 U.S. Dist. LEXIS 141194, at *8-9 (N.D.N.Y. Sep. 30, 2014) (deferring issue of whether to grant deposition) (citations omitted).

Pre-discovery resolution of Mr. Hamdoun's dispositive motion is appropriate because Plaintiffs in the *Lelchook* case do not plausibly allege that Mr. Hamdoun had sufficient contacts with New York to support the exercise of personal jurisdiction over him in *Lelchook*; nor does a finding of personal jurisdiction over LCB automatically extend to Mr. Hamdoun.  Accordingly, the *Lelchook* Plaintiffs' single remaining claim against Mr. Hamdoun should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).  *See In re Terrorist Attacks on Sept. 11, 2001 (O'Neill v. Asat Trust Reg.)*, 714 F.3d 659, 681 (2d Cir. 2013) ("[I]t is well established that individual officers and employees of a corporation are not automatically subject to personal jurisdiction in New York simply because a court can exercise jurisdiction over the corporation.") (citations omitted).

Equally, the *Lelchook* Plaintiffs do not even attempt to allege that Mr. Hamdoun's own acts would suffice to support a JASTA aiding-and-abetting claim, nor do they plausibly allege that Mr. Hamdoun participated in or directly oversaw LCB's allegedly wrongful acts, and therefore the *Lelchook* action should be dismissed as against Mr. Hamdoun pursuant to Fed. R. Civ. P. 12(b)(6). *See, e.g., Trisvan v. Heyman*, 305 F. Supp. 3d 381, 407 n.24 (E.D.N.Y. 2018) ("It is a well-settled principle of New York law that a corporate executive or officer may be held individually liable for torts that were allegedly committed by the executive's company <u>only</u> if the executive <u>participated in or directly oversaw</u> the allegedly tortious conduct.") (citations omitted and emphasis added); *Bano v. Union Carbide Corp.*, 273 F.3d 120, 133 (2d Cir. 2001) ("Under New York law, a corporate officer who <u>commits or participates in a tort</u> . . . may be held individually liable.") (internal quotation and citation omitted, emphasis added). Plaintiffs' conclusory, fact-free allegations that Mr. Hamdoun "set the policy" for LCB's actions, and that he "initiated and authorized" LCB's banking services at issue, are insufficient to plausibly allege that Mr. Hamdoun participated in LCB's provision of banking services to the alleged customers at issue, even if that provision of services were enough to allege a viable claim against LCB (which it is not). Moreover, Plaintiffs have not plausibly alleged that Mr. Hamdoun was aware of any connection between LCB's alleged customers and Hezbollah prior to the attacks at issue, or that the alleged customers were so "closely intertwined" with Hezbollah's "violent terrorist activities" that one can reasonably infer that Mr. Hamdoun (or LCB) was "generally aware of [their] role in unlawful activities from which the attacks were foreseeable" prior to the attacks. *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 501 (2d Cir. 2021). Plaintiffs also have not plausibly alleged that Mr. Hamdoun had "actual knowledge" that he or LCB was providing "substantial" assistance to the primary wrong, *i.e.* the attacks at issue.

Importantly, by citing the withdrawn FinCEN Notice and proceedings in *U.S. v. Lebanese Canadian Bank* (ECF 66, ¶¶ 119-120), Plaintiffs have opened the door to the Court's consideration of those extrinsic factual materials, which demonstrate, *inter alia*, the U.S. government's express confirmation that it did not assert claims against Mr. Hamdoun.  Those extrinsic materials provide a common core of facts that equally support Mr. Hamdoun's Rule 12(b)(2) and Rule 12(b)(6) arguments; they show equally for jurisdictional and legal-sufficiency purposes that Plaintiffs

cannot demonstrate that Mr. Hamdoun was a "primary actor[]" in the events underlying Plaintiffs' claim against LCB.

      In evaluating the legal sufficiency of Plaintiffs' claim against Mr. Hamdoun, the Court may consider extrinsic materials cited in the complaint without converting his Rule 12(b)(6) motion into one for summary judgment. *Dunn v. Comm'r of Soc. Sec.*, 832 F. App'x 62, 63 (2d Cir. 2020) ("[A] district court may consider certain materials on a motion to dismiss, including documents attached to the pleading or incorporated by reference, which are 'deemed part of the pleading.'") (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)); *Roth*, 489 F.3d at 509 ("In addition, even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion.") (quoting *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991)) (emphases included in *Roth*). So, too, for jurisdictional purposes, the Court may consider those same extrinsic materials. *Blige v. City Univ. of N.Y.*, No. 1:15-cv-08873 (GBD) (KHP), 2017 U.S. Dist. LEXIS 8354, at *14 (S.D.N.Y. Jan. 19, 2017) ("[W]here jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists.") (citing *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)), *adopted* 2017 U.S. Dist. LEXIS 40928 (S.D.N.Y. Mar. 21, 2017). Accordingly, the Court can efficiently adjudicate Mr. Hamdoun's Rule 12(b)(2) and 12(b)(6) arguments on a common core of facts before discovery proceeds. Certainly, Plaintiffs are in no position to disparage Mr. Hamdoun's forthcoming dispositive motion, given that Mr. Hamdoun's motion to dismiss Plaintiffs' original Complaint (ECF 41) prompted Plaintiffs to amend their Complaint to avoid dismissal, and taking nearly five months to do so.

      Plaintiffs' assertion that Mr. Hamdoun has waived his personal-jurisdiction defense is meritless. In his motion to dismiss the original *Lelchook* complaint, Mr. Hamdoun objected to the complaint's failure adequately to plead Mr. Hamdoun's knowledge of, and participation in, LCB's alleged conduct. ECF No. 41, at 3 ("Plaintiffs' aiding-and-abetting claim against Hamdoun also fails because Plaintiffs do not plausibly allege that Hamdoun himself participated in or directly oversaw LCB's allegedly wrongful conduct."); *id.* at 6 ("Nor do Plaintiffs allege that . . . Hamdoun . . . participated in, or had advance knowledge of, any of the Rocket Attacks."); *id.* at 17-18 ("Plaintiffs have failed to plausibly allege facts showing that Hamdoun participated in or directly oversaw LCB's allegedly wrongful acts."); *id.* at 18 (Plaintiffs' allegations are "insufficient to impute LCB's acts to Hamdoun, . . . requiring dismissal of Plaintiffs' claim against Hamdoun."). The factual basis for this objection is equally a part of his personal-jurisdiction defense. *See, e.g.*, *Shostack v. Diller*, No. 15-CV-2255 (GBD) (JLC), 2015 U.S. Dist. LEXIS 123777, at *11-12 (S.D.N.Y. Sep. 16, 2015) (finding no jurisdiction over corporate officers because plaintiff had not "demonstrate[d] that the corporate officers were primary actors in the transaction . . . that gave rise to the litigation") (cleaned up).

Moreover, courts "consider all of the relevant circumstances" "[i]n determining whether waiver or forfeiture of objections to personal jurisdiction has occurred." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133-34 (2d Cir. 2011) (internal quotation omitted). Here, Mr. Hamdoun has a valid personal jurisdiction defense, which is not waived, because "it is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect[,]" *Lundstedt v. JP Morgan Chase Bank, N.A.*, 853 F. App'x 704, 706-07 (2d Cir. 2021). *See also Medidata Sols., Inc. v. Veeva Sys.*, 748 F. App'x 363, 365 (2d Cir. 2018) ("It is hardly a novel proposition that an amended complaint ordinarily supersedes the original and renders it of no legal effect.") (internal quotation and citation omitted); *In re September*, No. 03-MD-01570, 2022 U.S. Dist. LEXIS 81216, at *110 (S.D.N.Y. May 2, 2022) (finding that amendment of complaints on which two defendants had defaulted "mooted those defaults."); *id.* at 108 ("courts in this Circuit consistently find that when an amended complaint becomes operative entries of default predicated on the original complaint are mooted."); *Bank v. Verde Energy USA, Inc.*, No. 20-4276, 2021 U.S. App. LEXIS 27086, at *4-5 (2d Cir. Sept. 9, 2021) (affirming holding that plaintiff's notice of dismissal regarding an allegation and claim in original complaint had no legal effect "because the original complaint had already been superseded by his amended complaint.") (internal quotation and citation omitted).

Plaintiffs' reference to *Gilmore v. Shearson/American Express, Inc*. is inapposite, because in *Gilmore*, the court objected to gamesmanship by the *Gilmore* defendant, pointing out that the defendant had "explicitly withdr[awn] [its] motion" to compel arbitration, and refusing to allow the defendant to "play fast and loose with the courts," "freely take inconsistent positions," and "simply ignore the effect of a prior filed document." 811 F.2d at 110, 112-13 (internal quotations omitted). Such concerns do not apply here, where Mr. Hamdoun has consistently argued that the allegations by Plaintiffs that would equally give rise to both liability and personal jurisdiction are inadequate. *See also In re Kingate Mgmt. Ltd. Litig.*, No. 09-CV-5386 (DAB), 2016 U.S. Dist. LEXIS 129882, at *110 (S.D.N.Y. Sep. 21, 2016) (finding that a defendant had "<u>not technically waived [its] personal jurisdiction defense</u>" when first raising it in response to the plaintiffs' second amended complaint, but finding waiver because the defendant first raised the defense after "several years and engag[ing] in substantial pretrial proceedings") (emphasis added, citation omitted). The parties in *Lelchook* have only "engaged in preliminary pretrial litigation," and Mr. Hamdoun has not attempted to "test the waters" prior to objecting to lack of jurisdiction. *Lishman v. Air & Liquid Sys. Corp.*, No. 21-cv-001570, 2022 U.S. Dist. LEXIS 66120, at *10-11 (N.D. Ill. Apr. 11, 2022). As a result, any "delay in asserting the defense is therefore excusable," *id.* at *7, *9-11, as Plaintiffs "ha[ve] not indicated that [they] ha[ve] been prejudiced in any way, *Degraziano v. Verizon Communs., Inc.*, 325 F. Supp. 2d 238, 244 (E.D.N.Y. 2004) (rejecting plaintiff's argument under *Gilmore* that defendant's conduct amounted to a waiver and noting that "the parties did not engage in meaningful litigation").

Plaintiffs will not be prejudiced by having to respond to the personal jurisdiction argument in Mr. Hamdoun's motion to dismiss, which will be based on substantively the same legal standard that governs Mr. Hamdoun's Rule 12(b)(6) arguments. Further, Plaintiffs themselves prolonged the dispositive-motions phase of the *Lelchook* litigation by seeking and obtaining Defendants' consent to a belated decision to amend their original complaint after Mr. Hamdoun moved to dismiss the original Complaint on November 29, 2021, and obtaining an extension until May 6, 2022 to file their First Amended Complaint. *See Lelchook* ECF 59. With Mr. Hamdoun's dispositive motion due on July 11, 2022 (and Plaintiffs' response and Defendants' reply due 60 and 30 days thereafter, respectively), Mr. Hamdoun's dispositive-motion arguments will be ripe for decision in far less time than Plaintiffs already have obtained to amend their original Complaint.

Finally, plenary discovery pending resolution of Mr. Hamdoun's and LCB's forthcoming dispositive motions would go beyond the narrow remaining claim in both of these lawsuits. In both *Kaplan* and *Lelchook*, Plaintiffs will not be able to establish, as a factual matter, that LCB or Mr. Hamdoun were aware of LCB's customers' alleged connections with Hezbollah prior to the relevant attacks, or that LCB's customers were so "closely intertwined" with Hezbollah's "violent terrorist activities" that one can reasonably infer LCB or Mr. Hamdoun were "generally aware of its role in unlawful activities from which the attacks were foreseeable" at the time LCB allegedly provided financial services to the customers. *Honickman*, 6 F.4th at 501 (citing *Kaplan*, 999 F.3d at 860); *see also Weiss v. Nat'l Westminster Bank*, 993 F.3d 144, 166-67 (2d Cir. 2021) (no JASTA aiding-and-abetting claim where record was insufficient to show that the bank had been knowingly providing substantial assistance to the designated terrorist organization Hamas, or that the bank was generally aware that it was playing a role in Hamas' acts of terrorism).

Plaintiffs also will not be able to establish as a factual matter that LCB or Mr. Hamdoun had "actual knowledge" that LCB was providing "substantial" assistance to the primary wrong, *i.e.* the relevant attacks. As the Second Circuit made clear in remanding this matter to this Court, the "knowingly" component of "substantial assistance" for a JASTA aiding-and-abetting claim requires "actual knowledge." *Kaplan*, 999 F.3d at 863-64. "That knowledge component 'is designed to avoid' imposing liability on 'innocent, incidental participants.'" *Id.* at 864 (citation omitted).

3.      **Basis of Subject Matter Jurisdiction:**

This Court has original subject-matter jurisdiction over the Plaintiffs' claims pursuant to the ATA, 18 U.S.C. § 2331, *et seq.*

4.      **Subjects on Which Discovery May Be Needed**

Plaintiffs:

LCB's Answer in *Kaplan* and Defendants' statements herein show that the Defendants are disputing any and all of the factual elements necessary to establish Plaintiffs' claims. (Indeed, Defendants indicate below that they will dispute even whether Hezbollah fired the rockets). Since Defendants intend to put Plaintiffs to their proof regarding each and every element of their claims, Plaintiffs require discovery to the full extent allowed by Rule 26(b)(1), i.e., regarding all matters relevant to their claims.

Defendants have admitted, below herein and in a telephone conference between counsel, that they transferred their "former client documentation (including account-opening documentation and transactional records)" to third-parties in Lebanon during the course of this litigation, and that those records are no longer within the Defendants' possession, custody, or control. Defendants' counsel explicitly informed Plaintiffs' counsel during their conference (that Defendants cannot access those records without permission from the current custodians. Defendants now claim below that one of those custodians, "is required to grant access thereto under conditions necessary to guarantee the security and integrity of the records." It remains to be seen whether that custodian is indeed "required" to grant such access, whether it will grant such access, and whether the purported prerequisite to access cited by Defendants – "conditions necessary to guarantee the security and integrity of the records" – will be invoked to ultimately deny access to the records. In any event, those client records are obviously central to Plaintiffs' claims, and their transfer by Defendants to third-parties during the course of this litigation clearly constitutes spoliation. Plaintiffs will therefore require discovery regarding Defendants' spoliation of these documents, in order to establish a factual record for imposition of appropriate spoliation sanctions.

<u>Defendants:</u>

Discovery will be needed from Plaintiffs concerning at least the following matters:

- the nature and extent of Plaintiffs' alleged injuries;
- any evidence Plaintiffs assert supports the attribution of the alleged attacks to Hezbollah;
- any evidence Plaintiffs assert supports their allegation that, prior to the relevant attacks, LCB was "generally aware of its role in unlawful activities from which the attacks were foreseeable," as required for a JASTA aiding-and-abetting claim;
- any evidence Plaintiffs assert supports their allegation that, prior to the relevant attacks, LCB had "actual knowledge" that it was providing "substantial" assistance to the primary wrong, *i.e.* the relevant attacks, as required for a JASTA aiding-and-abetting claim.

Because LCB is a bank in liquidation, former client documentation (including account opening documentation and transactional records) are in the custody of:

Custodian and Clearing Center of Financial Instruments for Lebanon and the Middle East (MIDCLEAR) SAL[5]
ARESCO Center, Justinien Street, Sanayeh
Beirut, Lebanon
PO Box 11-7971
+961 1 759200

Additionally, pursuant to the Sale and Purchase Agreement dated June 22, 2011 between LCB and SGBL, LCB's former client documentation and transactional records within the scope of the Sale and Purchase Agreement were transferred to the custody of:

Société Générale de Banque au Liban SAL
Riad El Solh Street
Beirut, Lebanon
+961 3 477 777

In addition to the above, LCB in liquidation retains other business records, including internal and administrative memoranda relating to: LCB operations and corporate governance; delegation of authority and responsibility; general anti-money laundering and compliance training programs, efforts, and directives; and board and committee meeting minutes.

In light of the above, there has been no spoliation of records, because there has been no destruction, alteration, or failure to preserve evidence, and there is thus no spoliation issue for the Court to address. *See Treppel v. Biovail Corp.*, 249 F.R.D. 111, 120 (S.D.N.Y. 2008) ("Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence . . . .") (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)) (emphasis added); *Quinby v. WestLB AG*, 2005 U.S. Dist. LEXIS 35583, at *27 n.10 (S.D.N.Y. Dec. 15, 2005) (noting that the "general proposition that a defendant has a duty to preserve evidence . . . do[es] not state that the evidence must be kept in a particular form" and "declin[ing] to sanction defendant for converting data from an accessible to inaccessible format, even if they should have anticipated litigation[,] [because] plaintiff offer[ed] no evidence of the loss of e-mails."). LCB intends to request access to relevant records from MIDCLEAR. Any speculation by Plaintiffs that LCB will be unable to obtain such access is entirely baseless and premature.

**5.    Informal Disclosures**

---

[5] Plaintiffs misunderstand the relationship between LCB and the records' custodian. As custodian of the records, MIDCLEAR is required to grant access thereto under conditions necessary to guarantee the security and integrity of the records.

The information required by Rule 26(a)(1) of the Federal Rules of Civil Procedure was ***disclosed by Plaintiffs*** on May 25, 2022. In addition, on May 25, 2022, Plaintiffs produced an initial set of relevant documents identified in its Initial Disclosures and will continue to supplement its production.

The information required by Rule 26(a)(1) of the Federal Rules of Civil Procedure was ***disclosed by Defendant(s)*** on **May 25, 2022**.

**6.     Formal Discovery**

Plaintiffs Position:

Plaintiffs propose that fact (i.e., non-expert) discovery commence immediately on 6/30/2022, and be completed in 24 months. A schedule of this length is necessary and appropriate given the following circumstances, which are likely to render the discovery process here slower than in a typical case: (1) defendants have informed Plaintiffs that they intend to invoke foreign bank secrecy protections in respect to some or all of LCB's records; (2) LCB's customer records have been transferred to third-parties some or all of which may be uncooperative and/or claim to be beyond the Court's subpoena power; (3) Plaintiffs intend to request that the Court issue one or more requests for assistance obtaining evidence abroad pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, or letters rogatory; and (4) many of the documents to be produced are in foreign languages and will need to be translated.

Plaintiffs propose that expert discovery conclude 6 months after the close of fact discovery, with expert reports due 60 days after the close of fact discovery.

Plaintiffs propose that non-party depositions and party depositions take place **in whatever order the noticing party elects. Plaintiffs strongly oppose any requirement that non-party depositions must follow initial party depositions**. Plaintiffs believe that third-party discovery will be particularly important in this case, both because Defendants intend to invoke purported foreign bank secrecy restrictions, and because Defendants have transferred LCB's records to third-parties. Accordingly, Plaintiffs seek to proceed with non-party discovery, including depositions, in the order they find most expeditious and logical. Plaintiffs believe that there are non-parties who are *not* subject to foreign bank secrecy restrictions, from which it may be possible to obtain testimony and evidence. Furthermore, Plaintiffs may, very reasonably, elect to depose the Defendants only *after* receiving testimony and evidence from non-parties.

However, contrary to Defendants' misstatement of their position below, Plaintiffs do ***not*** "acknowledge above that they prefer to start with third-party discovery." Plaintiffs' position is that

party and non-party discovery, including depositions, take place in whatever order the party seeking discovery elects. Plaintiffs therefore oppose Defendants' proposal below that "discovery be staged with non-party fact discovery occurring first."

Plaintiffs propose that, absent leave of Court granted upon a showing of good cause, depositions be limited to no more than <u>10</u> depositions per party (excluding expert depositions).

Plaintiffs propose that interrogatories, document requests and requests for admission be served at any time following the commencement of discovery on 6/30/2022, but no later than 30 days prior to the fact discovery deadline.

Plaintiffs propose that parties the deadlines for responding to discovery requests be those provided by the Federal Rules of Civil Procedure and the Local Rules of this Court. Plaintiffs oppose Defendants' demand for 45 days to respond to document requests.

<u>Defendants' Position:</u>

Defendants propose to the Court the following discovery plan:

> All fact discovery must be completed within <u>24 months of the</u> <u>Court's decision on Mohamad Hamdoun's forthcoming motion to</u> <u>dismiss in the related *Lelchook* action, 18-cv-12401 (the "*Lelchook*</u> <u>Dismissal Decision").</u>

Defendants anticipate that Mr. Hamdoun's motion to dismiss the *Lelchook* action will be for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), for the reasons summarized above in the "Summary of Claims, Defenses, and Relevant Issues" section, and which will be set forth more fully in Mr. Hamdoun's forthcoming motion.

Regarding the bank-secrecy issue mentioned above, Lebanese bank secrecy law generally prohibits Lebanese banks and bank managers and employees from disclosing to third-parties any confidential information relating to the bank's clients, including clients' names, accounts, assets, or banking activities, absent the client's written consent (or another exception provided by the law). However, the question of Lebanese bank secrecy and how it will relate to discovery in this case is not yet ripe for consideration, because it requires an assessment of, among other things, "the importance to the . . . litigation of the documents or other information requested;" "the degree of specificity of the" information requested; and "the availability of alternative means of securing the information" before bank secrecy is invoked or can be challenged. *See Linde v. Arab Bank, PLC*, 706 F.3d 92 (2d Cir. 2013) (quoting Restatement (Third) of Foreign Relations Law of the United States (1987) § 442(1)(c)). These factors may only be considered in the context of Plaintiffs' discovery requests. Moreover, while Defendants are required to assert bank-secrecy protections regarding the discovery of customer data, it is too early to tell whether the issue will even require resolution by the Court. The parties may be able to pretermit it entirely by obtaining the permission of the Lebanese authorities to produce confidential information, or by obtaining waivers from the relevant alleged account-holders, allowing their records to be produced without

issue.  Accordingly, while LCB does not waive bank secrecy, the issue of bank secrecy is not yet ripe for this Court's analysis.

As noted above, Plaintiffs misunderstand the nature of the agreement between LCB and MIDCLEAR.  Plaintiffs' assertion that MIDCLEAR "may be uncooperative" is baseless speculation.

Plaintiffs acknowledge above that they prefer to start with third-party discovery, and indeed, that Plaintiffs "believe that third-party discovery will be particularly important in this case."  Contrary to Plaintiffs' assertion, Defendants do not oppose any proposal to begin with third-party discovery before proceeding to party discovery.  Given the parties' agreement in this regard, while discovery should be stayed in its entirety pending Mr. Hamdoun's forthcoming motion to dismiss, should the Court determine such a stay is inappropriate, the Court nonetheless should order that discovery be staged with non-party fact discovery occurring first, and discovery from Mr. Hamdoun (should he remain a party) occurring only after resolution of his motion to dismiss.

***The parties are to conduct discovery in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of New York. The following interim deadlines may be extended by the parties on consent without application to the Court, provided that the parties meet the deadline for completing fact discovery set forth in 3(a) above.***

**<u>Plaintiffs' Position</u>**

       a.    <u>Depositions</u>: Non-expert depositions shall be completed by <u>24 months from June 30, 2022, and (</u>absent leave of Court granted upon a showing of good cause) depositions shall be limited to no more than 10 depositions per party (excluding expert depositions). Non-party depositions and party depositions may take place in whatever order the noticing party elects.

       b.    <u>Interrogatories</u>: Interrogatories may be served at any time on or after June 30, 2022, but no later than 30 days prior to the discovery deadline.

       c.    <u>Requests for Admission</u>: Requests for admission may be served at any time on or after June 30, 2022, but no later than 30 days prior to the discovery deadline.

       d.    <u>Requests for Production</u>: Requests for production may be served at any time on or after June 30, 2022, but no later than 30 days prior to the discovery deadline.

       e.    <u>Supplementation</u>: Supplementations under Rule 26(e) must be made within a reasonable period of time after discovery of such information.

**Defendants' Position**

      a.      <u>Depositions</u>: Depositions shall be completed by <u>24 months following the *Lelchook* Dismissal Decision</u> and limited to no more than <u>10</u> depositions per party.

      b.      <u>Interrogatories</u>: Initial sets of interrogatories shall be served on or before <u>45 days following the *Lelchook* Dismissal Decision</u>. All subsequent interrogatories must be served no later than 30 days prior to the discovery deadline.

      c.      <u>Requests for Admission</u>: Requests for admission must be served <u>no later than 30 days prior to the discovery deadline</u>.

      d.      <u>Requests for Production</u>: Initial requests for production were/will be exchanged <u>no later than 30 days following the *Lelchook* Dismissal Decision</u> and responses shall be due <u>within 45 days after the requests are served</u>. All subsequent requests for production must be served no later than 30 days prior to the discovery deadline.

      e.      <u>Supplementation</u>: Supplementations under Rule 26(e) must be made within a reasonable period of time after discovery of such information.

**7.**      **Anticipated Discovery Disputes**

      Are there any anticipated discovery disputes? Does either party seek limitations on discovery? Describe.

      The parties disagree on LCB's proposal to stay discovery pending the *Lelchook* Dismissal Decision.

**8.**      **Amendments to Pleadings**

      a.      Are there any amendments to pleadings anticipated? **Not at this time**.

      b.      Last date to amend the Complaint: **N/A**

**9.**      **Joinder of Parties**

      a.      Are there other necessary parties that need to be joined? Y/<u>**N**</u>

      b.      Is joinder of other parties anticipated? No.

      c.      Last date to join other parties: _____

10.  **Expert Witness Disclosures**

At this time, the parties **do** anticipate utilizing experts. Expert discovery shall be completed by <u>six months after the close of fact discovery,</u> with expert reports due 60 days after the close of fact discovery.

11.  **Electronic Discovery and Preservation of Documents and Information**

    a.  Have the parties discussed electronic discovery? <u>The parties briefly discussed electronic discovery during the initial Rule 26(f) conference.</u>

    b.  Is there an electronic discovery protocol in place? If not, when the

parties expect to have one in place? <u>The parties are considering the Court's standard ESI protocol.</u>

    c.  Are there issues the parties would like to address concerning preservation of evidence and/or electronic discovery at the Initial Case Management Conference?

12.  **Anticipated Motions**

    As explained above, LCB seeks a stay of discovery in both *Kaplan* and *Lelchook* pending the Court's resolution of Mr. Hamdoun's forthcoming motion to dismiss the *Lelchook* action, as LCB anticipates that the outcome of that motion will impact the scope and proportionality of discovery across the two related actions.

    As explained above, Plaintiffs oppose a stay of discovery.

13.  **Early Settlement or Resolution**

The parties **have not** discussed the possibility of settlement. The parties request a settlement conference by no later than _____.

    The following information is needed before settlement can be discussed:

  14.  **Trial**

    It is the parties' position that it is too early to reasonably estimate the date by which these litigations will be ready for trial, or how many trial days will be required.  With respect to question 14(c), Plaintiffs' have requested a jury trial.

        a.  The parties anticipate that this case will be ready for trial by _____.

21

b.  The parties anticipate that the trial of this case will require _____ days.

c.  The parties request a jury/bench (circle one) trial.

d.  The parties **do not** consent (circle one) to Magistrate Judge jurisdiction at this time.

15.  **Other Matters**

**The parties are advised that they may consent to Magistrate Judge jurisdiction at any time during the case pursuant to 28 USC § 636(c). To consent to Magistrate Judge jurisdiction for all purposes or specific dispositive motions, please utilize the consent form on Judge Parker's Individual Practices Webpage.**

Respectfully submitted this 23rd day of June, 2022.

ATTORNEYS FOR PLAINTIFF(S):            ATTORNEYS FOR DEFENDANT(S):

**THE BERKMAN LAW OFFICE, LLC**      **SQUIRE PATTON BOGGS (US) LLP**

*/s/ Robert J. Tolchin*                 */s/ Gassan A. Baloul*
Robert J. Tolchin                       Gassan A. Baloul (GB-4473)
111 Livingston Street, Suite 1928       gassan.baloul@squirepb.com
Brooklyn, New York 11201                Mitchell R. Berger (MB-4112)
718-855-3627                            mitchell.berger@squirepb.com
                                        2550 M Street, NW
*Attorneys for Plaintiffs*              Washington, DC 20037
                                        Telephone: (202) 457-6000
                                        Facsimile:  (202) 457-6315

                                        *Attorneys for Defendants Lebanese Canadian*
                                        *Bank SAL and Mohamad Hamdoun*