UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAPLAN et al., <br><br> *Plaintiffs*, <br><br> against <br><br> LEBANESE CANADIAN BANK, SAL, <br><br> *Defendants*. | Case No. 08-cv-07253 (GBD)(KHP) |
| LELCHOOK, et al., <br><br> *Plaintiffs,* <br><br> against <br><br> LEBANESE CANADIAN BANK, SAL, et al., <br><br> *Defendants.* | Case No. 18-cv-12401 (GBD)(KHP) |

**MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY
COVINGTON & BURLING LLP'S MOTION TO QUASH SUBPOENA**

> Mark P. Gimbel
> COVINGTON & BURLING LLP
> The New York Times Building
> 620 Eighth Avenue
> New York, NY 10018-1405
> (212) 841-1000
>
> Christian J. Pistilli
> Andrew E. Siegel
> COVINGTON & BURLING LLP
> One City Center
> 850 Tenth Street, N.W.
> Washington, D.C. 20001
> (202) 662-6000
>
> *Attorneys for Non-Party*
> *Covington & Burling LLP*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ........................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND................................................................... 2

    A.    Nest ....................................................................................................................... 2

        1.    Background ............................................................................................... 2

        2.    Investment in Lebanese Canadian Bank ................................................... 2

    B.    Legal Proceedings and Representations............................................................... 4

        1.    Nest U.S. Action ....................................................................................... 4

        2.    DIFC Action............................................................................................. 5

        3.    Advocacy Before U.S. Executive Branch Authorities ............................. 5

    C.    Procedural History ................................................................................................ 6

        1.    Plaintiffs' Actions ..................................................................................... 6

        2.    Plaintiffs' Subpoena ................................................................................. 6

ARGUMENT ................................................................................................................................. 7

I.    PLAINTIFFS ARE NOT ENTITLED TO OBTAIN LCB BUSINESS RECORDS FROM COVINGTON. .......................................................................................................... 9

    A.    The Court Should Quash Plaintiffs' Subpoena Seeking Extraterritorial Documents That Are Present in the United States Only As a Result of Nest's Request for Legal Advice. ............................................................................ 9

    B.    Plaintiffs Seek Information That Can Be Obtained from Parties to the Litigation........................................................................................................... 11

II.    THE SUBPOENA IS OVERBROAD, UNDULY BURDENSOME AND SEEKS IRRELEVANT MATERIALS............................................................................................... 12

CONCLUSION ........................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                         **Page(s)**

*Application of Sarrio, S.A.*,
    119 F.3d 143 (2d Cir. 1997)................................................................................................10

*In re Blackstone Partners, L.P.*,
    2005 WL 1560505 (S.D.N.Y. July 1, 2005) ........................................................................12

*Burns v. Bank of Am.*,
    2007 WL 1589437 (S.D.N.Y. June 4, 2007) .......................................................................12

*Cohen v. City of New York*,
    255 F.R.D. 110 (S.D.N.Y. 2008) .........................................................................................14

*Est. of Ungar v. Palestinian Auth.*,
    332 F. App'x 643 (2d Cir. 2009) ..........................................................................................15

*Est. of Ungar v. Palestinian Auth.*,
    400 F. Supp. 2d 541 (S.D.N.Y. 2005)....................................................................................8

*Fears v. Wilhelmina Model Agency, Inc.*,
    2004 WL 719185 (S.D.N.Y. Apr. 1, 2004)............................................................................8

*Fisher v. United States*,
    425 U.S. 391 (1976)..........................................................................................................9, 10

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
    895 F.3d 238 (2d Cir. 2018).................................................................................................10

*Koch v. Pechota*,
    2012 WL 4876784 (S.D.N.Y. Oct. 12, 2012)......................................................................13

*Lynch v. City of New York*,
    2021 WL 4652305 (S.D.N.Y. Oct. 5, 2021)........................................................................11

*McCullough v. City of Montgomery*,
    2019 WL 10960445 (M.D. Ala. Dec. 6, 2019) ....................................................................13

*Menashe v. Covington & Burling LLP*,
    552 F. Supp. 3d 35 (D.D.C. 2021).......................................................................................15

*Moon v. SCP Pool Corp.*,
    232 F.R.D. 633 (C.D. Cal. 2005).........................................................................................12

*Nidec Corp. v. Victor Co. of Japan*,
    249 F.R.D. 575 (N.D. Cal. 2007).........................................................................................11

*Night Hawk Ltd. v. Briarpatch Ltd., L.P.*,
   2003 WL 23018833 (S.D.N.Y. Dec. 23, 2003) ............................................................... 8, 13

*Ratliff v. David Polk & Wardwell*,
   354 F.3d 165 (2d Cir. 2003) .................................................................................................. 10

*In re Refco Sec. Litig.*,
   759 F. Supp. 2d 342 (S.D.N.Y. 2011) ................................................................................... 11

*UMB Bank, N.A. v. Sanofi*,
   2017 WL 6398628 (S.D.N.Y. Nov. 22, 2017) ....................................................................... 14

*United States v. White*,
   280 F. App'x 317 (4th Cir. 2008) .......................................................................................... 13

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981) ................................................................................................................ 9

## Other Authorities

Federal Rule of Civil Procedure 45 ............................................................................. 6, 7, 8, 10, 11

Federal Rule of Civil Procedure 26 ........................................................................................... 11

Non-party Covington & Burling LLP ("Covington") respectfully submits this Memorandum of Law in Support of its Motion to Quash Subpoena.

## INTRODUCTION

Plaintiffs have brought these two lawsuits—*Kaplan v. Lebanese Canadian Bank, SAL*, Case No. 08-cv-7253, and *Lelchook v. Lebanese Canadian Bank, SAL*, Case No. 18-cv-12401 (the "LCB Actions")— against Lebanese Canadian Bank ("LCB") and (in one case) LCB's former senior manager and major shareholder, Mohamed Hamdoun, alleging that LCB was complicit in terror attacks that injured Plaintiffs. Plaintiffs allege that Defendants aided and abetted Hezbollah, which carried out the attacks. Yet, rather than obtaining discovery about Defendants from Defendants, Plaintiffs seek to have a law firm, Covington, produce the files of its foreign client, Nest, for use in litigation that involves neither Covington nor Nest. The Court should quash the Subpoena because it seeks materials that (1) were created and maintained outside the United States, and transmitted to Covington in connection with Nest's request for legal advice; (2) belong to and should be sought from parties themselves; and (3) are of only minimal relevance. It would be highly burdensome for Covington to produce any materials, especially in light of Covington's obligation to protect the privileges and confidences of its clients.

Requiring a law firm to produce copies of documents that are in the United States only due to a client's request for legal advice would subvert the purposes of third-party subpoenas and chill the ability of foreign clients to consult U.S. attorneys for legal advice.

The majority of the non-public documents sought cannot be produced because they are protected by the attorney-client privilege and work product doctrine. Other documents in Covington's possession are either in the public domain or of only marginal relevance to these actions. Covington did not receive any documents from LCB in its representation of Nest.

-1-

The request is also unduly burdensome. Here, the vast majority of the non-privileged, non-public materials sought by the Subpoena—such as communications between Covington and U.S. government personnel relating to LCB—would be of no real utility in the LCB Actions. By contrast, the burden to Covington of sorting through its client files to ensure that it does not produce privileged or otherwise protected client materials would be enormous. For this additional reason, Plaintiffs' highly intrusive attempt to obtain discovery from non-U.S. persons and entities by issuing discovery requests to their U.S.-based lawyers should be denied.

### FACTUAL AND PROCEDURAL BACKGROUND

**A.  Nest**

　　1.  Background

Ghazi Abu Nahl ("Abu Nahl") is a Jordanian businessman living in the Republic of Cyprus. Born in Barbera, Palestine, Abu Nahl built his business interests, primarily in the insurance and reinsurance industries, in the Middle East and North Africa region. Abu Nahl is the majority owner of both Nest Investments (Holdings) Ltd ("Nest Holdings") and Nest Investments (Holdings) Lebanon SAL ("Nest Lebanon"). Nest Holdings is a corporate entity incorporated in Jersey, Channel Islands with its principal place of business in Limassol, Cyprus. Nest Lebanon is a corporate entity incorporated in Lebanon with its principal place of business in Beirut, Lebanon. Neither Nest Holdings nor Nest Lebanon has operations in the United States or has done business in the United States.

　　2.  Investment in Lebanese Canadian Bank

In 2002, the Algerian government granted Abu Nahl and Nest Lebanon, together with their affiliates and associates, a banking license, which they used to found Trust Bank Algeria ("TBA") in Algiers. After the Algerian Central Bank required banks to increase their capital

requirements, Nest searched for a strategic banking partner who could offer additional banking experience and expertise.

In 2005, Georges Zard Abou Jaoude ("Abou Jaoude") approached Abu Nahl to discuss his interest in LCB investing in TBA. To help fund this investment, Abou Jaoude proposed to sell Nest a minority stake in LCB. At the time, Abou Jaoude's proposal seemed attractive because it seemed that the banking expertise of Abou Jaoude and LCB would be beneficial to the operations of TBA. Nest Lebanon acquired a 24-percent stake in LCB through a series of transactions between late 2005 and late 2007. In exchange for its minority, non-controlling share of the Bank, Nest paid LCB a total of more than $57 million.

On February 10, 2011, the U.S. Department of Treasury's Financial Crimes Enforcement Network issued a finding ("Treasury Finding"), which identified LCB as a financial institution of primary money laundering concern, and alleged that Abou Jaoude and Hamdoun used LCB to launder funds for the benefit of Hezbollah. The Treasury Finding outlined the key components of the money laundering network, including the roles of various international drug traffickers and Hezbollah operatives. This money laundering scheme was hidden from Nest and the public until the date of the Treasury Finding.[1]

In December 2011, the United States Attorney for the Southern District of New York filed a Civil Forfeiture Complaint against LCB and other defendants. The Civil Forfeiture Complaint outlined in detail a scheme by which Hezbollah used a network of money launderers and car dealers who used LCB to wire funds to purchase used cars that were shipped to Africa,

---

[1] After the Treasury Finding, the U.S. Attorney for the Eastern District of Virginia obtained the Criminal Indictment of Ayman Saied Joumaa ("Joumaa Indictment"). Joumaa was charged with conspiracy to distribute narcotics and to launder money for his role in coordinating the shipment of tens of thousands of kilograms of cocaine and laundering hundreds of millions of dollars in proceeds generated from narcotics sales.

where they were sold.  The Civil Forfeiture Complaint detailed how affiliates of Hezbollah originated approximately $62 million in wire transfers through LCB between 2006 and 2011 in support of the scheme.  In June 2013, LCB agreed to settle the civil forfeiture action.  The settlement included an agreement by LCB to forfeit $102 million in seized funds to the United States.  In connection with the settlement, Société Générale de Banque Au Liban, SAL ("SGBL") agreed to acquire substantially all of the assets of LCB.  As a result of the civil penalty and sale of LCB, Nest suffered economic injury, in addition to other adverse consequences, including the denial of U.S. entry visas to Abu Nahl, his family members, and certain Nest employees.

### B. Legal Proceedings and Representations

#### 1. Nest U.S. Action

After unsuccessful attempts to obtain redress in Lebanon, Nest retained Covington to represent it in a potential lawsuit in the United States.  On December 14, 2015, Abu Nahl and Nest Lebanon filed a complaint in this Court seeking to hold Abou Jaoude, Hamdoun, Ahmad Safa and other managers of LCB responsible for their misuse of LCB (the "Nest U.S. Action").  (Nest Holdings is not a party to the Nest U.S. Action.)  Because of the secrecy that LCB's managers maintained over the illicit scheme, Nest Lebanon and Abu Nahl relied almost entirely on the findings of the U.S. government, including the Treasury Finding, the Civil Forfeiture Complaint, and the Joumaa Indictment, to understand the nature of the money laundering scheme and the basis for their claims.

On November 6, 2017, after effectuating service on Abou Jaoude and certain other defendants, Nest Lebanon and Abu Nahl amended their complaint.  On December 11, 2017, the defendants filed a motion to dismiss, which the court granted on June 14, 2018.  On December 12, 2018, the court granted leave to amend the complaint but subsequently certified its order for

interlocutory appeal and stayed the proceedings (including any discovery). On June 30, 2020, the U.S. Court of Appeals for the Second Circuit reversed the district court's order granting leave to amend, and on August 21, 2020, the district court closed the case.

Throughout the proceedings, Nest Lebanon and Abu Nahl neither served any discovery requests nor received any discovery from defendants or any third parties.

2. DIFC Action

In July 2016, Abu Nahl, Nest Lebanon and other Nest affiliates commenced a lawsuit in the Dubai International Financial Centre Courts ("DIFC"). The lawsuit alleges that an international affiliate of Deloitte & Touche, Deloitte & Touche (Middle East) ("DTME"), and one of its members, Joseph el Fadl, breached their duties as auditor of LCB between 2006 and 2009 by deliberately ignoring a reasonable suspicion of money laundering and terrorist financing, and that this ignorance caused Deloitte to fail to address issues relating to compliance with Lebanese reporting laws and losses caused by related party transactions. *See* CFI-027-2016, *Nest Investments Holding Lebanon S.A.L. v. Deloitte & Touche* (M.E.) ("DIFC Action"). Covington has never represented Abu Nahl or any Nest entity in the DIFC Action.

3. Advocacy Before U.S. Executive Branch Authorities

The U.S. Government's actions against LCB have impaired the ability of Abu Nahl and other Nest-affiliated individuals to obtain visas to travel to the United States. For instance, Abu Nahl has been unable to attend meetings of the World Trade Centers Association ("WTCA"), a New York-based organization that promotes trade and investment in more than 90 countries around the world, despite having served as Chairman and Director of the organization. Since the middle of 2013, when the WTCA Board of Directors held meetings in New York City and Las Vegas, Abu Nahl has not been able to attend in person. Covington has worked on behalf of Abu Nahl and others to dispel any potential concerns regarding their knowledge of or complicity in

the money laundering scheme and to facilitate those individuals' ability to travel to the United States, including through advocacy to relevant Executive Branch personnel.

### C.      Procedural History

#### 1.      Plaintiffs' Actions

Plaintiffs have brought two actions in this court—*Kaplan v. Lebanese Canadian Bank, SAL*, No. 08-cv-7253, and *Lelchook v. Lebanese Canadian Bank, SAL*, No. 18-cv-12401. In both the *Kaplan* action and the *Lelchook* action, Plaintiffs assert claims against LCB for providing banking service to Hezbollah. Second Am. Compl. ¶ 3, *Kaplan*, No. 08-cv-7253 (Dec. 5, 2018), ECF No. 99; Am. Comp. ¶ 3, *Lelchook*, No. 18-cv-12401 (May 6, 2022), ECF No. 65. Plaintiffs allege that these services permitted Hezbollah to conduct attacks that injured plaintiffs. *Id.* Defendant LCB has appeared in both actions.

In these actions, Plaintiffs have asserted that "discovery from both LCB and Hamdoun is *inevitable*" and that "the discovery in respect to LCB that Plaintiffs require is the same in both actions." Case Mgmt. Plan at 4, *Kaplan*, No. 08-cv-7253 (June 23, 2022), ECF No. 168 (emphasis in original). LCB represents that it retains "business records, including internal and administrative memoranda relating to: LCB operations and corporate governance; delegation of authority and responsibility; general anti-money laundering and compliance training programs, efforts, and directives; and board and committee meeting minutes." *Id.* at 16. Plaintiffs have not yet obtained discovery from LCB. Ltr. Mot. to Adjourn Conference, *Kaplan*, No. 08-cv-7253 (Jan. 10, 2023), ECF No. 192.

#### 2.      Plaintiffs' Subpoena

On December 19, 2022, Plaintiffs issued a Federal Rule of Civil Procedure 45 Subpoena to non-party Covington & Burling LLP. The Subpoena seeks "[a]ll documents and electronically stored information in the possession, custody, or control of Covington & Burling, LLP, which: a)

-6-

Came into the possession, custody, or control of Covington & Burling, LLP, as the result of its retention by and/or its representation of [Abu Nahl, Nest Holdings, or Nest Lebanon]; and b) Concern or relate to any of [LCB, Abou Jaoude, Hamdoun, Safa, SGBL, DTME, Deloitte & Touche Lebanon, el Fadl, and Hezbollah] (including their officers, employees, or agents), or to activities of any of [those] Persons (including activities of their officers, employees, or agents)." Gimbel Decl., Ex. A.

The categories of potentially responsive documents that may be in Covington's possession, which effectively constitute the entirety of Covington's Nest Lebanon client file, are:

- LCB business records (including correspondence between LCB and Nest personnel);
- Public record materials (*e.g.*, the Treasury Finding and the Civil Forfeiture Complaint);
- Internal Nest business records;
- Limited written communications between Covington and certain U.S. government persons relating to LCB and the visa issues described above; and
- Privileged and/or work product communications, analyses and drafts.[2]

Abu Nahl and Nest object to the production of materials responsive to the Plaintiffs' request, including any materials provided by them to Covington in confidence for purposes of obtaining legal advice, and have instructed Covington to assert all privileges and other protections from disclosure available to them to the maximum extent permitted by law.

## ARGUMENT

A Court must quash a non-party subpoena issued under Rule 45 when the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). On a motion to quash,

---

[2] In addition, Covington has in its possession a limited number of untranslated Arabic-language documents whose potential privileged nature and responsiveness to Plaintiffs' Subpoena it could not determine without undertaking substantial effort and expense.

-7-

"[t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Night Hawk Ltd. v. Briarpatch Ltd., L.P.,* 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003). Courts "should be particularly sensitive to weighing the probative value of the information sought against the burden of production on [a] non party." *Fears v. Wilhelmina Model Agency, Inc.*, 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004). Where a non-party subpoena to a law firm calls for an "excessive number of documents" with an "unlikelihood of obtaining relevant information," coupled with "the existence of attorney-client privilege for all documents," the court should quash the subpoena. *Est. of Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541, 554 (S.D.N.Y. 2005), *aff'd*, 332 F. App'x 643 (2d Cir. 2009).

Plaintiffs' Subpoena should be quashed in its entirety. At its core, the Subpoena seeks LCB business records that came into Nest's possession as a minority shareholder in LCB and then were transmitted to Covington by Nest for purposes of obtaining legal advice. Plaintiffs are not entitled to this discovery for two separate reasons.

*First*, these materials were provided to Covington in connection with requests for legal advice. Because these materials were not created within the United States and would not be found within the United States but for Covington's representation of its foreign clients, they are not discoverable pursuant to Rule 45.

*Second*, LCB is a party to the LCB Actions. It is inappropriate for Plaintiffs to seek LCB business records from Covington, attorneys for a non-party, rather than from LCB itself.

The remainder of the Subpoena should likewise be quashed. Setting aside the LCB business records, the potentially responsive materials in Covington's possession are either public or of (at most) extremely limited utility in the LCB Actions. Moreover, it would be

extraordinarily burdensome and intrusive to compel this discovery from a law firm, whose files consist overwhelmingly of independently privileged and work product materials that would need to be painstakingly sorted and protected.

I. **PLAINTIFFS ARE NOT ENTITLED TO OBTAIN LCB BUSINESS RECORDS FROM COVINGTON.**

   A. **The Court Should Quash Plaintiffs' Subpoena Seeking Extraterritorial Documents That Are Present in the United States Only As a Result of Nest's Request for Legal Advice.**

Documents are not discoverable where they are found within the United States solely because they were transmitted to counsel for purposes of obtaining legal advice. For this fundamental reason, Plaintiffs are not entitled to obtain LCB-related business records from Covington, which possesses those documents solely by virtue of a request for legal advice from its foreign client, Nest.

*Fisher v. United States*, 425 U.S. 391 (1976), in which the Internal Revenue Service sought documents from a taxpayer's attorney, is instructive. There, the Supreme Court recognized that if discovery could be obtained more easily from attorneys than from their clients, then clients would hesitate to show their documents to their attorneys and "it would be difficult to obtain fully informed legal advice." *Id.* at 403; *see also Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (emphasizing the need for "full and frank communication between attorneys and their clients," which "promote[s] broader public interests in the observance of law and administration of justice"). Accordingly, the Supreme Court indicated that "[w]hen the client himself would be privileged from the production of [a] document" that was transferred to an attorney for the purpose of obtaining legal advice, "the attorney having possession of the document is not bound to produce." *Fisher*, 425 U.S. at 404-405.

-9-

This protection from disclosure applies with full force to requests for documents pursuant to Rule 45 where (1) copies of documents are located within the United States because they were provided to counsel in connection with a request for legal advice but (2) are not otherwise maintained within the United States.  As the Second Circuit explained, the reasoning of *Fisher*

> would seem to apply also where the documents are not amenable to subpoena duces tecum because they lie outside the statutory limits of the court's power to compel production.  *Fisher*'s rule arose from the policy of promoting open communications between lawyers and their clients.  That policy would be jeopardized if documents unreachable in a foreign country became discoverable because the person holding the documents sent them to a lawyer in the United States for [purposes of obtaining legal] advice . . . .

*Application of Sarrio, S.A.*, 119 F.3d 143, 146 (2d Cir. 1997);[3] *see also Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 247–48 (2d Cir. 2018) (noting adverse "unintended consequences" that would occur if client documents were made discoverable merely by transferring them to U.S. counsel); *Ratliff v. David Polk & Wardwell*, 354 F.3d 165, 169 (2d Cir. 2003) ("Exposing documents—not otherwise subject to production—to discovery demands after delivery to one's attorney whose office was located within the sweep of a subpoena would produce a curious and unacceptable result.").

Here, most of the material sought by Plaintiffs—and the only material that might conceivably be of any real relevance to the underlying proceeding—is privileged and/or immune from disclosure under *Fisher* and *Sarrio*.  Setting aside independently privileged or work product materials, publicly available documents, and limited written communications between Covington

---

[3] Because the client in *Sarrio* waived its assertion of privilege during the pendency of the appeal, the Second Circuit ultimately remanded the case to the district court for further proceedings.  119 F.3d at 147-148.  No such waiver, however, has occurred here.  To the contrary, Covington has been instructed by its clients to assert any privilege or other protection from disclosure available to it to the maximum extent permitted by law.

and U.S. government officials (addressed in Part II below), the only potentially responsive materials in Covington's possession are business records relating to LCB that were provided to Covington for the purposes of obtaining legal advice. Those business records were not created in the United States and would not be found within the United States had copies of them not been transmitted to Covington in connection with its representation of Nest. Accordingly, any LCB-related business records in Covington's possession are not properly subject to discovery pursuant to Rule 45.

  **B.** **Plaintiffs Seek Information That Can Be Obtained from Parties to the Litigation.**

Plaintiffs' attempt to obtain LCB-related business records from Covington should be rejected for a second, independent reason: Plaintiffs should obtain those documents from LCB, which is a party to the underlying actions, not from a non-party law firm.

A party issuing a Rule 45 subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). And the Court must protect a non-party from undue burden. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv). "[B]urden and expense are to be weighted more heavily when discovery is sought from non-parties." *Lynch v. City of New York*, 2021 WL 4652305, at *2 (S.D.N.Y. Oct. 5, 2021). "Subpoenas issued under Rule 45 are [also] subject to the relevance requirement of Rule 26(b)(1)," which restricts discovery to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering" factors including "whether the burden or expense of the proposed discovery outweighs its likely benefit." *In re Refco Sec. Litig.*, 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011); Fed. R. Civ. P. 26(b)(1).

In particular, the Court should quash a subpoena absent "a convincing showing that the subpoena is likely to yield unique and material evidence from the third party." *Nidec Corp. v.*

*Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) (granting motion to quash subpoena); *In re Blackstone Partners, L.P.*, 2005 WL 1560505, at *3 (S.D.N.Y. July 1, 2005) (affirming grant of motion to quash subpoena); *Burns v. Bank of Am.*, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007) (holding it "preferable" to obtain discovery from parties rather than from non-parties); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005) (declining to enforce subpoena because "requests all pertain to defendant, who is a party, and, thus, plaintiffs can more easily and inexpensively obtain the documents from defendant, rather than from [the] non-party").

The Court should quash the Subpoena because it does not seek any unique and material evidence from Covington. The Subpoena imposes a significant burden on Covington in an effort to obtain documents about LCB, a party to the LCB Actions. The only documents in Covington's possession that might be of some relevance to these actions are LCB business records, such as audit committee minutes and correspondence. Those materials can and should be obtained from LCB, which is a party to the LCB Actions—not from Covington, counsel for a non-party. Covington necessarily holds no unique LCB business records.

In short, the Court should quash the Subpoena because it would impose a significant burden on Covington and any documents possessed by non-party Covington would add nothing to the information that Plaintiffs can and should obtain from the parties to the LCB Actions.

## II. THE SUBPOENA IS OVERBROAD, UNDULY BURDENSOME AND SEEKS IRRELEVANT MATERIALS.

The Subpoena should be quashed in its entirety because it is overbroad, unduly burdensome and seeks irrelevant materials. "Whether a subpoena imposes an 'undue burden' 'depends on such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are

described and the burden imposed.'" *Koch v. Pechota*, 2012 WL 4876784, at *3 (S.D.N.Y. Oct. 12, 2012) (quoting *Night Hawk Ltd.,* 2003 WL 23018833, at *8). Here, the Subpoena's non-particularized and temporally unlimited requests largely seek documents that are not material to the LCB Actions and would impose a significant burden on a non-party.

Under the broad language of Plaintiffs' Subpoena, there are several categories of potentially responsive documents, each presenting its own set of challenges and concerns. In addition to the LCB business records discussed in Part I above, these categories are (1) public records materials, (2) internal Nest documents, (3) communications between Covington and U.S. government personnel, and (4) independently privileged or protected work product documents.

Public records materials. As described above, no discovery took place in the Nest U.S. Action. Accordingly, all of the information in Covington's possession relating to the money-laundering and terror-financing schemes set out in the complaints in the Nest U.S. Action comes from public record materials, such as the Civil Forfeiture Complaint against LCB. Because this material is already accessible to Plaintiffs, there is no basis for them to obtain these materials from Covington. *See United States v. White*, 280 F. App'x 317, 321 (4th Cir. 2008) (affirming order quashing subpoena for information that was publicly available, even if the subpoena would have saved the petitioner time and money in retrieving the desired information); *McCullough v. City of Montgomery*, 2019 WL 10960445, at *2 (M.D. Ala. Dec. 6, 2019) ("[S]ubpoenas should not be used to obtain information that is available to the public.").

Internal Nest records. Covington may have in its possession a limited number of confidential but non-privileged Nest business records that are technically responsive to Plaintiffs' overbroad document requests. Such materials, however, could not possibly be material to the underlying actions. No Nest entity is a party to these actions. And any business

records relating to Nest's investment in LCB and role as a minority shareholder in LCB are far afield from the issues in the underlying actions, which focus on Hezbollah terrorist attacks.

Executive Branch advocacy.  As described above, Covington is in possession of a limited number of written communications between Covington and U.S. government personnel relating to LCB and the visa status of Abu Nahl and other Nest-affiliated individuals.  While touching on issues relating to LCB, and therefore potentially responsive to Plaintiffs' document requests, these communications—which do not attach or contain any underlying business records or other materials—could not possibly have any real utility in the underlying litigation.

Privileged/work product materials.  Covington's potentially responsive files consist overwhelmingly of attorney-client privileged or otherwise protected work product, including correspondence with Nest, memoranda analyzing potential claims, and draft pleadings.  Most, if not all, of the analyses prepared in the period leading up to the filing of the U.S. Action and in the years during which Covington represented Nest in the Nest U.S. Action are protected work product.  Likewise, the years of communications between Covington and Nest are likely to be overwhelmingly protected by the attorney-client privilege.  These documents comprise the vast majority of the files that Covington would need to review in order to produce documents responsive to the Subpoena.

Courts must balance a party's need for discovery against the potential hardship the requests would impose on others—especially non-parties.  *See Cohen v. City of New York*, 255 F.R.D. 110, 117 (S.D.N.Y. 2008); *UMB Bank, N.A. v. Sanofi*, 2017 WL 6398628, at *1 (S.D.N.Y. Nov. 22, 2017).  Separating protected documents from those not subject to any privilege would require a painstaking document-by-document review of all the information that Covington has in its possession regarding its representation of Abu Nahl and Nest in the Nest

U.S. Action and its related advocacy activities. As described above, moreover, that process would not result in the identification of documents for which Plaintiffs have a significant need. Plaintiffs can and should obtain LCB business records from LCB. And any other responsive documents are either publicly available or would be of little to no relevance to these proceedings.

Because of the unwarranted burden that such overbroad requests create, courts routinely quash subpoenas—like the one here—that effectively seek to obtain a law firm's entire client file. *See Est. of Ungar v. Palestinian Auth.*, 332 F. App'x 643, 645 (2d Cir. 2009) (affirming order quashing subpoena "which asked for essentially every document [law firm] possessed relating to its representation of [a client] all over the world—because it was overly broad and burdensome"); *Menashe v. Covington & Burling LLP*, 552 F.Supp.3d 35, 44 (D.D.C. 2021) ("Separating protected documents, including most if not all of the analyses and communications, from those not subject to privilege and work product would require a painstaking document-by-document review of all the information in Covington's client file on Nest Affiliates."). For this reason, too, the Court should quash the Subpoena.

## CONCLUSION

For the foregoing reasons, the Court should grant Covington's motion and quash Plaintiffs' subpoena.

Dated: New York, N.Y.  
       January 13, 2023

Respectfully submitted,

 *s*/ Mark P. Gimbel  
Mark P. Gimbel  
COVINGTON & BURLING LLP  
The New York Times Building  
620 Eighth Avenue  
New York, NY 10018-1405  
(212) 841 1000

Christian J. Pistilli  
Andrew E. Siegel  
COVINGTON & BURLING LLP  
One City Center  
850 Tenth Street, N.W.  
Washington, D.C. 20001  
(202) 662-6000

*Attorneys for Non-Party*  
*Covington & Burling LLP*