UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAPLAN et al., <br><br>     *Plaintiffs*, <br><br>   against <br><br> LEBANESE CANADIAN BANK, SAL, <br><br>     *Defendants.* | Case No. 08-cv-07253 (GBD)(KHP) |
| LELCHOOK, et al., <br><br>     *Plaintiffs*, <br><br>   against <br><br> LEBANESE CANADIAN BANK, SAL, et al., <br><br>     *Defendants*. | Case No. 18-cv-12401 (GBD)(KHP) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF NON-PARTY COVINGTON & BURLING LLP'S MOTION TO QUASH SUBPOENA**

Mark P. Gimbel
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841 1000

Christian J. Pistilli
Andrew E. Siegel
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, N.W.
Washington, D.C. 20001-4956
(202) 662-6000

*Attorneys for Non-Party
Covington & Burling LLP*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

I.  *Fisher* Requires the Court to Quash Plaintiffs' Subpoena to Compel a Law Firm to Provide the Files of Its Foreign Client. ............................................................... 1

    A.    *Sarrio* Compels the Court to Quash Plaintiffs' Subpoena. ................................... 2

    B.    Plaintiffs' Objections to the Application of *Fisher* Are Unavailing. ...................... 3

    C.    The Availability of Documents Pursuant to the Hague Evidence Convention Does Not Bear on the Application of *Fisher*. ....................................... 5

II.  Plaintiffs Should Obtain LCB Business Records From LCB or Its Successors, Not Covington. ............................................................................................................. 6

III. Plaintiffs' Subpoena Is Unduly Burdensome. ..................................................................... 8

IV. Plaintiffs Have Failed to Show that the Subpoena Seeks Relevant Documents. ................ 9

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Application of Sarrio, S.A.*,
 119 F.3d 143 (2d Cir. 1997) ............................................................................................. passim

*Est. of Ungar v. Palestinian Auth.*,
 332 F. App'x 643 (2d Cir. 2009) ............................................................................................ 8

*First Am. Corp. v. Price Waterhouse LLP*,
 154 F.3d 16 (2d Cir. 1998) ..................................................................................................... 6

*Fisher v. United States*,
 425 U.S. 391 (1976) ........................................................................................................ passim

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
 895 F.3d 238 (2d Cir. 2018) .......................................................................................... 1, 3, 5

*Menashe v. Covington & Burling LLP*,
 552 F. Supp. 3d 35 (D.D.C. 2021) ......................................................................................... 8

*In re Parmalat Sec. Litig.*,
 2005 WL 1529035 (S.D.N.Y. June 28, 2005) ..................................................................... 6

*Ramirez de Arellano v. Starwood Hotels & Resorts Worldwide, Inc.*,
 448 F. Supp. 2d 520 (S.D.N.Y. 2006) .................................................................................. 5

*Sec. & Exch. Comm'n v. Archer*,
 2018 WL 3424449 (S.D.N.Y. July 2, 2018) ......................................................................... 7

**Other Authorities**

Fed. R. Civ. P. 26-37 ..................................................................................................................... 8

Fed. R. Civ. P. 45 .......................................................................................................................... 8

Hague Convention on the Taking of Evidence Abroad in Civil or Commercial
 Matters .................................................................................................................................. 6

Manual for Complex Litigation ................................................................................................... 6

**INTRODUCTION**

"If foreign clients have reason to fear disclosing all pertinent documents to U.S. counsel, the likely results are bad legal advice to the client, and harm to our system of litigation." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP,* 895 F.3d 238, 247 (2d Cir. 2018). For this reason, the Supreme Court established a straightforward rule in *Fisher v. United States*: If a client cannot be compelled to produce documents in response to a subpoena, he can send those documents to his attorney to obtain legal advice without fear that the attorney will be compelled to disclose them. 425 U.S. 391, 404-05 (1976).

In *Application of Sarrio, S.A.*, the Second Circuit applied *Fisher* to facts indistinguishable from those here: U.S. attorneys cannot be compelled to produce a foreign client's documents when the court could not compel the client to produce them by subpoena. 119 F.3d 143, 146 (2d Cir. 1997). Here, Covington received documents from its foreign client, Nest, for the purpose of providing Nest with legal advice. This Court could not compel Nest to produce those documents in response to a subpoena. Thus, under *Fisher* and *Sarrio*, Plaintiffs likewise cannot obtain those documents from Covington. That is the end of the inquiry.

Even if *Fisher* did not preclude enforcement of the subpoena, Plaintiffs have failed to demonstrate that they are entitled to enforcement of the subpoena, which seeks information that is duplicative of information that has and should be sought from LCB, imposes an undue burden on Covington, and is irrelevant. The Court should quash the subpoena for these reasons as well.

**ARGUMENT**

I.  ***FISHER* REQUIRES THE COURT TO QUASH PLAINTIFFS' SUBPOENA TO COMPEL A LAW FIRM TO PROVIDE THE FILES OF ITS FOREIGN CLIENT.**

Plaintiffs ignore Second Circuit precedent that compels the Court to quash their subpoena. Plaintiffs argue that quashing the subpoena would "expand the limited discovery

-1-

protection discussed in *Fisher* and its progeny far beyond the narrow circumstances to which it has ever been applied to date." Opp. at 4.  To the contrary, the Second Circuit already has held that *Fisher* prevents a court from compelling a law firm to produce the files of a foreign client when the client is not subject to the court's subpoena power.  That decision is dispositive here.

      A.      ***Sarrio* Compels the Court to Quash Plaintiffs' Subpoena.**

As Covington highlighted in its opening brief, the Second Circuit already has explained that the reasoning of *Fisher* protects documents that were sent to a lawyer in the United States for the purpose of obtaining legal advice.  Mot. at 10 (discussing *Sarrio*).  Yet Plaintiffs completely fail to address this precedent, the reasoning of which compels the Court to quash Plaintiffs' subpoena.  In *Sarrio*, Chase Manhattan Bank's foreign branches sent documents to Chase's U.S. counsel in New York for the purpose of obtaining legal advice.  Sarrio then served a subpoena seeking the documents in the possession of Chase's U.S. counsel.  119 F.3d at 144-45.  The Second Circuit held that "where documents unobtainable by subpoena while in the possession of the client are transferred to a lawyer to obtain legal advice, making the documents available to process would defeat the purposes of the attorney-client privilege." *Id.* at 146; *accord Fisher*, 425 U.S. at 403-04 (if information "could more readily be obtained from the attorney following disclosure than from [the client] in the absence of disclosure," the client would be discouraged from disclosing information to the attorney and "the purposes of the attorney-client privilege would be defeated").[1]  "*Sarrio* explained that . . . [*Fisher's*] reasoning also applied to protect a foreign party's documents that are not amenable to a subpoena in the

---

[1] The Second Circuit approved of the district court's order quashing the subpoena, but remanded the case, because Chase waived its assertion of privilege during the pendency of the appeal.  *See Sarrio*, 119 F.3d at 148.

hands of the foreign party, even if the court can subpoena the documents from the foreign party's U.S. counsel[.]" *Kiobel*, 895 F.3d at 246.

The Court need only follow *Sarrio* to find that it should quash Plaintiffs' subpoena. As in *Sarrio*, Nest provided documents to Covington, its U.S. counsel, for the purpose of obtaining legal advice. Like in *Sarrio*, this Court cannot issue a subpoena to compel Nest itself to produce documents. And, just as in *Sarrio*, Plaintiffs have attempted to obtain Nest's documents by issuing a subpoena for those documents in the hands of its attorneys. Following *Sarrio*, compelling Covington to produce the documents would defeat the purpose of the attorney-client privilege. The Court should quash Plaintiffs' subpoena.

### B. Plaintiffs' Objections to the Application of *Fisher* Are Unavailing.

Plaintiffs object to applying *Fisher* here for three reasons: (1) *Fisher* does not apply if the client "willingly injects himself" into U.S. litigation; (2) applying *Fisher* here would unfairly protect foreign clients; and (3) *Fisher* does not protect pre-existing documents. Opp. at 4. Each of these arguments is inconsistent with *Fisher* and *Sarrio*.

*First*, the Court should reject Plaintiffs' assertion that *Fisher* does not apply when a client "willingly injects himself and his entirely foreign dispute into the United States and its legal system." Opp. at 4. Plaintiffs' proposed rule is contrary to *Fisher*'s holding that the attorney-client privilege protects "disclosures necessary to obtain informed legal advice ***which might not have been made absent the privilege***." 425 U.S. at 403 (emphasis added).[2] Such a limitation would make a potential plaintiff "reluctant to confide in his lawyer and it would be difficult to

---

[2] Moreover, there is no administrable way to apply Plaintiffs' proposed rule. For example, if a client considered additional lawsuits or additional claims but decided not to pursue them, the Court would have to determine which documents the client provided in connection with which claims. Not only is such an analysis untenable, but attempting to apply it would risk revealing the attorney's advice about the relevance of particular documents to particular claims.

-3-

obtain fully informed legal advice." *Id.* at 403. Because the client might decide not to make such a disclosure, that disclosure must be protected. Accordingly, *Fisher* does not discriminate based on the nature of the legal consultation, and it protects clients who consult attorneys for legal advice, irrespective of whether the client might become a plaintiff, a defendant, or neither.

*Second*, Plaintiffs' argument that quashing the subpoena would "grant a foreigner who chooses to utilize the United States courts protections that are unavailable to citizens and residents of the United States," Opp. at 4, is both contrary to Second Circuit precedent and incorrect. The Second Circuit already has decided that *Fisher* protects the documents of clients even if they are foreigners. *See Sarrio*, 119 F.3d at 146-48 (applying privilege to protect documents held by branches located in England and Spain). Further, *Sarrio*'s application of *Fisher* does not grant any protections unique to foreign clients. *Fisher* holds that documents undiscoverable in the hands of the client are no *more* discoverable after the client provides them to an attorney. That protection applies to every client who consults a U.S. lawyer, irrespective of whether the client is located in the U.S. or elsewhere.

*Third*, Plaintiffs' argument that "preexisting documents provided to an attorney" are not protected is directly contrary to *Fisher* and *Sarrio*. Opp. at 4. As *Fisher* makes clear, only "pre-existing documents **which could have been obtained by court process from the client when he was in possession** may also be obtained from the attorney[.]" 425 U.S. at 403 (emphasis added). However, if those same pre-existing documents "are not obtainable by *subpoena duces tecum* . . . . the purposes of the attorney-client privilege would be defeated unless the privilege is applicable." *Id.* at 404. In *Sarrio,* the Second Circuit likewise prohibited discovery of pre-existing documents from a lawyer's files when they were beyond the court's power to compel

production from the client.  119 F.3d at 146.  If the court cannot compel the production of pre-existing documents from the client, it cannot compel them from the attorney.

        **C.**       **The Availability of Documents Pursuant to the Hague Evidence Convention Does Not Bear on the Application of *Fisher*.**

Plaintiffs argue that the attorney-client protections of *Fisher* are unavailable if the documents can be obtained pursuant to the Hague Evidence Convention.  But *Fisher* protects documents that cannot be compelled from the client by the court's *subpoena* power—irrespective of whether they may be compelled by treaty, letters rogatory, or some other international legal process.  *See Fisher*, 425 U.S. at 404 (assessing whether "documents are not obtainable [from the client] by **subpoena duces tecum or summons**") (emphasis added)).

Consistent with *Fisher*, the availability of documents pursuant to the Hague Evidence Convention or other international procedures does not bear on the Second Circuit's analysis.  Spain is a signatory to the Hague Evidence Convention.  *See Ramirez de Arellano v. Starwood Hotels & Resorts Worldwide, Inc.*, 448 F. Supp. 2d 520, 529 (S.D.N.Y. 2006).  Nonetheless, in *Sarrio*, the Second Circuit considered only the reach of a subpoena in determining that the court could not compel lawyers to produce the documents of its Spanish client.  *See* 119 F.3d at 146 (assessing whether "documents [are] unobtainable by **subpoena** while in the possession of the client") (emphasis added); *see also Kiobel*, 895 F.3d at 245-46 (recognizing that *Fisher* "applied to protect a foreign party's documents that are not amenable to a **subpoena** in the hands of the foreign party" and applying *Sarrio* and *Fisher* without regard to the availability of a Dutch client's documents pursuant to the Hague Evidence Convention, even though the Netherlands was a signatory) (emphasis added)).

Plaintiffs assert that the Court can ignore these precedents because they could obtain these documents pursuant to the Hague Evidence Convention.  Plaintiffs point to an unpublished

-5-

district court case that mentioned the Hague Convention in declining to apply the protections of *Fisher*. *See In re Parmalat Sec. Litig.*, 2005 WL 1529035, at *3 (S.D.N.Y. June 28, 2005). That decision held that documents were not protected by *Fisher* because the court could not determine that "these documents are unobtainable [from the client] by **subpoena** or other compulsory process." *Id.* at *3-4. Because the documents might have been obtainable by subpoena, *Fisher* did not apply, and it made no difference whether they also were obtainable pursuant to the Hague Evidence Convention.[3]

## II.     PLAINTIFFS SHOULD OBTAIN LCB BUSINESS RECORDS FROM LCB OR ITS SUCCESSORS, NOT COVINGTON.

Plaintiffs contend that they "are being 'whipsawed'" by Covington's refusal to hand over its client's privileged materials, since LCB also has objected to their discovery demands. Opp. at 8. But Plaintiffs' discovery disputes with Defendants do not entitle them to burden Covington. Plaintiffs acknowledge that they seek the same discovery from Covington that they have sought from LCB. Accordingly, Plaintiffs should pursue these documents from LCB—a party to this action—and its successors, rather than seeking them from Covington.

To evade their obligation to obtain this discovery from LCB, Plaintiffs first argue that the Court has approved their efforts to obtain discovery from Covington by recognizing that "a

---

[3] Even if the applicability of the Hague Evidence Convention did bear on this analysis, Plaintiffs have not shown that they could obtain any documents pursuant to the Convention. They have not sought to do so, and Cyprus has made a reservation with respect to Section 23 of the Convention that restricts the availability of "pre-trial discovery of documents." Hague Conference on Private International Law, Declaration/Reservation/Notification (last visited Mar. 10, 2023), https://www.hcch.net/en/instruments/conventions/statustable/notifications/?csid=496&disp=resdn; *see also First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 23 (2d Cir. 1998) (holding that due to U.K.'s reservation with respect to Article 23, which is identical to Cyprus's reservation, "the Hague Convention does not really offer a meaningful avenue of discovery in the present case."); *see also* Extraterritorial Discovery, Manual for Complex Lit. § 11.494 (4th ed. 2004) ("Hague Convention countries that have executed a reservation under Article 23 will ordinarily not execute general requests for broad categories of documents for use in discovery.").

substantial amount of discovery in this case will be obtained from non-parties." Opp. at 7. The Court addressed the potential need for third-party discovery, however, based on Plaintiffs' representations that "LCB's customer records have been transferred to third-parties." ECF No. 70 at 17[4]; *id.* at 16 ("LCB's former client documentation and transactional records within the scope of the Sale and Purchase Agreement were transferred to the custody of[] Société Générale de Banque au Liban SAL"). Indeed, the Court recognized that "most of the relevant documents" would be in the hands of two successors to LCB: Midclear and SGBL. 7/28/22 Tr. at 4:24-5:12, ECF No. 79. Consistent with the parties' representations and the Court's guidance, Plaintiffs should seek relevant documents from LCB and from Midclear and SGBL (who stand in the shoes of LCB), rather than from Covington (who is a stranger to this dispute). *See Sec. & Exch. Comm'n v. Archer*, 2018 WL 3424449, at *1 (S.D.N.Y. July 2, 2018) (court considering burden on non-parties must consider "whether the documents are available from other sources").

Plaintiffs next argue that they are justified in burdening Covington because LCB has produced only "a small number of cherry-picked and effectively useless documents" despite broad requests that encompassed the same documents that Plaintiffs now seek from Covington. Opp. at 7-8. If Plaintiffs believe they are entitled to such discovery, they should seek to compel LCB to produce it. Plaintiffs have made no such motion, and as recently as three days ago, the parties did "not believe there are any [discovery] issues that require the Court's attention at this time." ECF No. 122. If LCB provides those documents, there is no need to burden Covington with Plaintiffs' duplicative request. On the other hand, if Plaintiffs elect not to pursue those documents from LCB or the Court precludes Plaintiffs from obtaining them, Plaintiffs also

---

[4] Docket numbers refer to the docket entry in *Lelchook v. Lebanese Canadian Bank, SAL*, No. 18-cv-12401-GBD-KHP.

would not be entitled to obtain those documents from Covington.  Whether or not Plaintiffs pursue their requests with LCB (and whether or not they are successful), there is no basis to burden Covington with duplicative requests.

### III.     PLAINTIFFS' SUBPOENA IS UNDULY BURDENSOME.

Even if it were proper to seek documents from Covington, the subpoena should be quashed because it is overly broad and unduly burdensome.  Plaintiffs argue that, absent an affidavit, the Court should not even consider the burden of a subpoena.[5]  However, a subpoena that demands that a law firm produce its client file, the majority of which is protected by the attorney-client privilege and work product doctrine, is *per se* unduly burdensome.  *See Est. of Ungar v. Palestinian Auth.*, 332 F. App'x 643, 645 (2d Cir. 2009) (affirming order quashing subpoena "which asked for essentially every document [law firm] possessed relating to its representation of [a client] all over the world—because it was overly broad and burdensome"); *Menashe v. Covington & Burling LLP*, 552 F. Supp. 3d 35, 44 (D.D.C. 2021) ("Separating protected documents, including most if not all of the analyses and communications, from those not subject to privilege and work product would require a painstaking document-by-document review of all the information in Covington's client file on Nest Affiliates.").[6]

Plaintiffs have all but conceded that *Fisher* protects documents that Covington received for lobbying or other non-litigation purposes, and have made clear that they seek non-public documents from Covington.  Even the concession that Plaintiffs seek only pre-existing, non-

---

[5] Plaintiffs' vague reference to Fed. R. Civ. P. 26-37 has no bearing on this analysis.  Mot. at 9.  Plaintiffs do not seek party discovery from Covington, but rather non-party discovery pursuant to Rule 45.

[6] Plaintiffs seek to distinguish *Menashe*, because (1) the magistrate issued an order rather than a recommendation and (2) the action concerned § 1782 rather than Rule 45.  Yet, Plaintiffs do not dispute the court's analysis of the burden of responding to a request for a client file.

public documents provided to Covington for litigation purposes, however, does not mitigate the burden of the subpoena. Identifying the purpose for which Covington received every document relating to its representation of Nest would require extensive discussions with Covington's client to identify for which legal purpose Nest intended that Covington would use each document.[7] And Covington still would have to sift through the entirety of its client file to identify which responsive materials are privileged or work product and which could be produced.

Moreover, Plaintiffs' opposition further highlights the significant burden that the subpoena would impose. For instance, Plaintiffs note that they are engaged in a dispute with LCB over the application of various privileges under Lebanese law. Before Covington could produce any documents pursuant to the subpoena, it would have to conduct the same analysis of any documents that might be subject to protection under Lebanese law. Accordingly, the Court should quash the subpoena because it is overly broad and unduly burdensome.

## IV. PLAINTIFFS HAVE FAILED TO SHOW THAT THE SUBPOENA SEEKS RELEVANT DOCUMENTS.

Plaintiffs' subpoena should also be quashed because the documents it seeks are largely—if not entirely—irrelevant.

*First*, Plaintiffs have not shown that any documents called for by the subpoena are relevant. Plaintiffs argue that documents cited in Nest's lawsuit against LCB, which concerned a business dispute between Nest and LCB's majority owners, are "extremely relevant" to Plaintiffs' claims that they were injured in Hezbollah rocket attacks in 2006. Opp. at 2-3.

---

[7] Covington's possession of Arabic-language documents only compounds this burden. Plaintiffs argue that foreign language documents impose no burden on Covington because some Covington attorneys speak Arabic with some level of familiarity. But those attorneys would have to assess various issues relating to Covington's representation of Nest, including, for example, the purpose for which Nest provided each document to Covington; whether each document relates to the specific entities identified in the subpoena; and whether any documents contain privileged information.

Plaintiffs fail to articulate how these documents—all of which postdate the rocket attacks in which Plaintiffs were injured—have any relevance to their claims.

*Second*, the only "pre-existing," "non-public" documents in Covington's possession that are even arguably relevant to Plaintiffs' claims are LCB business records—which, as explained above, Plaintiffs should obtain from LCB and its successors. Yet Plaintiffs' subpoena broadly seeks *all* documents that came into Covington's possession as a result of its representation of Nest that concern nine different individuals and entities. Mot., Ex. A. Plaintiffs do not make any showing that internal Nest business records or other potentially responsive documents have any conceivable relevance to their claims—nor could they.

## CONCLUSION

For the foregoing reasons, the Court should quash Plaintiffs' subpoena.

Dated:  New York, New York
        March 10, 2023

Respectfully submitted,

 /s/ Mark P. Gimbel
Mark P. Gimbel
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841 1000

Christian J. Pistilli
Andrew E. Siegel
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, N.W.
Washington, D.C. 20001-4956
(202) 662-6000

*Attorneys for Non-Party
Covington & Burling LLP*