**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
ESTER LELCHOOK, *et al.*,

                                        Plaintiffs,

                    -against-

LEBANESE CANADIAN BANK, SAL, and
MOHAMED HAMDOUN,
                                        Defendants.
_____X

KAPLAN *et al.*,

                                        Plaintiffs,

                    -against-

LEBANESE CANADIAN BANK, SAL,

                                        Defendant.
_____X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/21/2023
```

18-CV-12401 (GBD) (KHP)

08-cv-07253 (GBD)(KHP)

**OPINION AND ORDER ON**
**MOTION TO QUASH SUBPOENA**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

     Plaintiffs in these related cases served a Rule 45 subpoena on Covington & Burling LLP

("Covington") seeking documents that it acquired in the course of representing an individual

named Ghazi Abu Nahl and companies in which Nahl has an interest, Nest Investments

(Holdings) Ltd. and Nest Investments Holding Lebanon SAL (together, "Nest").  For the reasons

discussed below, the motion is GRANTED.

**BACKGROUND**

     Plaintiffs in both cases (*Kaplan*, 08-cv-7253; *Lelchook*, 18-cv-12401) are victims or family

members of victims of terrorist rocket attacks in Israel carried out by Hezbollah, a designated

foreign terrorist organization.  They allege that Defendants aided and abetted Hezbollah by

1

providing banking services to individuals and entities that were fronts for Hezbollah and funneled money to Hezbollah to assist it in carrying out terrorism.  (*Kaplan* Second Amended Compl. ("SAC") ¶¶ 25-48.)   The complaints in these actions name various entities and persons affiliated with Hezbollah, including the Shahid (Martyrs) Foundation, Bayt al-Mal, Yousser Company for Finance and Investment, Husayn al-Shami, and Wahid Mahmoud Sbeity, that maintained accounts with Defendant Lebanese Canadian Bank SAL ("LCB").  (*Id.* at ¶¶ 21, 23, 38.)  According to Plaintiffs, LCB knew that these persons and entities were affiliated with Hezbollah and nevertheless performed banking transactions for them, including U.S. dollar denominated transactions through a correspondent bank, American Express Bank Ltd., in New York.  (*Id.* at ¶¶ 35, 72-87.)  These financial services allegedly assisted Hezbollah by providing money to finance its terrorist activities.

Nahl is a Jordanian businessman living in Cyprus who is the majority owner of Nest. (Pet'r's Mot. to Quash 2.)  Nest Investment (Holdings) Ltd. ("Nest Holdings") is incorporated in the Channel Islands with its principal place of business in Cyprus.  Nest Investments (Holdings) Lebanon SAL ("Nest Lebanon") is incorporated in Lebanon with its principal place of business in Lebanon.  (*Id.*)

Between 2005 and late 2007, Nest Lebanon acquired a 24-percent stake in Defendant Lebanese Canadian Bank, SAL ("LCB").  (*Id.* at 3.)  On February 10, 2011, the U.S. Department of Treasury's Financial Crimes Enforcement Network identified LCB as a financial institution of primary money laundering concern and alleged that Defendant Hamdoun, a former officer of LCB, laundered funds through LCB for the benefit of Hezbollah.  (*Id.*)  In December 2011, the United States Attorney for the Southern District of New York filed a Civil Forfeiture Complaint

against LCB and other defendants.  (*Id.*)  The complaint asserted that LCB was involved in a money laundering scheme for the benefit of Hezbollah.  (*Id.* at 3-4.)  In June 2013, LCB settled the government's action against it by agreeing to forfeit $102 million in seized funds to the United States.  (Pet'r's Mot. to Quash 4.)  Thereafter, Societe Generale de Banque Au Liban, SAL ("SGBL") acquired substantially all of the assets of LCB.  (*Id.*)

Nest lost its investment in LCB, and the United States denied U.S. entry visas to Nahl and his family and certain other Nest employees because they were connected to LCB.  (*Id.*)

Nest and Nahl deny any wrongdoing and contend they are victims of LCB's money laundering scheme.  They brought actions in Lebanon to obtain redress, but they were unsuccessful.  (*Id.*)  Nest and Nahl then engaged Covington to represent them in an action in the Southern District of New York.  That action, *Nahl, et. al. v. Jaoude, et al.,* 15-cv-0755 (LGS), asserted, among other claims, civil conspiracy under the RICO statute and fraud.  (*Nahl,* 15-cv-9755, ECF No. 1.)  The case was closed in 2020 after motions on the pleadings.  *Nahl v. Jaoude*, 968 F.3d 173 (2d Cir. 2020).  The complaint in the case, however, contained factual allegations concerning LCB's alleged involvement in the money laundering scheme and cited to publicly available reports and certain internal LCB memoranda from 2007 which caused Nahl/Nest to be concerned about compliance controls within LCB.  (*Nahl,* 15-cv-9755, ECF No. 1.)  The complaint also referenced requests Nest made for creation of an Audit Committee at LCB to improve internal controls, minutes from meetings of the Audit Committee in 2008 and 2010, communications of the LCB Anti-Money Laundering Committee on which Defendant Hamdoun served, Audit Committee reports, and LCB Risk Committee meeting minutes.  *Id.*

Nest and Nahl provided Covington with various documents in the course of the representation and for purposes of bringing the lawsuit, presumably including the documents referenced in the complaint filed in this District.  Nest and Nahl did not produce or obtain any documents through discovery in connection with their lawsuit because the case was dismissed after a motion on the pleadings.  Thus, the information in Covington's possession all came from Nest and Nahl or publicly available sources and was never disclosed to anyone in the United States.

**THE SUBPOENA**

The subpoena seeks: "all documents" that "came into the possession, custody, or control" of Covington as the result of its representation of Nahl and Nest and "concern or relate to" a list of individuals and companies (including employees, officers, agents of the companies) (the so-called "Relevant Persons") or any activities of the Relevant Persons.  (Gimbel Decl., Ex. A, ECF No. 196.)  The Relevant Persons include LCB, Georges Zard Abou Jaoude, Mohamed Hamdoun, Ahmad Safa, Societe Generale De Banque Au Liban, SAL, Deloitee & Touche (Middle East), Deloitte & Touche, Lebanon, Joseph El Fadi, and Hezbollah.

Covington objects to the subpoena as overbroad.  (Pet'r's Mot. to Quash 12.)  It further objects to being required to produce anything that is publicly available or information that has not first been sought from LCB.  (*Id.* at 13-14.)  It also asserts that it cannot be compelled to turn over documents that are only in the United States because its foreign clients sought legal advice for purposes of initiating an action here.  (*Id.* at 14-15.)  In other words, it argues that the documents do not exist in the United States outside the attorney-client relationship and are therefore immune from Rule 45's reach.  Finally, it objects that the subpoena is unduly

burdensome insofar as most of the information in its possession is protected by the attorney-client privilege and work product doctrine such that it would be unduly burdensome to have to log numerous documents on privilege grounds when only a few responsive, non-privileged documents might exist.  (*Id.* at 15.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 permits a party to command a non-party to produce documents and provide deposition testimony.  *See* Fed. R. Civ. P. 45(a).  The issuing party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1).  The court "must quash or modify a subpoena" that "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3).

The party seeking discovery bears the initial burden of proving that the information and testimony sought in the subpoena are relevant and proportional to the needs of the case, and the burden then shifts to the party opposing discovery to show that the information sought is privileged or unduly burdensome.  *See* Fed. R. Civ. P. 26(b); Fed. R. Civ. P. 45(d)(3)(A)(iv); *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012).  When evaluating undue burden, the court considers the relevance of the information sought, the party's need for the information, the breadth of the request, and the burden imposed.  *Blake Marine Grp.. LLC v. Frenkel & Co.*, 2019 WL 1723567, at *1 (S.D.N.Y. Apr. 18, 2019).

## DISCUSSION

To start, the subpoena is grossly overbroad and requests irrelevant information.  Plaintiffs have made no effort to tailor the subpoena to the claims in this action or even the

time period relevant to this action.  This action concerns transactions LCB allegedly made on

behalf of Hezbollah-affiliated persons and entities such as those named in the complaint (i.e.,

the Shahid (Martyrs) Foundation, Bayt al-Mal, Yousser Company for Finance and Investment,

Husayn al-Shami, Wahid Mahmoud Sbeity) leading up to the rocket attacks that killed or injured

the Plaintiffs or their family members in July and August 2006.   Yet, the subpoena makes no

mention of LCB records that Nest and Nahl acquired concerning these LCB customers – i.e., the

ones mentioned in the complaint.  Nor is it tailored to request only those documents

referenced in the complaint Nest and Nahl filed in this District.  Nor does it specify that it is

looking for documents Nest and Nahl may have concerning LCB policies and procedures during

the relevant period for flagging accounts or transactions that might be used for terrorist

financing and protocols for addressing any suspicious accounts so flagged.  Instead, it seeks

"all" documents ever acquired by Covington during its representation of Nest and Nahl and

referring or relating to a list of so-called Relevant Persons.  This type of request is presumptively

overbroad and improper.  Thus, Plaintiffs have not demonstrated that the subpoena seeks only

information relevant to the claims and defenses and proportional to the needs of the case.  The

subpoena is quashed for this reason.

Additionally, Plaintiffs cannot utilize Rule 45 to obtain from Covington what they cannot

obtain directly from Nest and Nahl.  *Fisher v. United States*, 425 U.S. 391, 403 (1976).   Rather

than seeking discovery from Nest and Nahl through the Hague Evidence Convention, Plaintiffs

took a short cut and simply subpoenaed Nest and Nahl's U.S. counsel.  But, courts have rejected

efforts to obtain discovery from foreign entities and persons whose documents are in the U.S.

solely for purposes of seeking legal advice in the context of 28 U.S.C. § 1782, because allowing

such discovery would be contrary to public policy seeking to promote full and frank

communication between attorneys and clients and observance of the rule of law and

administration of justice.  *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238,

245-46 (2d Cir. 2018); *Application of Sarrio, S.A.*, 119 F.3d 143 (2d Cir. 1997).  The rationale for

declining discovery aimed at foreign entities' U.S. law firms under Section 1782 applies with

equal force to the same type of discovery sought pursuant to Rule 45.

Plaintiffs suggest that because some of the documents they seek might be available

through the Hague process, they should be able to seek those same documents from Plaintiffs'

U.S. counsel.  They argue that *Fisher* supports this argument.  *Fisher* involved summonses

issued by the Internal Revenue Service to lawyers for taxpayers under investigation for possible

civil or criminal tax violations.  At issue was whether the taxpayers' Fifth Amendment rights

would be violated by enforcement of the summonses and whether the attorney-client privilege

protected the documents sought to the extent they would have been privileged in the hands of

the client pursuant to the Fifth Amendment.  The Court held the Fifth Amendment did not

preclude enforcement of the summonses.   It recognized that pre-existing documents that

could have been obtained through court process from the client may also be obtained from the

client's attorney by similar court process following transfer to the attorney for purposes of

obtaining legal advice.  *Fisher*, 425 U.S. at 403-404.  It further recognized that the "purpose of

the [attorney-client] privilege is to encourage clients to make full disclosure to their attorneys"

and reasoned that this purpose would be defeated if documents could be obtained more easily

from attorneys than from their clients, because clients would hesitate to show documents to

their attorneys—especially if the documents would not be subject to disclosure via the same type of court process served on the attorney.  *Id*. at 403.

The Second Circuit subsequently suggested *Fisher's* logic applied to situations when documents are not amenable to subpoena on the client because they "lie outside the statutory limits of the court's power to compel production."  *Application of Sarrio, S.A.*, 119 F.3d at 146.  More recently, the Second Circuit found the District Court abused its discretion in granting a petition for discovery served on Cravath Swaine & Moore LLP ("Cravath").  In that case, the documents sought were not discoverable abroad and were only in counsel's hands because they were sent to the United States for purposes of a litigation in the United States.  The U.S. litigation ended, and years later, a plaintiff suing Cravath's client in the Netherlands sought documents Cravath obtained from its client for use in the Dutch lawsuit.  The plaintiff did not attempt to obtain the documents directly from Cravath's client.  The court recognized that "when a client is privileged from producing documents, so too is the client's counsel."  *Kiobel by Samkalden*, 895 F.3d at 246 (citing *Fisher*, 425 U.S. at 404).  It then explained that *Sarrio* stands for the proposition that "a foreign party's documents that are not amenable to a subpoena in the hands of the foreign party," are protected from discovery "even if the court can subpoena the documents from the foreign party's U.S. counsel" because to hold otherwise "would disturb attorney-client communications and relations."  *Id*. at 246 (citing *Application of Sarrio, S.A.*, 119 F.3d at 146).  Because the documents sought were undiscoverable from Cravath's clients in the Netherlands, the court found they could not be obtained from Cravath.  *Id*. at 246.

Covington disputes that the documents sought can be obtained through the Hague process and contends that even if they could be obtained through that process, it would be

inappropriate to permit Plaintiffs to circumvent that process in favor of the "appreciably" easier

Rule 45 subpoena process because this would disturb attorney-client communications and

relations.  Covington's argument is persuasive because the relative ease of obtaining

documents from a lawyer as opposed to the client was a factor relevant to whether to allow

discovery from a lawyer if the discovery is similarly available from the client.  *Fisher*, 425 U.S. at

404.  Further, not recognizing this difference in ease of access and permitting Rule 45

subpoenas in similar situations could lead to harms recognized by the Second Circuit in *Kiobel*,

including causing foreign clients to fear disclosing documents to U.S. counsel, likely leading to

"bad legal advice and harm to our system of litigation," as well as potential excessive costs to

store documents abroad and decrease in foreign entities' willingness to engage with U.S. law

firms.  *Kiobel*, 895 F.3d at 247-248.  But the Court need not decide whether any subset of the

documents can be obtained through the Hague process because the subpoena is grossly

overbroad, and Plaintiffs have not even attempted to utilize the Hague process in the first

instance.

      Plaintiffs may utilize the Hague process but are cautioned that they may only seek

documents relevant to the claims and defenses and proportional to the needs of the case.

Thus, any proposed Letters Rogatory should be appropriately tailored to this end.

## CONCLUSION

      For the reasons set forth below, the motion to quash is GRANTED.

**SO ORDERED**

April 21, 2023
New York, New York

_____
Katharine H. Parker
United States Magistrate Judge